# EXHIBIT J-1



IN 7291305

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
#### United States Patent and Trademark Office

April 19, 2011

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:

APPLICATION NUMBER: *10/174,984*
FILING DATE: *June 20, 2002*
PATENT NUMBER: *7,228,379*
ISSUE DATE: *June 05, 2007*

By Authority of the
**Under Secretary of Commerce for Intellectual Property**
**and Director of the United States Patent and Trademark Office**

M. K. CARTER
Certifying Officer

MTI0001816




Patent
Attorney's Docket No.  0032-0002

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## UTILITY PATENT
## APPLICATION TRANSMITTAL LETTER

Box PATENT APPLICATION
Commissioner for Patents and Trademarks
Washington, D.C.  20231

Sir:

Enclosed for filing is the utility patent application of Steven BRESS, Dan BRESS, Mike MENZ, and Mark Joseph MENZ for SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES.

Also enclosed are:

☒ Ten sheet(s) of ☒ formal ☐ informal drawing(s);

☐ claim for foreign priority under 35 U.S.C. §§ 119 and/or 365 is ☐ hereby made to _____ filed in _____ on _____;

☐ in the declaration;

☐ a certified copy of the priority document;

☐ a General Authorization for Petitions for Extensions of Time and Payment of Fees;

☒ applicant(s) is/are entitled to Small Entity Status;

☐ an Assignment document and Assignment Recordation Cover Sheet;

☒ an Information Disclosure Statement and PTO-1449;

☐ A Request for Non-Publication is enclosed; and

☐ Other: _____;

☒ An ☒ executed ☐ unexecuted declaration of the inventor(s)

☒ also is enclosed ☐ will follow.

☐ Please amend the specification by inserting before the first line the sentence -- This application claims priority under 35 U.S.C. §§ 119 and/or 365 to _____ filed in on _____; the entire content of which is hereby incorporated by reference.--

☐ A bibliographic data entry sheet is enclosed.

MTI0001817

Utility Patent Application Transmittal Letter
Attorney's Docket No. 0032-0002
Page 2

☒ The filing fee has been calculated as follows ☐ and in accordance with the enclosed preliminary amendment:

| CLAIMS | | | | | |
|---|---|---|---|---|---|
| | No. of Claims | | Extra Claims | Rate | Fee |
| Basic Application Fee | | | | | $ 740.00 |
| Total Claims | 45 | Minus 20 = | 25 | x $18.00 = | $ 450.00 |
| Ind. Claims | 5 | Minus 3 = | 2 | x $ 84.00 = | $ 168.00 |
| If multiple dependent claims are presented, add $280.00 | | | | | |
| Total Application Fee | | | | | $1,358.00 |
| If Small entity status is claimed, subtract 50% of Total Application Fee | | | | | $ 679.00 |
| Add Assignment Recording Fee if Assignment document is enclosed | | | | | $   0.00 |
| **TOTAL APPLICATION FEE DUE** | | | | | $ 679.00 |

☐ This application is being filed without a filing fee.  Issuance of a Notice to File Missing Parts of Application is respectfully requested.

☒ A check in the amount of  $679.00  is enclosed for the fee due.

☐ A check in the amount of  $ 40.00 (Assignment Recordation fee)  is enclosed for the fee due.

☐ Charge $_____ to Deposit Account No. 50-1070 for the fee due.

MTI0001818

Utility Patent Application Transmittal Letter
Attorney's Docket No. 0032-0002
Page 3

☒ The Commissioner is hereby authorized to charge any appropriate fees under 37 C.F.R. §§
  1.16, 1.17, and 1.21 that may be required by this paper, and to credit any overpayment, to
  Deposit Account No. 50-1070. This paper is submitted in duplicate.

26615

PATENT TRADEMARK OFFICE

Respectfully submitted,

HARRITY & SNYDER, L.L.P.

By:

Brian E. Ledell
Reg. No. 42,784

11240 Waples Mill Road
Suite 300
Fairfax, Virginia 22030
(571) 432-0800

Date:  June 20, 2002

MTI0001819

Docket No.: 0032-0002

# SYSTEMS AND METHODS FOR REMOVING
DATA STORED ON LONG-TERM
MEMORY DEVICES

## RELATED APPLICATION

[0001]    This application claims priority under 35 U.S.C. § 119 based on U.S.

Provisional Application No. 60/299,783, filed June 21, 2001, the disclosure of

which is incorporated herein by reference.

## BACKGROUND OF THE INVENTION

A.    Field of the Invention

[0002]    The present invention relates to computer memory devices and, more

specifically, to mechanisms for removing data from memory devices.

B.    Description of Related Art

[0003]    Confidential information, such as credit card numbers, passwords, and

personal account login information is often stored on computer hard drives.

Confidential information stored on paper can be shredded when it is no longer

required.  Computer long-term memory devices, such as hard drives, however,

are not as easy to destroy.  Even if physically crushed with a hammer, the hard

drive is likely to still have recoverable data left on its magnetic media.

[0004]    Not only is it difficult to physically destroy long-term memory storage

devices, these devices have intrinsic value and could be reused.  For example,

some users replace their long-term memory storage devices for larger and/or

faster devices.  A graphic artist may need a bigger/faster long-term memory

1

MTI0001820

Docket No.: 0032-0002

storage device than say a writer.  While a device may no longer have value to the graphic artist, the writer may find value in that device.  Some users routinely replace their entire functioning computer, which includes one or more long-term memory storage devices.  These replaced computers will often have value.  However, in order to be able to securely reuse these long-term memory storage devices, it is desirable to first securely remove the stored data.

[0005]   Simply deleting files on a drive does not normally remove the data from the drive media.  Instead, pressing the delete key on most computers simply causes a change to be made to the FAT (File Allocation Table) that keeps track of where data is stored on the hard drive.  The data itself remains on the hard drive.  It is trivial to recover "deleted" data using off-the-shelf software.

[0006]   One conventional software method of irretrievably deleting files is by "formatting" the media through a software format command.  The format command typically rewrites a small area of the drive that contains its table of contents with a blank table of contents.  It may also rewrite the file allocation table to indicate that all of the space on the disk is available.  While a novice computer user would see a formatted drive as clean, one skilled in the art would have no problem recovering data or even complete files from a disk formatted in this manner.

[0007]   Another method of implementing the format command consists of writing the value "0" to the entire hard drive.  This is much stronger protection from a casual attempt to recover data from a drive treated in this fashion.  However, even with this type of format command, data can still be recovered.

MTI0001821

Docket No.: 0032-0002

[0008]    In order to assist the understanding of how data can be recovered from a hard drive that has been overwritten with zeroes, a basic description of hard drive operation will now be given.  A hard drive includes three main components: (1) magnetic media, (2) media control electronics, and (3) a read/write head.  A hard drive is commonly conceptualized as pockets of magnetic media surrounded by null media.  In practice, however, it is often impractical to manufacture hard drives in this fashion.  A hard drive may consist of contiguous magnetic media, any part of which may be magnetized.  The read/write head is directed by the media control electronics to move to a specific location over the magnetic media and read and/or write at that location.  For each bit of data, the media control electronics reserves a location on the magnetic media that is larger than the read/write head.

[0009]    The hard drive uses changing patterns of magnetism to represent digital data.  For example, if the magnetic field of an area is polarized in one direction, the data is declared to be a one.  If the polarization is in the other direction, the data is a zero.  In the real world, the strength of the polarization may be quite different from one data area to the next.

[0010]    As mentioned, polarization is over an area.  The size of the area is determined by a number of factors, but the principal ones are the size of the recording head, the type of recording media, and the speed of the magnetic platter.  As the magnetic platter spins under the recording head, the head traces out one track.  An actuator in the hard drive moves the head in discrete steps.  Each one of these steps defines another track on the drive.  Fig. 1 is a diagram

3

MTI0001822

Docket No.: 0032-0002

illustrating multiple tracks 101-104 on a platter of a hard drive 100. The term "step time" describes the time the head takes to get from one track, such as track 101, to a next track, such as track 102. The term "seek time" describes the time that it takes for the head to get from any one track to any other track.

[0011]    In the real world, there is no guarantee that the head will be aligned over a track in precisely the same location each time the head moves, although it will typically be close enough to the track to read and write data reliably. Reasons for this potential miss-alignment include thermal expansion and contraction of the disk platters. If the operating temperature of the drive changes, the platters may shrink or expand. The actuator that moves the head may also change its performance over time. On any given motion, there may be a slight overshoot, undershoot, or even a small oscillation in the head as it moves. Drive manufacturers may recommend reformatting drives regularly so that these changes do not cause any data loss.

[0012]    Thus, a track of data on a disk drive is generally not a perfect circle with a fixed width. The track may be circular, but its width may vary greatly from the theoretically ideal. In normal operation, this is mostly irrelevant. However, when trying to irretrievably delete data by overwriting the data with "zeros," there is likely to be remnants of the old data on the edges of the track. This data may potentially be recovered.

[0013]    Figs. 2A and 2B illustrate the above-discussed concept of erased data remaining on the edges of a track. Fig. 2A illustrates a number of tracks (labeled as tracks 1-6) on a magnetic platter in which darker areas 201 on each track

4

MTI0001823

Docket No.: 0032-0002

represent magnetic changes that can be interpreted as data. Fig. 2B illustrates the same tracks after a conventional clean implemented by rewriting zeros over each bit. The central dark area is now a uniform white area 202 with a fuzzy area 203 to either side. Fuzzy area 203 includes residual magnetism that could be interpreted by someone with the correct equipment.

[0014]    Simply deleting files on a hard disk or formatting the hard disk may fail to remove all of the data for another reason. The disk may be set up with more than one partition. When a hard disk is set up for use by a computer, the allocation of storage space must be specified. In many cases, the entire hard drive is assigned to be in a single partition. In other cases, there may be reason to create two or more partitions. Each partition can be used to hold data in different formats, such as one partition used for Microsoft Windows data, and another partition used for Linux data. Or, in the case of Windows, multiple partitions may be set up so that the drive appears to be a number of small drives, rather than one large drive.

[0015]    This common scenario presents a couple of problems. In the case where different partitions hold different formats of data, it may not be possible to access one of the partitions for file deletion or formatting. Windows may not make the Linux partition visible, so there would be nothing to delete. Even with multiple partitions of the same data type, the data in the partitions may all be visible to the user, but it would be up to the user to know enough to delete all of the data in all of the partitions assigned to a single drive. For untrained

5

MTI0001824

Docket No.: 0032-0002

personnel, this might be difficult to determine, so for them, the data may appear "hidden."

[0016]     Software solutions exist that attempt to overcome the above problems in permanently removing data from hard drives.  These solutions involve running software on a single computer to eliminate data on that computer's hard drive.  These solutions are not without disadvantages.  First, these solutions tend to be operating system dependent, and the operating system must be running properly.  Second, at least a moderately trained computer operator must select the proper software, install the software, run the software, and then verify the results.  This can be technically difficult, as the operating system files are being eliminated along with all other files.  Third, these software solutions can be time consuming.  For example, assume a computer professional is given seven computer systems by her company and is tasked with removing data on the drives before recycling the computer systems.  In order to use this system of data removal, the computer professional would have to hook up seven monitors, seven keyboards, and seven mice to seven computers.  She would then have to turn on seven computers, identify the operating system of each computer, and choose the proper software to run on each one.  If there were a power interruption during this process, she may have to format the drives, reinstall the operating system, and then continue with data removal.  Thus, this can be a time intensive removal method.

[0017]     Other conventional software approaches to permanently removing data involve using a first computer as a data removal station for a second computer or

MTI0001825

Docket No.: 0032-0002

drive. The first computer is set up to run data removal software. The user connects the drive to be "cleaned" to this computer. There are a number of potential problems with this approach. First, an expensive PC must be taken from productive service, along with the desk space needed to support its keyboard, monitor and mouse. Second, a trained user must attach the target drive to the host machine. During this process, the host machine must be shut down, the target drive properly installed and configured with a valid address or master/slave status, and finally the host machine rebooted. This can be a time consuming process requiring a trained user. Finally, there is a potential system problem. Most PCs are not designed for hard drives being swapped in an out on a regular basis. A static charge, or cable failure while installing a target drive can damage not only the target drive but also the host machine.

[0018]     Accordingly, there is a need in the art to more efficiently delete data from long-term memory devices such as hard drives.


## SUMMARY OF THE INVENTION

[0019]     Systems and methods consistent with the principles of this invention provide for an easy to use and portable long-term memory cleaning device.

[0020]     One aspect of the invention is directed to a device for removing data from a long-term memory component. The device includes an interface for connecting the device to the long-term memory component and a control circuit configured to control the long-term memory component through the interface to permanently remove data from the long-term memory component. A user

7

MTI0001826

Docket No.: 0032-0002

controllable switch, when actuated by a user, causes the control circuit to commence permanently removing the data from the long-term memory component.

[0021]     A method consistent with aspects of the invention includes connecting a power supply to a cleaning device, connecting a cable associated with the cleaning device to a long-term memory component in a computer, and powering-up the computer.  The method further includes activating the cleaning device via a switch attached to the cleaning device, permanently removing data from the long-term memory component, and signaling completion of the data removal from the long-term memory component.

[0022]     Another method consistent with aspects of the invention includes connecting a power supply to a cleaning device, connecting a cable associated with the cleaning device to a long-term memory component, and connecting a power cable attached to the cleaning device to the long-term memory component.  The method further includes activating the cleaning device via a switch attached to the cleaning device, permanently removing data from the long-term memory component, and signaling completion of the data removal from the long-term memory component.

[0023]     Yet another aspect of the invention is directed to a device for removing data from a long-term memory component.  The device includes LEDs configured to provide feedback relating to an operational status of the device to a user, a user settable switch, and an interface for connecting to a long-term memory component.  The device further includes circuitry coupled to the LEDs,

8

MTI0001827

Docket No.: 0032-0002

the user settable switch, and the interface, the circuitry configured, when the switch is actuated by the user, to communicate with the long-term memory component through the interface and control the long-term memory component to permanently remove the data therefrom.  The circuitry is enclosed in a portable casing and the LEDs, the user controllable switch, and the interface are mounted on an external portion of the casing.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0024]    The accompanying drawings, which are incorporated in and constitute a part of this specification, illustrate the invention and, together with the description, explain the invention.  In the drawings,

[0025]    Fig. 1 is a diagram illustrating tracks on a disk drive;

[0026]    Figs. 2A and 2B illustrate data stored in the magnetic media of a disk drive;

[0027]    Fig. 3 is a block diagram illustrating a long-term memory cleaning device consistent with an aspect of the present invention;

[0028]    Fig. 4 is a diagram illustrating portions of the cleaning device shown in Fig. 3 in additional detail;

[0029]    Fig. 5 is a diagram illustrating portions of the cleaning device shown in Figs. 3 and 4 in additional detail;

[0030]    Fig. 6 is a flow chart illustrating operation of the cleaning device consistent with an aspect of the invention;

[0031]    Fig. 7 is a diagram of an external view of an implementation of the cleaning device;

9

MTI0001828

Docket No.: 0032-0002

[0032]    Fig. 8 is a flow chart illustrating operation of the cleaning device of Fig.

7 when cleaning a drive located within a host computer;

[0033]    Fig. 9 is a diagram of external view of another implementation of the

cleaning device; and

[0034]    Fig. 10 is a flow chart illustrating operation of the cleaning device of

Fig. 9 when cleaning a detached drive.


DETAILED DESCRIPTION

[0035]    The following detailed description of the invention refers to the

accompanying drawings.  The same reference numbers in different drawings

identify the same or similar elements. Also, the following detailed description

does not limit the invention.  Instead, the scope of the invention is defined by the

appended claims and equivalents.

[0036]    A cleaning device for erasing long-term memory devices, such as hard

drives, includes a host circuit that directs a target drive's read/write head to

perform specific actions relating to deleting the data on the target drive.  The

cleaning device is physically compact, is relatively simple to operate, and is

operating system independent.

[0037]    Storage devices discussed herein may be any type of long-term non-

volatile memory device.  For example, the storage device may be a hard disk

drive or compact flash memory.  In one implementation, the storage device uses

an Integrated Drive Electronics (IDE) interface.  An IDE interface is a well-known

10

MTI0001829

Docket No.: 0032-0002

electronic interface that is frequently used to connect a computer's motherboard and disk drive.

[0038]     Although concepts consistent with the present invention are primarily described herein in relation to an IDE magnetic hard disk drive, these concepts may be implemented with other types of IDE media, such as flash memory with an IDE interface.  Flash memories are a special type of semiconductor random access memory that retains its data after power has been removed from the system.  Other types of media useable with an IDE interface include magnetic tape.  In addition to the IDE interface, concepts consistent with the invention may be applied in a straightforward manner to other types of high level storage interfaces, such as the well known Small Computer System Interface (SCSI) standard or a hard drive connected through an IEEE 1394 (Firewire) connection.

[0039]     For the sake of clarity the remaining description herein will be described with reference to an IDE magnetic hard disk drive, although, as mentioned above, the concepts of the invention are not limited to such drives.  One skilled in the art would appreciate that other modern long-term storage device interfaces share similar functionality that could be incorporated into the concepts described herein.


## CLEANING DEVICE

[0040]     Fig. 3 is a block diagram illustrating a cleaning device 300 consistent with an aspect of the present invention.  Cleaning device 300 includes power supply 310, control circuitry 320, interface circuitry 330, an interface connector

MTI0001830

Docket No.: 0032-0002

340, and communication circuitry 350. Power supply 310 supplies power through a power cable connector 370 and communication circuitry 350 may connect to a communication interface 360.

[0041]   A hard disk drive or compact flash drive (target drive) attaches to interface connector 340. As will be described in more detail below, control circuitry 320 detects the capabilities of the target drive and issues commands that result in permanent data removal from the target drive. In other words, the target drive is thoroughly "cleaned" by cleaning device 300. Interface circuitry 330 passes instructions through connector 340 to the target device. Power supply 310 provides power to both control circuitry 320 and interface circuitry 330.

[0042]   Communication circuitry 350 allows cleaning device 300 to communicate with a host computer, such as a personal computer. Communication interface 360 may be a serial interface that may be connected to a personal computer. Communication circuitry 350 may then handle the serial communication protocols between the personal computer and cleaning device 300. Additionally, instead of connecting to a personal computer, communication interface 360 may be used to interface directly to a stand-alone printer, through which status information may be output. Communication circuitry 350 and communication interface 360 are optional. In one implementation, cleaning device is implemented as a stand-alone device that may be used to permanently remove data from hard drives without using a separate computer.

MTI0001831

Docket No.: 0032-0002

[0043]   Cleaning device 300 may be designed as a relatively small, lightweight, and easily portable device.  In one implementation, cleaning device 300 is embodied in a case approximately 8" x 10" x 1.5".

[0044]   Power cables allow power to be supplied to the target disk drive through power connector 370.  This allows cleaning device 300 to process a target drive whether or not the target drive is still connected to a working computer or similar device (host).

[0045]   Fig. 4 is a diagram illustrating portions of cleaning device 300 in additional detail.  Control circuitry 320 and interface circuitry 330 of cleaning device 300 includes microprocessor 410 and programmable logic device (PLD) 490.  Microprocessor 410 may be an embedded processor, such as the 80386 EX embedded processor manufactured by Intel Corporation, of Santa Clara, California.  The integrated design of microprocessor 410 allows relatively little additional circuitry to be used to create a small, dedicated computer system. PLD 490 complements microprocessor 410 by performing logical operations required by the microprocessor 410 or other circuitry of cleaning device 300. ROM 480 stores configuration data that is initially loaded into PLD 490 on start-up.  Similarly, EPROM 450 stores the initial code necessary to initialize and run microprocessor 410.  Static RAM (SRAM) 440 is also connected to microprocessor 410, and is used for temporary program and data storage. Crystal oscillator 470 provides clocking signals to microprocessor 410 and PLD 490.  In one implementation, crystal oscillator 470 generates a 50 MHz clock signal.

MTI0001832

Docket No.: 0032-0002

[0046]     Microprocessor 410 may control a number of external devices, such as

LED status indicators 420 and a processor key lock 430.  Through LED status

indicators 420, microprocessor 410 may provide easily understandable feedback

to a user.  For example, one of LEDs 420 may be a green LED that is powered

by microprocessor 410 when it finishes deleting data from a drive.  Alternatively,

microprocessor 410 may cause an audible sound to be produced when it finishes

deleting data from a drive.  Processor key lock 430 is a physical interface through

which a user must insert a physical key to enable microprocessor 410.

[0047]     Interface 340 may include a hard drive interface 436.  Drive interface

436 may be a standard IDE drive interface that connects cleaning device 300 to

the target drive.  Interface 340 may also include a compact flash interface 435

which, in a similar manner, allows cleaning device 300 to connect to and erase

compact flash memory devices.

[0048]     In addition to connecting to the target drive through interface circuitry

340, microprocessor 410 may be connected to external devices via RS-232 port

425 and RS-232 transceiver 460.  RS-232 port 425 may be a standard DB9

connector that allows connections using a standard DB9 male to female serial

cable.

[0049]     One of ordinary skill in the art will recognize that the components

shown in Fig. 4 may be selected from a wide variety of commercially available

components.  In one implementation, the components in Fig. 4 may be selected

as follows:  PLD 490, part number EP1K50QC208-2, available from Altera

Corporation of San Jose, California; ROM 480, part number EPC1PC8, available

14

MTI0001833

Docket No.: 0032-0002

from Altera Corporation; EPROM 450, part number AT27LV020A90JC, available from Atmel Corporation, of San Jose, California; and SRAM 440, part number CY7C1021V33L12ZCT, available from Cypress Corporation, of San Jose, California.

[0050]    Fig. 5 is diagram that graphically illustrates the functionality of PLD 490 in additional detail.  Address, data, and control lines from the microprocessor 410 are routed to PLD 490 where their information is buffered and latched as necessary in buffers 520.  Buffers 520 serve to reduce the electrical load on the processor and to stabilize the signal timing.  Buffer read and write signals 530 and 540 control the direction of the bus drivers 550.  Thus, bus drivers 550 may write data into buffers 520 when read signal 530 is active and read data out of buffers 520 when write signal 540 is active.  Buffers 520 and bus drivers 550 help control the data flow and distribution of the address and data buses from the microprocessor 410 to other portions of PLD 490.

[0051]    Buffering and signal conditioning for the target disk drive is provided by drive buffers 595, which form the drive interface with the target disk drive. Buffering and signal conditioning for compact flash is provided by drive buffers 596, which form the interface with the compact flash.  Through the bus drivers 550, the microprocessor 510 can directly read and write to the drive interface associated with the target disk drive and compact flash.

[0052]    Instead of directly communicating with drive buffers 595 and 596, bus drivers 550 may indirectly communicate with drive buffers 595 and 596 through dual ported RAM sector buffers 580 and 590.  Sector buffer 580 provides an

15

MTI0001834

Docket No.: 0032-0002

additional layer of buffering between the microprocessor 410 and the disk drive
and/or compact flash.  This allows the target drive to write one sector's worth of
data to RAM at high speed, while the microprocessor 410 reads a previous
sector's worth of data.  By allowing the operations to overlap in this fashion, the
microprocessor 410 is not restricted to running at the speed of the target drive or
compact flash, and is free to handle other functions until it needs the data in the
sector buffers 580 or 590.

[0053]    Referring back to Fig. 4, microprocessor 410 may include a UART that
may be used for serial communications.  Microprocessor 410 connects to an RS-
232 transceiver 425, which buffers the signals and generates the necessary
voltages required for RS-232 communications.  DB9 connector 425 connects to a
corresponding DB9 connector on a host device such as a personal computer.
Although communication circuitry 350 is shown as implementing a serial
connection, in other implementations, other types of connections, such as
parallel or USB connections, may be used.

## OPERATION OF THE CLEANING DEVICE

[0054]    Cleaning device 300 operates on a target drive inserted into interface
connector 340 to permanently erase the contents of the drive.  In general,
cleaning device 300 removes data from a hard drive by writing to all data tracks
on a drive multiple times with multiple data patterns.  Data tracks are not written
to sequentially.  Instead, they are written in a pattern that forces the head to
move from track to track in such a way as to introduce jitter in the absolute head

16

MTI0001835

Docket No.: 0032-0002

position.  Ideally, the head would be positioned a bit to one side of the track in one pass, and a bit to the other in the next pass.  To accomplish this, cleaning device 300 controls the drive head to move a minimum of two tracks between writes.  For some passes it is moved from an inner track to an outer one, while in other passes it is moved from an outer track to an inner one.

[0055]    This process of writing with major jumps in head position may be repeated numerous times with different data patterns.  By the end of the cleaning process, the motion of the recording heads and the changing data patterns renders the original data unrecoverable.  One skilled in the art would appreciate that the longer this process is carried on, the more securely data is removed.

[0056]    Fig. 6 is a flow chart illustrating the operation of cleaning device 300 consistent with an aspect of the present invention in additional detail.  Cleaning device 300 begins, through microprocessor 410 and PLD 490, by moving the read/write head of the target disk drive to a first track of the disk drive (e.g., track one) (Act 601).  An alternating pattern of bits (i.e., 010101 etc.) is then written to this track (Act 602).  Once complete, the disk drive head is moved to the first track plus two (i.e., track three), (Act 603), and an alternating pattern of bits is written to this track (Act 604).  Cleaning device 300 then instructs the head to move to the first track plus one (e.g., track two) (Act 605).  An alternating bit pattern is written to this track (Act 606).  Cleaning device 300 then instructs the head to move to the first track plus three (i.e., track four), (Act 607), and an alternating bit pattern is written to this track (Act 608).  This process is repeated

MTI0001836

Docket No.: 0032-0002

until all of the tracks have been written (Acts 609 and 610). For example, tracks five through eight may be the next set of tracks that are processed.

[0057]    In one embodiment, the process shown in Fig. 6 is repeated multiple times. For a secure erase, each track may be written a minimum of seven times.

[0058]    By alternating the overwriting of tracks as described in Fig. 6, cleaning device 300 introduces jitter into the read/write head of the disk drive. This jitter increases the likelihood that data at the fringe of the track will be overwritten, thus providing for secure data erasing.

[0059]    The alternating system of erase shown in Fig. 6 is one of many potential cleaning pattern that specifically applies to moving magnetic media. In alternate implementations, cleaning device 300 may perform more simple cleans for fast "good enough" cleaning, or more complex patterns may be used that are specific to other types of media.

[0060]    In an alternate cleaning scheme, some target disk drives have an internal command that will erase the drive. Cleaning device 300 may use these internal erase commands when cleaning the drive.

## EXTERNAL STRUCTURE AND OPERATION OF
## THE CLEANING DEVICE

[0061]    As previously mentioned, cleaning device 300 may be constructed in a relatively small case, such as a case as small or smaller than 8.5" x 10" x 1.5". Fig. 7 is a diagram illustrating an external view of one implementation of cleaning device 300 consistent with an aspect of the invention.

MTI0001837

Docket No.: 0032-0002

[0062]    As shown in Fig. 7, the external portion of cleaning device 300 may include a power cord with a wall socket plug 701, an IDE drive cable 702 that is long enough to lead from cleaning device 300 to a computer, an on/off switch 703, and LED status lights 704. Alternatively, cleaning device 300 may include a battery compartment in place of or in combination with wall socket plug 701.

[0063]    Fig. 8 is a flow chart illustrating operation of cleaning device 300, as shown in Fig. 7, from the prospective of a user when cleaning a hard disk drive located within a host computer.

[0064]    A user begins by connecting cleaning device 300 to a power supply (Act 801) and ensuring that switch 703 is set to the "off" state (Act 802). In one implementation, this may involve plugging socket plug 701 into a wall power outlet. The user also ensures that the computer system with the target disk drive is powered down (Act 803). The user may then remove any IDE cables that are in the target drive (Act 804). This may involve removing the cover of the host computer and removing the IDE drive connector that connects the host computer and the drive. The user may then connect IDE drive cable 702 to the drive, turn power on to the host computer, and turn switch 703 to the "on" position (Acts 805, 806, and 807). In response, cleaning device 300 will power on and control the target drive to permanently delete its data. The cleaning may proceed as previously discussed with reference to Fig. 6. When cleaning device 300 has finished cleaning the drive, it signals cleaning completion via LED status lights 704 (Act 808). For example, one of LED status lights 704 may flash on and off while cleaning device 300 is operating. When cleaning device 300 completes

MTI0001838

Docket No.: 0032-0002

operating, the LED status light may remain steadily on. The user may then turn switch 703 to the "off" position and disconnect the cleaning device from the host computer (Act 809).

[0065]    Fig. 9 is a diagram illustrating an external view of another implementation of cleaning device 300 consistent with an aspect of the invention.

[0066]    As shown in Fig. 9, the external portion of cleaning device 300 may include a power cord with a wall socket plug 901, an IDE drive cable 902, an on/off switch 903, LED status lights 904, a drive power cord 905, and an anti-static cushion 906. A target drive may be placed on the anti-static cushion and connected to the drive power cord 905 and the drive cable 902.

[0067]    Fig. 10 is a flow chart illustrating operation of the cleaning device 300, shown in Fig. 9, from the prospective of a user when cleaning a detached hard disk drive.

[0068]    A user begins by plugging socket plug 701 into a power supply (Act 1001) and ensuring that switch 703 is set to the "off" state (Act 1002). The target drive is then placed on the anti-static cushion 906, the IDE drive cable 902 plugged into the target drive, and the drive power cord 905 plugged into the target drive (Acts 1003 and 1004). The user may then turn switch 903 to the "on" position (Act 1005). In response, cleaning device 300 will power on and clean the drive in a manner similar to that described above with respect to Fig. 6. When cleaning device 300 has finished cleaning the drive, it signals cleaning completion via LED status lights 904 (Act 1006). The user may then turn switch

MTI0001839

Docket No.: 0032-0002

903 to the "off" position and disconnect the cleaning device and the target drive (Act 1007).

[0069]    As can be appreciated, the operation of cleaning device 300, from the prospective of the user, is relatively simple.  Accordingly, cleaning device 300 can be operated by only moderately trained technicians.  Additionally, the operation simplicity of cleaning device 300 makes it unlikely that a user will improperly use the cleaning device in a manner that only partially erases a disk drive.

## USER COMMUNICATION

[0070]    In the implementations described above, cleaning device 300 signals its operational status to a user through LEDs 704 or 904.  For example, LEDs may be used to signal that: (1) cleaning device 300 is performing operations of a target device, (2) cleaning device 300 has finished cleaning the target device, and (3) an error was encountered.

[0071]    In alternate embodiments, cleaning device 300 may include additional display devices such as a graphical display or a connection to a printer.  With these output devices, additional status information such as percentage of operations complete, time until operations are complete, and information about the target device may be displayed.  The printer could be used to generate a continuous written record of the operations performed on the target device.  This written record may include, for example, type of data removal performed, time and date of data removal, and information about the target device.  In a similar

MTI0001840

Docket No.: 0032-0002

implementation, cleaning device 300 could interact with a host computer through serial interface 330 to upload status information to the host computer. The status information may be uploaded in real-time as the cleaning device operates or in a batch mode in which information relating to multiple target drives may be uploaded at one time.

## ADDITIONAL FEATURES

[0072]    In the implementations described above, cleaning device 300 has its level of data removal security set in hardware. The level of data removal security may be determined by the number of passes (i.e., the number of times the process shown in Fig. 6 is repeated) cleaning device 300 makes over the target device. In an alternate embodiment, cleaning device 300 may include a switch that a user can set to vary the cleaning level. Cleaning device 300 would then vary its number of cleaning passes based on the switch setting.

[0073]    Some target drives may contain data that the drive has been instructed to classify as "hidden" data. For example, a command supported by many commercially available hard drives allows a skilled programmer to reserve a portion of the storage media. Once reserved, this area of the media is effectively hidden from the computer by the drive. Standard queries about the amount of storage on the drive return the full amount of storage minus the reserved amount. This prevents standard data removal methods from working as the computer is unaware that there is hidden data.

MTI0001841

Docket No.: 0032-0002

[0074]     In one implementation, cleaning device 300 may issue appropriate commands to target drives that contain hidden data to release the hidden data. Cleaning device 300 may automatically issue these commands without the need for human intervention, thus making the entire contents of the drive accessible for data removal.  In situations where the hidden data is protected by a password, the operator of cleaning device 300 may be informed that the device is protected by a password and that additional steps are necessary to complete the data removal.

[0075]     In yet another implementation, cleaning device 300 could have multiple drive interface cables, through which it could simultaneously clean two or more target devices.

[0076]     Still further, cleaning device 300, after erasing a target drive, may partition and/or format the target drive.  For example, cleaning device 300, after erasing a target drive, may then automatically partition the drive into a single partition and format the drive under FAT32 drive format.  In additional embodiments, cleaning device 300 may proceed, after formatting the target drive, to copy an image to the drive that defines an operating system.  This may help to speed up the process of reusing drives in refurbished computer systems.

[0077]     Although the cleaning device discussed above was primarily described as cleaning an IDE device, in other implementations, long-term storage devices having other interfaces, such as FireWire, USB2, or SCSI could be cleaned using concepts similar to those discussed herein.

MTI0001842

Docket No.: 0032-0002

## CONCLUSION

[0078]    As described above, a cleaning device permanently removes data from a target long-term memory device.  The cleaning device is portable, provides easy to understand user feedback, has a simple user interface and could thus be effectively used by non-technical people.

[0079]    The cleaning device has a number of advantages.  It is operating system independent.  The cleaning device can operate while the target device is still in the host computer system or when it has been removed from the host computer system.  It is a stand alone device that can replace more complicated and more expensive devices or systems.  Additionally, the cleaning device does not require that the operator have any particular knowledge of the target device; it detects the capabilities and settings of the target device and adjusts the operating parameters for optimal performance without user intervention.

[0080]    Still further, the cleaning device removes data from all partitions on the target device, regardless of the data's format, and removes any reserved or protected data areas, so that all of the data storage areas on the target device are available for cleaning without requiring user intervention.  Additionally, the cleaning device can provide different levels of data removal. The longer the cleaning device performs operations on a target device, the more securely it is able to remove data.  The cleaning device provides feedback to a user that it has either performed operations correctly or has run into an error.

[0081]    It will be apparent to one of ordinary skill in the art that the embodiments as described above may be implemented in many different forms

24

Docket No.: 0032-0002

of software, firmware, and hardware in the implementations illustrated in the figures.  The actual software code or specialized control hardware used to implement aspects consistent with the present invention is not limiting of the present invention.  Thus, the operation and behavior of the embodiments were described without specific reference to the specific software code, it being understood that a person of ordinary skill in the art would be able to design software and control hardware to implement the embodiments based on the description herein.

[0082]    The foregoing description of preferred embodiments of the present invention provides illustration and description, but is not intended to be exhaustive or to limit the invention to the precise form disclosed.  Modifications and variations are possible in light of the above teachings or may be acquired from practice of the invention.  Moreover, while a series of acts have been presented with respect to Figs. 6, 8, and 10, the order of the acts may be different in other implementations consistent with the present invention. Moreover, non-dependent acts may be performed in parallel.

[0083]    No element, act, or instruction used in the description of the present application should be construed as critical or essential to the invention unless explicitly described as such.  Also, as used herein, the article "a" is intended to include one or more items.  Where only one item is intended, the term "one" or similar language is used.

[0084]    The scope of the invention is defined by the claims and their equivalents.

25

MTI0001844

Docket No.: 0032-0002

WHAT IS CLAIMED:

1.    A device for removing data from a long-term memory component, comprising:

an interface for connecting the device to the long-term memory component;

a control circuit configured to control the long-term memory component through the interface to irretrievably remove data from the long-term memory component; and

a user controllable switch that, when actuated by a user, causes the control circuit to commence irretrievably removing the data from the long-term memory component.

2.    The device of claim 1, wherein the control circuit is a circuit dedicated to the permanent removal of the data from the long-term memory component.

3.    The device of claim 1, wherein the control circuit irretrievably removes the data from the long-term memory component by overwriting the data on tracks of the long-term memory component.

4.    The device of claim 1, further comprising:

26

MTI0001845

Docket No.: 0032-0002

a casing configured to contain the control circuit and the interface, the user controllable switch being mounted on the casing, the casing being of a size that is portable by the user.

5.      The device of claim 4, wherein the casing is a rectangular casing that is 8.5" x 10" x 1.5" or smaller.

6.      The device of claim 4, further comprising:

LED lights mounted on the casing and providing feedback relating to an operational status of the device to the user.

7.      The device of claim 4, further comprising:

a cable emanating from the casing and connected to the interface, the cable being configured to connect to the long-term memory component.

8.      The device of claim 7, wherein the cable is an Integrated Device Electronics (IDE) cable.

9.      The device of claim 4, further comprising:

an anti-static pad positioned on an external side of the casing and configured to support the long-term memory component during removal of the data from the long-term memory component.

27

MTI0001846

Docket No.: 0032-0002

10.     The device of claim 1, further comprising:

a power supply configured to supply power to the control circuit.


11.     The device of claim 10, further comprising:

a drive power cord emanating from the casing and configured to supply

power from the power supply to the long-term memory component.


12.     The device of claim 1, wherein the switch, when actuated by the

user, causes the control circuit to commence irretrievably removing all the data

stored on the long-term memory component.


13.     The device of claim 1, wherein a thoroughness level of irretrievably

removing the data from the long-term memory component is configurable.


14.     The device of claim 1, wherein the interface connects the device to

a plurality of long-term memory components.


15.     The device of claim 1, wherein the control circuit is further

configured to release hidden data on the long-term memory component before

irretrievably removing the data.


16.     The device of claim 15, wherein the control circuit releases the

hidden data without user intervention.

MTI0001847

Docket No.: 0032-0002

17.    The device of claim 15, wherein the control circuit notifies a user when the hidden data requires a password for release.

18.    The device of claim 1, wherein the control circuit partitions the long-term memory component after irretrievably removing the data.

19.    The device of claim 18, wherein the control circuit formats the long-term memory component for a specific file system.

20.    The device of claim 19, wherein the control circuit copies an operating system to the long-term memory component.

21.    The device of claim 1, wherein the control circuit verifies the long-term memory component after removing the data from the long-term memory component.

22.    A method of irretrievably deleting data by a cleaning device from a long-term memory component installed in a computer, the method comprising:

        connecting a cable associated with the cleaning device to the long-term memory component in the computer;

        powering-up the computer;

        activating the cleaning device via a switch attached to the cleaning device;

29

MTI0001848

Docket No.: 0032-0002

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

23.     The method of claim 22, wherein the long-term memory component is a disk drive.

24.     The method of claim 22, wherein signaling completion of the data removal is performed via one or more light emitting diodes (LEDs).

25.     The method of claim 22, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

26.     The method of claim 22, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.

27.     The method of claim 22, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

30

MTI0001849

Docket No.: 0032-0002

28.     The method of claim 22, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

29.     A method of irretrievably deleting data by a cleaning device from a long-term memory component, the method comprising:

connecting a cable associated with the cleaning device to the long-term memory component;

connecting a power cable attached to the cleaning device to the long-term memory component;

activating the cleaning device via a switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

30.     The method of claim 29, wherein the long-term memory component is a disk drive.

31.     The method of claim 29, wherein signaling completion of the data removal includes illuminating one or more light emitting diodes (LEDs).

MTI0001850

Docket No.: 0032-0002

32.     The method of claim 29, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

33.     The method of claim 29, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.

34.     The method of claim 29, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is user settable.

35.     The method of claim 29, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

36.     A device for removing data from a long-term memory component, comprising:

means for providing feedback relating to an operational status of the device to a user;

a user settable switch;

an interface for connecting to the long-term memory component; and

32

MTI0001851

Docket No.: 0032-0002

circuitry coupled to the means for providing feedback, the user settable switch, and the interface, the circuitry configured, when the switch is actuated by a user, to communicate with the long-term memory component through the interface and control the long-term memory component to irretrievably remove the data therefrom,

wherein the circuitry is enclosed in a portable casing, and the user settable switch and the interface are mounted on an external portion of the casing.

37.    The device of claim 36, further comprising:

an anti-static pad positioned on an external portion of the casing and configured to support the long-term memory component during removal of the data from the long-term memory component.

38.    The device of claim 36, further comprising:

a power supply configured to supply power to the circuitry; and

a drive power cord emanating from the casing, the drive power cord receiving power from the power supply.

39.    The device of claim 36, wherein the casing is a rectangular casing that is 8.5" x 10" x 1.5" or smaller.

MTI0001852

Docket No.: 0032-0002

40.     The device of claim 36, wherein the interface is an Integrated Device Electronics (IDE) interface.

41.     The device of claim 36, wherein the circuitry includes an embedded microprocessor.

42.     The device of claim 36, wherein the circuitry irretrievably removes the data from the long-term memory component by controlling overwriting of the data on tracks of the long-term memory component.

43.     A system comprising:

means for interfacing with a hard disk drive;

means for providing power to the hard disk drive; and

switching means for initiating permanent removal of data from the disk drive, the switching means being dedicated to initiating permanent removal of data from the hard disk drive.

44.     The system of claim 43, wherein the system is operating system independent relative to the hard drive.

45.     The system of claim 43, wherein the hard disk drive is an Integrated Drive Electronics (IDE) disk drive.

MTI0001853

Docket No.: 0032-0002

ABSTRACT

[0085]      An application specific device for erasing data from a long-term storage device includes a power supply, a control circuit, and an interface to the storage device.  The control circuit controls the long-term storage device to irretrievably remove data from the storage device.  The storage device may be, for example, a hard disk drive or compact flash memory.  The application specific device is physically small, is operating system independent, and has simple interface that is useable by non-computer professionals.

35

MTI0001854



Fig. 1

MTI0001855



Before Clean

Fig. 2A



After Conventional Clean

Fig. 2B

MTI0001856



Fig. 3





Fig. 4

MTI0001858



Fig. 5

MTI0001859



Fig. 6

MTI0001860



Fig. 7



Fig. 8

MTI0001862



Fig. 9

MTI0001863



Fig. 10

MTI0001864

Received: 19/ 6/02   5:10PM;   1234567890 -> HARRITY&SNYDER,LLP;   Page

TEL No.1234567890                              Jun.14 2 5:39 P.02

Page 1 of 3

Attorney's Docket No. 0032-0002

## DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that: my residence, post office address and citizenship are as stated below next to my name; I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: <u>SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES</u>, the specification of which ☐ was filed and assigned Serial No. or ☒ is attached hereto.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56.

I hereby claim foreign priority benefits under 35 U.S.C. § 119(a)–(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate or § 365(a) of any PCT international application(s), designating at least one country other than the United States, listed below and have also identified below any foreign application(s) for patent or inventor's certificate, or any PCT international application(s) having a filing date before that of the application(s) of which priority is claimed:

| Country | Application Number | Date of Filing | Priority Claimed Under 35 U.S.C. 119 |
|---------|--------------------|----------------|--------------------------------------|
|         |                    |                | ☐ YES        ☐ NO |
|         |                    |                | ☐ YES        ☐ NO |

I hereby claim the benefit under 35 U.S.C. § 119(e) of any United States provisional application(s) listed below:

| Application Number | Date of Filing |
|--------------------|----------------|
| 60/299,783 | June 21, 2001 |
|  |  |

I hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s) or § 365(c) of any PCT international application(s) designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT international application(s) in the manner provided by the first paragraph of 35 U.S.C. § 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR § 1.56 which became available between the filing date of the prior application(s) and the national or PCT international filing date of this application:

MTI0001865

Received: 10/ 6/02   5:11PM;   1234567890 -> HARRITY&SNYDER,LLP.   Page 2

TEL No.1234567890   Jun.14'2 05:40 P.02

Combined Declaration and Power of Attorney
Attorney's Docket No. 0032-0002

| U.S. Applications | | Status (Check One) | | |
|---|---|---|---|---|
| U.S. Application Number | U.S. Filing Date | Patented | Pending | Abandoned |
| | | | | |
| | | | | |

| PCT Applications Designating the U.S. | | | | | |
|---|---|---|---|---|---|
| PCT Application No. | PCT Filing Date | U.S. Serial Number Assigned (if any) | | | |
| | | | | | |
| | | | | | |

I hereby appoint the following attorney and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith: HARRITY & SNYDER, L.L.P.; Paul A. Harrity, Reg. No. 39,574; Glenn Snyder, Reg. No. 41,428; John E. Harrity, Reg. No. 43,367; Tony M. Cole, Reg. No. 43,417; Brian E. Ledell, Reg. No. 42,784; and Alan Pedersen-Giles, Reg. No. 39,996.

Please address all correspondence to:
**HARRITY & SNYDER, L.L.P.**
11240 Waples Mill Road
Suite 300
Fairfax, Virginia 22030
Telephone No. (571) 432-0800

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

MTI0001866

Received: 18/ 6/02 11:25AM; 3019269125 > HARRITY&SNYDER LLP.; Page 3

'06/18/02 '10:46 FAX 3019269125 Entropy @03

Page 3 of 3

Combined Declaration and Power of Attorney
Attorney's Docket No. 0032-0002

| Full Name of First Inventor | Inventor's Signature | Date |
|---|---|---|
| Steven BRESS | | 6/18/02 |
| Residence | | Country of Citizenship |
| Germantown, Maryland | | U.S.A |
| Post Office Address | | |
| 17917 Wheatridge Drive, Germantown, Maryland 20874 | | |

| Full Name of Second Inventor | Inventor's Signature | Date |
|---|---|---|
| Dan BRESS | | |
| Residence | | Country of Citizenship |
| Germantown, Maryland | | U.S.A. |
| Post Office Address | | |
| 17917 Wheatridge Drive, Germantown, Maryland 20874 | | |

| Full Name of Third Inventor | Inventor's Signature | Date |
|---|---|---|
| Mike MENZ | | |
| Residence | | Country of Citizenship |
| Roseville, California | | U.S.A. |
| Post Office Address | | |
| 1335 Champagne Circle, Roseville, California 95747 | | |

| Full Name of Fourth Inventor | Inventor's Signature | Date |
|---|---|---|
| Mark Joseph MENZ | | |
| Residence | | Country of Citizenship |
| Folsom, California | | U.S.A |
| Post Office Address | | |
| 114 Rawlings Court, Folsom, California 95630 | | |

MTI0001867

Page 1 of 3

Attorney's Docket No. 0032-0002

# DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that: my residence, post office address and citizenship are as stated below next to my name; I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled. SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES, the specification of which ☐ was filed and assigned Serial No. or ☒ is attached hereto.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56.

I hereby claim foreign priority benefits under 35 U.S.C. § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate or § 365(a) of any PCT international application(s), designating at least one country other than the United States, listed below and have also identified below any foreign application(s) for patent or inventor's certificate, or any PCT international application(s) having a filing date before that of the application(s) of which priority is claimed:

| Country | Application Number | Date of Filing | Priority Claimed Under 35 U.S.C 119 |
|---|---|---|---|
|  |  |  | ☐ YES        ☐ NO |
|  |  |  | ☐ YES        ☐ NO |

I hereby claim the benefit under 35 U.S.C. § 119(e) of any United States provisional application(s) listed below:

| Application Number | Date of Filing |
|---|---|
| 60/299,783 | June 21, 2001 |
|  |  |

I hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s) or § 365(c) of any PCT international application(s) designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT international application(s) in the manner provided by the first paragraph of 35 U.S.C. § 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR § 1.56 which became available between the filing date of the prior application(s) and the national or PCT international filing date of this application:

Received: 18/ 6/02 (0:51AM;

07/11/2001  04:59   3019906437

3019906437 -> HARRITY&SNYDER,LLP. Page 2

FLOWER VALLEY PRESS                    PAGE  02

Page 2 of 3

Combined Declaration and Power of Attorney
Attorney's Docket No. 0032-0002

| U.S. Applications | | Status (Check One) | | |
|---|---|---|---|---|
| U.S. Application Number | U.S. Filing Date | Patented | Pending | Abandoned |
|  |  |  |  |  |
|  |  |  |  |  |

| PCT Applications Designating the U.S. | | | | | |
|---|---|---|---|---|---|
| PCT Application No. | PCT Filing Date | U.S. Serial Number Assigned (if any) | | | |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

I hereby appoint the following attorney and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith. HARRITY & SNYDER, L.L.P., Paul A. Harrity, Reg. No. 39,574; Glenn Snyder, Reg. No. 41,428; John E. Harrity, Reg. No. 43,367; Tony M. Cole, Reg. No. 43,417; Brian E. Ledell, Reg. No. 42,784; and Alan Pedersen-Giles, Reg. No. 39,996.

Please address all correspondence to:
**HARRITY & SNYDER, L.L.P.**
11240 Waples Mill Road
Suite 300
Fairfax, Virginia 22030
Telephone No. (571) 432-0800

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Received: 18/ 6/02 10:51AM;                    3019906437 -> HARRITY&SNYDER, LLP;   Page 3
07/11/2001  04:59     3019906437           FLOWER VALLEY PRESS           PAGE 03

Page 3 of 3

Combined Declaration and Power of Attorney
Attorney's Docket No. 0032-0002

| Full Name of First Inventor | Inventor's Signature | Date |
|---|---|---|
| Steven BRESS | | |
| Residence | | Country of Citizenship |
| Germantown, Maryland | | U.S.A. |
| Post Office Address | | |
| 17917 Wheatridge Drive, Germantown, Maryland 20874 | | |

| Full Name of Second Inventor | Inventor's Signature | Date |
|---|---|---|
| Dan BRESS | | 6/17/02 |
| Residence | | Country of Citizenship |
| Germantown, Maryland | | U.S.A. |
| Post Office Address | | |
| 17917 Wheatridge Drive, Germantown, Maryland 20874 | | |

| Full Name of Third Inventor | Inventor's Signature | Date |
|---|---|---|
| Mike MENZ | | |
| Residence | | Country of Citizenship |
| Roseville, California | | U.S.A. |
| Post Office Address | | |
| 1335 Champagne Circle, Roseville, California 95747 | | |

| Full Name of Fourth Inventor | Inventor's Signature | Date |
|---|---|---|
| Mark Joseph MENZ | | |
| Residence | | Country of Citizenship |
| Folsom, California | | U.S.A. |
| Post Office Address | | |
| 114 Rawlings Court, Folsom, California 95630 | | |

MTI0001870

06/18/02 '10:46  FAX 3019269125          Entropy                                    001

Page 1 of 3

Attorney's Docket No  0032-0002

## DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that: my residence, post office address and citizenship are as stated below next to my name; I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES, the specification of which ☐ was filed  and assigned Serial No.  or ☒ is attached hereto

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.  I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56.

I hereby claim foreign priority benefits under 35 U.S.C. § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate or § 365(a) of any PCT international application(s), designating at least one country other than the United States, listed below and have also identified below any foreign application(s) for patent or inventor's certificate, or any PCT international application(s) having a filing date before that of the application(s) of which priority is claimed:

| Country | Application Number | Date of Filing | Priority Claimed Under 35 U S C  119 | |
|---|---|---|---|---|
| | | | ☐ YES | ☐ NO |
| | | | ☐ YES | ☐ NO |

I hereby claim the benefit under 35 U.S.C. § 119(e) of any United States provisional application(s) listed below.

| Application Number | Date of Filing |
|---|---|
| 60/299,783 | June 21, 2001 |
| | |

I hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s) or § 365(c) of any PCT international application(s) designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT international application(s) in the manner provided by the first paragraph of 35 U.S.C.  § 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR  § 1.56 which became available between the filing date of the prior application(s) and the national or PCT international filing date of this application:

MTI0001871

Received: 18/ 6/02 11:24AM;                3019269125 > HARRITY&SNYDER,LLP;   Page 2
06/18/02 '10:46  FAX 3019269125          Entropy                              @02

Page 2 of 3

Combined Declaration and Power of Attorney
Attorney's Docket No. 0032-0002

| U.S. Applications | | Status (Check One) | | |
|---|---|---|---|---|
| U.S. Application Number | U.S. Filing Date | Patented | Pending | Abandoned |
|  |  |  |  |  |
|  |  |  |  |  |

| PCT Applications Designating the U.S. | | | | | |
|---|---|---|---|---|---|
| PCT Application No. | PCT Filing Date | U.S. Serial Number Assigned (if any) | | | |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

I hereby appoint the following attorney and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith, HARRITY & SNYDER, L.L.P.; Paul A. Harrity, Reg. No. 39,574; Glenn Snyder, Reg. No. 41,428; John E. Harrity, Reg. No. 43,367, Tony M. Cole, Reg. No. 43,417, Brian E. Ledell, Reg. No. 42,784; and Alan Pedersen-Giles, Reg. No. 39,996.

Please address all correspondence to:
**HARRITY & SNYDER, L.L.P.**
11240 Waples Mill Road
Suite 300
Fairfax, Virginia 22030
Telephone No. (571) 432-0800

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

MTI0001872

Received: 19/ 6/02  5:12PM;                  123456789  -> HARRITY&SNYDER,LLP;   Page 3
TEL No.1234567890

Page 3 of 3

Combined Declaration and Power of Attorney
Attorney's Docket No. 0032-0002

| Full Name of First Inventor | Inventor's Signature | Date |
|---|---|---|
| Steven BRESS | | |
| Residence | | Country of Citizenship |
| Germantown, Maryland | | U.S.A. |
| Post Office Address | | |
| 17917 Wheatridge Drive, Germantown, Maryland 20874 | | |

| Full Name of Second Inventor | Inventor's Signature | Date |
|---|---|---|
| Dan BRESS | | |
| Residence | | Country of Citizenship |
| Germantown, Maryland | | U.S.A. |
| Post Office Address | | |
| 17917 Wheatridge Drive, Germantown, Maryland 20874 | | |

| Full Name of Third Inventor | Inventor's Signature | Date |
|---|---|---|
| Mike MENZ | | 6-18-2002 |
| Residence | | Country of Citizenship |
| Roseville, California | | U.S.A. |
| Post Office Address | | |
| 1335 Champagne Circle, Roseville, California 95747 | | |

| Full Name of Fourth Inventor | Inventor's Signature | Date |
|---|---|---|
| Mark Joseph MENZ | | 6-18-2002 |
| Residence | | Country of Citizenship |
| Folsom, California | | U.S.A. |
| Post Office Address | | |
| 114 Rawlings Court, Folsom, California 95630 | | |

MTI0001873




Patent
Attorney's Docket No. 0032-0002

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## UTILITY PATENT
## APPLICATION TRANSMITTAL LETTER

Box PATENT APPLICATION
Commissioner for Patents and Trademarks
Washington, D.C. 20231

Sir:

Enclosed for filing is the utility patent application of Steven BRESS, Dan BRESS, Mike MENZ, and Mark Joseph MENZ for SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES.

Also enclosed are:

☒ Ten sheet(s) of ☒ formal ☐ informal drawing(s);

☐ claim for foreign priority under 35 U.S.C. §§ 119 and/or 365 is ☐ hereby made to _____ filed in _____ on _____;

☐ in the declaration;

☐ a certified copy of the priority document;

☐ a General Authorization for Petitions for Extensions of Time and Payment of Fees;

☒ applicant(s) is/are entitled to Small Entity Status;

☐ an Assignment document and Assignment Recordation Cover Sheet;

☒ an Information Disclosure Statement and PTO-1449;

☐ A Request for Non-Publication is enclosed; and

☐ Other: _____;

☒ An ☒ executed ☐ unexecuted declaration of the inventor(s)

☒ also is enclosed ☐ will follow.

☐ Please amend the specification by inserting before the first line the sentence -- This application claims priority under 35 U.S.C. §§ 119 and/or 365 to _____ filed in on _____; the entire content of which is hereby incorporated by reference.--

☐ A bibliographic data entry sheet is enclosed.

MTI0001874

Utility Patent Application Transmittal Letter
Attorney's Docket No. 0032-0002
Page 2

☒ The filing fee has been calculated as follows ☐ and in accordance with the enclosed preliminary amendment:

| CLAIMS | | | | | |
|---|---|---|---|---|---|
| | No. of Claims | | Extra Claims | Rate | Fee |
| Basic Application Fee | | | | | $ 740.00 |
| Total Claims | 45 | Minus 20 = | 25 | x $18.00 = | $ 450.00 |
| Ind. Claims | 5 | Minus 3 = | 2 | x $ 84.00 = | $ 168.00 |
| If multiple dependent claims are presented, add $280.00 | | | | | |
| Total Application Fee | | | | | $1,358.00 |
| If Small entity status is claimed, subtract 50% of Total Application Fee | | | | | $ 679.00 |
| Add Assignment Recording Fee if Assignment document is enclosed | | | | | $   0.00 |
| **TOTAL APPLICATION FEE DUE** | | | | | $ 679.00 |

☐ This application is being filed without a filing fee. Issuance of a Notice to File Missing Parts of Application is respectfully requested.

☒ A check in the amount of  $679.00  is enclosed for the fee due.

☐ A check in the amount of  $ 40.00 (Assignment Recordation fee)  is enclosed for the fee due.

☐ Charge $_____ to Deposit Account No. 50-1070 for the fee due.

MTI0001875

Utility Patent Application Transmittal Letter
Attorney's Docket No. 0032-0002
Page 3

☒ The Commissioner is hereby authorized to charge any appropriate fees under 37 C.F.R. §§ 1.16, 1.17, and 1.21 that may be required by this paper, and to credit any overpayment, to Deposit Account No. 50-1070. This paper is submitted in duplicate.

26615
PATENT TRADEMARK OFFICE

Respectfully submitted,

HARRITY & SNYDER, L.L.P.

By: _____
Brian E. Ledell
Reg. No. 42,784

11240 Waples Mill Road
Suite 300
Fairfax, Virginia 22030
(571) 432-0800

Date: June 20, 2002

MTI0001876

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

06/26/2002 BGEBREBI 00000034 10174984

01 FC:201        370.00 OP
02 FC:203        225.00 OP
03 FC:202         84.00 OP

PTO-1556
(5/87)

*U.S. Government Printing Office: 2001 — 481-697/59173

MTI0001877

Patent
Attorney's Docket No. 0032-0002

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE



| | | |
|---|---|---|
| In re Patent Application of | ) | |
| | ) | |
| Steven BRESS et al. | ) | Group Art Unit:  Unassigned |
| | ) | |
| Application No.: Unassigned | ) | Examiner:  Unassigned |
| | ) | |
| Filed:  June 20, 2002 | ) | |
| | ) | |
| Title:  SYSTEMS AND METHODS FOR | ) | |
| REMOVING DATA STORED ON | ) | |
| LONG-TERM MEMORY DEVICES | ) | |

## INFORMATION DISCLOSURE STATEMENT UNDER 37 C.F.R. § 1.97(b)

Commissioner of Patent and Trademarks
Washington, D.C. 20231

Sir:

Pursuant to 37 C.F.R. §§ 1.56 and 1.97(b), Applicant(s) bring to the attention of the Examiner the documents listed on the attached PTO 1449. This Information Disclosure Statement is being filed before the mailing date of a first Office Action in the above-referenced application. As such, no certification or fee is required. Copies of the listed documents are attached.

Applicant(s) respectfully request(s) that the Examiner consider the listed documents and indicate that they were considered by making appropriate notations on the attached form.

MTI0001878

Information Disclosure Statement Under 37 C.F.R. § 1.97(b)
Application Serial No. Unassigned
Attorney's Docket No. 0032-0002
Page 2

If any copending application(s) is/are cited on the attached PTO 1449, the Examiner's

attention is directed to the foregoing application(s) in compliance with § 2001.06(b) of the

Manual of Patent Examining Procedure.  By identifying the copending application(s), the

assignee and/or applicant of the application(s) do not waive confidentiality of the application(s).

Accordingly, the U.S. Patent and Trademark Office is requested to maintain the confidentiality

of the copending application(s) under 35 U.S.C. § 122.

This submission does not represent that a search has been made and does not constitute

an admission that each or all of the listed documents are material or constitute "prior art."  If the

Examiner applies any of the documents as prior art against any claim in the application and

Applicant(s) determine(s) that the cited document(s) do not constitute "prior art" under United

States law, Applicant(s) reserve(s) the right to present to the Office the relevant facts and law

regarding the appropriate status of such documents.

Applicant(s) further reserve(s) the right to take appropriate action to establish the

patentability of the disclosed invention over the listed documents, should one or more of the

documents be applied against the claims of the present application.

MTI0001879

Information Disclosure Statement Under 37 C.F.R. § 1.97(b)
Application Serial No. Unassigned
Attorney's Docket No. 0032-0002
Page 3

If there is any fee due in connection with the filing of this Statement, please charge the

fee to our Deposit Account No. 50-1070.

Respectfully submitted,

HARRITY & SNYDER, L.L.P.

**26615**
PATENT TRADEMARK OFFICE

By: _____
Brian E. Ledell
Reg. No. 42,784

11240 Waples Mill Road
Suite 300
Fairfax, Virginia 22030
(571) 432-0800

Date: June 20, 2002

MTI0001880

SHEET 1 OF 1

| INFORMATION DISCLOSURE CITATION PTO-1449 | 26615 PATENT TRADEMARK OFFICE | ATTORNEY'S DKT NO. 0032-0002 | APPLICATION NO. Unassigned |
|---|---|---|---|
| | | APPLICANT(S) Steven BRESS et al. | |
| | | FILING DATE June 20, 2002 | GROUP Unassigned |

## U.S. PATENT DOCUMENTS

| EXAMINER'S INITIALS | PATENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | 5,969,933 | 10-19-99 | Schultz et al. | 361 | 149 | 03-25-98 |
| | 5,721,665 | 02-24-98 | Schultz | 361 | 149 | 08-18-95 |
| | 4,717,975 | 01-05-88 | Ogura et al. | 360 | 66 | 02-14-85 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER'S INITIALS | PATENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | Translation Yes | Translation No |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| | |
| | |
| | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

MTI0001881

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2001

**Application or Docket Number**

00 3 2 - 0002

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 48 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 48 minus 20= | * 25 |
| INDEPENDENT CLAIMS | 5 minus 3 = | 2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

\* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9= | 225 | | X$18= | |
| X42= | 84 | OR | X84= | |
| +140= | | | +280= | |
| TOTAL | 679 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\*If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875   (Rev. 8/01)    *U.S. Government Printing Office: 2001 — 484-484/59268    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

MTI0001882

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| L4 | 907 | L2 and 711/112$.ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| L5 | 26 | L2 and 711/112$.ccls. and password | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S1 | 5 | bress-steven$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:10 |
| S2 | 3380779 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:11 |
| S3 | 1053 | S2 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:26 |
| S4 | 25 | S3 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:12 |
| S5 | 92 | S2 and "small footprint" same (cas$4 \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:28 |
| S6 | 22 | S2 and "small footprint" same ((cas$4 \| box \| enclosure) and ("8. 5" \| "10" \| "1.5" )) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:40 |
| S7 | 3380779 | S2 ((cas$4 \| box \| enclosure ) same ("8.5" and regtangular)) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:47 |
| S9 | 4883 | S2 and ((cas$4 \| box \| enclosure ) same ("8.5")) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:48 |
| S10 | 191 | S9 and portable | US-PGPUB; USPAT | OR | OFF | 2005/03/07 16:06 |
| S11 | 59 | S2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:24 |
| S12 | 484 | S2 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:27 |
| S14 | 12 | S12 and "password" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:28 |
| S15 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S16 | 484 | S15 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S17 | 1 | S16 and (("hidden" near10 sector) same (disc \| track$3 \|disk)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:27 |
| S18 | 35 | "L2" and (("flash memory") same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:45 |
| S19 | 5 | "L2" and (("disk") same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:55 |

MTI0001883

| S20 | 3 | "L2" and (("equip$6" \| device) same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:00 |
|---|---|---|---|---|---|---|
| S22 | 2 | "L2" and ((eras$7) same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:02 |
| S24 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:26 |
| S26 | 123 | S24 and (((irretriv$8 \| permanent$) adj10 remov$5) same ((track \| data) and (disc \| disk))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:36 |
| S30 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:35 |
| S31 | 13299 | S30 and ((removable \| portable) adj6 (disk drive)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:42 |
| S32 | 178 | S30 and (((removable \| portable) adj6 (disk drive)) same ide) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:48 |
| S33 | 140 | S30 and (format$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:49 |
| S34 | 46 | S30 and (formatt$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:24 |
| S35 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S36 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:26 |
| S37 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S38 | 1 | S30 and (("low level" near7 format$10) same IDE) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:32 |
| S40 | 653978 | S30 and ("power supply" ssame switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:46 |
| S41 | 57654 | S30 and ("power supply" same switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:47 |
| S43 | 4438 | S30 and ("power supply" same (switch and ("on/off"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S44 | 703 | S43 and "disk" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:49 |
| S45 | 7811 | S30 and ("power supply" same (switch and mechani$7)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S46 | 3059 | S30 and ("power supply" same (switch and mechanical)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S47 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S48 | 1 | "5630093".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:22 |
| S49 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:23 |

MTI0001884

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 5 | ("5630093" \| "6727894" \| "5861873" \| "6629184" \| "5953199").pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:08 |
| L2 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| L3 | 59 | L2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| L4 | 0 | L3 and (345/174 \| 361/212 \|710/306 \| 711/115 \| 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| L5 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| L6 | 484 | L5 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| L7 | 2 | L6 and (345/174 \| 361/212 \|710/306 \| 711/115 \| 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:11 |
| S1 | 5 | bress-steven$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:05 |
| S2 | 3380779 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:11 |
| S3 | 1053 | S2 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:26 |
| S4 | 25 | S3 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:12 |
| S5 | 92 | S2 and "small footprint" same (cas$4 \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:28 |
| S6 | 22 | S2 and "small footprint" same ((cas$4 \| box \| enclosure) and ("8.5" \| "10" \| "1.5" )) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:40 |
| S7 | 3380779 | S2 ((cas$4 \| box \| enclosure ) same ("8.5" and regtangular)) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:47 |
| S9 | 4883 | S2 and ((cas$4 \| box \| enclosure ) same ("8.5")) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:48 |
| S10 | 191 | S9 and portable | US-PGPUB; USPAT | OR | OFF | 2005/03/07 16:06 |
| S11 | 59 | S2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:24 |
| S12 | 484 | S2 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:27 |
| S14 | 12 | S12 and "password" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:28 |

MTI0001885

| S15 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
|---|---|---|---|---|---|---|
| S16 | 484 | S15 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S17 | 1 | S16 and (("hidden" near10 sector) same (disc \| track$3 \|disk)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:27 |
| S18 | 35 | "L2" and (("flash memory") same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:45 |
| S19 | 5 | "L2" and (("disk") same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:55 |
| S20 | 3 | "L2" and (("equip$6" \| device) same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:01 |
| S22 | 2 | "L2" and ((eras$7) same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:02 |
| S24 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:26 |
| S26 | 123 | S24 and (((irretriv$8 \| permanent$) adj10 remov$5) same ((track \| data) and (disc \| disk))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:36 |
| S30 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:35 |
| S31 | 13299 | S30 and ((removable \| portable) adj6 (disk drive)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:42 |
| S32 | 178 | S30 and (((removable \| portable) adj6 (disk drive)) same ide) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:48 |
| S33 | 140 | S30 and (format$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:49 |
| S34 | 46 | S30 and (formatt$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:24 |
| S35 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S36 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:26 |
| S37 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S38 | 1 | S30 and (("low level" near7 format$10) same IDE) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:32 |
| S40 | 653978 | S30 and ("power supply" ssame switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:46 |
| S41 | 57654 | S30 and ("power supply" same switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:47 |
| S43 | 4438 | S30 and ("power supply" same (switch and ("on/off"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S44 | 703 | S43 and "disk" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:49 |

MTI0001886

| S45 | 7811 | S30 and ("power supply" same (switch and mechani$7)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
|-----|------|------|------|----|-----|------|
| S46 | 3059 | S30 and ("power supply" same (switch and mechanical)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S47 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S48 | 1 | "5630093".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:22 |
| S49 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:23 |
| S50 | 1 | "6727894".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:57 |
| S52 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 22:35 |
| S53 | 19 | S52 and ("anti static" near5 pad) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:11 |
| S54 | 1 | "5861813".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:14 |
| S55 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:33 |
| S56 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S57 | 1 | "5966732".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 08:57 |
| S58 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S59 | 907 | S58 and 711/112$.ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S60 | 26 | S58 and 711/112$.ccls. and password | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |

MTI0001887

SHEET 1 OF 1

| INFORMATION DISCLOSURE CITATION PTO-1449 | 26615 PATENT TRADEMARK OFFICE | ATTORNEY'S DKT NO. 0032-0002 | APPLICATION No. Unassigned |
|---|---|---|---|
| | | APPLICANT(S) Steven BRESS et al. | |
| | | FILING DATE June 20, 2002 | GROUP Unassigned |

## U.S. PATENT DOCUMENTS

| EXAMINER'S INITIALS | PATENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| ✗ | 5,969,933 | 10-19-99 | Schultz et al. | 361 | 149 | 03-25-98 |
| ✗ | 5,721,665 | 02-24-98 | Schultz | 361 | 149 | 08-18-95 |
| ✗ | 4,717,975 | 01-05-88 | Ogura et al. | 360 | 66 | 02-14-85 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER'S INITIALS | PATENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| | |
| | |
| | |

| EXAMINER Dna Doa | DATE CONSIDERED 3/6/2005 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

MTI0001888

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit | Page 1 of 1 |
| | Duc T. Doan | 2188 | |

## U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-5,630,093 | 05-1997 | Holzhammer et al. | 711/115 |
| | B | US-6,727,894 | 04-2004 | Karidis et al. | 345/174 |
| | C | US-5,861,873 | 01-1999 | Kikinis, Dan | 345/157 |
| | D | US-6,629,184 | 09-2003 | Berg et al. | 710/306 |
| | E | US-5,953,199 | 09-1999 | Owens, Steve | 361/212 |
| | F | US-5,966,732 | 10-1999 | Assaf, Mahmoud | 711/170 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | Friedhelm Schmidt, The SCSC BUS and IDE Interface, Addion-Wesley, 1995 |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          Notice of References Cited          Part of Paper No. 20050308

MTI0001889

# The
# SCSI Bus
## and
# IDE Interface

## Protocols, Applications and Programming

### Friedhelm Schmidt

Translated by
J. Michael Schultz
TransTech Translations



ADDISON-WESLEY
PUBLISHING
COMPANY

Wokingham, England • Reading, Massachusetts • Menlo Park, California • New York
Don Mills, Ontario • Amsterdam • Bonn • Sydney • Singapore
Tokyo • Madrid • San Juan • Milan • Paris • Mexico City • Seoul • Taipei

MTI0001890

© 1995 Addison-Wesley Publishers Ltd.
© 1995 Addison-Wesley Publishing Company Inc.

Translated from the German edition *SCSI-Bus und IDE-Schnittstelle*
published by Addison-Wesley (Deutschland) GmbH.

All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording or otherwise, without prior written permission of the publisher.

The programs in this book have been included for their instructional value. They have been tested with care but are not guaranteed for any particular purpose. The publisher does not offer any warranties or representations nor does it accept any liabilities with respect to the programs.

Many of the designations used by manufacturers and sellers to distinguish their products are claimed as trademarks. Addison-Wesley has made every attempt to supply trademark information about manufacturers and their products mentioned in this book.

Cover designed by Designers & Partners, Oxford
and printed by The Riverside Printing Co. (Reading) Ltd.
Typeset by VAP Group, Kidlington, Oxon.
Printed and bound in Great Britain at T.J. Press (Padstow) Ltd, Padstow, Cornwall

First printed 1995. Reprinted 1995.

ISBN 0-201-42284-0

**British Library Cataloguing in Publication Data**
A catalogue record for this book is available from the British Library.

**Library of Congress Cataloging-in-Publication Data**
Schmidt, Friedhelm
      (SCSI-Bus und IDE-Schnittstelle. English)
      The SCSI bus and IDE interface / Friedhelm Schmidt; translated by
Michael Schultz.
         p. cm.
      Includes index.
      ISBN 0-201-42284-0
      1. SCSI (Computer bus)   2. IDE (Standard)   I. Title
TK7895.B87S36 1995
      004.6´2--dc20
                                                                                              94-2

MTI0001891

**Table 8.3**   Codes for FORMAT TRACK.

| Code | Format | *data bytes in the format track* |
|------|--------|------|
| 00h | Format good sector | |
| 20h | Suspend reallocation | |
| 40h | Reallocate sector | |
| 80h | Mark sector defective | |

When the sector is found, the start of the data field is expected within a given number of bits. If it is not found, the command is aborted with an AMNF bit in the error register.

If a correctable ECC error occurs, the corresponding bit is set in the error register, but the command is not aborted. Only uncorrectable ECC errors lead to a command being aborted.

After a command is aborted, the address register contains the address of the sector in which the error occurred. The sector buffer could contain damaged data.

READ LONG (22h with and 23h without retries)

Unlike the READ SECTORS command, READ LONG always reads only one sector. Not only is the data transferred, but also the ECC bytes of the sector. The ECC is not checked. In all other respects, including errors, the command executes identically to the READ SECTORS command.

READ VERIFY SECTORS (40h with and 41h without retries)

This command reads the requested sectors, but no data is transferred. It only verifies (hence the name) whether or not the sectors are readable. The response to an error is identical to that of the READ SECTORS command.

*ECC check*

SEEK (7xh)

This command instructs the drive to position the heads over the cylinder given in the address register, and to switch to that head. Since the READ and WRITE commands explicitly position the head, the SEEK command is rarely needed.

WRITE SECTORS (30h with and 31h without retries)

This command behaves exactly like READ SECTORS, except that the data are written instead of read.

WRITE LONG (32h with and 33h without retries)

This command behaves exactly like the READ LONG command, except that the data are written instead of read. Here, the ECC must also be written to the sector buffer. This is not trivial, since the ATA standard does not specify the sector format or how the ECC polynomial is to be computed. This command may be used when running system tests in order to produce an ECC error. A sector can be read using READ LONG, the data and ECC modified so as to reflect an ECC error, and the falsified sector rewritten using WRITE LONG. In this way, the error handling can be tested.

68   *SCSI Bus and IDE Interface*

FORMAT TRACK
(50h)

A few preliminary remarks are necessary concerning FORMAT TRACK. Although the command is mandatory it is left to the manufacturer exactly what will be performed. Some drives format the track from scratch, others initialize only the data area of the sectors, others do nothing at all. The ATA standard recommends that drives should at least write the sector with a data pattern. In this way formatting will always erase all data, which is desirable for security reasons.

The command formats an entire track. The sector count register, the cylinder number register, and the drive/head register must be loaded with the address of the track, then 256 16-bit words must be transferred to the sector buffer. Afterwards, the drive sets BSY and executes the command.

The codes written to the sector buffer have the meaning shown in Table 8.3. Whether or not the drive uses these or instead uses its default parameters is up to the manufacturer.

A data word should be written to the sector buffer for each sector, with the remainder filled with 0s. Each data word contains the sector number in the upper byte. If an interleave is called for, it is suppressed. The lower byte holds the code that indicates how the sector should be formatted.

INITIALIZE DRIVE
PARAMETERS
(91h)

Using this command, the disk drive geometry can be configured. This is accomplished by loading the number of sectors in the sector count register and the disk drive number and number of heads in the drive/head register.

This command also allows a drive to be switched from natural to translated physical addressing. According to the ATA standard, the parameters do not have to be checked. If they are incorrect, the next disk access will result in an error. However, many drives use the default values when incorrect parameters are given for this command.

RECALIBRATE
(1xh)

*Seek Track 0*

All opcodes between 10h and 1Fh are interpreted as a RECALIBRATE command, whereupon the disk drive seeks track 0. If it is not found, TK0NF will be set in the error register.

RECALIBRATE is often used when trying to recover from an error situation. For example, when a sector cannot be found, a RECALIBRATE should be tried. If this works, a sector access can be tried again. Otherwise, it is fatal disk error.

READ SECTORS
(20h with and
21h without
retries)

This command reads the number of sectors given in the sector count register. A value of 0 means 256 sectors. The address of the first sector is given in the address register. An interrupt follows each sector that is read. If the heads are not over the desired track, they are positioned automatically. After the command is executed, the address register holds the address of the last sector read.

In case of error the action taken depends on whether the command was issued with or without retries. Without retries the command will be aborted and the IDNF bit set in the error register if the correct sector is not found in two revolutions. Otherwise repeated attempts will be made to read the proper sector. The number of repeated attempts is manufacturer-specific.



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

26615        7590        03/24/2005

HARRITY & SNYDER, LLP
11240 WAPLES MILL ROAD
SUITE 300
FAIRFAX, VA  22030

| EXAMINER |
|---|
| DOAN, DUC T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2188 | |

DATE MAILED: 03/24/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

MTI0001894

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit |
| | Duc T. Doan | 2188 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>20 June 2002</u>.
2a) ☐ This action is **FINAL**.          2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-45</u> is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-45</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to.  See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner.  Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____.
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

MTI0001895

Application/Control Number: 10/174,984                                    · Page 2
Art Unit: 2188

# DETAILED ACTION

## Status of Claims

1.      Claims 1-45 are in the application.

Claims 1-45 are rejected.

## Information Disclosure Statement

2.      The Information Disclosure Statements received 20 June 2002 has been considered.  See attached PTO-1449(s).

## Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

MTI0001896

Application/Control Number: 10/174,984                                    Page 3
Art Unit: 2188

3.      Claim 1-3,13,14,18-23,26-30,33-35,43-44 and 45 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Holzhammer et al (US 5630093), in view of Schmidt (The SCSC Bus

and IDE Interface, Addison-Wesley, 1995)


        As for claim 1, Holzhammer describes a device for removing data (erase) from a long-

term memory component, comprising: an interface (Fig 4: #104 buffer/mux) for connecting the

device  (Fig 4: #92 hardware controller) to the long-term memory component (Holzhammer's

Fig 4: #96 Flash array) [Controller 92 also includes buffer/multiplexer 104. Buffer/multiplexer

104 provides buffering for the transferring of files. Buffer/multiplexer 104 also multiplexes data

passed to and from flash memory array 96; Holzhammer's column 8, lines 37-39; Another way

to minimize the adverse effects of hot block/cold block interaction is to periodically erase and

reprogram the cold blocks of flash array 34; Holzhammer's column 7, lines 15-19];

a control circuit (Fig 4: #100 micro-controller) configured to control the long-term memory

component through the interface to remove data from the long-term memory component

[Controller 92 is specifically dedicated to defining and controlling the file structure for flash

memory array 96.  Controller 92 includes a microcontroller 100 for overseeing control;

Holzhammer's column 8, lines 18-20; It is to be appreciated that for the embodiments shown in

FIGS. 2-4, flash memories arrays 34, 64, and 96 could be used to replace either fixed disk drives

or floppy disk drives; Holzhammer's column 10, lines 63-65];

the claim recites a user controllable switch that, when actuated by a user, causes the control

circuit to commence removing the data from the long-term memory component.  Holzhammer

describes an intelligent controller (Fig 4: #92) capable of clean-up a device (Fig 4: # 96 Flash

Application/Control Number: 10/174,984                                        Page 4
Art Unit: 2188

array) when triggered by a user request [In one embodiment of the invention, a clean-up

operation can be triggered either if (1) the available flash storage capacity drops to a certain

(configurable) limit; (2) a user explicitly requests a cleanup, wherein the cleanup is performed by

a special clean-up utility program, such as a terminate and stay resident program in RAM of the

personal computer system; or (3) a (configurable) time interval has passed that triggers the clean-

up. A clean-up operation is also referred to as a reclamation cycle; Holzhammer's column 13,

lines 22-31].

Holzhammer does not describe the claim's irretrievably aspect of removing the data from the

long term memory component. However, Schmidt teaches a low level format track IDE/ATA

command that creates a track on the disk surface and overwrites data  [The ATA standard

recommends that drives should at least write the sector with a data pattern; Schmidt's page 68,

lines 4-5]. It would have been obvious to one of ordinary skill in the art at the time of invention

to include low level format procedures as suggested by Schmidt in Holzhammer's system to

completely erase all data for security reason [In this way formatting will always erase all data,

which is desirable for security reason; Schmidt's page 68, lines 5-6] .


        As for claims 2-3, they are rejected based on the same rationale as in claim 1.


        As for claim 13, Holzhammer describes the device of claim 1, wherein a thoroughness

level of irretrievably removing the data from the long-term memory component is configurable

[a (configurable) time interval has passed that triggers the clean up. Holzhammer's column 13,

lines 28-31].

MTI0001898

Application/Control Number: 10/174,984                                       Page 5
Art Unit: 2188

As for claim 14, Holzhammer describes the device of claim 1, wherein the interface

connects the device to a plurality of long-term memory component (an array of flash memory

modules; Fig 4: #96).


As for claims 18-21, the claims recite the control circuit partitions the long term memory

component after irretrievably removing the data; wherein the control circuit formats the long

term memory component for a specific file system; wherein the control circuit copies an

operating system to the long-term memory component; wherein the control circuit verifies the

long term memory component after removing the data from the long-term memory component.

Holzhammer describes an operating system is stored in a partitioned area of a hard disk

(Holzhammer's column's 2, lines 35-6). Thus it's obvious the operating system must be copied

to the disk after the disk is prepared for a subsequent boot loading program [The boot record 3

includes a bootstrap loader program for loading the operating system; Holzhammer's column 2,

lines 59-60].

Holzhammer does not describe commands to prepare the disk. However Schmidt describes IDE

commands: format tracks command to format entire tracks (Schmidt's page 68, lines 6); and read

verify sectors command to verify whether or not the sectors are readable (Schmidt's page 69,

lines 24-27). It would have been obvious to one of ordinary skill in the art at the time of

invention to include the commands as suggested by Schmidt in Holzhammer's system to prepare

the disk for receiving the data [A hard disk and a diskette are formatted before first being used.

Low-level formatting divides each track into sectors and places identification ("ID") sector

MTI0001899

Application/Control Number: 10/174,984                                    Page 6
Art Unit: 2188

headers at uniform positions around the track. A high-level formatting establishes the clusters,

initializes some disk areas, and prepares the disk for receiving data; Holzhammer's column 2,

lines 39-50].


As for claims 22, 29, and 43, they are rejected based on the same rationale as in claims 1.

As for claims 23, 30 and 45, the rejection of claim 1 is incorporated herein. Holzhammer

further describes the disk drive and flash memory array are interchangeable, and using an IDE

interface  (Holzhammer's column 10, lines 63-65; column 8,lines 53-65].


Claims 26 and 33 rejected based on the same rationale as in claim 3.

Claims 27 and 34 rejected based on the same rationale as in claim 13.

Claims 28,35 and 44 rejected based on the same rationale as in claim 20.


Claims 4-6,24,31,~~38,39,40,41,42,48~~ are rejected under 35 U.S.C. 103(a) as being

unpatentable over Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE

Interface, Addison-Wesley, 1995) as applied to claim 1, and further in view of Karidis et al (US

6727894), and Kikinus (US 5861873).


As for claims 4 and 5, the claims recite the device of claim 1, further comprising: a

casing configured to contain the control circuit and the interface, the user controllable switch

being mounted on the casing, the casing being of a size that is portable by the user; wherein the

MTI0001900

Application/Control Number: 10/174,984                                          Page 7
Art Unit: 2188

casing is a rectangular casing that is 8.5". times.10".times.1.5" or smaller. Holzhammer describes

the controller can be an I/O device that resides external to personal computer system [In an

alternative embodiment, controller 92 can be an input/output ("I/O") device that resides external

to personal computer system 70 or within an expansion slot (not shown) of personal computer

system 70. Holzhammer's column 8, lines 53-56], the i/o device connects to personal computer

by an IDE interface (Holzhammer's column 8, lines 55-65). Thus, obviously the controller is

enclosed in a casing. Holzhammer's does not describe the dimension for the casing. However

Kikinus describes a portable computer encased in a rectangular size of 8.5 "x 5.5" [Computer

221 is approximately the size of one-half a standard piece of paper (approximately 5.5 inches by

8.5 inches) and in a preferred embodiment comprises a planar array of four Personal Computer

Memory Card International Association (PCMCIA) Type II module bays in a case 223;

Kikinus's column 11, lines 43-49]. Kikinus is silent on the thickness of the device. However,

Karidis describe a thin profile casing of thickness about 1 cm [For instance, the thickness of

system 2000 may be substantially determined by the thickness of the packaged keyboard (e.g.,

typically in the approximate range of 5-10 mm) plus the thickness of display 202 (e.g., usually in

the approximate range of 5-10 mm); Kardis's column 19, lines 32-36]. It would have been

obvious to one of ordinary skill in the art at the time of invention to include the casing as

suggested by Karidis and Kikinus in Holzhammer's system to obtain a slim attractive package [A

still further need exists for a device embodying such features to be portable and conveniently,

compactly, and attractively packaged; Karidis's column 2, lines 14-16].

MTI0001901

Application/Control Number: 10/174,984                                        Page 8
Art Unit: 2188

As for claim 6, the rejection of claim 4 is incorporated herein. Holzhammer describes

LED lights providing feedback relating to an operational status of the device (background task)

to the user [personal computer system 70 includes an indicator light-emitting diode ("LED") that

is lit when a background task involving flash memory array 96 is occurring. The user of

personal computer 70 is instructed not to remove flash memory array 96 when the LED is lit and,

accordingly, when a background task is occurring; Holzhammer's column 10, lines 48-53].


Claims 24 and 31 rejected based on the same rationale as in claim 6.


Claims  36,  39-42  rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093) in view of Schmidt (The SCSC Bus and IDE Interface,

Addison-Wesley, 1995), Karidis et al (US 6727894) and Kikinus (US 5861873).


Claim 36 rejected based on the same rationale as in claims 1,4 and 5.

Claim 39 rejected based on the same rationale as in claim 5.

Claim 41 rejected based on the same rationale as in claim 1.

Claim 42 rejected based on the same rationale as in claim 3.


Claims 7-8 and 40  rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-

Wesley, 1995), Karidis et al (US 6727894) and Kikinus (US 5861873) as applied to claims 4 and

36 respectively, and further in view of Berg et al (US 6629184).

MTI0001902

Application/Control Number: 10/174,984                                    Page 9
Art Unit: 2188

As for claims 7 and 8, the claims recite a cable connected to the interface, the cable being

configured to connect to the long-term memory component; wherein the cable is an Integrated

Device Electronics (IDE) cable. Holzhammer describes an IDE interface connect to the flash

memory array [For that alternative embodiment, the logic associated with buffer/multiplexer 104

can conform to any standard I/O interface.  For example, buffer/multiplexer 104 can conform to

one or more of the following I/O interfaces: IDE, ST506, SCSI (i.e., Small Computer System

Interface), and SA400 (i.e., a floppy disk standard).  Thus, for that alternative embodiment,

personal computer 70 would communicate with controller 92 by way of one of those standard

I/O interfaces; Holzhammer's column 8, lines 53-65]. Holzhammer does not describe the

connection via an IDE cable. However Berg describes the adapter board has power cables and

corresponding IDE cables connecting to hard disk drive [Fig 4, In addition, power connector 94

is a 4-pin male connector that mates with and receives power from 4-pin female connector 96 of

power cable 98. Berg's column 6, lines 53-55]. It would have been obvious to one of ordinary

skill in the art at the time of invention to include the cable as suggested by Berg in

Holzhammer's system to provide an economical bus interface [The success of IDE and SCSI can

be attributed to the availability of economical bus interface components and the fact that a simple

ribbon cable can be used to interconnect the devices. Berg's column 2, lines 15-18].


Claim 40 rejected based on the same rationale as in claim 8.

MTI0001903

Application/Control Number: 10/174,984                                    Page 10
Art Unit: 2188

Claims 9 and 37 rejected under 35 U.S.C. 103(a) as being unpatentable over Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley, 1995) , Karidis et al (US 6727894), and Kikinus (US 5861873) as applied to claims 4 and 36 respectively, and further in view of Owens (US 5953199).

As for claim 9, the claim recites the device of claim 4, further comprising: an anti-static pad positioned on an external side of the casing and configured to support the long-term memory component during removal of the data from the long-term memory component. Holzhammer Schmitdt, Karidis and Kikinus do not describe an anti-static pad. However, Owens describes a touch pad cover made of anti-static material [As seen in FIG. 1-A, a fabric layer 8 covers the upper surface 2 of neoprene touch pad cover 1. The fabric layer 8 is integral with the upper surface 2 and is attached by means such as by lamination. The fabric layer 8 is made of an anti-static fabric to aid in the shielding process; Owens's column 2, lines 61-65]. It would have been obvious to one of ordinary skill in the art at the time of invention to include the anti-static pad as suggested by Owens in Holzhammer's system to shield the internal components of static discharges from the user [it has been found that a novel touch pad cover may be provided for the protection of a Laptop/Notebook computer touch pad from environmental conditions, such as static electricity from the computer monitor and static discharges from the user, which cause touch pads to malfunction from time to time; Owens's column 2, lines 52-57].

Claim 37 rejected based on the same rationale as in claim 9.

MTI0001904

Application/Control Number: 10/174,984                                    Page 11
Art Unit: 2188

Claims 10-12,25,32 and 38  rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-

Wesley, 1995) as applied to claims 1,22,29 and 36 respectively  and further in view of Berg et al

(US 6629184).

As for claims 10,11 and 12, the claims recite a power supply configured to supply power

to the control circuit; a drive power cord emanating from the casing and configured to supply

power from the power supply to the long-term memory component; wherein the switch, when

actuated by the user, causes the control circuit to commence irretrievably removing all the data

stored on the long-term memory component.  Holzhammer describes a supply configured to

supply power to the control circuit [In one embodiment, controller 92 is coupled to a small

battery that provides back-up power to controller 92 if power to personal computer system 70 is

removed; Holzhammer's column 10, lines 54-57]. Holzhammer does not describe a power cord

and a switch. However, Berg describes a control circuit (Fig 10: #100 adapter board)

communicating with host computer and data storage device with IDE interface (Berg's column

8, lines 4-8]. Berg further describes the adapter board has power cables and corresponding IDE

cables connecting to hard disk drive [Fig 4, In addition, power connector 94 is a 4-pin male

connector that mates with and receives power from 4-pin female connector 96 of power cable

98. Berg's column 6, lines 53-55]. Berg describes a switch controlled by a user to enable

function of the control circuit. [In one embodiment, the interface circuit includes an external

device that permits a user to enable and disable the command-inhibit function of the control

MTI0001905

Application/Control Number: 10/174,984                                    Page 12
Art Unit: 2188

circuit; The external device can be a mechanical switch or a pair of jumper pins; Berg's column

3, lines 42-44, 52-53]. It would have been obvious to one of ordinary skill in the art at the time

of invention to include the power cable and the switch as suggested by Berg in Holzhammer's

system to provide power to the hard disk drive and to enable the function of the control circuit

at power up time. [Thus, IDE bus 24 provides the IDE interface for hard disk drive 20, and

power cable 98 provides the electrical power to hard disk drive 20; Berg's column 6, lines 56-

58; When the write-inhibit function is enabled (i.e., jumper 110 is installed at power-up), PAL

130 selectively controls data switch 132 to route the reserved command (01h), rather than the

inhibited IDE commands (3xh, C5h, CAh, CBh), to connector 104; Berg's column10, lines 58-

63]

        Claims 25 and 32 rejected based on the same rationale as in claim 12.
        Claim 38 rejected based on the same rationale as in claims 10 and 11.

        Claims 15-17 rejected under 35 U.S.C. 103(a) as being unpatentable over Holzhammer

et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley, 1995) as

applied to claim 1, and further in view of Assaf (US 5966732).

        As for claims 15-17, the claims recite the control circuit is further configured to release

hidden data (data in the reserve area) on the long-term memory component before irretrievably

removing the data; wherein the control circuit releases the hidden data without user

intervention; wherein the control circuit notifies a user when the hidden data requires a

MTI0001906

Application/Control Number: 10/174,984                                             Page 13

Art Unit: 2188

password for release. Holzhammer does not describe the claims' detail of processing hidden

data on the disk. However, Assaf describes a method of setting up the password to enable

commands for manipulate data in the reserve area, for example command to read the size of the

reserve area (Assaf's column 4, lines 17-43; the READ NATIVE MAX LBA/CYL command);

Thus when the control circuit execute these commands, a password is required. It would have

been obvious to one of ordinary skill in the art at the time of invention to include the method as

suggested by Assaf in Holzhammer's system to prevent ovewritting of critical information

written to the original reserve area by the original equipment manufacturer [Thus the

modifications will not reduce the size of the reserve area to an area that is smaller than the

original reserve area as set up by the manufacturer of the disk drive.  This prevents overwriting

of critical information written to the original reserve area by the original equipment

manufacturer; Assaf's column 4, lines 53-58].

*Conclusion*

     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Duc T. Doan whose telephone number is 571-272-4171.  The

examiner can normally be reached on M-F 8:00 AM 05:00 PM.

MTI0001907

Application/Control Number: 10/174,984                                          Page 14
Art Unit: 2188

  If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Mano Padmanabhan can be reached on 571-272-4210.  The fax phone number for the

organization where this application or proceeding is assigned is 703-872-9306.

  Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

DD

MANO PADMANABHAN
SUPERVISORY PATENT EXAMINER

MTI0001908

## Index of Claims

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/174,984 | BRESS ET AL. |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

| | | | | | | |
|---|---|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | ≠ | Restricted | I | Interference | O | Objected |

| Final | Original | 3/9/20 | Date |
|---|---|---|---|
| | 1 | √ | |
| | 2 | √ | |
| | 3 | √ | |
| | 4 | √ | |
| | 5 | √ | |
| | 6 | √ | |
| | 7 | √ | |
| | 8 | √ | |
| | 9 | √ | |
| | 10 | √ | |
| | 11 | √ | |
| | 12 | √ | |
| | 13 | √ | |
| | 14 | √ | |
| | 15 | √ | |
| | 16 | √ | |
| | 17 | √ | |
| | 18 | √ | |
| | 19 | √ | |
| | 20 | √ | |
| | 21 | √ | |
| | 22 | √ | |
| | 23 | √ | |
| | 24 | √ | |
| | 25 | √ | |
| | 26 | √ | |
| | 27 | √ | |
| | 28 | √ | |
| | 29 | √ | |
| | 30 | √ | |
| | 31 | √ | |
| | 32 | √ | |
| | 33 | √ | |
| | 34 | √ | |
| | 35 | √ | |
| | 36 | √ | |
| | 37 | √ | |
| | 38 | √ | |
| | 39 | √ | |
| | 40 | √ | |
| | 41 | √ | |
| | 42 | √ | |
| | 43 | √ | |
| | 44 | √ | |
| | 45 | √ | |
| | 46 | | |
| | 47 | | |
| | 48 | | |
| | 49 | | |
| | 50 | | |

| Final | Original | Date |
|---|---|---|
| | 51 | |
| | 52 | |
| | 53 | |
| | 54 | |
| | 55 | |
| | 56 | |
| | 57 | |
| | 58 | |
| | 59 | |
| | 60 | |
| | 61 | |
| | 62 | |
| | 63 | |
| | 64 | |
| | 65 | |
| | 66 | |
| | 67 | |
| | 68 | |
| | 69 | |
| | 70 | |
| | 71 | |
| | 72 | |
| | 73 | |
| | 74 | |
| | 75 | |
| | 76 | |
| | 77 | |
| | 78 | |
| | 79 | |
| | 80 | |
| | 81 | |
| | 82 | |
| | 83 | |
| | 84 | |
| | 85 | |
| | 86 | |
| | 87 | |
| | 88 | |
| | 89 | |
| | 90 | |
| | 91 | |
| | 92 | |
| | 93 | |
| | 94 | |
| | 95 | |
| | 96 | |
| | 97 | |
| | 98 | |
| | 99 | |
| | 100 | |

| Final | Original | Date |
|---|---|---|
| | 101 | |
| | 102 | |
| | 103 | |
| | 104 | |
| | 105 | |
| | 106 | |
| | 107 | |
| | 108 | |
| | 109 | |
| | 110 | |
| | 111 | |
| | 112 | |
| | 113 | |
| | 114 | |
| | 115 | |
| | 116 | |
| | 117 | |
| | 118 | |
| | 119 | |
| | 120 | |
| | 121 | |
| | 122 | |
| | 123 | |
| | 124 | |
| | 125 | |
| | 126 | |
| | 127 | |
| | 128 | |
| | 129 | |
| | 130 | |
| | 131 | |
| | 132 | |
| | 133 | |
| | 134 | |
| | 135 | |
| | 136 | |
| | 137 | |
| | 138 | |
| | 139 | |
| | 140 | |
| | 141 | |
| | 142 | |
| | 143 | |
| | 144 | |
| | 145 | |
| | 146 | |
| | 147 | |
| | 148 | |
| | 149 | |
| | 150 | |

Part of Paper No. 20050308

MTI0001909

## Search Notes

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/174,984 | BRESS ET AL. |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 711 | 112 | 3/9/2005 | DD |
| 345 | 174 | 3/17/2005 | DD |
| 361 | 212 | 3/17/2005 | DD |
| 710 | 306 | 3/17/2005 | DD |
| 711 | 115 | 3/17/2005 | DD |
| 345 | 157 | 3/17/2005 | DD |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| east seach, inventor search | 3/9/2005 | DD |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

U.S. Patent and Trademark Office

Part of Paper No. 20050308

MTI0001910



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

**CONFIRMATION NO. 8535**

Bib Data Sheet

| SERIAL NUMBER 10/174,984 | FILING DATE 06/20/2002 RULE | CLASS 711 | GROUP ART UNIT 2188 | ATTORNEY DOCKET NO. 0032-0002 |
|---|---|---|---|---|

APPLICANTS

Steven Bress, Germantown, MD;

Dan Bress, Germantown, MD;
Mike Menz, Roseville, CA; Mark Joseph Menz, Folsom, CA;

** CONTINUING DATA ***************************
This appln claims benefit of 60/299,783 06/21/2001

** FOREIGN APPLICATIONS ********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** SMALL ENTITY **
** 07/16/2002

| Foreign Priority claimed ☐ yes ☒ no | | | |
|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | STATE OR COUNTRY MD | SHEETS DRAWING 10 | TOTAL CLAIMS 45 | INDEPENDENT CLAIMS 5 |
| Verified and Acknowledged   Examiner's Signature    Initials | | | |

ADDRESS
26615
HARRITY & SNYDER, LLP
11240 WAPLES MILL ROAD
SUITE 300
FAIRFAX , VA
22030

TITLE
Systems and methods for removing data stored on long-term memory devices

| FILING FEE RECEIVED 679 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other |

MTI0001911

☐ Credit

MTI0001912

PATENT
Attorney Docket No. 0032-0002

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| Steven Bress et al. | ) |
| | ) |
| Serial No.: 10/174,984 | ) Group Art Unit: 2188 |
| | ) |
| Filed:  June 20, 2002 | ) Examiner:  D. Doan |
| | ) |
| For:  SYSTEMS AND METHODS FOR | ) |
| REMOVING DATA STORED ON | ) |
| LONG-TERM MEMORY DEVICES | ) |

RECEIVED
CENTRAL FAX CENTER

AUG 2 4 2005

U.S. Patent and Trademark Office
Customer Window, Mail Stop Amendment
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

## AMENDMENT

In response to the Office Action of March 24, 2005, the period for reply

having been extended two months by the concurrently filed Petition for Extension

of Time, please amend this application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 12 of this paper.

1

MTI0001913

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 12:36PM  P3

Serial Number: 10/174,984
Docket Number: 0032-0002

**Amendments to the Claims**:

This listing of claims will replace all prior versions, and listings, of claims in the
application:

    1.    (currently amended)  A stand-alone device for removing data from a
long-term memory component, comprising:

    an interface for connecting the stand-alone device to the long-term
memory component;

    a control circuit configured to control the long-term memory component
through the interface to irretrievably remove data from the long-term memory
component; and

    a user controllable physical switch that, when actuated by a user, causes
the control circuit to commence irretrievably removing the data from the long-
term memory component.

    2.    (currently amended)  The device of claim 1, wherein the control
circuit is [[a]] an operating system independent circuit dedicated to the permanent
removal of the data from the long-term memory component.

    3.    (original)  The device of claim 1, wherein the control circuit
irretrievably removes the data from the long-term memory component by

2

MTI0001914

Serial Number: 10/174,984
Docket Number: 0032-0002

overwriting the data on tracks of the long-term memory component.

4.        (original)  The device of claim 1, further comprising:

a casing configured to contain the control circuit and the interface, the user

controllable switch being mounted on the casing, the casing being of a size that

is portable by the user.

5.        (original)  The device of claim 4, wherein the casing is a rectangular

casing that is 8.5" x 10" x 1.5" or smaller.

6.        (original)  The device of claim 4, further comprising:

LED lights mounted on the casing and providing feedback relating to an

operational status of the device to the user.

7.        (original)  The device of claim 4, further comprising:

a cable emanating from the casing and connected to the interface, the

cable being configured to connect to the long-term memory component.

8.        (original)  The device of claim 7, wherein the cable is an Integrated

Device Electronics (IDE) cable.

3

MTI0001915

Serial Number: 10/174,984
Docket Number: 0032-0002

9.     (original)  The device of claim 4, further comprising:

an anti-static pad positioned on an external side of the casing and

configured to support the long-term memory component during removal of the

data from the long-term memory component.

10.     (original)  The device of claim 1, further comprising:

a power supply configured to supply power to the control circuit.

11.     (original)  The device of claim 10, further comprising:

a drive power cord emanating from the casing and configured to supply

power from the power supply to the long-term memory component.

12.     (original)  The device of claim 1, wherein the switch, when actuated

by the user, causes the control circuit to commence irretrievably removing all the

data stored on the long-term memory component.

13.     (original)  The device of claim 1, wherein a thoroughness level of

irretrievably removing the data from the long-term memory component is

configurable.

14.     (original)  The device of claim 1, wherein the interface connects the

4

MTI0001916

FROM :ENTROPY ENGINEERING        FAX NO. :3019906437        Aug. 24 2005 12:37PM P6

Serial Number: 10/174,984
Docket Number: 0032-0002

device to a plurality of long-term memory components.

15.    (original)  The device of claim 1, wherein the control circuit is further configured to release hidden data on the long-term memory component before irretrievably removing the data.

16.    (original)  The device of claim 15, wherein the control circuit releases the hidden data without user intervention.

17.    (original)  The device of claim 15, wherein the control circuit notifies a user when the hidden data requires a password for release.

18.    (original)  The device of claim 1, wherein the control circuit partitions the long-term memory component after irretrievably removing the data.

19.    (original)  The device of claim 18, wherein the control circuit formats the long-term memory component for a specific file system.

20.    (original)  The device of claim 19, wherein the control circuit copies an operating system to the long-term memory component.

5

MTI0001917

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 12:38PM  P7

Serial Number: 10/174,984
Docket Number: 0032-0002

21.    (original)  The device of claim 1, wherein the control circuit verifies the long-term memory component after removing the data from the long-term memory component.

22.    (currently amended)  A method of irretrievably deleting data by a stand-alone cleaning device from a long-term memory component installed in a computer, the method comprising:

connecting a cable associated with the stand-alone cleaning device to the long-term memory component in the computer;

powering-up the computer;

activating the stand-alone cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

23.    (original)  The method of claim 22, wherein the long-term memory component is a disk drive.

24.    (original)  The method of claim 22, wherein signaling completion of the data removal is performed via one or more light emitting diodes (LEDs).

6

MTI0001918

Serial Number: 10/174,984
Docket Number: 0032-0002

25.    (original)  The method of claim 22, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

26.    (original)  The method of claim 22, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.

27.    (original)  The method of claim 22, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

28.    (original)  The method of claim 22, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

29.    (currently amended)  A method of irretrievably deleting data by a stand-alone cleaning device from a long-term memory component, the method comprising:

connecting a cable associated with the stand-alone cleaning device to the

7

MTI0001919



BEST AVAILABLE COPY

MTI0001920

RECEIVED
CENTRAL FAX CENTER

AUG 24 2005

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **TO:** | | **FROM:** | |
| Name: | Examiner D. Doan | Name: | Steve Bress |
| | USPTO | Phone No.: | 301-208-8373 |
| Fax No.: | (571) 273-8300 | Fax # Verified by: | |
| Phone No.: | 571-272-4210 | # Pages (incl. this): 30 | |
| Subject: | Patent Amendment | Date: 8/24/2005 | |

**Message:**

Re: U.S. Application of : Steven Bress et al.
  Application No.: 10/174,984
  Filed: June 20, 2002
  Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

Attached are an Amendment, Petition for Two Month Extension of Time for the above-mentioned application, and Credit Card payment form.

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

MTI0001921

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 12:40PM  P2

RECEIVED
CENTRAL FAX CENTER

AUG 2 4 2005

PATENT
Attorney Docket No. 0032-0002

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: ) | |
| ) | |
| Steven Bress et al. ) | |
| ) | |
| Serial No.: 10/174,984 ) | Group Art Unit: 2188 |
| ) | |
| Filed:  June 20, 2002 ) | Examiner: D. Doan |
| ) | |
| For:   SYSTEMS AND METHODS FOR ) | |
|       REMOVING DATA STORED ON ) | |
|       LONG-TERM MEMORY DEVICES ) | |

U.S. Patent and Trademark Office
Customer Window, Mail Stop Amendment
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

### AMENDMENT

In response to the Office Action of March 24, 2005, the period for reply

having been extended two months by the concurrently filed Petition for Extension

of Time, please amend this application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 12 of this paper.

1

MTI0001922

Serial Number: 10/174,984
Docket Number: 0032-0002

**Amendments to the Claims**:

This listing of claims will replace all prior versions, and listings, of claims in the
application:

1.      (currently amended)  A stand-alone device for removing data from a
long-term memory component, comprising:

an interface for connecting the stand-alone device to the long-term
memory component;

a control circuit configured to control the long-term memory component
through the interface to irretrievably remove data from the long-term memory
component; and

a user controllable physical switch that, when actuated by a user, causes
the control circuit to commence irretrievably removing the data from the long-
term memory component.

2.      (currently amended)  The device of claim 1, wherein the control
circuit is [[a]] an operating system independent circuit dedicated to the permanent
removal of the data from the long-term memory component.

3.      (original)  The device of claim 1, wherein the control circuit
irretrievably removes the data from the long-term memory component by

2

MTI0001923

Serial Number: 10/174,984
Docket Number: 0032-0002

overwriting the data on tracks of the long-term memory component.

4.     (original)  The device of claim 1, further comprising:

a casing configured to contain the control circuit and the interface, the user

controllable switch being mounted on the casing, the casing being of a size that

is portable by the user.

5.     (original)  The device of claim 4, wherein the casing is a rectangular

casing that is 8.5" x 10" x 1.5" or smaller.

6.     (original)  The device of claim 4, further comprising:

LED lights mounted on the casing and providing feedback relating to an

operational status of the device to the user.

7.     (original)  The device of claim 4, further comprising:

a cable emanating from the casing and connected to the interface, the

cable being configured to connect to the long-term memory component.

8.     (original)  The device of claim 7, wherein the cable is an Integrated

Device Electronics (IDE) cable.

3

MTI0001924

Serial Number: 10/174,984
Docket Number: 0032-0002

9.    (original)  The device of claim 4, further comprising:

an anti-static pad positioned on an external side of the casing and

configured to support the long-term memory component during removal of the

data from the long-term memory component.

10.    (original)  The device of claim 1, further comprising:

a power supply configured to supply power to the control circuit.

11.    (original)  The device of claim 10, further comprising:

a drive power cord emanating from the casing and configured to supply

power from the power supply to the long-term memory component.

12.    (original)  The device of claim 1, wherein the switch, when actuated

by the user, causes the control circuit to commence irretrievably removing all the

data stored on the long-term memory component.

13.    (original)  The device of claim 1, wherein a thoroughness level of

irretrievably removing the data from the long-term memory component is

configurable.

14.    (original)  The device of claim 1, wherein the interface connects the

4

MTI0001925

Serial Number: 10/174,984
Docket Number: 0032-0002

device to a plurality of long-term memory components.

15.    (original)  The device of claim 1, wherein the control circuit is further configured to release hidden data on the long-term memory component before irretrievably removing the data.

16.    (original)  The device of claim 15, wherein the control circuit releases the hidden data without user intervention.

17.    (original)  The device of claim 15, wherein the control circuit notifies a user when the hidden data requires a password for release.

18.    (original)  The device of claim 1, wherein the control circuit partitions the long-term memory component after irretrievably removing the data.

19.    (original)  The device of claim 18, wherein the control circuit formats the long-term memory component for a specific file system.

20.    (original)  The device of claim 19, wherein the control circuit copies an operating system to the long-term memory component.

5

MTI0001926

Serial Number: 10/174,984
Docket Number: 0032-0002

21.   (original)  The device of claim 1, wherein the control circuit verifies the long-term memory component after removing the data from the long-term memory component.

22.   (currently amended)  A method of irretrievably deleting data by a stand-alone cleaning device from a long-term memory component installed in a computer, the method comprising:

connecting a cable associated with the stand-alone cleaning device to the long-term memory component in the computer;

powering-up the computer;

activating the stand-alone cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

23.   (original)  The method of claim 22, wherein the long-term memory component is a disk drive.

24.   (original)  The method of claim 22, wherein signaling completion of the data removal is performed via one or more light emitting diodes (LEDs).

6

MTI0001927

Serial Number: 10/174,984
Docket Number: 0032-0002

25.     (original)  The method of claim 22, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

26.     (original)  The method of claim 22, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.

27.     (original)  The method of claim 22, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

28.     (original)  The method of claim 22, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

29.     (currently amended)  A method of irretrievably deleting data by a stand-alone cleaning device from a long-term memory component, the method comprising:

connecting a cable associated with the stand-alone cleaning device to the

7

MTI0001928

FROM : ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 12:46PM  P9

Serial Number: 10/174,984
Docket Number: 0032-0002

long-term memory component;

connecting a power cable attached to the stand-alone cleaning device to the long-term memory component;

activating the stand-alone cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

30.    (original) The method of claim 29, wherein the long-term memory component is a disk drive.

31.    (original) The method of claim 29, wherein signaling completion of the data removal includes illuminating one or more light emitting diodes (LEDs).

32.    (original) The method of claim 29, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

33.    (original) The method of claim 29, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the

8

MTI0001929

Serial Number: 10/174,984
Docket Number: 0032-0002

long-term memory component.

34. (original) The method of claim 29, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is user settable.

35. (original) The method of claim 29, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

36. (original) A device for removing data from a long-term memory component, comprising:

means for providing feedback relating to an operational status of the device to a user;

a user settable switch;

an interface for connecting to the long-term memory component; and

circuitry coupled to the means for providing feedback, the user settable switch, and the interface, the circuitry configured, when the switch is actuated by a user, to communicate with the long-term memory component through the interface and control the long-term memory component to irretrievably remove the data therefrom,

9

MTI0001930

Serial Number: 10/174,984
Docket Number: 0032-0002

wherein the circuitry is enclosed in a portable casing, and the user

settable switch and the interface are mounted on an external portion of the

casing.

37.    (original) The device of claim 36, further comprising:

an anti-static pad positioned on an external portion of the casing and

configured to support the long-term memory component during removal of the

data from the long-term memory component.

38.    (original) The device of claim 36, further comprising:

a power supply configured to supply power to the circuitry; and

a drive power cord emanating from the casing, the drive power cord

receiving power from the power supply.

39.    (original) The device of claim 36, wherein the casing is a

rectangular casing that is 8.5" x 10" x 1.5" or smaller.

40.    (original) The device of claim 36, wherein the interface is an

Integrated Device Electronics (IDE) interface.

41.    (original) The device of claim 36, wherein the circuitry includes an

10

MTI0001931

Serial Number: 10/174,984
Docket Number: 0032-0002

embedded microprocessor.

42.    (original) The device of claim 36, wherein the circuitry irretrievably removes the data from the long-term memory component by controlling overwriting of the data on tracks of the long-term memory component.

Claims 43-45 (canceled)

11

MTI0001932

Serial Number: 10/174,984
Docket Number: 0032-0002

### Remarks

In the Office Action of March 24, 2005, the Examiner rejected claims 1-3,

13, 14, 18-23, 26-30, 33-35, 43, 44, and 45 under 35 U.S.C. § 103(a) in view of

U.S. Patent No. 5,630,093 to Holzhammer et al. ("Holzhammer") in view of "The

SCSI Bus and IDE Interface," Friedhelm Schmidt ("Schmidt"); rejected claims 4-

6, 24, and 31 under 35 U.S.C. § 103(a) in view of Holzhammer and Schmidt, and

further in view of U.S. Patent No. 6,727,894 to Karidis et al. and U.S. Patent No.

Kikinus ("Kikinus"); rejected claims 7, 8, and 40 under 35 U.S.C. § 103(a) in view

Holzhammer, Schmidt, Karidis, Kikinus, and U.S. Patent No. 6,629,184 to Berg

et al. ("Berg"); rejected claims 9 and 37 under 35 U.S.C. § 103(a) in view of

Holzhammer, Schmidt, Karidis, Kikinus, and U.S. Patent No. 5,953,199 to Owens

("Owens"); rejected claims 10-12, 25, 32, and 38 under 35 U.S.C. § 103(a) in

view of Holzhammer, Schmidt, and Berg; and rejected claims 15-17 under 35

U.S.C. § 103(a) in view of Holzhammer, Schmidt, and Berg; and rejected claims

15-17 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and and further

in view of U.S. Patent No. 5,966,732 to Assaf ("Assaf").

As an initial matter, Applicants appreciate the Examiner's granting of the

interview conducted with the Examiner on June 16, 2005. In the interview,

applicants discussed prior art.

By this Amendment, Applicants have amended claims 1, 2, 22, and 29 to

12

MTI0001933

Serial Number: 10/174,984
Docket Number: 0032-0002

more appropriately define the invention.  Claims 43-45 have been canceled without prejudice or disclaimer.

### *Rejection of Claims 1-3, 13, 14, 18-23, 26-30, and 33-35 in View of Holzhammer and Schmidt*

Claim 1 is directed to a device for removing data from a long-term memory component.  The amendments to claim 1 emphasize that the device is a stand-alone device that includes a physical switch.  The switch, when actuated by a user causes the control circuit to commence irretrievably removing the data from the long-term memory component.  As described in the originally filed specification, a stand-alone device that is actuated with a simple physical switch to erase long-term memory components provides a number of advantages over conventional erasing solutions, such as software solutions run from conventional operating systems.  (See Specification, paragraphs 36 and 69,and potions of the Background of the Invention section of the application in paragraphs 3 through 18).

Holzhammer discloses block-erase techniques for non-volatile flash memory.  Holzhammer is primarily concerned with making Flash memory, or other block based non-volatile semiconductor memory, emulate a disk.  The patent discloses, for example, techniques for enabling a semiconductor memory for use with a file system.  In one such technique, in the case where a block of the semiconductor memory is larger than the operating system block, some data

13

MTI0001934

Serial Number: 10/174,984
Docket Number: 0032-0002

must be copied to a 'safe' area before erasing the desired block, the block
cleared, and the 'good' data copied back.

Holzhammer is completely unrelated to a stand-alone device for removing
data from a long-term memory component. In contrast, the techniques of
Holzhammer are described in the context of a personal computer system 10
having a conventional operating system 26. (Holzhammer, column 5, lines 6-61
and Fig. 2). Accordingly, Holzhammer does not disclose or suggest, for
example, as is recited in amended claim 1, "an interface for connecting the
stand-alone device to a long-term memory component," or "a user controllable
physical switch that, when actuated by a user, causes the control circuit to
commence irretrievably removing the data from the long-term memory
component." (emphasis added).

The Examiner relies on Schmidt for the disclosure of "the claim's
irretrievably aspect of removing the data from the long term memory component,"
(Office Action, page 4). Applicants have reviewed Schmidt, and submit that
Schmidt does not cure the deficiencies of Holzhammer, as noted above.

In the interview conducted on June 15, 2005, the Examiner seemed to
state that because it is known in the art that a long-term memory device can be
erased, a stand-alone device that performs such an erasing function cannot be
patentable. To the extent that this is an accurate characterization of the
Examiner's interpretation of the patent laws, Applicants submit that this

14

MTI0001935

Serial Number: 10/174,984
Docket Number: 0032-0002

interpretation finds no support in the patent laws or patent jurisprudence. For a proper rejection under 35 U.S.C. § 103(a), the claimed invention as a whole must be considered. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed. Cir. 1983). Further, to establish a *prima facie* case of obviousness under 35 U.S.C. § 103(a), all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA 1974); see also MPEP 2143.03. It is clearly not appropriate for the Examiner to pick and choose certain features of the invention as being inherently obviousness or not important for determining patentability.

For at least these reasons, Applicants submit that Holzhammer and Schmidt, either alone or in combination, do not disclose or suggest each feature of claim 1. Accordingly, the rejection of this claim should be withdrawn. The rejections of claims 2, 3, 13, 14, and 18-21 are also improper, at least by virtue of their dependency from claim 1.

Claims 2, 3, 13, 14, and 18-21 are additionally patentable for reasons of their own. Claim 2, for instance, recites that the control circuit is an operating system independent circuit dedicated to the permanent removal of the data from the long-term memory component. As discussed above, the techniques of Holzhammer appear to be implemented in the context of an operating system 26 of a general purpose personal computer. Holzhammer in no way discloses or suggests a <u>circuit dedicated</u> to the permanent removal of the data from the long-

15

MTI0001936

Serial Number: 10/174,984
Docket Number: 0032-0002

term memory component, much less an operating system independent circuit.

Claim 22 additionally stands rejected based on Holzhammer and Schmidt. In rejecting claim 22, the Examiner states that this claim is rejected "based on the same rationale as in claims 1." (Office Action, page 6).

Claim 22, as amended, is directed to a method that includes, among other things, connecting a cable associated with the stand-alone cleaning device to the long-term memory component in the computer and activating the stand-alone cleaning device via a physical switch attached to the cleaning device. Holzhammer fails to disclose or suggest a stand-alone cleaning device, much less connecting a cable associated with the stand-alone cleaning device to the long-term memory component in a computer, as recited in claim 22. Further, as discussed above, Holzhammer also does not disclose or suggest a physical switch for activating a cleaning device, and thus could also not disclose or suggest activating a cleaning device via a physical switch, as is also recited in claim 22.

For at least these reasons, Applicants submit that Holzhammer and Schmidt, either alone or in combination, do not disclose or suggest each of the features recited in claim 22, and the rejection of this claim should therefore be withdrawn. The rejections of claims 23 and 26-28 should also be withdrawn, at least by virtue of their dependency on claim 22.

Claim 29 and its dependent claims 30 and 33-35 additionally stand

16

MTI0001937

Serial Number: 10/174,984
Docket Number: 0032-0002

rejected based on Holzhammer and Schmidt. Claim 29 recites certain features
similar to those recited in claim 22. Accordingly, based on reasons similar to
those given above, Applicants submit that the rejection of claim 29 and its
dependent claims 30 and 33-35 should also be withdrawn.

### Rejection of Claims 4-6, 24, and 31 *in View of*
### *Holzhammer, Schmidt, Karidis, and Kikinus*

Claim 4 is directed to the device of claim 1, further comprising a casing
configured to contain the control circuit and the interface, the user controllable
switch being mounted on the casing, the casing being of a size that is portable by
the user. The amendments to claim 1 emphasize that the device is a stand-alone
device. For the reasons sited above, Holzhammer is completely unrelated to a
stand-alone device for removing data from a long-term memory component. The
examiner sites Holzhammer column 8, lines 53-65. In general terms this citation
is directed to connecting a memory device to a personal computer. Holzhammer
in no way discloses or suggests a stand-alone device dedicated to the
permanent removal of the data from the long-term memory component.

Applicant's specifications discuss the use of a personal computer for the
purpose of data removal, in particular paragraphs 17, 79 and 80. Specifically
Applicant discusses the benefits of a stand alone device over a personal
computer being less expensive and able to be used by an untrained operator,
among others. Kikinus and Karidis discuss portable computing device. As

17

MTI0001938

Serial Number: 10/174,984
Docket Number: 0032-0002

Applicants teaches away from using portable computing devices, Kikinus and Karidis are not relevant.

For at least these reasons, Applicants submit that Holzhammer, Schmidt, Karidis and Kikinus either alone or in combination, do not disclose or suggest each of the features recited in claims 4 and 5, and the rejection of these claims should be withdrawn.

Claim 6 recites the device of claim 4, further comprising: LED lights mounted on the casing and providing feedback relating to an operational status of the device to the user. These LED lights may be the only feedback a user of the device has. Holzhammer describes LED lights providing feedback relating to an operational status of the device. Holzhammer is directed at a personal computer, which has multiple methods of communicating with a user, such as a video screen and audio cues. Applicant's specification, in particular paragraph 69 teach the benefit of a stand along device with a simple user interface. Applicants submit that Holzhammer does not disclose or suggest the features recited in claim 6, and the rejection of this claim should therefore be withdrawn. The rejection of claims 24 and 31 should also be withdrawn based on the same rational.

*Rejection of Claims* 36, and 39-42 *In View of Holzhammer, Schmidt, Karidis, and Kikinus*

The rejection of claim 36 should be withdrawn based on the same

18

MTI0001939

Serial Number: 10/174,984
Docket Number: 0032-0002

rationale as discussed above in reference to claims 1, 4 and 5.

The rejection of claim 39 should be withdrawn based on the same

rationale as discussed above in reference to claim 5.

The rejection of claim 41 should be withdrawn based on the same

rationale as discussed above in reference to claim 1.

The rejection of claim 42 should be withdrawn based on the same

rationale as discussed above in reference to claim 3.


*Rejection of Claims 7-8, and 40 In View of
Holzhammer, Schmidt, Karidis, Kikinus and Berg*

The rejection of claims 7 and 8 should be withdrawn based on the same

rationale as discussed above in reference to claim 4. Additionally Berg is directed

to an interface circuit for the purpose of write blocking. Berg in no way discloses

or suggests a circuit dedicated to the permanent removal of the data from the

long-term memory component, much less an operating system independent

circuit. Further Berg does not disclose a stand-alone device.

The rejection of claim 40 should be withdrawn based on the same

rationale as in claim 8.


*Rejection of Claims 9, and 37 In View of
Holzhammer, Schmidt, Karidis, Kikinus and Owens*

Owens describes an anti-static pad for the purpose of shielding a touch

19

MTI0001940

FROM : ENTROPY ENGINEERING          FAX NO. : 3019906437          Aug. 24 2005 12:57PM  P21

Serial Number: 10/174,984
Docket Number: 0032-0002

pad of a portable computer from static electricity from the computer monitor and

static discharges from the user. In other words, the purpose of the anti-static pad

described by Owens is to protect the device. The purpose of the anti-static pad

described by Applicants is to protect a long-term memory device from Applicant's

device. For at least these reasons and the rationale discussed in claim 4, the

rejection of claim 9 should be withdrawn.

The rejection of claim 37 should be withdrawn based on the same

rationale as in claim 9.

### Rejection of Claims 10-12, 25, 32, and 38 *in View of Holzhammer, Schmidt, and Berg*

As discussed above, Holzhammer in no way discloses or suggests a

stand alone device for the purpose of permanent removal of the data from the

long-term memory component. Berg describes a switch to change the state of

the command-inhibit circuit. Berg in no way discloses or suggests a switch to

initiate permanent removal of the data from the long-term memory component.

Additionally, Berg does not disclose or suggest a stand-alone device for the

purpose of permanent removal of the data from the long-term memory

component. For at least these reasons, and the rationale discussed in claim 1,

the rejections of claims 10-12 should be removed.

The rejection of claims 25 and 32 should be withdrawn based on the same

rationale as in claim 12.

20

MTI0001941

Serial Number: 10/174,984
Docket Number: 0032-0002

The rejection of claim 38 should be withdrawn based on the same rationale as in claims 10 and 11.

### Rejection of Claims 15-17 in View of Holzhammer, Schmidt, and Assaf

Assaf describes the use of a subset of the commands in the ATA specifications that allow for the setting of a "Host Protection Area" (HPA). Assaf does not address the option of decoding and releasing a Device Configuration Overlay (DCO) area, nor does it teach the necessity to scan for both types of "hidden" areas, to permanently removal all of the data from the long-term memory component.

Assaf specifically teaches from the drive manufacturers point of view, where it is desirable to hide data on the drive from the user. Assaf's claims relate to adding additional executable and back up code to the drive that is out of reach of the operating system and the user. Applicant's specifications discussed the desirability of permanently removing all data on the long-term memory device. In order to accomplish removing all data, non-standard commands such as the HPA and DCO commands must be issued. In fact, changing the DCO settings from within an operating system, such as Windows®, can cause the operating system to malfunction as Windows does not have the ability to deal with a fixed drive than changes sizes.

Assaf in no way discloses or suggests a circuit dedicated to the

21

MTI0001942

Serial Number: 10/174,984
Docket Number: 0032-0002

permanent removal of the data from a long-term memory component.

Additionally, Assaf in no way discloses or suggests a method to release "hidden

data" on a long-term memory device when the memory device is not known to

the device. Lastly, Assaf in no way discloses or suggests a method to notify a

user that a stand alone device for removing data from a long term memory

component requires a password from a user to complete its task. Accordingly, for

these reasons and the rationale in claim 1, the rejection of claims 15-17 should

be withdrawn.

In view of the foregoing remarks, Applicants submit that the claimed

invention is neither anticipated nor rendered obvious in view of the references

cited against this application.  Applicants, therefore, request the Examiner's

reconsideration and reexamination of the application, and the timely allowance of

the pending claims.

To the extent necessary, a petition for an extension of time under 37

C.F.R. § 1.136 is hereby made.

Respectfully submitted,

All Applicants:

By: _[signature]_ Date: 8/23/05
Steven Bress

22

MTI0001943

Serial Number: 10/174,984
Docket Number: 0032-0002

By: _____ Date: 8/23/2005
Dan Bress

23

MTI0001944

Serial Number: 10/174,984
Docket Number: 0032-0002

By: _____  Date: 8/23/2005
     Mike Menz

By: _____  Date: 8/23/2005
     Mark Joseph Menz

MTI0001945

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 01:00PM P26

PTO/SB/22 (12-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

RECEIVED
CENTRAL FAX CENTER
AUG 2 4 2005

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) FY 2005 (Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818)) | Docket Number (Optional) 0032-0002 |
|---|---|
| Application Number 10/174,984 | Filed June 20, 2002 |
| For Systems and Methods for Removing Data Stored on Long-Term Memory devices | |
| Art Unit 2188 | Examiner D. Doan |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  | | Fee | Small Entity Fee | |
|---|---|---|---|---|
| [ ] | One month (37 CFR 1.17(a)(1)) | $120 | $60 | $ |
| [X] | Two months (37 CFR 1.17(a)(2)) | $480 | $225 | $ 225 |
| [ ] | Three months (37 CFR 1.17(a)(3)) | $1020 | $510 | $ |
| [ ] | Four months (37 CFR 1.17(a)(4)) | $1590 | $795 | $ |
| [ ] | Five months (37 CFR 1.17(a)(5)) | $2160 | $1080 | $ |

[X] Applicant claims small entity status. See 37 CFR 1.27.

[ ] A check in the amount of the fee is enclosed.

[X] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director has already been authorized to charge fees in this application to a Deposit Account.

[ ] The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number _____ . I have enclosed a duplicate copy of this sheet.

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

I am the   [X] applicant/inventor.

[ ] assignee of record of the entire interest. See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

[ ] attorney or agent of record. Registration Number _____

[ ] attorney or agent under 37 CFR 1.34. Registration number if acting under 37 CFR 1.34 _____

| Signature | 8/24/2005 |
|---|---|
| STEVEN BRESS | Date |
| Typed or printed name | 301-208-8373 |
| | Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

[ ] Total of 4 forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

09/13/2005 LMONDIM1 00000031 10174984

01 FC:2252            225.00 OP

MTI0001946

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 01:02PM P27

PTO/SB/22 (12-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)<br>FY 2005<br>(Fees pursuant to the Consolidated Appropriations Act, 2001 (H.R 4818).) | Docket Number (Optional)<br>0032-0002 | RECEIVED<br>CENTRAL FAX CENTER |
|---|---|---|
| Application Number  10/174,984 | Filed  June 20, 2002 | AUG 2 4 2005 |
| For  Systems and Methods for Removing Data Stored on Long-Term Memory devices | | |
| Art Unit 2188 | Examiner  D. Doan | |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

| | | Fee | Small Entity Fee | |
|---|---|---|---|---|
| [ ] | One month (37 CFR 1.17(a)(1)) | $120 | $60 | $ _____ |
| [x] | Two months (37 CFR 1.17(a)(2)) | $460 | $225 | $ 225 |
| [ ] | Three months (37 CFR 1.17(a)(3)) | $1020 | $510 | $ _____ |
| [ ] | Four months (37 CFR 1.17(a)(4)) | $1590 | $795 | $ _____ |
| [ ] | Five months (37 CFR 1.17(a)(5)) | $2160 | $1080 | $ _____ |

[x] Applicant claims small entity status. See 37 CFR 1.27.

[ ] A check in the amount of the fee is enclosed.

[x] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director has already been authorized to charge fees in this application to a Deposit Account.

[ ] The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number _____   I have enclosed a duplicate copy of this sheet.

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

I am the  [x] applicant/inventor.

[ ] assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

[ ] attorney or agent of record. Registration Number _____

[ ] attorney or agent under 37 CFR 1.34.
Registration number if acting under 37 CFR 1.34 _____

| _____ Signature | 8/24/2005 Date |
|---|---|
| DAN BRESS  Typed or printed name | 301-208-3373  Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

[ ] Total of ____ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001947

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 01:04PM P28

RECEIVED
CENTRAL FAX CENTER

AUG 2 4 2005

PTO/SB/22 (12-04)
Approved for use through 07/31/2006 OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) FY 2005 (Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).) | Docket Number (Optional) 0032-0002 |
|---|---|
| Application Number 10/174,984 | Filed June 20, 2002 |

For Systems and Methods for Removing Data Stored on Long-Term Memory devices

| Art Unit 2188 | Examiner D. Doan |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  |  | Fees | Small Entity Fee |  |
|---|---|---|---|---|
| [ ] | One month (37 CFR 1.17(a)(1)) | $120 | $60 | $ |
| [x] | Two months (37 CFR 1.17(a)(2)) | $450 | $225 | $ 225 |
| [ ] | Three months (37 CFR 1.17(a)(3)) | $1020 | $510 | $ |
| [ ] | Four months (37 CFR 1.17(a)(4)) | $1590 | $795 | $ |
| [ ] | Five months (37 CFR 1.17(a)(5)) | $2160 | $1080 | $ |

[x] Applicant claims small entity status. See 37 CFR 1.27.

[ ] A check in the amount of the fee is enclosed.

[x] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director has already been authorized to charge fees in this application to a Deposit Account.

[ ] The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number _____ I have enclosed a duplicate copy of this sheet.

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

I am the

[x] applicant/inventor.

[ ] assignee of record of the entire interest. See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

[ ] attorney or agent of record. Registration Number _____

[ ] attorney or agent under 37 CFR 1.34. Registration number if acting under 37 CFR 1.34 _____

| Signature | 8/24/2005 Date |
|---|---|
| Mark mertz Typed or printed name | 301-208-8373 Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

___ Total of ___ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001948

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 01:05PM P29

RECEIVED
CENTRAL FAX CENTER
AUG 2 4 2005

PTO/SB/22 (12-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)<br>FY 2005<br>(Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).) | Docket Number (Optional)<br>**0032-0002** |
|---|---|
| Application Number: 10/174,984 | Filed  June 20, 2002 |
| For  Systems and Methods for Removing Data Stored on Long-Term Memory devices | |
| Art Unit 2189 | Examiner D. Doan |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

| | | Fee | Small Entity Fee | |
|---|---|---|---|---|
| [ ] | One month (37 CFR 1.17(a)(1)) | $120 | $60 | $ |
| [x] | Two months (37 CFR 1.17(a)(2)) | $450 | $225 | $ 225 |
| [ ] | Three months (37 CFR 1.17(a)(3)) | $1020 | $510 | $ |
| [ ] | Four months (37 CFR 1.17(a)(4)) | $1590 | $795 | $ |
| [ ] | Five months (37 CFR 1.17(a)(5)) | $2160 | $1080 | $ |

[x]  Applicant claims small entity status. See 37 CFR 1.27.

[ ]  A check in the amount of the fee is enclosed.

[ ]  Payment by credit card. Form PTO-2038 is attached.

[ ]  The Director has already been authorized to charge fees in this application to a Deposit Account.

[ ]  The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number _____ .  I have enclosed a duplicate copy of this sheet.

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

I am the  [x]  applicant/inventor.

[ ]  assignee of record of the entire interest. See 37 CFR 3.71.
     Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

[ ]  attorney or agent of record. Registration Number _____

[ ]  attorney or agent under 37 CFR 1.34.
     Registration number if acting under 37 CFR 1.34 _____

| Signature | Date |
|---|---|
| *[signature]* | 8/24/2005 |
| MIKE MENZ | 301-208-8373 |
| Typed or printed name | Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

[ ]  Total of  4  forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001949

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Aug. 24 2005 12:40PM  P1

RECEIVED
CENTRAL FAX CENTER
AUG 2 4 2005

# FACSIMILE TRANSMITTAL

TO:                                    FROM:

Name:      Examiner D. Doan            Name:   Steve Bress

           USPTO                       Phone No.:   301-208-8373

Fax No.:   (571) 273-8300             Fax # Verified by:

Phone No.:  571-272-4210              # Pages (incl. this): 30

Subject:   Patent Amendment           Date:   8/24/2005

Message:

Re: U.S. Application of : Steven Bress et al.
    Application No.: 10/174,984
    Filed: June 20, 2002
    Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

Attached are an Amendment, Petition for Two Month Extension of Time for the above-
mentioned application, and Credit Card payment form.

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is
privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile
in error, please notify the sender immediately by telephone (collect), and return the original message by first-
class mail to the above address.

PAGE 1/30 * RCVD AT 8/24/2005 1:45:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-8/24 * DNIS:2738300 * CSID:3019906437 * DURATION (mm-ss):23-58

MTI0001950

RECEIVED
CENTRAL FAX CENTER

OCT 1 4 2005

PATENT
Attorney Docket No. 0032-0002

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                )
                                     )
Steven Bress et al.                  )
                                     )
Serial No.: 10/174,984               )     Group Art Unit: 2188
                                     )
Filed:  June 20, 2002                )     Examiner:  D. Doan
                                     )
For:    SYSTEMS AND METHODS FOR      )
        REMOVING DATA STORED ON      )
        LONG-TERM MEMORY DEVICES     )

U.S. Patent and Trademark Office
Customer Window, Mail Stop Amendment
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

## AMENDMENT

In response to the Office Action of March 24, 2005, the period for reply

having been extended two months by the concurrently filed Petition for Extension

of Time, please amend this application as follows:


**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 12 of this paper.

1

MTI0001951

RECEIVED
CENTRAL FAX CENTER

OCT 1 4 2005

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **TO:** | | **FROM:** | |
| **Name:** | Examiner D. Doan | **Name:** | Steve Bress |
| | USPTO | **Phone No.:** | 202-487-8865 |
| **Fax No.:** | (571) 273-8300 | **Fax # Verified by:** | |
| **Phone No.:** | 571-272-4210 | **# Pages** (incl. this): 24 | |
| **Subject:** | **Patent Amendment** | **Date:** 10/14/2005 | |

**Message:**

Re: U.S. Application of : Steven Bress et al.
Application No.: 10/174,984.
Filed: June 20, 2002
Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

Attached is an Amendment. Petition for extension and payment information faxed previously (twice).

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

PAGE 1/24 * RCVD AT 10/14/2005 1:36:47 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-8/27 * DNIS:2738300 * CSID: * DURATION (mm-ss):08-38

MTI0001952

Serial Number: 10/174,984
Docket Number: 0032-0002

## Remarks

In the Office Action of March 24, 2005, the Examiner rejected claims 1-3, 13, 14, 18-23, 26-30, 33-35, 43, 44, and 45 under 35 U.S.C. § 103(a) in view of U.S. Patent No. 5,630,093 to Holzhammer et al. ("Holzhammer") in view of "The SCSI Bus and IDE Interface," Friedhelm Schmidt ("Schmidt"); rejected claims 4-6, 24, and 31 under 35 U.S.C. § 103(a) in view of Holzhammer and Schmidt, and further in view of U.S. Patent No. 6,727,894 to Karidis et al. and U.S. Patent No. Kikinus ("Kikinus"); rejected claims 7, 8, and 40 under 35 U.S.C. § 103(a) in view Holzhammer, Schmidt, Karidis, Kikinus, and U.S. Patent No. 6,629,184 to Berg et al. ("Berg"); rejected claims 9 and 37 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, Karidis, Kikinus, and U.S. Patent No. 5,953,199 to Owens ("Owens"); rejected claims 10-12, 25, 32, and 38 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and Berg; and rejected claims 15-17 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and Berg; and rejected claims 15-17 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and and further in view of U.S. Patent No. 5,966,732 to Assaf ("Assaf").

As an initial matter, Applicants appreciate the Examiner's granting of the interview conducted with the Examiner on June 16, 2005. In the interview, applicants discussed prior art.

By this Amendment, Applicants have amended claims 1, 2, 22, and 29 to

12

MTI0001953

Serial Number: 10/174,984
Docket Number: 0032-0002

more appropriately define the invention. Claims 43-45 have been canceled without prejudice or disclaimer.

### Rejection of Claims 1-3, 13, 14, 18-23, 26-30, and 33-35 in View of Holzhammer and Schmidt

Claim 1 is directed to a device for removing data from a long-term memory component. The amendments to claim 1 emphasize that the device is a stand-alone device that includes a physical switch. The switch, when actuated by a user causes the control circuit to commence irretrievably removing the data from the long-term memory component. As described in the originally filed specification, a stand-alone device that is actuated with a simple physical switch to erase long-term memory components provides a number of advantages over conventional erasing solutions, such as software solutions run from conventional operating systems. (See Specification, paragraphs 36 and 69,and potions of the Background of the Invention section of the application in paragraphs 3 through 18).

Holzhammer discloses block-erase techniques for non-volatile flash memory. Holzhammer is primarily concerned with making Flash memory, or other block based non-volatile semiconductor memory, emulate a disk. The patent discloses, for example, techniques for enabling a semiconductor memory for use with a file system. In one such technique, in the case where a block of the semiconductor memory is larger than the operating system block, some data

13

MTI0001954

Serial Number: 10/174,984
Docket Number: 0032-0002

must be copied to a 'safe' area before erasing the desired block, the block
cleared, and the 'good' data copied back.

Holzhammer is completely unrelated to a stand-alone device for removing
data from a long-term memory component. In contrast, the techniques of
Holzhammer are described in the context of a personal computer system 10
having a conventional operating system 26. (Holzhammer, column 5, lines 6-61
and Fig. 2). Accordingly, Holzhammer does not disclose or suggest, for
example, as is recited in amended claim 1, "an interface for connecting the
stand-alone device to a long-term memory component," or "a user controllable
physical switch that, when actuated by a user, causes the control circuit to
commence irretrievably removing the data from the long-term memory
component." (emphasis added).

The Examiner relies on Schmidt for the disclosure of "the claim's
irretrievably aspect of removing the data from the long term memory component,"
(Office Action, page 4). Applicants have reviewed Schmidt, and submit that
Schmidt does not cure the deficiencies of Holzhammer, as noted above.

In the Interview conducted on June 15, 2005, the Examiner seemed to
state that because it is known in the art that a long-term memory device can be
erased, a stand-alone device that performs such an erasing function cannot be
patentable. To the extent that this is an accurate characterization of the
Examiner's interpretation of the patent laws, Applicants submit that this

14

MTI0001955

Serial Number: 10/174,984
Docket Number: 0032-0002

interpretation finds no support in the patent laws or patent jurisprudence. For a

proper rejection under 35 U.S.C. § 103(a), the claimed invention as a whole must

be considered. *Stratoflex, Inc v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871

(Fed. Cir. 1983). Further, to establish a *prima facie* case of obviousness under

35 U.S.C. § 103(a), all the claim limitations must be taught or suggested by the

prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA 1974); see also

MPEP 2143.03. It is clearly not appropriate for the Examiner to pick and choose

certain features of the invention as being inherently obviousness or not important

for determining patentability.

For at least these reasons, Applicants submit that Holzhammer and

Schmidt, either alone or in combination, do not disclose or suggest each feature

of claim 1. Accordingly, the rejection of this claim should be withdrawn. The

rejections of claims 2, 3, 13, 14, and 18-21 are also improper, at least by virtue of

their dependency from claim 1.

Claims 2, 3, 13, 14, and 18-21 are additionally patentable for reasons of

their own. Claim 2, for instance, recites that the control circuit is an operating

system independent circuit dedicated to the permanent removal of the data from

the long-term memory component. As discussed above, the techniques of

Holzhammer appear to be implemented in the context of an operating system 26

of a general purpose personal computer. Holzhammer in no way discloses or

suggests a <u>circuit dedicated</u> to the permanent removal of the data from the long-

15

MTI0001956

Serial Number: 10/174,984
Docket Number: 0032-0002

term memory component, much less an operating system independent circuit.

Claim 22 additionally stands rejected based on Holzhammer and Schmidt.
In rejecting claim 22, the Examiner states that this claim is rejected "based on the
same rationale as in claims 1." (Office Action, page 6).

Claim 22, as amended, is directed to a method that includes, among other
things, connecting a cable associated with the stand-alone cleaning device to the
long-term memory component in the computer and activating the stand-alone
cleaning device via a physical switch attached to the cleaning device.
Holzhammer fails to disclose or suggest a stand-alone cleaning device, much
less connecting a cable associated with the stand-alone cleaning device to the
long-term memory component in a computer, as recited in claim 22. Further, as
discussed above, Holzhammer also does not disclose or suggest a physical
switch for activating a cleaning device, and thus could also not disclose or
suggest activating a cleaning device via a physical switch, as is also recited in
claim 22.

For at least these reasons, Applicants submit that Holzhammer and
Schmidt, either alone or in combination, do not disclose or suggest each of the
features recited in claim 22, and the rejection of this claim should therefore be
withdrawn. The rejections of claims 23 and 26-28 should also be withdrawn, at
least by virtue of their dependency on claim 22.

Claim 29 and its dependent claims 30 and 33-35 additionally stand

16

MTI0001957

Serial Number: 10/174,984
Docket Number: 0032-0002

rejected based on Holzhammer and Schmidt.  Claim 29 recites certain features

similar to those recited in claim 22.  Accordingly, based on reasons similar to

those given above, Applicants submit that the rejection of claim 29 and its

dependent claims 30 and 33-35 should also be withdrawn.

*Rejection of Claims 4-6, 24, and 31 in View of
Holzhammer, Schmidt, Karidis, and Kikinus*

Claim 4 is directed to the device of claim 1, further comprising a casing

configured to contain the control circuit and the interface, the user controllable

switch being mounted on the casing, the casing being of a size that is portable by

the user. The amendments to claim 1 emphasize that the device is a stand-alone

device. For the reasons sited above, Holzhammer is completely unrelated to a

stand-alone device for removing data from a long-term memory component. The

examiner sites Holzhammer column 8, lines 53-65. In general terms this citation

is directed to connecting a memory device to a personal computer. Holzhammer

in no way discloses or suggests a stand-alone device dedicated to the

permanent removal of the data from the long-term memory component.

Applicant's specifications discuss the use of a personal computer for the

purpose of data removal, in particular paragraphs 17, 79 and 80. Specifically

Applicant discusses the benefits of a stand alone device over a personal

computer being less expensive and able to be used by an untrained operator,

among others. Kikinus and Karidis discuss portable computing device. As

17

MTI0001958

Serial Number: 10/174,984
Docket Number: 0032-0002

Applicants teaches away from using portable computing devices, Kikinus and

Karidis are not relevant.

For at least these reasons, Applicants submit that Holzhammer, Schmidt,

Karidis and Kikinus either alone or in combination, do not disclose or suggest

each of the features recited in claims 4 and 5, and the rejection of these claims

should be withdrawn.

Claim 6 recites the device of claim 4, further comprising: LED lights

mounted on the casing and providing feedback relating to an operational status

of the device to the user. These LED lights may be the only feedback a user of

the device has. Holzhammer describes LED lights providing feedback relating to

an operational status of the device. Holzhammer is directed at a personal

computer, which has multiple methods of communicating with a user, such as a

video screen and audio cues. Applicant's specification, in particular paragraph 69

teach the benefit of a stand along device with a simple user interface. Applicants

submit that Holzhammer does not disclose or suggest the features recited in

claim 6, and the rejection of this claim should therefore be withdrawn. The

rejection of claims 24 and 31 should also be withdrawn based on the same

rational.

*Rejection of Claims 36, and 39-42 in View of
Holzhammer, Schmidt, Karidis, and Kikinus*

The rejection of claim 36 should be withdrawn based on the same

18

MTI0001959

Serial Number: 10/174,984
Docket Number: 0032-0002

rationale as discussed above in reference to claims 1, 4 and 5.

The rejection of claim 39 should be withdrawn based on the same rationale as discussed above in reference to claim 5.

The rejection of claim 41 should be withdrawn based on the same rationale as discussed above in reference to claim 1.

The rejection of claim 42 should be withdrawn based on the same rationale as discussed above in reference to claim 3.

### Rejection of Claims 7-8, and 40 in View of
### Holzhammer, Schmidt, Karidis, Kikinus and Berg

The rejection of claims 7 and 8 should be withdrawn based on the same rationale as discussed above in reference to claim 4. Additionally Berg is directed to an interface circuit for the purpose of write blocking. Berg in no way discloses or suggests a circuit dedicated to the permanent removal of the data from the long-term memory component, much less an operating system independent circuit. Further Berg does not disclose a stand-alone device.

The rejection of claim 40 should be withdrawn based on the same rationale as in claim 8.

### Rejection of Claims 9, and 37 in View of
### Holzhammer, Schmidt, Karidis, Kikinus and Owens

Owens describes an anti-static pad for the purpose of shielding a touch

19

MTI0001960

Serial Number: 10/174,984
Docket Number: 0032-0002

pad of a portable computer from static electricity from the computer monitor and static discharges from the user. In other words, the purpose of the anti-static pad described by Owens is to protect the device. The purpose of the anti-static pad described by Applicants is to protect a long-term memory device from Applicant's device. For at least these reasons and the rationale discussed in claim 4, the rejection of claim 9 should be withdrawn.

The rejection of claim 37 should be withdrawn based on the same rationale as in claim 9.

*Rejection of Claims* 10-12, 25, 32, and 38 *in View of Holzhammer, Schmidt, and Berg*

As discussed above, Holzhammer in no way discloses or suggests a stand alone device for the purpose of permanent removal of the data from the long-term memory component. Berg describes a switch to change the state of the command-inhibit circuit. Berg in no way discloses or suggests a switch to initiate permanent removal of the data from the long-term memory component. Additionally, Berg does not disclose or suggest a stand-alone device for the purpose of permanent removal of the data from the long-term memory component. For at least these reasons, and the rationale discussed in claim 1, the rejections of claims 10-12 should be removed.

The rejection of claims 25 and 32 should be withdrawn based on the same rationale as in claim 12.

20

MTI0001961

Serial Number: 10/174,984
Docket Number: 0032-0002

The rejection of claim 38 should be withdrawn based on the same

rationale as in claims 10 and 11.

*Rejection of Claims 15-17 in View of
Holzhammer, Schmidt, and Assaf*

Assaf describes the use of a subset of the commands in the ATA

specifications that allow for the setting of a "Host Protection Area" (HPA). Assaf

does not address the option of decoding and releasing a Device Configuration

Overlay (DCO) area, nor does it teach the necessity to scan for both types of

"hidden" areas, to permanently removal all of the data from the long-term

memory component.

Assaf specifically teaches from the drive manufacturers point of view,

where it is desirable to hide data on the drive from the user. Assaf's claims relate

to adding additional executable and back up code to the drive that is out of reach

of the operating system and the user. Applicant's specifications discussed the

desirability of permanently removing all data on the long-term memory device. In

order to accomplish removing all data, non-standard commands such as the HPA

and DCO commands must be issued. In fact, changing the DCO settings from

within an operating system, such as Windows®, can cause the operating system

to malfunction as Windows does not have the ability to deal with a fixed drive

than changes sizes.

Assaf in no way discloses or suggests a circuit dedicated to the

21

MTI0001962

Serial Number: 10/174,984
Docket Number: 0032-0002

permanent removal of the data from a long-term memory component.

Additionally, Assaf in no way discloses or suggests a method to release "hidden data" on a long-term memory device when the memory device is not known to the device. Lastly, Assaf in no way discloses or suggests a method to notify a user that a stand alone device for removing data from a long term memory component requires a password from a user to complete its task. Accordingly, for these reasons and the rationale in claim 1, the rejection of claims 15-17 should be withdrawn.

In view of the foregoing remarks, Applicants submit that the claimed invention is neither anticipated nor rendered obvious in view of the references cited against this application. Applicants, therefore, request the Examiner's reconsideration and reexamination of the application, and the timely allowance of the pending claims.

To the extent necessary, a petition for an extension of time under 37 C.F.R. § 1.136 is hereby made.

Respectfully submitted,

All Applicants:

By: _Steven Bress_ Date: 8/23/05
Steven Bress

22

MTI0001963

Serial Number: 10/174,984
Docket Number: 0032-0002

By: _____   Date: 8/23/2005
Dan Bress

23

MTI0001964

Serial Number: 10/174,984
Docket Number: 0032-0002

By: _Mike Menz_ Date: 8/23/2005
Mike Menz

By: _Mark Joseph Menz_ Date: 8/23/2005
Mark Joseph Menz

MTI0001965

Serial Number: 10/174,984
Docket Number: 0032-0002

**Amendments to the Claims**:

This listing of claims will replace all prior versions, and listings, of claims in the application:

1.      (currently amended)  A <u>stand-alone</u> device for removing data from a long-term memory component, comprising:

an interface for connecting the <u>stand-alone</u> device to the long-term memory component;

a control circuit configured to control the long-term memory component through the interface to irretrievably remove data from the long-term memory component; and

a user controllable <u>physical</u> switch that, when actuated by a user, causes the control circuit to commence irretrievably removing the data from the long-term memory component.

2.      (currently amended)  The device of claim 1, wherein the control circuit is [[a]] <u>an operating system independent</u> circuit dedicated to the permanent removal of the data from the long-term memory component.

3.      (original)  The device of claim 1, wherein the control circuit irretrievably removes the data from the long-term memory component by

2

MTI0001966

Serial Number: 10/174,984
Docket Number: 0032-0002

overwriting the data on tracks of the long-term memory component.

4.     (original)  The device of claim 1, further comprising:

a casing configured to contain the control circuit and the interface, the user controllable switch being mounted on the casing, the casing being of a size that is portable by the user.

5.     (original)  The device of claim 4, wherein the casing is a rectangular casing that is 8.5" x 10" x 1.5" or smaller.

6.     (original)  The device of claim 4, further comprising:

LED lights mounted on the casing and providing feedback relating to an operational status of the device to the user.

7.     (original)  The device of claim 4, further comprising:

a cable emanating from the casing and connected to the interface, the cable being configured to connect to the long-term memory component.

8.     (original)  The device of claim 7, wherein the cable is an Integrated Device Electronics (IDE) cable.

3

MTI0001967

Serial Number: 10/174,984
Docket Number: 0032-0002

9.    (original)  The device of claim 4, further comprising:

an anti-static pad positioned on an external side of the casing and

configured to support the long-term memory component during removal of the

data from the long-term memory component.

10.    (original)  The device of claim 1, further comprising:

a power supply configured to supply power to the control circuit.

11.    (original)  The device of claim 10, further comprising:

a drive power cord emanating from the casing and configured to supply

power from the power supply to the long-term memory component.

12.    (original)  The device of claim 1, wherein the switch, when actuated

by the user, causes the control circuit to commence irretrievably removing all the

data stored on the long-term memory component.

13.    (original)  The device of claim 1, wherein a thoroughness level of

irretrievably removing the data from the long-term memory component is

configurable.

14.    (original)  The device of claim 1, wherein the interface connects the

4

MTI0001968

Serial Number: 10/174,984
Docket Number: 0032-0002

device to a plurality of long-term memory components.

15.    (original)  The device of claim 1, wherein the control circuit is further configured to release hidden data on the long-term memory component before irretrievably removing the data.

16.    (original)  The device of claim 15, wherein the control circuit releases the hidden data without user intervention.

17.    (original)  The device of claim 15, wherein the control circuit notifies a user when the hidden data requires a password for release.

18.    (original)  The device of claim 1, wherein the control circuit partitions the long-term memory component after irretrievably removing the data.

19.    (original)  The device of claim 18, wherein the control circuit formats the long-term memory component for a specific file system.

20.    (original)  The device of claim 19, wherein the control circuit copies an operating system to the long-term memory component.

5

MTI0001969

Serial Number: 10/174,984
Docket Number: 0032-0002

21.    (original)  The device of claim 1, wherein the control circuit verifies the long-term memory component after removing the data from the long-term memory component.

22.    (currently amended)  A method of irretrievably deleting data by a stand-alone cleaning device from a long-term memory component installed in a computer, the method comprising:

connecting a cable associated with the stand-alone cleaning device to the long-term memory component in the computer;

powering-up the computer;

activating the stand-alone cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

23.    (original)  The method of claim 22, wherein the long-term memory component is a disk drive.

24.    (original)  The method of claim 22, wherein signaling completion of the data removal is performed via one or more light emitting diodes (LEDs).

6

MTI0001970

Serial Number: 10/174,984
Docket Number: 0032-0002

25.     (original)  The method of claim 22, wherein irretrievably removing
data from the long-term memory component includes irretrievably removing all of
the data from the long-term memory component.


26.     (original)  The method of claim 22, wherein the data from the long-
term memory component is removed by overwriting the data on tracks of the
long-term memory component.


27.     (original)  The method of claim 22, wherein a thoroughness level of
irretrievably removing the data from the long-term memory component is
configurable.


28.     (original)  The method of claim 22, wherein irretrievably removing
the data includes removing data associated with multiple operating systems on
the long term memory component.


29.     (currently amended)  A method of irretrievably deleting data by a
stand-alone cleaning device from a long-term memory component, the method
comprising:

        connecting a cable associated with the stand-alone cleaning device to the

7

MTI0001971

Serial Number: 10/174,984
Docket Number: 0032-0002

long-term memory component;

connecting a power cable attached to the stand-alone cleaning device to
the long-term memory component;

activating the stand-alone cleaning device via a physical switch attached
to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory
component.

30.     (original)  The method of claim 29, wherein the long-term memory
component is a disk drive.

31.     (original)  The method of claim 29, wherein signaling completion of
the data removal includes illuminating one or more light emitting diodes (LEDs).

32.     (original)  The method of claim 29, wherein irretrievably removing
data from the long-term memory component includes irretrievably removing all of
the data from the long-term memory component.

33.     (original)  The method of claim 29, wherein the data from the long-
term memory component is removed by overwriting the data on tracks of the

8

MTI0001972

Serial Number: 10/174,984
Docket Number: 0032-0002

long-term memory component.

34.    (original)  The method of claim 29, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is user settable.

35.    (original) The method of claim 29, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

36.    (original)  A device for removing data from a long-term memory component, comprising:

means for providing feedback relating to an operational status of the device to a user;

a user settable switch;

an interface for connecting to the long-term memory component; and

circuitry coupled to the means for providing feedback, the user settable switch, and the interface, the circuitry configured, when the switch is actuated by a user, to communicate with the long-term memory component through the interface and control the long-term memory component to irretrievably remove the data therefrom,

9

MTI0001973

Serial Number: 10/174,984
Docket Number: 0032-0002

wherein the circuitry is enclosed in a portable casing, and the user

settable switch and the interface are mounted on an external portion of the

casing.

37.     (original) The device of claim 36, further comprising:

an anti-static pad positioned on an external portion of the casing and

configured to support the long-term memory component during removal of the

data from the long-term memory component.

38.     (original) The device of claim 36, further comprising:

a power supply configured to supply power to the circuitry; and

a drive power cord emanating from the casing, the drive power cord

receiving power from the power supply.

39.     (original) The device of claim 36, wherein the casing is a

rectangular casing that is 8.5" x 10" x 1.5" or smaller.

40.     (original) The device of claim 36, wherein the interface is an

Integrated Device Electronics (IDE) interface.

41.     (original) The device of claim 36, wherein the circuitry includes an

10

MTI0001974

Serial Number: 10/174,984
Docket Number: 0032-0002

embedded microprocessor.


42.    (original) The device of claim 36, wherein the circuitry irretrievably removes the data from the long-term memory component by controlling overwriting of the data on tracks of the long-term memory component.


Claims 43-45 (canceled)

11

MTI0001975

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 5 | bress-steven$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:40 |
| S2 | 3380779 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:11 |
| S3 | 10S3 | S2 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:26 |
| S4 | 25 | S3 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:12 |
| S5 | 92 | S2 and "small footprint" same (cas$4 \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:28 |
| S6 | 22 | S2 and "small footprint" same ((cas$4 \| box \| enclosure) and ("8.5" \| "10" \| "1.5" )) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:40 |
| S7 | 3380779 | S2 ((cas$4 \| box \| enclosure ) same ("8.5" and regtangular)) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:47 |
| S9 | 4883 | S2 and ((cas$4 \| box \| enclosure ) same ("8.5")) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:48 |
| S10 | 191 | S9 and portable | US-PGPUB; USPAT | OR | OFF | 2005/03/07 16:06 |
| S11 | 59 | S2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:24 |
| S12 | 484 | S2 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:27 |
| S14 | 12 | S12 and "password" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:28 |
| S15 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S16 | 484 | S15 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S17 | 1 | S16 and (("hidden" near10 sector) same (disc \| track$3 \|disk)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:27 |
| S18 | 35 | "L2" and (("flash memory") same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:45 |
| S19 | 5 | "L2" and (("disk") same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:55 |
| S20 | 3 | "L2" and (("equip$6" \| device) same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:01 |
| S22 | 2 | "L2" and ((eras$7) same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:02 |
| S24 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:26 |

MTI0001976

| S26 | 123 | S24 and (((irretriv$8 \| permanent$) adj10 remov$5) same ((track \| data) and (disc \| disk))) | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:19 |
| S30 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:35 |
| S31 | 13299 | S30 and ((removable \| portable) adj6 (disk drive)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:42 |
| S32 | 178 | S30 and (((removable \| portable) adj6 (disk drive)) same ide) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:48 |
| S33 | 140 | S30 and (format$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:49 |
| S34 | 46 | S30 and (formatt$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:24 |
| S35 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S36 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:26 |
| S37 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S38 | 1 | S30 and (("low level" near7 format$10) same IDE) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:32 |
| S40 | 653978 | S30 and ("power supply" ssame switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:46 |
| S41 | 57654 | S30 and ("power supply" same switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:47 |
| S43 | 4438 | S30 and ("power supply" same (switch and ("on/off"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S44 | 703 | S43 and "disk" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:49 |
| S45 | 7811 | S30 and ("power supply" same (switch and mechani$7)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S46 | 3059 | S30 and ("power supply" same (switch and mechanical)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S47 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S48 | 1 | "5630093".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:22 |
| S49 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:23 |
| S50 | 1 | "6727894".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:57 |
| S52 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 22:35 |
| S53 | 19 | S52 and ("anti static" near5 pad) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:11 |

MTI0001977

| S54 | 1 | "5861813".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:14 |
|---|---|---|---|---|---|---|
| S55 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:33 |
| S56 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S57 | 1 | "5966732".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 08:57 |
| S58 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S59 | 907 | S58 and 711/112$.ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S60 | 26 | S58 and 711/112$.ccls. and password | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S61 | 5 | ("5630093" | "6727894" | "5861873" | "6629184" | "5953199").pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:08 |
| S62 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S63 | 59 | S62 and (overwrite same (track and ("stor$5 device" | "disc drive" | "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S64 | 0 | S63 and (345/174 | 361/212 |710/306 | 711/115 | 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S65 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S66 | 484 | S65 and ((eras$4 same (track and ("stor$5 device" | "disc drive" | "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S67 | 2 | S66 and (345/174 | 361/212 |710/306 | 711/115 | 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:11 |
| S68 | 3388081 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:21 |
| S73 | 387 | S68 and ((( irretriev$8 | permanent$) with (clean$8 | remov$5)) same ((track | data | block$2 ) and (disc | disk) )) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:54 |
| S74 | 127 | S73 and edge | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |
| S75 | 27 | S73 and (edge same track) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |
| S76 | 13130 | S68 and ( write same ((sector track) and disk)) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:55 |
| S77 | 2083 | S76 and ((track | sector) same edge) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:57 |

MTI0001978

| S79 | 95 | S77 and (disk with clean) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/06/15 16:26 |
|------|------|------|------|------|------|------|
| S80 | 50 | (US-20030099456-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$). did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$). did. | US-PGPUB; USPAT | OR | ON | 2005/10/07 10:13 |
| S81 | 6 | bress-st$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/10/07 10:15 |
| S82 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:44 |
| S84 | 393 | S82 and ((operating adj4 system) same ((copi$3 copy duplicat$5) and format$6 and (file adj4 system))) | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:45 |
| S85 | 113 | S84 and (partition same (operating adj3 system)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:07 |
| S86 | 2 | "5826012".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:09 |
| S87 | 2 | "5559960".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:10 |

MTI0001979

| S88 | 64 | (US-20030018836-$ or US-20030099456-$ or US-20040184309-$ or US-20040186953-$ or US-20040186969-$ or US-20050182510-$ or US-20040015623-$ or US-20030023826-$ or US-20020166059-$ or US-20020162100-$ or US-20020103779-$ or US-20020095672-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$). did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$ or US-6920555-$ or US-6691213-$ or US-5826012-$).did. | US-PGPUB; USPAT | OR | ON | 2005/10/21 16:15 |
| S89 | 2 | "6691213".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 17:05 |
| S90 | 13 | ("5022077" \| "5355489" \| "5481754" \| "5657445" \| "5754821" \| "5809230" \| "5864698" \| "6035420" \| "6122733" \| "6154835" \| "6282647" \| "6385721" \| "6542979").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:23 |
| S91 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/22 08:24 |
| S94 | 0 | S91 and (ATA same DCO) | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:27 |

MTI0001980

Oct-27-05 01:47P flower valley press          301 654 1905          P.01

# FACSIMILE TRANSMITTAL

| | |
|---|---|
| **TO:** | **FROM:** |
| **Name:** Examiner D. Doan | **Name:** Steve Bress |
| USPTO | **Phone No.:** 202-487-8865 |
| **Fax No.:** (571) 273-8300 | **Fax # Verified by:** |
| **Phone No.:** 571-272-4210 | **# Pages** (incl. this): 5 |
| **Subject:** Remove Power of Attorney | **Date:** 10/14/2005 |

**Message:**

Re: U.S. Application of : Steven Bress et al.
    Application No.: 10/174,984
    Filed: June 20, 2002
    Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

Attached are the 4 SB82 forms to remove Power of Attorney.

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

MTI0001981

Best Available Copy

PTO/SB/82 (04-05)
Approved for use through 11/02/2005. OMB 6651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/174,984 |
| --- | --- | --- |
| | Filing Date | June 20, 2002 |
| | First Named Inventor | Steven Bress |
| | Art Unit | |
| | Examiner Name | Duc T. Doan |
| | Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

**OR**

☐ I hereby appoint the practitioners associated with the Customer Number:

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number:

**OR**

| ☑ Firm or Individual Name | Steven Bress |
| --- | --- |
| Address | 7851-C Beechcraft Avenue |
| City | Gaithersburg | State | MD | Zip | 20879 |
| Country | USA | | | | |
| Telephone | 301-208-8373 | Email | SBRESS@MSN.COM |

I am the:

☑ Applicant/Inventor.

☐ Assignee of record of the entire interest. See 37 CFR 3.71.
   Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

| SIGNATURE of Applicant or Assignee of Record | | |
| --- | --- | --- |
| Signature | *[signature]* | |
| Name | Micheal Menz | |
| Date | 10-23-05 | Telephone | 916-983-0348 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☑ *Total of 4 forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001982

Best Available Copy

PTO/SB/82 (04-05)
Approved for use through 11/30/2005. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS

| | |
|---|---|
| Application Number | 10/174,984 |
| Filing Date | June 20, 2002 |
| First Named Inventor | Steven Brass |
| Art Unit | |
| Examiner Name | Duc T. Doan |
| Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☐ I hereby appoint the practitioners associated with the Customer Number:

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number:

OR

| ☑ Firm or Individual Name | Steven Brass |
|---|---|
| Address | 7851-C Beechcraft Avenue |

| City | Gaithersburg | State | MD | Zip | 20879 |
|---|---|---|---|---|---|
| Country | USA | | | | |
| Telephone | 301-208-8373 | Email | SBRESS@MSN.COM |

I am the:

☑ Applicant/Inventor.

☐ Assignee of record of the entire interest. See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

### SIGNATURE of Applicant or Assignee of Record

| Signature | |
|---|---|
| Name | MARK MENZ |
| Date | 10-23-05 | Telephone | 916-983-0348 |

NOTE: Signatures of all inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☑ *Total of 4 forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001983

Best Available Copy

Oct-27-05 01:47P flower valley press          301 654 1905          P.04

PTO/SB/82 (04-05)
Approved for use through 11/30/2005. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/174,084 |
|---|---|---|
| | Filing Date | June 20, 2002 |
| | First Named Inventor | Steven Brass |
| | Art Unit | |
| | Examiner Name | Due T. Doan |
| | Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☐ I hereby appoint the practitioners associated with the Customer Number [          ]

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number [          ]

OR

| ☑ Firm or Individual Name | Steven Brass |
|---|---|
| Address | 7851-C Beachcraft Avenue |

| City | Gaithersburg | State | MD | Zip | 20879 |
|---|---|---|---|---|---|

| Country | USA |
|---|---|

| Telephone | 301-208-8373 | Email | SBRESS@MSN.COM |
|---|---|---|---|

I am the:

☑ Applicant/Inventor

☐ Assignee of record of the entire interest. See 37 CFR 3.71
   Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

SIGNATURE of Applicant or Assignee of Record

| Signature | [signature] |
|---|---|
| Name | Dan Bress |
| Date | 10/25/05 | Telephone | 301-208-8373 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☑ *Total of 4 forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001984

Best Available Copy

Oct-27-05 01:48P flower valley press          301 654 1905          P.05

PTO/SB/82 (04-05)
Approved for use through 11/30/2005. OMB 0551-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/174,984 |
| | Filing Date | June 20, 2002 |
| | First Named Inventor | Steven Brass |
| | Art Unit | |
| | Examiner Name | Duc T. Doan |
| | Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

*OR*

☐ I hereby appoint the practitioners associated with the Customer Number:

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number:

*OR*

| ☑ Firm or Individual Name | Steven Brass |
| Address | 7851-C Beechcraft Avenue |
| City | Gaithersburg | State | MD | Zip | 20879 |
| Country | USA | | | | |
| Telephone | 301-208-8373 | Email | SBRESS@MSN.COM |

I am the:

☑ Applicant/Inventor.

☐ Assignee of record of the entire interest. See 37 CFR 3.71.
   *Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)*

| SIGNATURE of Applicant or Assignee of Record | |
| Signature | *I. Brass* |
| Name | Steven Brass |
| Date | 10/26/05 | Telephone | 301-208-8373 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☑ *Total of 4 forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MTI0001985

Oct.-27-05 01:50P flower valley press          301 654 1905          P.01

RECEIVED
CENTRAL FAX CENTER

OCT 2 7 2005

## FACSIMILE TRANSMITTAL

| TO: | | FROM: | |
|---|---|---|---|
| Name: | Examiner D. Doan | Name: | Steve Bress |
| | USPTO | Phone No.: | 202-487-8865 |
| Fax No.: | (571) 273-8300 | Fax # Verified by: | |
| Phone No.: | 571-272-4210 | # Pages (incl. this): 5 | |
| Subject: | **Remove Power of Attorney** | Date: | 10/14/2005 |

Message:

Re: U.S. Application of . Steven Bress et al.
    Application No.: 10/174,984
    Filed: June 20, 2002
    Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

Attached are the 4 SB82 forms to remove Power of Attorney.

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is
privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in
error, please notify the sender immediately by telephone (collect), and return the original message by first-
class mail to the above address.

MTI0001986

BEST AVAILABLE COPY

Oct-27-05 01:50P flower valley press      301 654 1905      P.02
SENT BY: ;                    916+984+7713;      OCT-27-05 12:07;      PAGE 2/5

RECEIVED
CENTRAL FAX CENTER

OCT 27 2005

PTO/SB/83 (04-05)
Approved for use through 11/30/2005. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/174,484 |
| | Filing Date | June 20, 2002 |
| | First Named Inventor | Steven Brass |
| | Art Unit | |
| | Examiner Name | Duc T. Doan |
| | Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☐ I hereby appoint the practitioners associated with the Customer Number:

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number:

OR

| ☑ Firm or Individual Name | Steven Brass |
| Address | 7851-C Beechcraft Avenue |
| City | Gaithersburg | State | MD | Zip | 20879 |
| Country | USA |
| Telephone | 301-208-8373 | Email | SBRESS@MSN.COM |

I am the:

☑ Applicant/Inventor.

☐ Assignee of record of the entire interest. See 37 CFR 3.71
Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

| SIGNATURE of Applicant or Assignee of Record | | | |
| Signature | *signature* | | |
| Name | Micheal Menz | | |
| Date | 10-23-05 | Telephone | 916-993-0348 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☐ *Total of 4* forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0001987

Oct-27-05 01:50P flower valley press       301 654 1905        P.03
SENT BY: ;                      918+984+7713;        OCT.27 05 12:06;    PAGE 1/2

PTO/SB/82 (04-05)
Approved for use through 11/30/2005. OMB 0651-0035
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS

| Application Number | 10/174,984 |
|---|---|
| Filing Date | June 20, 2002 |
| First Named Inventor | Steven Breas |
| Art Unit | |
| Examiner Name | Duc T. Doan |
| Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☐ I hereby appoint the practitioners associated with the Customer Number:

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number:

OR

| ☑ Firm or Individual Name | Steven Breas |
|---|---|
| Address | 7861-C Beechcraft Avenue |
| City | Gaithersburg | State | MD | Zip | 20879 |
| Country | USA |
| Telephone | 301-208-8373 | Email | SBREAS@MSN.COM |

I am the:
☑ Applicant/Inventor.
☐ Assignee of record of the entire interest. See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

**SIGNATURE of Applicant or Assignee of Record**

| Signature | *[signature]* |
|---|---|
| Name | MARK MENZ |
| Date | 10-23-05 | Telephone | 916-983-0348 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☐ *Total of 4 forms are submitted.

MTI0001988

Oct-27-05 01:50P flower valley press          301 654 1905

RECEIVED
CENTRAL FAX CENTER

OCT 27 2005

PTO/SB/02 (04-05)
Approved for use through 11/30/2005. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS

| Application Number | 10/174,984 |
|---|---|
| Filing Date | June 20, 2002 |
| First Named Inventor | Steven Bress |
| Art Unit | |
| Examiner Name | Duc T. Doan |
| Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

*OR*

☐ I hereby appoint the practitioners associated with the Customer Number.

☐ Please change the correspondence address for the above-identified application to.

☐ The address associated with Customer Number

*OR*

| ☑ Firm or Individual Name | Steven Bress |
|---|---|
| Address | 7851-C Beechcraft Avenue |

| City | Gaithersburg | State | MD | Zip | 20879 |
|---|---|---|---|---|---|
| Country | USA | | | | |
| Telephone | 301-208-8373 | Email | SBRESS@MSN.COM | | |

I am the:

☑ Applicant/Inventor.

☐ Assignee of record of the entire interest. See 37 CFR 3.71
  Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96)

### SIGNATURE of Applicant or Assignee of Record

| Signature | |
|---|---|
| Name | DAN BRESS |
| Date | 10/25/05 | Telephone | 301-208-8373 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☑ *Total of 4 forms are submitted.*

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2*

MTI0001989

Oct-27-05 01:51P flower valley press          301 654 1905

RECEIVED
CENTRAL FAX CENTER

OCT 2 7 2005

Approved for use through 11/30/2005 OMB 0651-0035
PTO/SB/82 (04-05)
U.S. Patent and Trademark Office U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

<table>
<tr><td rowspan="6">REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS</td><td>Application Number</td><td>10/174,984</td></tr>
<tr><td>Filing Date</td><td>June 20, 2002</td></tr>
<tr><td>First Named Inventor</td><td>Steven Bress</td></tr>
<tr><td>Art Unit</td><td></td></tr>
<tr><td>Examiner Name</td><td>Duc T. Duan</td></tr>
<tr><td>Attorney Docket Number</td><td></td></tr>
</table>

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☐ I hereby appoint the practitioners associated with the Customer Number:

☐ Please change the correspondence address for the above-identified application to:

☐ The address associated with Customer Number:

OR

| ☑ | Firm or Individual Name | Steven Bress |
|---|---|---|
| | Address | 7851-C Beechcraft Avenue |
| | City | Gaithersburg | State | MD | Zip | 20879 |
| | Country | USA | | | | |
| | Telephone | 301-208-8373 | Email | SBRESS@MSN.COM | | |

I am the:

☑ Applicant/Inventor.

☐ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

### SIGNATURE of Applicant or Assignee of Record

| Signature | _signature_ | |
|---|---|---|
| Name | Steven Bress | |
| Date | 10/26/05 | Telephone | 301-208-8373 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☑ *Total of 4 forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1460.

If you need assistance in completing this form, call 1-800-PTO-9199 and select option 2.

MTI0001990



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

CONFIRMATION NO. 8535

| SERIAL NUMBER 10/174,984 | FILING DATE 06/20/2002 RULE | CLASS 711 | GROUP ART UNIT 2188 | ATTORNEY DOCKET NO. 0032-0002 |
|---|---|---|---|---|

APPLICANTS

Steven Bress, Germantown, MD;

Dan Bress, Germantown, MD;
Mike Menz, Roseville, CA;Mark Joseph Menz, Folsom, CA;

** CONTINUING DATA *************************
This appln claims benefit of 60/299,783 06/21/2001

** FOREIGN APPLICATIONS *********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** SMALL ENTITY **
** 07/16/2002

| Foreign Priority claimed | ☐ yes ☐ no | STATE OR | SHEETS | TOTAL | INDEPENDENT |
| 35 USC 119 (a-d) conditions met | ☐ yes ☐ no ☐ Met after Allowance | COUNTRY | DRAWING | CLAIMS | CLAIMS |
| Verified and Acknowledged | Examiner's Signature       Initials | MD | 10 | 45 | 5 |

ADDRESS
26615
HARRITY & SNYDER, LLP
11240 WAPLES MILL ROAD
SUITE 300
FAIRFAX , VA
22030

TITLE
Systems and methods for removing data stored on long-term memory devices

| FILING FEE RECEIVED 679 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other |

MTI0001991

## Index of Claims

| | | |
|---|---|---|
| Application/Control No. | | Applicant(s)/Patent under Reexamination |
| 10/174,984 | | BRESS ET AL. |
| Examiner | | Art Unit |
| Duc T. Doan | | 2188 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Claim | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/23/20 | | | | | | | |
| | 1 | √ | | | | | | | |
| | 2 | √ | | | | | | | |
| | 3 | √ | | | | | | | |
| | 4 | √ | | | | | | | |
| | 5 | √ | | | | | | | |
| | 6 | √ | | | | | | | |
| | 7 | √ | | | | | | | |
| | 8 | √ | | | | | | | |
| | 9 | √ | | | | | | | |
| | 10 | √ | | | | | | | |
| | 11 | √ | | | | | | | |
| | 12 | √ | | | | | | | |
| | 13 | √ | | | | | | | |
| | 14 | √ | | | | | | | |
| | 15 | √ | | | | | | | |
| | 16 | √ | | | | | | | |
| | 17 | √ | | | | | | | |
| | 18 | √ | | | | | | | |
| | 19 | √ | | | | | | | |
| | 20 | √ | | | | | | | |
| | 21 | √ | | | | | | | |
| | 22 | √ | | | | | | | |
| | 23 | √ | | | | | | | |
| | 24 | √ | | | | | | | |
| | 25 | √ | | | | | | | |
| | 26 | √ | | | | | | | |
| | 27 | √ | | | | | | | |
| | 28 | √ | | | | | | | |
| | 29 | √ | | | | | | | |
| | 30 | √ | | | | | | | |
| | 31 | √ | | | | | | | |
| | 32 | √ | | | | | | | |
| | 33 | √ | | | | | | | |
| | 34 | √ | | | | | | | |
| | 35 | √ | | | | | | | |
| | 36 | √ | | | | | | | |
| | 37 | √ | | | | | | | |
| | 38 | √ | | | | | | | |
| | 39 | √ | | | | | | | |
| | 40 | √ | | | | | | | |
| | 41 | √ | | | | | | | |
| | 42 | √ | | | | | | | |
| | 43 | √ | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

| Claim | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | | |
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |
| | 66 | | | | | | | | |
| | 67 | | | | | | | | |
| | 68 | | | | | | | | |
| | 69 | | | | | | | | |
| | 70 | | | | | | | | |
| | 71 | | | | | | | | |
| | 72 | | | | | | | | |
| | 73 | | | | | | | | |
| | 74 | | | | | | | | |
| | 75 | | | | | | | | |
| | 76 | | | | | | | | |
| | 77 | | | | | | | | |
| | 78 | | | | | | | | |
| | 79 | | | | | | | | |
| | 80 | | | | | | | | |
| | 81 | | | | | | | | |
| | 82 | | | | | | | | |
| | 83 | | | | | | | | |
| | 84 | | | | | | | | |
| | 85 | | | | | | | | |
| | 86 | | | | | | | | |
| | 87 | | | | | | | | |
| | 88 | | | | | | | | |
| | 89 | | | | | | | | |
| | 90 | | | | | | | | |
| | 91 | | | | | | | | |
| | 92 | | | | | | | | |
| | 93 | | | | | | | | |
| | 94 | | | | | | | | |
| | 95 | | | | | | | | |
| | 96 | | | | | | | | |
| | 97 | | | | | | | | |
| | 98 | | | | | | | | |
| | 99 | | | | | | | | |
| | 100 | | | | | | | | |

| Claim | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | | |
| | 101 | | | | | | | | |
| | 102 | | | | | | | | |
| | 103 | | | | | | | | |
| | 104 | | | | | | | | |
| | 105 | | | | | | | | |
| | 106 | | | | | | | | |
| | 107 | | | | | | | | |
| | 108 | | | | | | | | |
| | 109 | | | | | | | | |
| | 110 | | | | | | | | |
| | 111 | | | | | | | | |
| | 112 | | | | | | | | |
| | 113 | | | | | | | | |
| | 114 | | | | | | | | |
| | 115 | | | | | | | | |
| | 116 | | | | | | | | |
| | 117 | | | | | | | | |
| | 118 | | | | | | | | |
| | 119 | | | | | | | | |
| | 120 | | | | | | | | |
| | 121 | | | | | | | | |
| | 122 | | | | | | | | |
| | 123 | | | | | | | | |
| | 124 | | | | | | | | |
| | 125 | | | | | | | | |
| | 126 | | | | | | | | |
| | 127 | | | | | | | | |
| | 128 | | | | | | | | |
| | 129 | | | | | | | | |
| | 130 | | | | | | | | |
| | 131 | | | | | | | | |
| | 132 | | | | | | | | |
| | 133 | | | | | | | | |
| | 134 | | | | | | | | |
| | 135 | | | | | | | | |
| | 136 | | | | | | | | |
| | 137 | | | | | | | | |
| | 138 | | | | | | | | |
| | 139 | | | | | | | | |
| | 140 | | | | | | | | |
| | 141 | | | | | | | | |
| | 142 | | | | | | | | |
| | 143 | | | | | | | | |
| | 144 | | | | | | | | |
| | 145 | | | | | | | | |
| | 146 | | | | | | | | |
| | 147 | | | | | | | | |
| | 148 | | | | | | | | |
| | 149 | | | | | | | | |
| | 150 | | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. 20051019

MTI0001992



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

26615    7590    10/31/2005

HARRITY & SNYDER, LLP
11240 WAPLES MILL ROAD
SUITE 300
FAIRFAX, VA  22030

| EXAMINER | |
|---|---|
| DOAN, DUC T | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2188 | |

DATE MAILED: 10/31/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

MTI0001993

| *Office Action Summary* | Application No. | Applicant(s) |
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit | |
| | Duc T. Doan | 2188 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on <u>03 June 2005</u>.

2a)☒ This action is FINAL.     2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-43</u> is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-43</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All   b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

MTI0001994

Application/Control Number: 10/174,984                                    Page 2
Art Unit: 2188

*DETAIL ACTION*

Copy to applicant

*Status of Claims*

*Response to Amendment*

Claims 1-45 were pending in this application. In response to the last office action, claims

43-45 were canceled, claims 1,2,22,29,36 were amended. As a result, claims 1-43 are remain

pending in this application.

Applicant's arguments filed June 3, 2005 have been fully considered but they are not

persuasive. Therefore, the rejections from the previous office action are respectfully maintained

and restated below, with changes as needed to address the amendments.

*Claim Objections*

Claims 1 and 24 are objected to because of the following informalities: full names of

abbreviated signals (CA) should be used for the initial recitation in the claims. Appropriate

correction is required.

*Claim Rejections - 35 USC # 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making

and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it

MTI0001995

Application/Control Number: 10/174,984                                              Page 3
Art Unit: 2188

pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode

contemplated by the inventor of carrying out his invention.

### U.S.C. 112, second paragraph

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claim 2 rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to

particularly point out and distinctly claim the subject matter which applicant regards as the

invention. It's unclear how the control circuit is an operating system independent circuit.

Examiner notices that the specification's Fig 4, pages 13 describes the cleaning device and

control circuitry (Fig 4: #320) comprise of embedded processor and memory

(ROM,EEPROM,RAM), it appears that the cleaning device with the embedded processor in the

instant application functions as portable computer. It has been well known in the art that a

computer requires an operation system in order to be operable.

All dependent claim(s) are rejected as having the same deficiencies as the claims they

depend from.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior

MTI0001996

Application/Control Number: 10/174,984                                              Page 4

Art Unit: 2188

art are such that the subject matter as a whole would have been obvious at the time the invention was made

to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be

negatived by the manner in which the invention was made.

Claim 1-3,13,14,18-23,26-30,33-35,43-44 and 45 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Holzhammer et al (US 5630093), in view of Schmidt (The SCSC Bus

and IDE Interface, Addison-Wesley, 1995)

As for claim 1, Holzhammer describes a stand-alone device for removing data (erase)

from a long-term memory component, comprising: an interface (Fig 4: #104 buffer/mux) for

connecting the stand-alone device  (Fig 4: #92 hardware controller) to the long-term memory

component (Holzhammer's Fig 4: #96 Flash array) [Controller 92 also includes

buffer/multiplexer 104. Buffer/multiplexer 104 provides buffering for the transferring of files.

Buffer/multiplexer 104 also multiplexes data passed to and from flash memory array 96;

Holzhammer's column 8, lines 37-39; Another way to minimize the adverse effects of hot

block/cold block interaction is to periodically erase and reprogram the cold blocks of flash array

34; Holzhammer's column 7, lines 15-19];

a control circuit (Fig 4: #100 micro-controller) configured to control the long-term memory

component through the interface to remove data from the long-term memory component

[Controller 92 is specifically dedicated to defining and controlling the file structure for flash

memory array 96.  Controller 92 includes a microcontroller 100 for overseeing control;

Holzhammer's column 8, lines 18-20; It is to be appreciated that for the embodiments shown in

FIGS. 2-4, flash memories arrays 34, 64, and 96 could be used to replace either fixed disk drives

or floppy disk drives; Holzhammer's column 10, lines 63-65];

MTI0001997

Application/Control Number: 10/174,984                                   Page 5
Art Unit: 2188

the claim recites a user controllable physical switch that, when actuated by a user, causes the

control circuit to commence removing the data from the long-term memory component.

Holzhammer describes an intelligent controller (Fig 4: #92) capable of clean-up a device (Fig 4:

# 96 Flash array) when triggered by a user request [In one embodiment of the invention, a clean-

up operation can be triggered either if (1) the available flash storage capacity drops to a certain

(configurable) limit; (2) a user explicitly requests a cleanup, wherein the cleanup is performed by

a special clean-up utility program, such as a terminate and stay resident program in RAM of the

personal computer system; or (3) a (configurable) time interval has passed that triggers the clean-

up.  A clean-up operation is also referred to as a reclamation cycle; Holzhammer's column 13,

lines 22-31].

Holzhammer does not describe the claim's irretrievably aspect of removing the data from the

long term memory component. However, Schmidt teaches a low level format track IDE/ATA

command that creates a track on the disk surface and overwrites data   [The ATA standard

recommends that drives should at least write the sector with a data pattern; Schmidt's page 68,

lines 4-5]. It would have been obvious to one of ordinary skill in the art at the time of invention

to include low level format procedures as suggested by Schmidt in Holzhammer's system to

completely erase all data for security reason [In this way formatting will always erase all data,

which is desirable for security reason; Schmidt's page 68, lines 5-6].  As for the claim's aspect of

a stand alone device, it has been known that devices to transfer data to the storage media of a

computer are designed to be either inside or stand-alone outside. For example, digital camera,

portable computer, portable CD burner, USB external memory device are designed as external

devices for the advantage of portability and the device have physical switches to power up and to

MTI0001998

Application/Control Number: 10/174,984                                             Page 6
Art Unit: 2188

control features in a conveniently manner. As for the claim's aspect of a physical switch that when activated would start a process of loading a program and executing it, this technique has been know in the art. For example, when the computer is powered on, the computer automatically loads and executes the antivirus program, scanning the disk for malicious code. It would have been obvious to one of ordinary skill in the art at the time of the invention to start running the clean-up procedure when the clean-up device is started thereby the cleaning process can be further automated for user. Examiner further notices that the specification's Fig 4, pages 13 describes the cleaning device and control circuitry (Fig 4: #320) comprise of processor and memory (ROM,EEPROM,RAM), it appears that the cleaning device with the embedded processor in the instant application functions as portable computer.

As for claim 3, the claim rejected based on the same rationale as in claim 1.

As for claim 13, Holzhammer describes the device of claim 1, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable [a (configurable) time interval has passed that triggers the clean up. Holzhammer's column 13, lines 28-31].

As for claim 14, Holzhammer describes the device of claim 1, wherein the interface connects the device to a plurality of long-term memory component (an array of flash memory modules; Fig 4: #96).

As for claims 18-21, the claims recite the control circuit partitions the long term memory component after irretrievably removing the data; wherein the control circuit formats the long term memory component for a specific file system; wherein the control circuit copies an operating system to the long-term memory component; wherein the control circuit verifies the

MTI0001999

Application/Control Number: 10/174,984                                      Page 7
Art Unit: 2188

long term memory component after removing the data from the long-term memory component.

Holzhammer describes an operating system is stored in a partitioned area of a hard disk

(Holzhammer's column's 2, lines 35-6). Thus it's obvious the operating system must be copied

to the disk after the disk is prepared for a subsequent boot loading program [The boot record 3

includes a bootstrap loader program for loading the operating system; Holzhammer's column 2,

lines 59-60].

Holzhammer does not describe commands to prepare the disk. However Schmidt describes IDE

commands: format tracks command to format entire tracks (Schmidt's page 68, lines 6); and read

verify sectors command to verify whether or not the sectors are readable (Schmidt's page 69,

lines 24-27). It would have been obvious to one of ordinary skill in the art at the time of

invention to include the commands as suggested by Schmidt in Holzhammer's system to prepare

the disk for receiving the data [A hard disk and a diskette are formatted before first being used.

Low-level formatting divides each track into sectors and places identification ("ID") sector

headers at uniform positions around the track. A high-level formatting establishes the clusters,

initializes some disk areas, and prepares the disk for receiving data; Holzhammer's column 2,

lines 39-50].

    As for claims 22, 29, and 43, they are rejected based on the same rationale as in claims 1.

    As for claims 23, 30 and 45, the rejection of claim 1 is incorporated herein. Holzhammer

further describes the disk drive and flash memory array are interchangeable, and using an IDE

interface (Holzhammer's column 10, lines 63-65; column 8,lines 53-65].

    Claims 26 and 33 rejected based on the same rationale as in claim 3.

    Claims 27 and 34 rejected based on the same rationale as in claim 13.

MTI0002000