# EXHIBIT J-2

Application/Control Number: 10/174,984                                    Page 8
Art Unit: 2188

Claims 28,35 and 44 rejected based on the same rationale as in claim 20.

Claims 4-6,24,31,36,39,41 and 42 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE

Interface, Addison-Wesley, 1995) as applied to claim 1, and further in view of Karidis et al (US

6727894), and Kikinus (US 5861873).

As for claims 4 and 5, the claims recite the device of claim 1, further comprising: a

casing configured to contain the control circuit and the interface, the user controllable switch

being mounted on the casing, the casing being of a size that is portable by the user; wherein the

casing is a rectangular casing that is 8.5". times.10".times.1.5" or smaller. Holzhammer describes

the controller can be an I/O device that resides external to personal computer system [In an

alternative embodiment, controller 92 can be an input/output ("I/O") device that resides external

to personal computer system 70 or within an expansion slot (not shown) of personal computer

system 70. Holzhammer's column 8, lines 53-56], the i/o device connects to personal computer

by an IDE interface (Holzhammer's column 8, lines 55-65). Thus, obviously the controller is

enclosed in a casing. Holzhammer's does not describe the dimension for the casing. However,

Kikinus describes a portable computer encased in a rectangular size of 8.5 "x 5.5" [Computer

221 is approximately the size of one-half a standard piece of paper (approximately 5.5 inches by

8.5 inches) and in a preferred embodiment comprises a planar array of four Personal Computer

Memory Card International Association (PCMCIA) Type II module bays in a case 223;

Kikinus's column 11, lines 43-49]. Kikinus is silent on the thickness of the device. However,

Karidis describe a thin profile casing of thickness about 1 cm [For instance, the thickness of

MTI0002001

Application/Control Number: 10/174,984                                        Page 9
Art Unit: 2188

system 2000 may be substantially determined by the thickness of the packaged keyboard (e.g.,

typically in the approximate range of 5-10 mm) plus the thickness of display 202 (e.g., usually in

the approximate range of 5-10 mm); Kardis's column 19, lines 32-36]. It would have been

obvious to one of ordinary skill in the art at the time of invention to include the casing as

suggested by Karidis and Kikinus in Holzhammer's system to obtain a slim attractive package [A

still further need exists for a device embodying such features to be portable and conveniently,

compactly, and attractively packaged; Karidis's column 2, lines 14-16].

     As for claim 6, the rejection of claim 4 is incorporated herein. Holzhammer describes

LED lights providing feedback relating to an operational status of the device (background task)

to the user [personal computer system 70 includes an indicator light-emitting diode ("LED") that

is lit when a background task involving flash memory array 96 is occurring. The user of

personal computer 70 is instructed not to remove flash memory array 96 when the LED is lit and,

accordingly, when a background task is occurring; Holzhammer's column 10, lines 48-53].

     Claims 24 and 31 rejected based on the same rationale as in claim 6.

     Claims 36, 39-42 rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093) in view of Schmidt (The SCSC Bus and IDE Interface,

Addison-Wesley, 1995), Karidis et al (US 6727894) and Kikinus (US 5861873).

     Claim 36 rejected based on the same rationale as in claims 1,4 and 5.

     Claim 39 rejected based on the same rationale as in claim 5.

     Claim 41 rejected based on the same rationale as in claim 1.

     Claim 42 rejected based on the same rationale as in claim 3.

MTI0002002

Application/Control Number: 10/174,984                                        Page 10

Art Unit: 2188

Claims 7-8 and 40 rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-

Wesley, 1995), Karidis et al (US 6727894) and Kikinus (US 5861873) as applied to claims 4 and

36 respectively, and further in view of Berg et al (US 6629184).

As for claims 7 and 8, the claims recite a cable connected to the interface, the cable being

configured to connect to the long-term memory component; wherein the cable is an Integrated

Device Electronics (IDE) cable. Holzhammer describes an IDE interface connect to the flash

memory array [For that alternative embodiment, the logic associated with buffer/multiplexer 104

can conform to any standard I/O interface.  For example, buffer/multiplexer 104 can conform to

one or more of the following I/O interfaces: IDE, ST506, SCSI (i.e., Small Computer System

Interface), and SA400 (i.e., a floppy disk standard).  Thus, for that alternative embodiment,

personal computer 70 would communicate with controller 92 by way of one of those standard

I/O interfaces; Holzhammer's column 8, lines 53-65]. Holzhammer does not describe the

connection via an IDE cable. However Berg describes the adapter board has power cables and

corresponding IDE cables connecting to hard disk drive [Fig 4, In addition, power connector 94

is a 4-pin male connector that mates with and receives power from 4-pin female connector 96 of

power cable 98. Berg's column 6, lines 53-55]. It would have been obvious to one of ordinary

skill in the art at the time of invention to include the cable as suggested by Berg in

Holzhammer's system to provide an economical bus interface [The success of IDE and SCSI can

be attributed to the availability of economical bus interface components and the fact that a simple

ribbon cable can be used to interconnect the devices. Berg's column 2, lines 15-18].

Claim 40 rejected based on the same rationale as in claim 8.

MTI0002003

Application/Control Number: 10/174,984                                    Page 11
Art Unit: 2188

Claims 9 and 37 rejected under 35 U.S.C. 103(a) as being unpatentable over Holzhammer

et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley, 1995),

Karidis et al (US 6727894), and Kikinus (US 5861873) as applied to claims 4 and 36

respectively, and further in view of Owens (US 5953199).

As for claim 9, the claim recites the device of claim 4, further comprising: an anti-static

pad positioned on an external side of the casing and configured to support the long-term memory

component during removal of the data from the long-term memory component. Holzhammer

Schmitdt, Karidis and Kikinus do not describe an anti-static pad. However, Owens describes a

touch pad cover made of anti-static material [As seen in FIG. 1-A, a fabric layer 8 covers the

upper surface 2 of neoprene touch pad cover 1. The fabric layer 8 is integral with the upper

surface 2 and is attached by means such as by lamination. The fabric layer 8 is made of an anti-

static fabric to aid in the shielding process; Owens's column 2, lines 61-65]. It would have been

obvious to one of ordinary skill in the art at the time of invention to include the anti-static pad as

suggested by Owens in Holzhammer's system to shield the internal components of static

discharges from the user [it has been found that a novel touch pad cover may be provided for the

protection of a Laptop/Notebook computer touch pad from environmental conditions, such as

static electricity from the computer monitor and static discharges from the user, which cause

touch pads to malfunction from time to time; Owens's column 2, lines 52-57].

Claim 37 rejected based on the same rationale as in claim 9.

MTI0002004

Application/Control Number: 10/174,984                                    Page 12

Art Unit: 2188

Claims 10-12,25,32 and 38 rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-

Wesley, 1995) as applied to claims 1,22,29 and 36 respectively and further in view of Berg et al

(US 6629184).

As for claims 10,11 and 12, the claims recite a power supply configured to supply power

to the control circuit; a drive power cord emanating from the casing and configured to supply

power from the power supply to the long-term memory component; wherein the switch, when

actuated by the user, causes the control circuit to commence irretrievably removing all the data

stored on the long-term memory component. Holzhammer describes a supply configured to

supply power to the control circuit [In one embodiment, controller 92 is coupled to a small

battery that provides back-up power to controller 92 if power to personal computer system 70 is

removed; Holzhammer's column 10, lines 54-57]. Holzhammer does not describe a power cord

and a switch. However, Berg describes a control circuit (Fig 10: #100 adapter board)

communicating with host computer and data storage device with IDE interface (Berg's column

8, lines 4-8]. Berg further describes the adapter board has power cables and corresponding IDE

cables connecting to hard disk drive [Fig 4, In addition, power connector 94 is a 4-pin male

connector that mates with and receives power from 4-pin female connector 96 of power cable

98. Berg's column 6, lines 53-55]. Berg describes a switch controlled by a user to enable

function of the control circuit. [In one embodiment, the interface circuit includes an external

device that permits a user to enable and disable the command-inhibit function of the control

circuit; The external device can be a mechanical switch or a pair of jumper pins; Berg's column

3, lines 42-44, 52-53]. It would have been obvious to one of ordinary skill in the art at the time

MTI0002005

Application/Control Number: 10/174,984                                        Page 13
Art Unit: 2188

of invention to include the power cable and the switch as suggested by Berg in Holzhammer's

system to provide power to the hard disk drive and to enable the function of the control circuit

at power up time. [Thus, IDE bus 24 provides the IDE interface for hard disk drive 20, and

power cable 98 provides the electrical power to hard disk drive 20; Berg's column 6, lines 56-

58; When the write-inhibit function is enabled (i.e., jumper 110 is installed at power-up), PAL

130 selectively controls data switch 132 to route the reserved command (01h), rather than the

inhibited IDE commands (3xh, C5h, CAh, CBh), to connector 104; Berg's column10, lines 58-

63]

     Claims 25 and 32 rejected based on the same rationale as in claim 12.

     Claim 38 rejected based on the same rationale as in claims 10 and 11.


     Claims 15-17 rejected under 35 U.S.C. 103(a) as being unpatentable over Holzhammer

et al (US 5630093) and Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley, 1995) as

applied to claim 1, and further in view of Assaf (US 5966732).

     As for claims 15-17, the claims recite the control circuit is further configured to release

hidden data (data in the reserve area) on the long-term memory component before irretrievably

removing the data; wherein the control circuit releases the hidden data without user

intervention; wherein the control circuit notifies a user when the hidden data requires a

password for release. Holzhammer does not describe the claims' detail of processing hidden

data on the disk. However, Assaf describes a method of setting up the password to enable

commands for manipulate data in the reserve area, for example command to read the size of the

reserve area (Assaf's column 4, lines 17-43; the READ NATIVE MAX LBA/CYL command);

MTI0002006

Application/Control Number: 10/174,984                                    Page 14
Art Unit: 2188

Thus when the control circuit execute these commands, a password is required. It would have been obvious to one of ordinary skill in the art at the time of invention to include the method as suggested by Assaf in Holzhammer's system to prevent overwritting of critical information written to the original reserve area by the original equipment manufacturer [Thus the modifications will not reduce the size of the reserve area to an area that is smaller than the original reserve area as set up by the manufacturer of the disk drive. This prevents overwriting of critical information written to the original reserve area by the original equipment manufacturer; Assaf's column 4, lines 53-58].

### Response to Arguments

Applicant's arguments filed January 16, 2001 have been fully considered but they are not persuasive. Examiner respectfully traverses Applicant's arguments for the following reasons:

As to the remarks on pages 14-15 for claim 1, regarding the automating a process, this technique has been know in the art. For example, when the computer is powered on, the computer automatically loads and executes the antivirus program, scanning the disk for malicious code. It would have been obvious to one of ordinary skill in the art at the time of the invention to start running the clean-up procedure when the clean-up device is started thereby the cleaning process can be further automated for user. Examiner further notices that the specification's Fig 4, pages 13 describes the cleaning device and control circuitry (Fig 4: #320) comprise of processor and memory (ROM,EEPROM,RAM), it appears that the cleaning device with the embedded processor in the instant application functions as portable computer.

MTI0002007

Application/Control Number: 10/174,984                                            Page 15

Art Unit: 2188

As for claim 2, it's unclear how the control circuit is an operating system independent circuit. Examiner notices that the specification's Fig 4, pages 13 describes the cleaning device and control circuitry (Fig 4: #320) comprise of embedded processor and memory (ROM,EEPROM,RAM), it appears that the cleaning device with the embedded processor in the instant application functions as portable computer. It has been well known in the art that a computer requires an operation system in order to be operable.

As to the remarks on pages 17-18, the benefit of portability and automate functions in a device such as portable computer have been addressed in the above paragraphs. The function of the LED to provide feedback relating to an operational status of the device to the user as described by Holzhammer in column 10, lines 48-53 deems to meet the claim's limitation.

As to the remark on pages 19-20, the antistatic pad functions to provide discharging the static charge from external source whenever the external source (such as a user) touching the antistatic pad, By discharging the static charge of the external source, the charge would not transfer beyond the static pad, thereby the antistatic pad protect the circuits inside the device.

As to the remark to claims 15-17 on pages 21-22, the argument recites ".. the option of decoding and releasing a Device Configuration Overlay (DCO) area..". Examiner cannot find anywhere in the specification that describes the Device Configuration Overlay (DCO) area. The rationale in the rejection of claims 15-17 thus deem to meet the claims' limitations.

*Conclusion*

Application/Control Number: 10/174,984                                    Page 16
Art Unit: 2188

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

Applicant's amendment filed 8/18/03 necessitated the new ground(s) of rejection

presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP

706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within TWO

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the mailing

date of this final action.

When responding to the office action, Applicant is advised to provide the examiner with

the line numbers and page numbers in the application and/or references cited to assist examiner

to locate the appropriate paragraphs.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Duc T. Doan whose telephone number is 571-272-4171. The

examiner can normally be reached on M-F 8:00 AM 05:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Mano Padmanabhan can be reached on 571-272-4210. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

MTI0002009

Application/Control Number: 10/174,984                                    Page 17
Art Unit: 2188

      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Kevin L. Ellis
Primary Examiner

*Search Notes*

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/174,984 | BRESS ET AL |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES
### (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| update searhc (see search history printout) | 10/23/2005 | DD |
| | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Part of Paper No. 20051019

MTI0002011



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 |

**CONFIRMATION NO. 8535**

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD 20879

*OC000000017370282*

Date Mailed: 11/01/2005

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 10/27/2005.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

CHRISTINA HARRISON
PTOSS ()-

OFFICE COPY

MTI0002012



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO /TITLE |
|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 |

26615
HARRITY & SNYDER, LLP
11240 WAPLES MILL ROAD
SUITE 300
FAIRFAX, VA 22030

CONFIRMATION NO. 8535

*OC000000017370257*

Date Mailed: 11/01/2005

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 10/27/2005.

• The Power of Attorney to you in this application has been revoked by the applicant. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

.....................................................................................................................................................

CHRISTINA HARRISON
PTOSS ()-

OFFICE COPY

MTI0002013

01/31/2006  15:32   3019906437                FLOWER_VALLEY_PRESS                    PAGE  01

RECEIVED
CENTRAL FAX CENTER

JAN 3 1 2006

# FACSIMILE TRANSMITTAL

| TO: | | FROM: | |
|---|---|---|---|
| Name: | Examiner D. Doan | Name: | Steve Bress |
| | USPTO | Phone No.: | 202-487-8865 |
| Fax No.: | (571) 273-8300 | Fax # Verified by: | |
| Phone No.: | 571-272-4210 | # Pages (incl. this): 24 | |
| Subject: | After Final Amendment | Date: | 01/31/2006 |

**Message:**

Re: U.S. Application of : Steven Bress et al.
Application No.: 10/174,984
Filed: June 20, 2002
Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

MTI0002014

RECEIVED
CENTRAL FAX CENTER

JAN 3 1 2006

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent Application of Steven Bress et al | )  Mail Stop: AF |
| | ) |
| | )  Group Art Unit: 2188 |
| | ) |
| Application No.: 10/174,984 | )  Examiner: D. Doan |
| | ) |
| Filed:  June 20, 2002 | ) |
| | ) |
| For:  SYSTEMS AND METHODS FOR | ) |
| REMOVING DATA STORED ON | ) |
| LONG TERM MEMORY DEVICES | ) |
| | ) |

## AMENDMENT AFTER FINAL

U.S. Patent and Trademark Office
Customer Window, Mail Stop AF
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

Sir:

·In response to the final Office Action, dated October 31, 2005, and pursuant to 37

C.F.R. § 1.116, Applicants propose amending the present application as follows.

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 11 of this paper.

MTI0002015

Serial Number: 10/174,984

**Amendments to the Claims**:

This listing of claims will replace all prior versions, and listings, of claims in the application:

    1.    (currently amended)  A <u>stand-alone, dedicated function</u> device for removing data from a long-term memory component, comprising:

    an interface for connecting the <u>stand-alone, dedicated function</u> device to the long-term memory component;

    a control circuit configured to control the long-term memory component through the interface to irretrievably remove data from the long-term memory component; and

    a user controllable <u>physical</u> switch that, when actuated by a user, causes the control circuit to commence irretrievably removing the data from the long-term memory component.

    2.    (currently amended)  The device of claim 1, wherein the control circuit is a circuit dedicated to the permanent removal of the data from the long-term memory component<u>; without regard to data content or data storage format of the data on the long-term memory component</u> .

    3.    (original)  The device of claim 1, wherein the control circuit

2

MTI0002016

Serial Number: 10/174,984

irretrievably removes the data from the long-term memory component by overwriting the data on tracks of the long-term memory component.

4.      (original)  The device of claim 1, further comprising:

a casing configured to contain the control circuit and the interface, the user controllable switch being mounted on the casing, the casing being of a size that is portable by the user.

5.      (canceled)

6.      (currently amended)  The device of claim 4, further comprising:

Light Emitting Diodes (LED) lights mounted on the casing and providing feedback relating to an operational status of the device to the user.

7.      (canceled)

8.      (canceled) .

9.      (canceled)

10.      (original)  The device of claim 1, further comprising:

3

MTI0002017

Serial Number: 10/174,984

a power supply configured to supply power to the control circuit.

11. (original) The device of claim 10, further comprising:

a drive power cord emanating from the casing and configured to supply power from the power supply to the long-term memory component.

12. (original) The device of claim 1, wherein the switch, when actuated by the user, causes the control circuit to commence irretrievably removing all the data stored on the long-term memory component.

13. (original) The device of claim 1, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

14. (original) The device of claim 1, wherein the interface connects the device to a plurality of long-term memory components.

15. (original) The device of claim 1, wherein the control circuit is further configured to release hidden data on the long-term memory component before irretrievably removing the data.

4

MTI0002018

Serial Number: 10/174,984

16.    (original)  The device of claim 15, wherein the control circuit releases the hidden data without user intervention.

17.    (original)  The device of claim 15, wherein the control circuit notifies a user when the hidden data requires a password for release.

18.    (original)  The device of claim 1, wherein the control circuit partitions the long-term memory component after irretrievably removing the data.

19.    (original)  The device of claim 18, wherein the control circuit formats the long-term memory component for a specific file system.

20.    (original)  The device of claim 19, wherein the control circuit copies an operating system to the long-term memory component.

21.    (original)  The device of claim 1, wherein the control circuit verifies the long-term memory component after removing the data from the long-term memory component.

22.    (currently amended)  A method of irretrievably deleting data by a stand-alone, dedicated function cleaning device from a long-term memory

5

MTI0002019

Serial Number: 10/174,984

component installed in a computer, the method comprising:

connecting a cable associated with the <u>stand-alone, dedicated function</u> cleaning device to the long-term memory component in the computer;

powering-up the computer;

activating the <u>stand-alone, dedicated function</u> cleaning device via a <u>physical</u> switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component.

23. (original) The method of claim 22, wherein the long-term memory component is a disk drive.

24. (original) The method of claim 22, wherein signaling completion of the data removal is performed via one or more light emitting diodes (LEDs).

25. (original) The method of claim 22, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

26. (original) The method of claim 22, wherein the data from the long-

6

MTI0002020

Serial Number: 10/174,984

term memory component is removed by overwriting the data on tracks of the long-term memory component.

27.    (original)  The method of claim 22, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

28.    (original)  The method of claim 22, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

29.    (currently amended)  A method of irretrievably deleting data by a stand-alone, dedicated function cleaning device from a long-term memory component, the method comprising:

connecting a cable associated with the stand-alone, dedicated function cleaning device to the long-term memory component;

connecting a power cable attached to the stand-alone, dedicated function cleaning device to the long-term memory component;

activating the stand-alone, dedicated function cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

7

MTI0002021

Serial Number: 10/174,984

signaling completion of the data removal from the long-term memory component.

30.    (original)  The method of claim 29, wherein the long-term memory component is a disk drive.

31.    (original)  The method of claim 29, wherein signaling completion of the data removal includes illuminating one or more light emitting diodes (LEDs).

32.    (original)  The method of claim 29, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

33.    (original)  The method of claim 29, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.

34.    (original)  The method of claim 29, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is user settable.

8

MTI0002022

Serial Number: 10/174,984

35.     (original) The method of claim 29, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

36.     (currently amended)  A <u>stand alone, dedicated function</u> device for removing data from a long-term memory component, comprising:

means for providing feedback relating to an operational status of the device to a user;

a user settable switch;

an interface for connecting to the long-term memory component; and

circuitry coupled to the means for providing feedback, the user settable switch, and the interface, the circuitry configured, when the switch is actuated by a user, to communicate with the long-term memory component through the interface and control the long-term memory component to irretrievably remove the data therefrom,

wherein the circuitry is enclosed in a portable casing, and the user settable switch and the interface are mounted on an external portion of the casing.

37.     (canceled)

9

MTI0002023

Serial Number: 10/174,984

38.    (original) The device of claim 36, further comprising:

a power supply configured to supply power to the circuitry; and

a drive power cord emanating from the casing, the drive power cord

receiving power from the power supply.

39.    (canceled)

40.    (canceled).

41.    (original) The device of claim 36, wherein the circuitry includes an

embedded microprocessor.

42.    (original) The device of claim 36, wherein the circuitry irretrievably

removes the data from the long-term memory component by controlling

overwriting of the data on tracks of the long-term memory component.

Claims 43-45 (canceled)

Remarks

In the Office Action of October 31, 2005, the Examiner rejected claim 2

10

MTI0002024

Serial Number: 10/174,984

under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention; rejected claims 1-3, 13, 14, 18-23, 26-30, 33-35, 43-44, and 45 under 35 U.S.C. § 103(a) in view of U.S. Patent No. 5,630,093 to Holzhammer et al. ("Holzhammer") in view of "The SCSI Bus and IDE Interface," Friedhelm Schmidt ("Schmidt"); rejected claims 4-6, 24, and 31, 36, 39, 41 and 42 under 35 U.S.C. § 103(a) in view of Holzhammer and Schmidt, and further in view of U.S. Patent No. 6,727,894 to Karidis et al. and U.S. Patent No. Kikinus ("Kikinus"); rejected claims 7, 8, and 40 under 35 U.S.C. § 103(a) in view Holzhammer, Schmidt, Karidis, Kikinus, and U.S. Patent No. 6,629,184 to Berg et al. ("Berg"); rejected claims 9 and 37 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, Karidis, Kikinus, and U.S. Patent No. 5,953,199 to Owens ("Owens"); rejected claims 10-12, 25, 32, and 38 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and Berg; and rejected claims 15-17 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and Berg; and rejected claims 15-17 under 35 U.S.C. § 103(a) in view of Holzhammer, Schmidt, and further in view of U.S. Patent No. 5,966,732 to Assaf ("Assaf").

By this Amendment, Applicants have amended claims 1, 2, 6, 22, 29 and 36 to more appropriately define the invention. Claims 5, 7-9, 37, 39, 40, 43-45 have been canceled without prejudice or disclaimer.

11

MTI0002025

Serial Number: 10/174,984

*Rejection of Claim 2 under 35 U.S.C. 112, second paragraph*

The amendments to claim 2 emphasize that the device is able to
irretrievably remove data from the long-term memory component, regardless of
what operating system had been used to format and store data on the long-term
memory component, and regardless of what data is on the long-term memory
component. That is, the device is able to irretrievably remove data from disks
formatted by Mac, Windows, Linux or any other operating system.

According to wikipedia (http://en.wikipedia.org/wiki/Operating_system)
"Early computers lacked operating systems. A human **operator** would manually
load and run programs. When programs were developed to load and run other
programs, it was natural to draw their name from the human job they replaced.

Most current usage of the term "operating system" today, by both popular and
professional sources, refers to all the software that is required in order for the
user to manage the system and to run third-party application software for that
system…" Note that the current device is not running third-party application
software.

In very rough terms the current device is similar to an iPod Shuffle
(http://www.apple.com/ipod/). Both the current device and an iPod Shuffle
comprise an embedded processor and memory, both are stand-alone, dedicated
function devices, but neither of them has the functionality of a portable computer.
A further differentiation from the current device and a portable computer is in the

MTI0002026

Serial Number: 10/174,984

number of components required to manufacture them. Our current device is composed of less components than a portable computer.

Claim 2 states "wherein the control circuit is a circuit dedicated to the permanent removal of the data from the long-term memory component..." please note Applicant's use of the term "control circuit". Note that an iPod Shuffle is capable of being connected to a hard drive for the purposes of downloading files, but again, this does not expand its functionality to that of a portable computer. The fact that our current device can interact with a long-term storage device, such as a hard drive, should not be mistaken for the functionality of a portable computer. One knowledgeable in the art would define a Portable Computer as a device that is capable of running third-party software. The current device cannot run third-party software.

When an iPod Shuffle is turned on, it plays music. When our current device is turned on it permanent removes data from a long-term memory component. Neither an iPod nor our device can be used to run word-processing software to write a memo, or many other functions that a Portable Computer has.

*Rejection of Claims 1-3, 13, 14, 18-23, 26-30, and 33-35 In View of Holzhammer and Schmidt*

Claim 1 is directed to a device for removing data from a long term memory component. The amendments to claim 1 emphasize that the device is a stand-

13

MTI0002027

Serial Number: 10/174,984

alone, dedicated function device that includes a physical switch. The switch, when actuated by a user causes the control circuit to commence irretrievably removing the data from the long-term memory component. As described in the originally filed specification, a stand-alone device that is actuated with a simple physical switch to erase long-term memory components provides a number of advantages over conventional erasing solutions, such as software solutions run from conventional operating systems. (See Specification, paragraphs 36 and 69, and portions of the Background of the Invention section of the application in paragraphs 3 through 18).

Holzhammer discloses block-erase techniques for non-volatile flash memory. Holzhammer is primarily concerned with making Flash memory, or other block based non-volatile semiconductor memory, emulate a disk. The patent discloses, for example, techniques for enabling a semiconductor memory for use with a file system. In one such technique, in the case where a block of the semiconductor memory is larger than the operating system block, some data must be copied to a 'safe' area before erasing the desired block, the block cleared, and the 'good' data copied back.

Holzhammer is completely unrelated to a stand-alone, dedicated function device for removing data from a long-term memory component. In contrast, the techniques of Holzhammer are described in the context of a personal computer system 10 having a conventional operating system 26. (Holzhammer, column 5,

14

MTI0002028

Serial Number: 10/174,984

lines 6-61 and Fig. 2). Accordingly, Holzhammer does not disclose or suggest, for example, as is recited in amended claim 1, "an interface for connecting the stand-alone, dedicated function device to a long-term memory component," or "a user controllable physical switch that, when actuated by a user, causes the control circuit to commence irretrievably removing the data from the long-term memory component." (emphasis added).

The Examiner relies on Schmidt for the disclosure of "the claim's irretrievably aspect of removing the data from the long term memory component," (Office Action, page 5). Schmidt is a dissertation on how to send commands to an IDE drive. Schmidt is currently obsolete. The current specifications for storage interfaces can be found at (http://www.t13.org/). Applicants have reviewed Schmidt, and submit that Schmidt does not cure the deficiencies of Holzhammer, as noted above. The key observation is that the current device's ability to interface with a storage device does not make it a personal computing device. Applicant's amendment to claim 1 "A stand-alone, dedicated function device for removing data from a long-term memory component" clarifies the current device. Applicant acknowledges that the current device makes use of industry standards to communicate with a long-term memory component; however, that does not mean our current device has the functionality of a personal computer.

On page six of the October 31, 2005 office action the Examiner states "As for the claim's aspect of a physical switch that when activated would start a

15

MTI0002029

Serial Number: 10/174,984

process of loading a program and executing it, this technique has been known in
the art." This statement is factually incorrect. The current device does not include
an operating system, and thus is incapable of "loading a program". The current
device stores instructions in permanent memory and these instructions are
executed directly when a physical switch is activated.

For a proper rejection under 35 U.S.C. § 103(a), the claimed invention as
a whole must be considered. *Stratoflex, Inc v. Aeroquip Corp.*, 713 F.2d 1530,
218 USPQ 871 (Fed. Cir. 1983). Further, to establish a *prima facie* case of
obviousness under 35 U.S.C. § 103(a), all the claim limitations must be taught or
suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA
1974); see also MPEP 2143.03. It is clearly not appropriate for the Examiner to
pick and choose certain features of the invention as being inherently obviousness
or not important for determining patentability.

For at least these reasons, Applicants submit that Holzhammer and
Schmidt, either alone or in combination, do not disclose or suggest each feature
of claim 1. Accordingly, the rejection of this claim should be withdrawn. The
rejections of claims 2, 3, 13, 14, and 18-21 are also improper, at least by virtue of
their dependency from claim 1.

Claims 2, 3, 13, 14, and 18-21 are additionally patentable for reasons of
their own. Claim 2, for instance, recites that the control circuit is a circuit
dedicated to the permanent removal of the data from the long-term memory

16

MTI0002030

Serial Number: 10/174,984

component; without regard to data content or data storage format of the data on the long-term memory component. As discussed above, the techniques of Holzhammer appear to be implemented in the context of an operating system 26 of a general purpose personal computer. Holzhammer in no way discloses or suggests a circuit dedicated to the permanent removal of the data from the long-term memory component without regard to data content or data storage format of the data on the long-term memory component.

Applicants submit that claims 3, 13 and 14 should be restated based on reasons similar to those given above.

Claims 18-21 additionally stand rejected based on Holzhammer and Schmidt. In rejected Claims 18-21, the Examiner states that this claim is rejected based on (Holzhammer column 2, lines 35-6). (Office Action, page 7). Note that Holzhammer teaches how to format a device with a Holzhammer chip built in. The present device is capable of formatting a long-term storage device to any known format. That is, Holzhammer teaches how to format Holzhammer. The present device can format the long-term storage device to PC, Mac, Linux, Holzhammer, etc.

For at least these reasons, Applicants submit that Holzhammer and Schmidt, either alone or in combination, do not disclose or suggest each of the features recited in claims 18-21, and the rejection of these claims should therefore be withdrawn.

17

MTI0002031

Serial Number: 10/174,984

Applicants submit that claims 22, 23, 29, 30, 43 and 45 should also be restated based on the same rationale as in claim 1.

Applicants submit that claims 26 and 33 should also be restated based on the same rationale as in claim 3.

Applicants submit that claims 27 and 34 should also be restated based on the same rationale as in claim 13.

Applicants submit that claims 28, 35 and 44 should also be restated based on the same rationale as in claim 20.

### Rejection of Claims 4-6, 24, and 31 in View of Holzhammer, Schmidt, Karidis, and Kikinus

Claims 4 and 6 stand rejected based on Holzhammer, Schmidt, Karidis and Kikinus. Holzhammer, Karidis and Kikinus teach systems for portable computing systems. They are not relevant to a stand-alone, dedicated function device for removing data from a long-term memory component. Applicants submit that claims 4 and 6 should be restated, for at least these reasons and the reasons submitted above.  Claim 5 has been canceled.

Applicants submit that claims 24 and 31 should be restated based on the same rationale as in claim 6.

The amendments to claim 36 emphasize that the device is a stand-alone, dedicated function device. Applicants submit that claim 36 as amended should be restated for the reasons given above. The rejections of claims 40-42 are also

18

MTI0002032

01/31/2006  15:32  3019906437                FLOWER_VALLEY_PRESS                    PAGE  20

Serial Number: 10/174,984

improper, at least by virtue of their dependency from claim 36 and for reasons given above.

### Rejection of Claims 7-8, and 40 in View of
### Holzhammer, Schmidt, Karidis, and Kikinus and Berg

Claims 7-8 and 40 are canceled.

### Rejection of Claims 9 and 37 in View of
### Holzhammer, Schmidt, Karidis, and Kikinus and Owens

Claims 9 and 37 are canceled.

### Rejection of Claims 10-12, 25, 32 and 38 in View of
### Holzhammer, Schmidt, and Berg

Claims 1, 29 and 36 have been amended to emphasize that the current device is a stand alone, dedicated function device. As such, the current device has little in common with Holzhammer and Berg except that all three teach electronic devices, and electronic devices must have power. Additionally the functionality of a switch on our device is two-fold. One, by turning the switch to the off position before attaching a long-term storage device, the storage device is protected from damage. Secondly, activating the switch is a pro-active decision by the user, thus making it less likely to remove data on a long-term memory component by accident.

Claims 10-12, 25, 32 and 38 are depend claims of claims 1, 29 and 36 and

19

MTI0002033

Serial Number: 10/174,984

for at least the reasons given above Applicants submit that they should be restated.

### Rejection of Claims 15-17 in View of Holzhammer, Schmidt, and Assaf

Claim 1has been amended to emphasize that the current device is a stand-alone, dedicated function device. Holzhammer teaches a system for a personal computer system, which is not relevant to the current device. Furthermore Assaf is limited to one method of hiding data on a drive. One knowledgeable in the art would understand that there are multiple ways to hide data on a drive. To become knowledgeable in the art one must study the current technical specifications in one's field.  As such, although the Device Configuration Overlay (DCO) area was not specifically discussed in the specifications, it was assumed that one knowledgeable in the art would understand that it was included.

Due to at least the reasons above Applicants submit that claims 15-17 should be restated.

20

MTI0002034

Serial Number: 10/174,984

In view of the foregoing remarks, Applicants submit that the claimed

Invention is neither anticipated nor rendered obvious in view of the references

cited against this application.  Applicants, therefore, request the Examiner's

reconsideration and reexamination of the application, and the timely allowance of

the pending claims.

To the extent necessary, a petition for an extension of time under 37

C.F.R. § 1.136 is hereby made.

Respectfully submitted,

All Applicants:

By: _____ Date: 1/31/06

Steven Bress

21

MTI0002035

Serial Number: 10/174,984

By: _____ Date: 1/31/06
Dan Bress

22

MTI0002036

Serial Number: 10/174,984

By: _____   Date: 1/31/06
Mike Menz

By: _____   Date: 1/31/06
Mark Joseph Menz

23

MTI0002037

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective December 8, 2004

10/174984

## CLAIMS AS FILED - PART I

| | | (Column 1) | (Column 2) |
|---|---|---|---|
| TOTAL CLAIMS | | | |
| FOR | | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | | minus 20 = | |
| INDEPENDENT CLAIMS | | minus 3 * | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 150.00 | OR | BASIC FEE | 300.00 |
| X$ 25= | | OR | X$50= | |
| X100= | | OR | X200= | |
| +180= | | OR | +360= | |
| TOTAL | | | TOTAL | |

## CLAIMS AS AMENDED - PART II

1/31/06

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| **AMENDMENT A** Total | 35 | Minus | 45 | | X$ 25= | | OR | X$50= | |
| Independent | 4 | Minus | 5 | | X100= | | OR | X200= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | | +180= | | OR | +360= | |
| | | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | | OR | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| **AMENDMENT B** Total | | Minus | | | X$ 25= | | OR | X$50= | |
| Independent | | Minus | | | X100= | | OR | X200= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | | +180= | | OR | +360= | |
| | | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | | OR | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| **AMENDMENT C** Total | | Minus | | | X$ 25= | | OR | X$50= | |
| Independent | | Minus | | | X100= | | OR | X200= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | | +180= | | OR | +360= | |
| | | | | | TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-873 (Rev. 19-04)                              Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

MTI0002038





## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

7590        02/22/2006

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD   20879

| EXAMINER |
|---|
| DOAN, DUC T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2188 | |

DATE MAILED: 02/22/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

MTI0002039

| ***Advisory Action*** *Before the Filing of an Appeal Brief* | Application No. | Applicant(s) |
|---|---|---|
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit | |
| | Duc T. Doan | 2188 | |

*– The MAILING DATE of this communication appears on the cover sheet with the correspondence address –*

THE REPLY FILED 31 January 2006 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

1. ☒ The reply was filed after a final rejection, but prior to or on the same day as filing a Notice of Appeal. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. The reply must be filed within one of the following time periods:

   a) ☒ The period for reply expires 3 months from the mailing date of the final rejection.

   b) ☐ The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

   Examiner Note: If box 1 is checked, check either box (a) or (b). ONLY CHECK BOX (b) WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

NOTICE OF APPEAL

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

AMENDMENTS

3. ☒ The proposed amendment(s) filed after a final rejection, but prior to the date of filing a brief, will not be entered because

   (a)☒ They raise new issues that would require further consideration and/or search (see NOTE below);

   (b)☐ They raise the issue of new matter (see NOTE below);

   (c)☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

   (d)☐ They present additional claims without canceling a corresponding number of finally rejected claims.

   NOTE: *See Continuation Sheet.* (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____.

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☒ For purposes of appeal, the proposed amendment(s): a) ☒ will not be entered, or b) ☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

   The status of the claim(s) is (or will be) as follows:

   Claim(s) allowed: _____.

   Claim(s) objected to: _____.

   Claim(s) rejected: 1 –43

   Claim(s) withdrawn from consideration: _____.

AFFIDAVIT OR OTHER EVIDENCE

8. ☐ The affidavit or other evidence filed after a final action, but before or on the date of filing a Notice of Appeal will not be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

9. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will not be entered because the affidavit or other evidence failed to overcome all rejections under appeal and/or appellant fails to provide a showing a good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

REQUEST FOR RECONSIDERATION/OTHER

11. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

12. ☐ Note the attached Information Disclosure Statement(s). (PTO/SB/08 or PTO-1449) Paper No(s). _____

13. ☐ Other: _____.

MTI0002040

Continuation Sheet (PTO-303)                                              Application No. 10/174,984

Continuation of 3. NOTE:  the amendment to claims  1-2,22,29,36  would require further search and/or consideration.

MANO PADMANABHAN
SUPERVISORY PATENT EXAMINER

2

MTI0002041



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

**CONFIRMATION NO. 8535**

Bib Data Sheet

| SERIAL NUMBER 10/174,984 | FILING DATE 06/20/2002 RULE | CLASS 711 | GROUP ART UNIT 2188 | ATTORNEY DOCKET NO. 0032-0002 |
|---|---|---|---|---|

**APPLICANTS**

Steven Bress, Germantown, MD;

Dan Bress, Germantown, MD;
Mike Menz, Roseville, CA; Mark Joseph Menz, Folsom, CA;

** CONTINUING DATA ************************
This appln claims benefit of 60/299,783 06/21/2001

** FOREIGN APPLICATIONS ********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** SMALL ENTITY **
** 07/16/2002

| Foreign Priority claimed | ☐ yes ☐ no | STATE OR | SHEETS | TOTAL | INDEPENDENT |
|---|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met | ☐ yes ☐ no ☐ Met after Allowance | COUNTRY | DRAWING | CLAIMS | CLAIMS |
| Verified and Acknowledged | Examiner's Signature        Initials | MD | 10 | 45 | 5 |

**ADDRESS**
Steven Bress
7851-C Beechcraft Avenue
Gaithersburg , MD
20879

**TITLE**
Systems and methods for removing data stored on long-term memory devices

| FILING FEE RECEIVED 679 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

MTI0002042

MTI0002043

RECEIVED
CENTRAL FAX CENTER

FEB 2 8 2006

## FACSIMILE TRANSMITTAL

| | | |
|---|---|---|
| **TO:** | | **FROM:** |
| **Name:** | Examiner D. Doan | **Name:** Steve Bress |
| | USPTO | **Phone No.:** 202-487-8865 |
| | | **Fax no:** 301-990-6437 |
| **Fax No.:** | (571) 273-8300 | **Fax # Verified by:** SB |
| **Phone No.:** | 571-272-4210 | **# Pages** (incl. this):3 |
| **Subject:** Request for Continued | | **Date:** 02/28/2006 |
| Examination (RCE) Transmittal | | |

**Message:**

Re: U.S. Application of : Steven Bress et al.
Application No.: 10/174,984
Filed: June 20, 2002
Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

MTI0002044

RECEIVED
CENTRAL FAX CENTER
FEB 2 8 2006

FROM :ENTROPY ENGINEERING          FAX NO. :3019906437          Feb. 28 2006 02:59PM P2

PTO/SB/30 (04-05)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Request for Continued Examination (RCE) Transmittal** | Application Number | 10/174,984 |
| --- | --- | --- |
| | Filing Date | June 20, 2002 |
| Address to: | First Named Inventor | Steven Brass |
| Mail Stop RCE | Art Unit | 2188 |
| Commissioner for Patents | Examiner Name | D. Doan |
| P.O. Box 1450 | Attorney Docket Number | |
| Alexandria, VA 22313-1450 | | |

This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. [ ] **Submission required under 37 CFR 1.114** Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. [✓] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. [✓] Consider the arguments in the Appeal Brief or Reply Brief previously filed on  January 31, 2006
      ii. [ ] Other _____

   b. [ ] Enclosed
      i. [ ] Amendment/Reply          iii. [ ] Information Disclosure Statement (IDS)
      ii. [ ] Affidavit(s)/Declaration(s)          iv. [ ] Other _____

2. [ ] **Miscellaneous**
   a. [ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)
   b. [ ] Other _____

3. [ ] **Fees** The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.
   a. [ ] The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. _____. I have enclosed a duplicate copy of this sheet.
      i. [ ] RCE fee required under 37 CFR 1.17(e)
      ii. [ ] Extension of time fee (37 CFR 1.136 and 1.17)
      iii. [ ] Other _____
   b. [ ] Check in the amount of $ _____ enclosed
   c. [✓] Payment by credit card (Form PTO-2038 enclosed)

   **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| **SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED** | | |
| --- | --- | --- |
| Signature | Date | 2/27/06 |
| Name (Print/Type) Steven Brass | Registration No. | |

**CERTIFICATE OF MAILING OR TRANSMISSION**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| Signature | | |
| --- | --- | --- |
| Name (Print/Type) | | Date |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

03/01/2006 KBIWAS          00000029 10174984
01 FC:2801          395.00 OP

MTI0002045

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 5 | bress-steven$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:40 |
| S2 | 3380779 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:11 |
| S3 | 1053 | S2 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:26 |
| S4 | 25 | S3 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:12 |
| S5 | 92 | S2 and "small footprint" same (cas$4 \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:28 |
| S6 | 22 | S2 and "small footprint" same ((cas$4 \| box \| enclosure) and ("8.5" \| "10" \| "1.5" )) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:40 |
| S7 | 3380779 | S2 ((cas$4 \| box \| enclosure ) same ("8.5" and regtangular)) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:47 |
| S9 | 4883 | S2 and ((cas$4 \| box \| enclosure ) same ("8.5")) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:48 |
| S10 | 191 | S9 and portable | US-PGPUB; USPAT | OR | OFF | 2005/03/07 16:06 |
| S11 | 59 | S2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:24 |
| S12 | 484 | S2 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:27 |
| S14 | 12 | S12 and "password" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:28 |
| S15 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S16 | 484 | S15 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S17 | 1 | S16 and (("hidden" near10 sector) same (disc \| track$3 \|disk)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:27 |
| S18 | 35 | "L2" and (("flash memory") same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:45 |
| S19 | 5 | "L2" and (("disk") same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:55 |
| S20 | 3 | "L2" and (("equip$6" \| device) same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:01 |
| S22 | 2 | "L2" and ((eras$7) same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:02 |

MTI0002046

# EAST Search History

| S24 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:26 |
|-----|---------|------------------|-----------------|-----|-----|------------------|
| S26 | 123 | S24 and (((irretriv$8 \| permanent$) adj10 remov$5) same ((track \| data) and (disc \| disk))) | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:19 |
| S30 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:35 |
| S31 | 13299 | S30 and ((removable \| portable) adj6 (disk drive)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:42 |
| S32 | 178 | S30 and (((removable \| portable) adj6 (disk drive)) same ide) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:48 |
| S33 | 140 | S30 and (format$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:49 |
| S34 | 46 | S30 and (formatt$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:24 |
| S35 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S36 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:26 |
| S37 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S38 | 1 | S30 and (("low level" near7 format$10) same IDE) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:32 |
| S40 | 653978 | S30 and ("power supply" ssame switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:46 |
| S41 | 57654 | S30 and ("power supply" same switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:47 |
| S43 | 4438 | S30 and ("power supply" same (switch and ("on/off"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S44 | 703 | S43 and "disk" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:49 |
| S45 | 7811 | S30 and ("power supply" same (switch and mechani$7)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S46 | 3059 | S30 and ("power supply" same (switch and mechanical)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S47 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S48 | 1 | "5630093".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:22 |
| S49 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:23 |
| S50 | 1 | "6727894".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:57 |

MTI0002047

# EAST Search History

| S52 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 22:35 |
|---|---|---|---|---|---|---|
| S53 | 19 | S52 and ("anti static" near5 pad) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:11 |
| S54 | 1 | "5861813".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:14 |
| S55 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:33 |
| S56 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S57 | 1 | "5966732".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 08:57 |
| S58 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S59 | 907 | S58 and 711/112$.ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S60 | 26 | S58 and 711/112$.ccls. and password | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S61 | 5 | ("5630093" | "6727894" | "5861873" | "6629184" | "5953199").pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:08 |
| S62 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S63 | 59 | S62 and (overwrite same (track and ("stor$5 device" | "disc drive" | "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S64 | 0 | S63 and (345/174 | 361/212 |710/306 | 711/115 | 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S65 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S66 | 484 | S65 and ((eras$4 ) same (track and ("stor$5 device" | "disc drive" | "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S67 | 2 | S66 and (345/174 | 361/212 |710/306 | 711/115 | 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:11 |
| S68 | 3388081 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:21 |
| S73 | 387 | S68 and ((( Irretriev$8 | permanent$) with (clean$8 | remov$5)) same ((track | data | block$2 ) and (disc | disk) )) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:54 |
| S74 | 127 | S73 and edge | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |
| S75 | 27 | S73 and (edge same track) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |

MTI0002048

## EAST Search History

| S76 | 13130 | S68 and ( write same ((sector track) and disk)) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:55 |
|---|---|---|---|---|---|---|
| S77 | 2083 | S76 and ((track \| sector) same edge) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:57 |
| S79 | 95 | S77 and (disk with clean) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/06/15 16:26 |
| S80 | 50 | (US-20030099456-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$). did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$). did. | US-PGPUB; USPAT | OR | ON | 2005/10/07 10:13 |
| S81 | 6 | bress-st$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/10/07 10:15 |
| S82 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:44 |
| S84 | 393 | S82 and ((operating adj4 system) same ((copi$3 copy duplicat$5) and format$6 and (file adj4 system))) | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:45 |
| S85 | 113 | S84 and (partition same (operating adj3 system)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:07 |
| S86 | 2 | "5826012".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:09 |

MTI0002049

# EAST Search History

| S87 | 2 | "5559960".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:10 |
|---|---|---|---|---|---|---|
| S88 | 64 | (US-20030018836-$ or US-20030099456-$ or US-20040184309-$ or US-20040186953-$ or US-20040186969-$ or US-20050182510-$ or US-20040015623-$ or US-20030023826-$ or US-20020166059-$ or US-20020162100-$ or US-20020103779-$ or US-20020095672-$).dld. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$).dld. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$ or US-6920555-$ or US-6691213-$ or US-5826012-$).dld. | US-PGPUB; USPAT | OR | ON | 2005/10/21 16:15 |
| S89 | 2 | "6691213".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 17:05 |
| S90 | 13 | ("5022077" \| "5355489" \| "5481754" \| "5657445" \| "5754821" \| "5809230" \| "5864698" \| "6035420" \| "6122733" \| "6154835" \| "6282647" \| "6385721" \| "6542979").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:23 |

MTI0002050

## EAST Search History

| S91 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/22 08:24 |
|-----|---------|------------------|-----------------|-----|-----|------------------|
| S94 | 0 | S91 and (ATA same DCO) | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:27 |
| S95 | 2 | "4290088".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:37 |
| S96 | 2 | "20040194062" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:40 |
| S97 | 2 | "20040078514" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:41 |

MTI0002051

BEST AVAILABLE COPY

PUBLISHED BY
Microsoft Press
A Division of Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052-6399

Copyright © 1997 by Microsoft Corporation

All rights reserved. No part of the contents of this book may be reproduced or transmitted
in any form or by any means without the written permission of the publisher.

Library of Congress Cataloging-in-Publication Data
Microsoft Press Computer Dictionary. -- 3rd ed.
    p.   cm.
  ISBN 1-57231-446-X
  1. Computers--Dictionaries.   2.  Microcomputers--Dictionaries.
  I. Microsoft Press.
  QA76.15.M54  1997
  004'.03--dc21                                    97-15489
                                                     CIP

Printed and bound in the United States of America.

  2  3  4  5  6  7  8  9   QMQM   2 1 0 9 8 7

Distributed to the book trade in Canada by Macmillan of Canada, a division of Canada Publishing
Corporation.

A CIP catalogue record for this book is available from the British Library.

Microsoft Press books are available through booksellers and distributors worldwide. For further
information about international editions, contact your local Microsoft Corporation office. Or contact
Microsoft Press International directly at fax (425) 936-7329.

Macintosh, Power Macintosh, QuickTime, and TrueType are registered trademarks of Apple Computer,
Inc. Intel is a registered trademark of Intel Corporation. DirectInput, DirectX, Microsoft, Microsoft
Press, MS-DOS, Visual Basic, Visual C++, Win32, Win32s, Windows, Windows NT, and XENIX are
registered trademarks and ActiveMovie, ActiveX, and Visual J++ are trademarks of Microsoft
Corporation. Java is a trademark of Sun Microsystems, Inc. Other product and company names
mentioned herein may be the trademarks of their respective owners.

Acquisitions Editor: Kim Fryer
Project Editor: Maureen Williams Zimmerman, Anne Taussig
Technical Editors: Dail Magee Jr., Gary Nelson, Jean Ross, Jim Fuchs, John Conrow, Kurt Meyer,
           Robert Lyon, Roslyn Lutsch

MTI0002052

**computation-bound** | **computer-assisted diagnosis**

support forums for commercial hardware and software products and for being one of the first large commercial online services. CompuServe also operates various private network services.

**computation-bound** \kom-pyōō-tā´shən bound\ *adj.* Of, pertaining to, or characteristic of a situation in which the performance of a computer is limited by the number of arithmetic operations the microprocessor must perform. When a system is computation-bound, the microprocessor is overloaded with calculations. *Also called* CPU-bound.

**compute** \kəm-pyōōt´\ *vb.* 1. To perform calculations. 2. To use a computer or cause it to do work.

**computer** \kəm-pyōō´tər\ *n.* Any machine that does three things: accepts structured input, processes it according to prescribed rules, and produces the results as output. Ways to categorize computers are described in the table. *See also* analog, digital (definition 2), integrated circuit, large-scale integration, very-large-scale integration.

**computer-aided design** \kəm-pyōō´tər-ā-dəd də-zīn´\ *n. See* CAD.

**computer-aided design and drafting** \kəm-pyōō´tər-ā-dəd də-sīn´ ənd draf´təng\ *n.* A system of hardware and software similar to CAD but with additional features related to engineering conventions, including the ability to display dimension specifications and other notes. *Acronym:* CADD (CˊA-Dˊ-Dˊ, kad-Dˊ). *See also* CAD.

**computer-aided design/computer-aided manufacturing** \kəm-pyōō´tər-ā-dəd də-zīn´ kəm-pyōō´tər-ā-dəd man-yə-fak´chur-ēng\ *n. See* CAD/CAM

**computer-aided engineering** \kəm-pyōō´tər-ā-dəd en´jə-nēr´ēng\ *n. See* CAE.

**computer-aided instruction** \kəm-pyōō´tər-ā-dəd in-struk´shən\ *n. See* CAI.

**computer-aided manufacturing** \kəm-pyōō´tər-ā-dəd man´yə-fak´chur-ēng\ *n. See* CAM (definition 1).

**computer-aided testing** \kəm-pyōō´tər-ā-dəd te´stēng\ *n. See* CAT (definition 1).

**Computer and Business Equipment Manufacturers Association** \kəm-pyōō´tər and biz´nis ə-kwip´mənt man´yə-fak´chur-ərz ə-sō-sē-ā´shən\ *n. See* CBEMA.

**computer art** \kəm-pyōō´tər ärt´\ *n.* A broad term that can refer either to art created on a computer or to art generated by a computer, the difference being whether the artist is human or electronic. When created by human beings, computer art is done with painting programs that offer a range of line-drawing tools, brushes, shapes, patterns, and colors. Some programs also offer predrawn figures and animation capabilities.

**computer-assisted diagnosis** \kəm-pyōō´tər-ə-si´stəd dī-əg-nō´sis\ *n.* The use of computers by physicians in diagnosing patient conditions. Medi-

### WAYS TO CATEGORIZE COMPUTERS

| | |
|---|---|
| *Class* | Computers can be classified as supercomputers, mainframes, superminicomputers, minicomputers, workstations, or microcomputers. All other things (for example, the age of the machine) being equal, such a categorization provides some indication of the computer's speed, size, cost, and abilities. |
| *Generation* | First-generation computers of historic significance, such as UNIVAC, introduced in the early 1950s, were based on vacuum tubes. Second-generation computers, appearing in the early 1960s, were those in which transistors replaced vacuum tubes. Third-generation computers, dating from the 1960s, were those in which integrated circuits replaced transistors. Fourth-generation computers, appearing in the mid-1970s, are those, such as microcomputers, in which large-scale integration (LSI) enabled thousands of circuits to be incorporated on one chip. Fifth-generation computers are expected to combine very-large-scale integration (VLSI) with sophisticated approaches to computing, including artificial intelligence and true distributed processing. |
| *Mode of processing* | Computers are either analog or digital. Analog computers, generally used in scientific pursuits, represent values by continuously variable signals that can have any of an infinite number of values within a limited range at any particular time. Digital computers, the type most people think of as computers, represent values by discrete signals—the bits representing the binary digits 0 and 1. |



BEST AVAILABLE COPY

MTI0002053



*Pop-up window.*

**port**[2] \pôrt\ *vb* **1.** To change a program in order to be able to run it on a different computer. **2.** To move documents, graphics, and other files from one computer to another.

**portable** \pôr´tə-bl\ *adj.* **1.** Capable of running on more than one computer system or under more than one operating system. Highly portable software can be moved to other systems with little effort, moderately portable software can be moved only with substantial effort, and nonportable software can be moved only with effort similar to or greater than the effort of writing the original program. **2.** Light enough, rugged enough, and free enough of encumbering external connections to be carried by a user.

**portable computer** \pôr´tə-bl kəm-pyoo´tər\ *n.* Any computer designed to be moved easily. Portable computers can be characterized by size and weight as in the table below.

**Portable Digital Document** \pôr´tə-bl dij´i-təl do-kyə-mənt\ *n.* See PDD.

**Portable Distributed Objects** \pôr´tə-bl dis-trib´yə-təd ob´jekts\ *n.* Software from NeXT, running under UNIX, that supports an object model in which objects to be stored at various locations on a network can be accessed as though they were at a single location. *Acronym:* PDO (P´D-O´).

**Portable Document Format** \pôr´tə-bl do´kyə-mənt fôr´mat\ *n.* The Adobe specification for electronic documents that use the Adobe Acrobat family of servers and readers. *Acronym:* PDF (P´D-F´). *See also* Acrobat, .pdf.

**portable language** \pôr´tə-bl lang´wəj\ *n.* A language that runs in the same way on different systems and therefore can be used for developing software for all of them. C, FORTRAN, and Ada are portable languages because their implementations on different systems are highly uniform; assembly language is extremely nonportable.

**Portable Network Graphics** \pôr´tə-bl net´wôrk graf´iks\ *n.* A file format for bitmapped graphic images, designed to be a replacement for the GIF format, without the legal restrictions associated with GIF. *Acronym:* PNG (P´N-G´). *See also* GIF.

**port enumerator** \pôrt´ ə-noo´mə-rā´tər\ *n.* In Windows, part of the Plug and Play system that detects I/O ports and reports them to the configuration manager. *See also* Plug and Play.

**port expander** \pôrt´ eks-pan´dər\ *n.* A hardware mechanism used for connecting several devices to

## PORTABLE COMPUTERS

| Type | Approximate weight | Power source | Comments |
|------|--------------------|--------------|----------|
| Transportable | 15–30 lb. | House current | Sometimes called luggable; usually has floppy and hard drives; standard CRT screen. |
| Laptop | 8–15 lb. | House current or batteries | Can be held on the lap, usually has a floppy drive; uses flat LCD or plasma screen. |
| Ultralight | 2–8 lb. | Batteries or transformer pack | Easy to carry in a briefcase; sometimes uses RAM drive or EPROM instead of floppy or hard drive; thinner models are known as notebook computers. |
| Handheld | Less than 2 lb. | Batteries or transformer pack | Also called palmtop; can be held in one hand. |



BEST AVAILABLE COPY

MTI0002054

Case 2:13-ml-02461-GAF-PLA   Document 38-15   Filed 02/18/14   Page 56 of 186   Page ID #:1782

site on which it resides. *See also* HTML document, Web site.

**OO** \O-O'\ *adj. See* object-oriented.

**OOP** \ŏop, O'O-P'\ *n. See* object-oriented programming.

**opcode** \op'kōd\ *n. See* operation code.

**open**[1] \ō'pən\ *adj.* Of, pertaining to, or providing accessibility. For example, an open file is one that can be read because a program has issued an "open file" command to the operating system.

**open**[2] \ō'pən\ *vb.* To make an object, such as a file, accessible.

**open architecture** \ō'pən är'kə-tek'chur\ *n.* 1. Any computer or peripheral design that has published specifications. A published specification lets third parties develop add-on hardware for a computer or device. *Compare* closed architecture (definition 1). 2. A design that provides for expansion slots on the motherboard, thereby allowing the addition of boards to enhance or customize a system. *Compare* closed architecture (definition 2).

**OpenDoc** \ō'pən-dok'\ *n.* An object-oriented application programming interface (API) that enables multiple independent programs (component software) on several platforms to work together on a single document (compound document). Similar to OLE, OpenDoc allows images, sound, video, other documents, and other files to be embedded or linked to the document. OpenDoc is supported by an alliance that includes Apple, IBM, the Object Management Group, and the X Consortium. *See also* application programming interface, component software. *Compare* ActiveX, OLE.

**open file** \ō'pən fīl'\ *n.* A file that can be read from, written to, or both. A program must first open a file before the file's contents can be used, and it must close the file when done. *See also* open[2].

**Open Financial Connectivity** \ō'pən fə-nan'shəl kə-nek-tiv'ə-tē\ *n.* The Microsoft specification for an interface between electronic banking services and Microsoft Money personal finance software. *Acronym:* OFC (O'F-C').

**Open Group** \ō'pən grōop'\ *n.* A consortium of computer hardware and software manufacturers and users from industry, government, and academia that is dedicated to the advancement of multivendor information systems. The Open Group was formed in 1996 as a consolidation of the Open Software Foundation and X/Open Company Limited.

**OpenMPEG Consortium** \ō'pən-M'peg kən-sôr'shum, M'P-E-G', kən-sôr'shē-um\ *n.* An international organization of hardware and software developers for promoting the use of the MPEG standards. *Acronym:* OM-1 (O'M-wən'). *See also* MPEG.

**open shop** \ō'pən shop'\ *n.* A computer facility that is open to users and not restricted to programmers or other personnel. An open shop is one in which people can work on or attempt to solve computer problems on their own rather than handing them over to a specialist.

**Open Shortest Path First** \ō'pən shôr'təst path fərst'\ *n. See* OSPF.

**Open Software Foundation** \ō'pən sof'wâr foun-dā'shən\ *n. See* OSF.

**open standard** \ō'pən stan'dərd\ *n.* A publicly available set of specifications describing the characteristics of a hardware device or software program. Open standards are published to encourage interoperability and thereby help popularize new technologies. *See also* standard (definition 2).

**open system** \ō'pən si'stəm\ *n.* 1. In communications, a computer network designed to incorporate all devices—regardless of the manufacturer or model—that can use the same communications facilities and protocols. 2. In reference to computer hardware or software, a system that can accept add-ons produced by third-party suppliers. *See also* open architecture (definition 1).

**Open Systems Interconnection model** \ō'pən si'stəms in-tər-kə-nek'shən mod'əl\ *n. See* ISO/OSI model.

**operand** \op'ər-and\ *n.* The object of a mathematical operation or a computer instruction.

**operating system** \op'ər-ā-tēng si'stəm\ *n.* The software that controls the allocation and usage of hardware resources such as memory, central processing unit (CPU) time, disk space, and peripheral devices. The operating system is the foundation on which applications are built. Popular operating systems include Windows 95, Windows NT, Mac OS, and UNIX. *Acronym:* OS (O-S'). *Also called* executive.



**BEST AVAILABLE COPY**

341

MTI0002055

| *Notice of References Cited* | Application/Control No. 10/174,984 | Applicant(s)/Patent Under Reexamination BRESS ET AL. | |
|---|---|---|---|
| | Examiner Duc T. Doan | Art Unit 2188 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2004/0078514 | 04-2004 | Kung et al. | 711/105 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | http://en.wikipedia.org/wiki/univac univac history |
| | V | microsoft computer dictionary 1997 |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

MTI0002056

# UNIVAC

**BEST AVAILABLE COPY**

From Wikipedia, the free encyclopedia
(Redirected from Univac)

The American company **UNIVAC** began as the "business" computer division of Remington Rand formed by the purchase of the Eckert-Mauchly Computer Corporation in 1950. (EMCC was the company founded by, and named after, the two inventors/architects of the ENIAC.) UNIVAC is an acronym, standing for UNIVersal Automatic Computer.

## Contents

- 1 History and structure
- 2 Models
- 3 Operating Systems and the Romance of the Machine
- 4 See also
- 5 External links

# History and structure

John Presper Eckert and John W. Mauchly built the ENIAC computer (Electronic Numerical Integrator and Calculator) at the Moore School of Engineering at the University of Pennsylvania. Then, to reserve any future patent rights for themselves, they formed the Electronic Computer Corporation. That company first built a computer called BINAC (Binary Automatic Computer) for Northrop Aviation (which was little used, or perhaps not at all). Afterwards began the development of UNIVAC. UNIVAC was first intended for the Bureau of the Census, which paid for



UNIVAC® Sperry Rand label

much of the development, and then was put in production. The Electronic Computer Corp. was first a subsidiary of American Totalizator, which made horse race track tote boards. However, due to management changes at American Tote, ECC was sold to Remington-Rand. Rem-Rand had its own lab in Norwalk, Connecticut, and later bought Engineering Research Associates in St. Paul, Minnesota. Remington-Rand merged these groups, calling the result the Univac Division of Remington-Rand.

The most famous UNIVAC product was the UNIVAC I mainframe computer of 1951, which became known for predicting the outcome of the U.S. presidential election the following year.

In 1953 or 1954 Remington Rand merged their tabulating machine division in Norwalk, Connecticut, the Engineering Research Associates "scientific" computer division, and the UNIVAC "business" computer division into a single division under the UNIVAC name.

In 1955 Remington Rand merged with *Sperry Corporation* to become *Sperry Rand*. The UNIVAC division of Remington Rand was renamed the Univac division of Sperry Rand. General Douglas MacArthur was chosen to head the company. Around 1975, to assist 'corporate identity' the name was changed to Sperry Univac, along with 'Sperry Remington', Sperry New Holland' etc.

UNIVAC was one of the eight major computer companies (with IBM - the largest, Burroughs, Scientific Data Systems, Control Data Corporation, General Electric, RCA and Honeywell) through most of the 1960s. One term used at the time was "IBM and the BUNCH" (Burroughs, Univac, NCR, Control Data, and Honeywell)

In 1978 Sperry Rand, an old fashioned conglomerate of disharmonious divisions (computers, typewriters, office furniture, hay balers, manure spreaders, gyroscopes, avionics, radar, electric razors), decided to concentrate on its computing interests and unrelated divisions were sold. The company dropped the *Rand* from its title and reverted

MTI0002057

back to *Sperry Corporation*.

In 1986, Sperry Corporation merged with Burroughs Corporation to become Unisys.

Since the 1986 marriage of Burroughs and Sperry, Unisys has metamorphosed from a computer manufacturer to a computer services and outsourcing firm, competing in the same marketplace as IBM, Electronic Data Systems (EDS), and Computer Sciences Corporation. However, Unisys still continues to design and manufacture enterprise class computers with the ClearPath and ES7000 server lines.

# Models

In the course of its history, UNIVAC produced a number of separate model ranges. The following incomplete overview should be updated.

- The original model range was the UNIVAC I (UNIVersal Automatic Computer I), the first commercial computer made in the United States. The main memory consisted of tanks of liquid mercury implementing delay line memory, arranged in 1000 words of 12 alphanumeric characters each. The first machine was delivered on 31 March 1951. Successor machines included:
  - The UNIVAC II was an improvement to the UNIVAC I that UNIVAC first delivered in 1958. The improvements included magnetic (non-mercury) core memory of 2000 to 10000 words, UNISERVO II tape drives which could use either the old UNIVAC I metal tapes or the new PET film tapes, and some circuits that were transistorized (although it was still a vacuum tube computer). It was fully compatible with existing UNIVAC I programs for both code and data. The UNIVAC II also added some instructions to the UNIVAC I's instruction set.



Univac II

  - UNIVAC III. Sperry Rand began shipment in 1962 and produced 96 UNIVAC III systems. Unlike the UNIVAC I and UNIVAC II, however, it was a binary machine as well as maintaining support for all UNIVAC I and UNIVAC II decimal and alphanumeric data formats for backward compatibility. This was the last of the original UNIVAC machines.
- Early UNIVAC 110x vacuum tube computers
  - UNIVAC 1101, or ERA 1101, was a computer system designed by Engineering Research Associates (ERA) and built by the Remington Rand corporation in the 1950s. It was a 24 bit machine with drum memory.
  - The UNIVAC 1102 or ERA 1102 was designed by Engineering Research Associates for the United States Air Force.
  - The UNIVAC 1103 was a successor to the UNIVAC 1101 introduced in 1953. It was a 36 bit machine using hybrid memory of magnetic drum and Williams tubes. An upgraded version UNIVAC 1103A was released in 1956 and was a contemporary of the IBM 704. It bears the distinction of being the first machine to use magnetic core store (instead of the Williams Tubes).
  - The UNIVAC 1104 computer system was a 30-bit version of the UNIVAC 1103 built for Westinghouse Electric, in 1957, for use on the BOMARC Missile Program. However, by the time the BOMARC was deployed in the 1960s, a more modern computer (a version of the AN/USQ-20, designated the G-40) had replaced the UNIVAC 1104.
  - The UNIVAC 1105 was the successor to the 1103A, and was introduced in 1958.
- The UNIVAC 1100/2200 series is a series of compatible 36-bit transistorized computer systems initially made by Sperry Rand. The series continues to be supported today by Unisys Corporation as the ClearPath IX.
  - The **UNIVAC 1107** was the first member of **Sperry Univac**'s UNIVAC 1100 series of computers, introduced in October 1962. It represented a marked change of architecture: unlike previous models, it was not a strict two-address machine: it was a single address machine with 65536 words of core

MTI0002058

memory. The machine's registers were stored in 128 words of thin film memory, a faster form of magnetic storage. Only 36 systems were sold.

- The UNIVAC 1108 was the second member of **Sperry Univac**'s UNIVAC 1100 series of computers, introduced in 1964. It was the first multiprocessor machine in the series, capable of expansion to three CPUs and two IOCs (Input/Output Control Units). To support this, it had up to 262144 words of eight-ported main memory: separate instruction and data paths for each CPU, and one path for each IOC. The instruction set was very similar to that of the 1107, but included some additional instructions, including the "Test and Set" instruction for multiprocessor synchronization.
- The UNIVAC 1106 was the third member of **Sperry Univac**'s UNIVAC 1100 series of computers, introduced in December 1969 and was absolutely identical to the UNIVAC 1108 in instruction set. Like the 1108, it was multiprocessor capable, though it appears that it was never supplied with more than CPUs, and it was not supplied with any IOCs. Early versions of the UNIVAC 1106 were simply half speed UNIVAC 1108 systems. Later Sperry Univac used a different memory system which was inherently slower and cheaper than that of the UNIVAC 1108. Sperry Univac sold a total of 338 processors in 1106 systems.
- The UNIVAC 1110 was the fourth member of **Sperry Univac**'s UNIVAC 1100 series of computers, introduced in 1972. The UNIVAC 1110 had enhanced multiprocessing support: sixteen-way memory access allowed us to six CAUs (Command Arithmetic Unit, the new name for CPU) and four IOAUs (Input Output Access Units, the new name for IOPU). It also had 'extended memory' cabinets accessible in a 'daisy chain' arrangement to augment main storage. The larger configurations, 6x4+ were used by NASA. It also introduced an extension to the instruction set, of 'Byte Instructions'. Sperry Univac sold a total of 290 processors in 1110 systems.
- In 1975, Sperry Univac introduced a new series of machines with semiconductor memory replacing core, with a new naming convention.
  - An upgraded 1106 was called the **UNIVAC 1100/10**. In this new naming convention, the final digit represented the number of CPUs or CAUs in the system.
  - An upgraded 1108 was called the **UNIVAC 1100/20**.
  - An upgraded 1110 was released as the **UNIVAC 1100/40**.
  - The UNIVAC 1100/60 was introduced in 1979.
  - The UNIVAC 1100/70 was introduced in 1981.
  - The UNIVAC 1100/80 was introduced in 1979. Intended to combine 1100 and 494 systems.
  - The UNIVAC 1100/90 was introduced in 1982. It was liquid-cooled.

The 1100/80 introduced a cache memory - the SIU or Storage Interface Unit. It incorporated a mini-computer, based on the BC/7 (business computer) as a maintenance processor. This was used to load microcode, and for diagnostic purposes. Power was 400Hz, to reduce large scale DC power supplies.

- Remington Rand 409 was a plug-board programmed punch card calculator, designed in 1949.
- The UNIVAC 418 was an 18-bit word core memory machine. Over the three different models, more than 392 systems were manufactured.
- The UNIVAC 490 was a 30-bit word core memory machine with 16K or 32K words; 4.8 microsecond cycle time.
- The **UNIVAC 492** is similar to the UNIVAC 490, but with extended memory to 64K 30-bit words.
- The **UNIVAC 494** was a 30-bit word machine and successor to the UNIVAC 490/492 with faster CPU and 131K core memory. Up to 24 I/O channels were available and the system was usually shipped with UNIVAC FH880 or UNIVAC FH432 or FH1782 magnetic drum storage. Basic operating system was OMEGA (successor to REX for the 490) although custom operating systems were also used (e.g. CONTORTS for airline reservations).
- The **UNIVAC 1004** was a plug-board programmed punch card data processing system, introduced in 1962, by UNIVAC. Total memory was 961 characters (6 bits) of core memory. Peripherals were a card reader (400 cards/minute), a card punch (200 wards/minute) using 90 column round hole cards, and a drum printer (400 lines/minute).
- The **UNIVAC 1005**, an enhanced version of the UNIVAC 1004, was introduced in February 1966. The main improvement over the 1004 was conversion from the plug-board program to an internal stored program. The machine saw extensive use by the US Army, including the first use of an electronic computer on the battlefield. Additional periphals were also available including a paper tape reader and a three pocket stacker selectable card read/punch. It also had a three stage card based compiler for a programming language SARGE.
- The UNIVAC 1050 was an internally programmed computer with up to 32K of 6-bit character memory,

MTI0002059

- which was introduced in 1963. It was a 1-address machine with 30-bit instructions and had a 4K operating system.
- The Sperry UNIVAC System 80 series was introduced in 1981.
- The **UNIVAC 9200** replaced the 1004. The printer-processor was one cabinet, the power supply and memory another and the card reader and optional card punch made an an 'L' shaped configuration. The system used 'Plated Wire Memory', which functioned somewhat like core memory but used a non-destructive read. Memory was 4k expandable to 16k. The printer was unique as well, using an oscillating-type bar instead of the drums that had been used until this point, and ran at speeds up to 300 lines per minute.
- The UNIVAC Solid State was a 2-address, bi-quinary coded decimal computer, with memory on a rotating drum with 5000 signed 10 digit words. It was one of the first computers to use some solid-state components. It came in two versions: the Solid State 80 (IBM-style 80 column cards) and the Solid State 90 (UNIVAC-style 90 column cards).

## Operating Systems and the Romance of the Machine

The 1107 was the first 36-bit, word-oriented machine with an architecture close to that which came to be known as that of the "1100 Series." It ran the EXEC II operating system, a batch-oriented second-generation operating system, typical of the early to mid-1960s. The 1108 ran EXEC II and EXEC 8. It was a step up from the 1107 architecturally in that it supported more than one CPU per system and more memory. It had a thread synchronization instruction in some models (those with more than one CPU) and an optional channel extension box called an I/O Controller (IOC). Some models of the 1108 implemented the ability to divide words into 4 – 9-bit bytes, allowing use of ASCII characters. On these systems, EXEC 8 allowed simultaneous handling of real-time applications, time-sharing, and background batch work. TIP, a transaction-processing environment, allowed programs to be written in COBOL whereas similar programs on competing systems were written in assembly language. On later systems, EXEC 8 was renamed OS1100 and OS2200, with modern descendants maintaining backwards compatibility. Some more exotic operating systems ran on the 1108—one of which was RTOS, a more bare-bones system designed to take better advantage of the hardware.

The affordable System 80 series of small mainframes ran the OS/3 operating system.

## See also

- List of UNIVAC products
- FASTRAND
- History of computing hardware

*UNIVAC® has been, over the years, a registered trademark of:*

- Eckert-Mauchly Computer Corporation
- Remington Rand Corporation
- Sperry Rand Corporation
- Sperry Corporation
- Unisys Corporation

## External links

- UNIVAC® Memories (http://www.fourmilab.ch/documents/univac/);
- Unisys History Newsletter (http://www.cc.gatech.edu/services/unisys-folklore/).
- Universal Automatic Computer Model II (http://ed-thelen.org/comp-hist/BRL61-u4.html#UNIVAC-II)
- UNIVAC 1004 80/90 Card Processor (http://ed-thelen.org/comp-hist/BRL64-u.html#UNIVAC-1004-80/90)
- The Case 1107 (http://www.fourmilab.ch/documents/univac/case1107.html)
- Unisys History Newsletter. Volume 1, Number 3

- (http://www.cc.gatech.edu/gvu/people/randy.carpenter/folklore/v1n3.html)
- UNIVAC timeline (http://www.bitsavers.org/pdf/univac/CPU_timeline.txt)
- UNIVAC Simulator 1.2 (http://www.simtel.net/product.php?url_fb_product_page=57390) – by Peter Zilahy Ingerman; Shareware simulator of the UNIVAC I and II

Retrieved from "http://en.wikipedia.org/wiki/UNIVAC"

Categories: Pages needing expert attention | Defunct computer companies of the United States

- This page was last modified 10:17, 6 April 2006.
- All text is available under the terms of the GNU Free Documentation License (see **Copyrights** for details). Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc.
- Privacy policy
- About Wikipedia
- Disclaimers

MTI0002061

This Page is inserted by IFW Indexing and Scanning
Operations and is not part of the Official Record

# BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of the
original documents submitted by the applicant.

Defects in the images include but are not limited to the items checked:

- ❑ BLACK BORDERS
- ❑ IMAGE CUT OFF AT TOP, BOTTOM OR SIDES
- ☑ FADED TEXT OR DRAWING
- ❑ BLURED OR ILLEGIBLE TEXT OR DRAWING
- ❑ SKEWED/SLANTED IMAGES
- ❑ COLORED OR BLACK AND WHITE PHOTOGRAPHS
- ❑ GRAY SCALE DOCUMENTS
- ❑ LINES OR MARKS ON ORIGINAL DOCUMENT
- ❑ REPERENCE(S) OR EXHIBIT(S) SUBMITTED ARE POOR QUALITY
- ❑ OTHER: _____

## IMAGES ARE BEST AVAILABLE COPY.
As rescanning documents *will not* correct images
problems checked, please do not report the
problems to the IFW Image Problem Mailbox

MTI0002062

## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

| | |
|---|---|
| 7590        05/04/2006 | EXAMINER |
| Steven Bress | DOAN, DUC T |
| 7851-C Beechcraft Avenue | |
| Gaithersburg, MD  20879 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2188 | |

DATE MAILED: 05/04/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

BEST AVAILABLE COPY

PTO-90C (Rev. 10/03)

MTI0002063

| **Office Action Summary** | Application No. | Applicant(s) |
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit |
| | Duc T. Doan | 2188 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1)☒ Responsive to communication(s) filed on <u>28 February 2006</u>.
2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

### Disposition of Claims

4)☒ Claim(s) *1-4,6,10-36,38,41 and 42* is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) *1-4,6,10-36,38,41 and 42* is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

### Application Papers

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

### Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some *  c)☐ None of:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

### Attachment(s)

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____.

MTI0002064

Application/Control Number: 10/174,984                                      Page 2
Art Unit: 2188

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set for in 37 CFR 1.17(e), was filed in this application after final rejection. Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission filed on 2/28/06 has been entered.

Claims 1-43 have been presented for examination in this application. In response to the last Office Action, claims 1,2,6,22,29,36 were amended. claims 5,7-9,37,39,40,43-45 were canceled. As a result, claims 1-4,6,10-36,38,41-42 are now pending in this application.

Claims 1-4,6,10-36,38,41-42 are rejected.

Applicant's arguments filed 1/31/06 have been fully considered but they are not persuasive. Therefore, the rejections from the previous office action are respectfully maintained, with changes as needed to address the amendments on 2/28/06.

### *Claim Rejections - 35 USC # 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to

MTI0002065

Application/Control Number: 10/174,984                                    Page 3
Art Unit: 2188

make and use the same and shall set forth the best mode contemplated by the inventor of

carrying out his invention.

Claim 19 rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written

description requirement. The claim(s) contains subject matter, which was not described in the

specification in such a way as to reasonably convey to one skilled in the relevant art that the

inventor(s), at the time the application was filed, had possession of the claimed invention. The

claim recites " the device ....formats the long-term memory component for a specific file

system". Thus the claim describes a device capable of detecting data of a particular file system of

a particular operating system, for example file system FAT of Window operating system and

formatting it accordingly. Therefore the device's operation is depending on the particular

operating system and file system of that operating system.

Examiner submits that the abstract and specification paragraph 79 recites "the device is

operating system independent" is incorrect.


                              *Claim Rejections - 35 USC § 103*


        The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

        (a) A patent may not be obtained though the invention is not identically disclosed or

        described as set forth in section 102 of this title, if the differences between the subject

        matter sought to be patented and the prior art are such that the subject matter as a whole

        would have been obvious at the time the invention was made to a person having ordinary

MTI0002066

Application/Control Number: 10/174,984                                            Page 4

Art Unit: 2188

skill in the art to which said subject matter pertains.  Patentability shall not be negatived

by the manner in which the invention was made.

Claims 1-4,6,12-14,18-35,41-42 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Holzhammer et al (US 5630093), in view of Schmidt (The SCSC Bus and IDE

Interface, Addison-Wesley, 1995) and further in view of Kung et al (US 2004/0078514).

As in claim 1, Holzhammer describes a stand-alone, dedicated function device (Fig 4:

#92 hardware controller) for removing data (erasing) from a long-term memory component,

comprising: an interface for connecting the stand-alone device to the long-term memory

component (Holzhammer's Fig 4: #104 providing path from controller #92 to memory 96,

Holzhammer's column 8, lines 37-39),

a control circuit (Fig 4: #100 micro-controller) configured to control the long-term memory

component through the interface to remove data from the long-term memory component

(Controller 92 is specifically dedicated to defining and controlling the file structure for flash

memory array 96.  Controller 92 includes a microcontroller 100 for overseeing control;

Holzhammer's column 8, lines 18-20; It is to be appreciated that for the embodiments shown in

FIGS. 2-4, flash memories arrays 34, 64, and 96 could be used to replace either fixed disk drives

or floppy disk drives; Holzhammer's column 10, lines 63-65);

the claim recites a user controllable physical switch that, when actuated by a user, causes the

control circuit to commence removing the data from the long-term memory component.

Holzhammer describes an intelligent controller capable of cleaning a memory device when

Application/Control Number: 10/174,984                                    Page 5
Art Unit: 2188

triggered by a user request using a special clean-up program Holzhammer's column 13, lines 22-
31).

Holzhammer does not describe the claim's irretrievably aspect of removing the data from the

long-term memory component. However, Schmidt teaches a low level format track command

that erasing data by writing disk drive sectors with a data pattern (The ATA standard

recommends that drives should at least write the sector with a data pattern; Schmidt's page 68,

lines 4-5). It would have been obvious to one of ordinary skill in the art at the time of invention

to include low level format procedures as suggested by Schmidt in Holzhammer's system to

completely erase all data thereby further enhancing security of data in the system since all data

on the long term memory device are cleaned completely. (In this way formatting will always

erase all data, which is desirable for security reason; Schmidt's page 68, lines 5-6).

　　　As for the claim's aspect of a stand alone dedicated function device, Holzhammer shows

in Fig 4 that the controller #98 is designed as a separated "stand alone" unit with its own

processor #100; with its own memory #98 rom, and #102 ram; with a dedicated function to

write/erase/read a long term memory media, such as flash memory #96.

　　　As for the claim's aspect of a physical switch in a device that when being activated would

start a program for writing/erasing a long term memory component. Holzhammer does not

explicitly describe this aspect. However, Kung describes a flash card reader capable of read,

write a long-term memory such as a flash memory. The device has buttons (Kung's Fig 2; #25,

paragraphs 22-23,26) that when activated by user would launch a program to erase/write/read

information onto a flash memory component (Fig 1-3, #5).

MTI0002068

Application/Control Number: 10/174,984                                       Page 6
Art Unit: 2188

It would have been obvious to one of ordinary skill in the art at the time of invention to include the buttons that trigger a program as suggested by Kung in Holzhamer's system thereby allowing user to initiate a task simply by pushing a physical button (Kung's abstract, Fig 2: #25).

As in claim 2, the claim recites wherein the control circuit is a circuit dedicated to the permanent removal of the data from the long-term memory component; without regard to data content or data storage format of the data on the long-term memory component. The claim rejected based on the same rationale as in claim 1. Holzhammer clearly describes the hard disk is formatted at the lowest level as sectors of 512 bytes. Data in these sectors are read/write by low level physical device drivers that are provided for example with the BIOS program of processors. (Holzhammer's column 2 lines 25-30; low level formatting to sectors, lines 40-42).

Therefore using the low level device driver, a processor is capable of write/erase/read data in hard disk's sectors regardless of the high level formatting data of a file system associating with a particular operating system. For example, at boot time, the BIOS program can accesses the hard disk before any operating system code is read into the processor (Holzhammer's column 1 lines 37-47).

As in claim 3, the claim rejected based on the same rationale as in claim 1. (See Holzhammer's column 2 lines 25-30).

As in claim 4, the claim recites a casing configured to contain the control circuit and the interface, the user controllable switch being mounted on the casing, the casing being of the size that is portable by the user. The claim rejected based on the same rationale as in claim 1. (See Kung's Fig 2,3).

MTI0002069

Application/Control Number: 10/174,984                                                Page 7
Art Unit: 2188

As in claim 6, the claim recites Light emitting diodes (LED) lights mounted on the casing and providing feedback relating to an operational status of the device to the user. The claim rejected based on the same rationale as in claim 1. (see Kung's Fig 3).

As in claims 12,25,32 the claim rejected based on the same rationale as in claims 1,2.

As in claim 13, Holzhammer describes the device of claim 1, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable [a (configurable) time interval has passed that triggers the clean up. Holzhammer's column 13, lines 28-31].

As in claim 14, Holzhammer describes the device of claim 1, wherein the interface connects the device to a plurality of long-term memory component (an array of flash memory modules; Fig 4: #96).

As in claims 18-21, the claims recite the control circuit partitions the long term memory component after irretrievably removing the data (claim 18); wherein the control circuit formats the long term memory component for a specific file system (claim 19); wherein the control circuit copies an operating system to the long-term memory component (claim 20); wherein the control circuit verifies the long term memory component after removing the data from the long-term memory component (claim21). The claims describes the steps of preparing the memory device  (a disk), and writing/reloading an image of data (for example an image of a saved OS code) that was saved before reformatting the disk, and reading back to verify that data was written correctly. These steps are known to be done by a copy program every time a disk is being reformatted and copied with data. (See Holzhammer's column 2 lines 10-15; Kung's abstract, paragraph 21). Furthermore the high level driver software/programs that are capable of reading/

MTI0002070

Application/Control Number: 10/174,984                                   Page 8

Art Unit: 2188

writing/formatting a device accordingly to any known formats of file systems (FAT, NTFS,

Unix) of OS (Window, Linux, Unix) have been written, widely available and readily to be used

with any processors on the market.

Claims 22,29,41 are rejected based on the same rationale as in claims 1.

As in claims 23, 30 the rejection of claim 1 is incorporated herein. Holzhammer further

describes the disk drive and flash memory array are interchangeable, and using an IDE interface

(Holzhammer's column 10, lines 63-65; column 8,lines 53-65).

Claims 24 and 31 rejected based on the same rationale as in claim 6.

Claims 25 and 32 rejected based on the same rationale as in claims 1,2.

Claims 26,33,42 rejected based on the same rationale as in claim 3.

Claims 27,34 rejected based on the same rationale as in claim 13.

Claims 28,35 rejected based on the same rationale as in claim 2.

Claim 36 rejected based on the same rationale as in claims 1,4 and 5.

Claim 38 rejected based on the same rationale as in claims 10.

Claim 41 rejected based on the same rationale as in claim 1.


Claims 10-11 and 38 rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093), Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley,

1995), Kung et al (US 2004/0078514) as applied to claims 1,22,29 and 36 respectively and

further in view of Berg et al (US 6629184).

As in claims 10,11 the claims recite a power supply configured to supply power to the

control circuit; a drive power cord emanating from the casing and configured to supply power

MTI0002071

Application/Control Number: 10/174,984                                Page 9
Art Unit: 2188

from the power supply to the long-term memory component; Holzhammer describes a supply

configured to supply power to the control circuit [In one embodiment, controller 92 is coupled

to a small battery that provides back-up power to controller 92 if power to personal computer

system 70 is removed; Holzhammer's column 10, lines 54-57]. Holzhammer does not describe a

power cord However, Berg describes a control circuit (Fig 10: #100 adapter board)

communicating with host computer and data storage device with IDE interface (Berg's column

8, lines 4-8]. Berg further describes the adapter board has power cables and corresponding IDE

cables connecting to hard disk drive [Fig 4, In addition, power connector 94 is a 4-pin male

connector that mates with and receives power from 4-pin female connector 96 of power cable

98. Berg's column 6, lines 53-55]. Berg further describes a switch controlled by a user to enable

function of the control circuit. (In one embodiment, the interface circuit includes an external

device that permits a user to enable and disable the command-inhibit function of the control

circuit; The external device can be a mechanical switch or a pair of jumper pins; Berg's column

3, lines 42-44, 52-53). It would have been obvious to one of ordinary skill in the art at the time

of invention to include the power cable and the switch as suggested by Berg in Holzhammer's

system to provide power to the hard disk drive and to enable the function of the control circuit

at power up time. (Thus, IDE bus 24 provides the IDE interface for hard disk drive 20, and

power cable 98 provides the electrical power to hard disk drive 20; Berg's column 6, lines 56-

58; When the write-inhibit function is enabled (i.e., jumper 110 is installed at power-up), PAL

130 selectively controls data switch 132 to route the reserved command (01h), rather than the

inhibited IDE commands (3xh, C5h, CAh, CBh), to connector 104; Berg's column10, lines 58-

63).

MTI0002072

Application/Control Number: 10/174,984                                    Page 10
Art Unit: 2188

Claim 38 rejected based on the same rationale as in claims 10 and 11.


Claims 15-17 rejected under 35 U.S.C. 103(a) as being unpatentable over Holzhammer et

al (US 5630093), Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley, 1995), Kung et

al (US 2004/0078514) as applied to claim 1, and further in view of Assaf (US 5966732).

As in claims 15-17, the claims recite the control circuit is further configured to release

hidden data (data in the reserve area) on the long-term memory component before irretrievably

removing the data (claim 15); wherein the control circuit releases the hidden data without user

intervention (claim 16); wherein the control circuit notifies a user when the hidden data requires

a password for release (claim 17). Holzhammer does not describe the claims' detail of

processing hidden data on the disk. However, Assaf describes a method of setting up the

password to enable commands for manipulate data in the reserve area, for example command to

read the size of the reserve area (Assaf's column 4, lines 17-43; the READ NATIVE MAX

LBA/CYL command); Thus when the control circuit execute these commands, a password is

required. It would have been obvious to one of ordinary skill in the art at the time of invention

to include the method as suggested by Assaf in Holzhammer's system to prevent overwriting of

critical information written to the original reserve area by the original equipment manufacturer

(Thus the modifications will not reduce the size of the reserve area to an area that is smaller

than the original reserve area as set up by the manufacturer of the disk drive. This prevents

overwriting of critical information written to the original reserve area by the original equipment

manufacturer; Assaf's column 4, lines 53-58).

MTI0002073

Application/Control Number: 10/174,984                                      Page 11
Art Unit: 2188

### *Response to Arguments*

Applicant's arguments in response to last office action have been fully considered but they are not persuasive. Examiner respectfully traverses Applicant's arguments for the following reasons:

As to the remarks on pages 12-16 for claims 1,2, 13,14

A) Regarding the automating a program to run when a device is powered up, this technique has been known in the art (see rationale in the rejection of claims 1 and 2). Examiner further notes that the specification's Fig 4, pages 13 describing the cleaning device and control circuitry (Fig 4: #320) comprising of processor and memory (ROM, EEPROM, RAM). Thus the cleaning device with the embedded processor and memory in the instant application functions as a portable computer.

B) Examiner maintains that the computer is defined as "any device capable of processing information to produce a desired result..computers perform works in three well-defined steps: accepting input, processing input according to predefined rules (programs), and producing output". The portable computer is defined as "any computer designed to be moved easily". The operating system is defined as "the software that control the allocation and usage of hardware resource such as memory, CPU time, disk space and peripheral devices" (see Microsoft's computer dictionary that Examiner submitted as evidentiary reference). Therefore Examiner respectfully disagrees with Applicant's attempt to characterize operating system and portable computer somehow must correspond to third party software. Examiner further notes that in the argument, applicant does not clearly define what kind of software are provided by the so-called "third party". As for the Applicant 's recitation of "early computers lacked operating

MTI0002074

Application/Control Number: 10/174,984                          Page 12
Art Unit: 2188

systems", Examiner notes that there is no date nor the computer model is provided for so called "early computer". In contrast, in 1953 to 1960s, the series of computers UNIVAC 110x (built with vacuum tubes) already ran with operating system (Exec II, RTOS); see Univac that Examiner submitted as evidentiary reference.

C) Applicant's argument that the device in the instant application is "similar to the Ipod Shuffle since both of them comprise an embedded processor and memory..neither of them has the functionality of a portable computer". Examiner respectfully disagrees. As discussed in the above paragraph "any processor capable of processing input according to rules and providing an output result" is defined as a computer. Thus the device in the instant application is a portable computer. Examiner further notes that a stand-alone disk duplicator, a CD burner is similar to the device in the instant application.

D) Applicant argues, "the current device does not include an operation system, and thus is incapable of loading a program ". Examiner respectfully disagrees. Holzhammer's column 1 lines 37-47 teaches a boot strap procedure, wherein for example at boot time, the processor loads the BIOS program, that in turn accesses the hard disk before any operating system code is read into the processor. Thus Holzhammer clearly describes a program can be loaded and executed in the processor before loading any subsequence programs.

As to the remarks on page 17 for claims 18-21

E) Applicant argues, "the present device can format the long-term storage device to PC, Max, Linus". Examiner maintains that Holzhamer clearly teaches high level formatting a disk into disk clusters that are associating with file systems (FAT, Unix..) of any known OS such as Window, UNIX etc..(Holzhammer's column 2 lines 31-35).

MTI0002075

Application/Control Number: 10/174,984                                        Page 13
Art Unit: 2188

As to the remarks on pages 20 for claims 15-17

F) the argument recites ".. the option of decoding and releasing a Device Configuration Overlay (DCO) area.." Examiner cannot find anywhere in the claims and specification that describe the Device Configuration Overlay (DCO) area. Applicant is asked to provide detail citations in the disclosure for this particular feature "Device Configuration Overlay (DCO) area".

Therefore the rejections of claims 15-17 are deemed to meet the claims' language.

### Conclusion

When responding to the office action, Applicant is advised to provide the examiner with the line numbers and page numbers in the application and/or references cited to assist examiner to locate the appropriate paragraphs.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Duc T. Doan whose telephone number is 571-272-4171. The examiner can normally be reached on M-F 8:00 AM 05:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Mano Padmanabhan can be reached on 571-272-4210. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

MTI0002076

Application/Control Number: 10/174,984                                    Page 14
Art Unit: 2188

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).


DD                                          Mano Padmanabhan

                                            Supervisory Patent Examiner

                                            TC2188

                                            MANO PADMANABHAN
                                            SUPERVISORY PATENT EXAMINER

MTI0002077

This Page is inserted by IFW Indexing and Scanning Operations and is not part of the Official Record

# BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of the original documents submitted by the applicant.

Defects in the images include but are not limited to the items checked:

☑ BLACK BORDERS

☐ IMAGE CUT OFF AT TOP, BOTTOM OR SIDES

☐ FADED TEXT OR DRAWING

☐ BLURED OR ILLEGIBLE TEXT OR DRAWING

☐ SKEWED/SLANTED IMAGES

☐ COLORED OR BLACK AND WHITE PHOTOGRAPHS

☐ GRAY SCALE DOCUMENTS

☑ LINES OR MARKS ON ORIGINAL DOCUMENT

☐ REPERENCE(S) OR EXHIBIT(S) SUBMITTED ARE POOR QUALITY

☐ OTHER: _____

**IMAGES ARE BEST AVAILABLE COPY.
As rescanning documents *will not* correct images problems checked, please do not report the problems to the IFW Image Problem Mailbox**

MTI0002078



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 8535**

| SERIAL NUMBER 10/174,984 | FILING DATE 06/20/2002 RULE | CLASS 711 | GROUP ART UNIT 2188 | ATTORNEY DOCKET NO. 0032-0002 |
|---|---|---|---|---|

**APPLICANTS**

Steven Bress, Germantown, MD;

Dan Bress, Germantown, MD;
Mike Menz, Roseville, CA;Mark Joseph Menz, Folsom, CA;

** CONTINUING DATA *********************
   This appln claims benefit of 60/299,783 06/21/2001

** FOREIGN APPLICATIONS *******************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** SMALL ENTITY **
** 07/16/2002

| Foreign Priority claimed | ☐ yes ☒ no | | | | |
|---|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met | ☐ yes ☐ no ☐ Met after Allowance | STATE OR | SHEETS | TOTAL | INDEPENDENT |
| Verified and Acknowledged | Examiner's Signature        Initials | COUNTRY MD | DRAWING 10 | CLAIMS 45 | CLAIMS 5 |

**ADDRESS**
Steven Bress
7851-C Beechcraft Avenue
Gaithersburg , MD
20879

**TITLE**
Systems and methods for removing data stored on long-term memory devices

| FILING FEE RECEIVED 679 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

MTI0002079

## Index of Claims

| | |
|---|---|
| Application/Control No. | Applicant(s)/Patent under Reexamination |
| 10/174,984 | BRESS ET AL. |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

| | | |
|---|---|---|
| √ | Rejected | |
| = | Allowed | |
| − | (Through numeral) Cancelled | |
| + | Restricted | |
| N | Non-Elected | |
| I | Interference | |
| A | Appeal | |
| O | Objected | |

| Claim (Final) | Claim (Original) | 4/8/06 |
|---|---|---|
| | 1 | √ |
| | 2 | √ |
| | 3 | √ |
| | 4 | √ |
| | 5 | . |
| | 6 | √ |
| | 7 | . |
| | 8 | . |
| | 9 | . |
| | 10 | √ |
| | 11 | √ |
| | 12 | √ |
| | 13 | √ |
| | 14 | √ |
| | 15 | √ |
| | 16 | √ |
| | 17 | √ |
| | 18 | √ |
| | 19 | √ |
| | 20 | √ |
| | 21 | √ |
| | 22 | √ |
| | 23 | √ |
| | 24 | √ |
| | 25 | √ |
| | 26 | √ |
| | 27 | √ |
| | 28 | √ |
| | 29 | √ |
| | 30 | √ |
| | 31 | √ |
| | 32 | √ |
| | 33 | √ |
| | 34 | √ |
| | 35 | √ |
| | 36 | √ |
| | 37 | . |
| | 38 | . |
| | 39 | . |
| | 40 | . |
| | 41 | √ |
| | 42 | √ |
| | 43 | . |
| | 44 | . |
| | 45 | . |
| | 46 | |
| | 47 | |
| | 48 | |
| | 49 | |
| | 50 | |

| Claim (Final) | Claim (Original) |
|---|---|
| | 51 |
| | 52 |
| | 53 |
| | 54 |
| | 55 |
| | 56 |
| | 57 |
| | 58 |
| | 59 |
| | 60 |
| | 61 |
| | 62 |
| | 63 |
| | 64 |
| | 65 |
| | 66 |
| | 67 |
| | 68 |
| | 69 |
| | 70 |
| | 71 |
| | 72 |
| | 73 |
| | 74 |
| | 75 |
| | 76 |
| | 77 |
| | 78 |
| | 79 |
| | 80 |
| | 81 |
| | 82 |
| | 83 |
| | 84 |
| | 85 |
| | 86 |
| | 87 |
| | 88 |
| | 89 |
| | 90 |
| | 91 |
| | 92 |
| | 93 |
| | 94 |
| | 95 |
| | 96 |
| | 97 |
| | 98 |
| | 99 |
| | 100 |

| Claim (Final) | Claim (Original) |
|---|---|
| | 101 |
| | 102 |
| | 103 |
| | 104 |
| | 105 |
| | 106 |
| | 107 |
| | 108 |
| | 109 |
| | 110 |
| | 111 |
| | 112 |
| | 113 |
| | 114 |
| | 115 |
| | 116 |
| | 117 |
| | 118 |
| | 119 |
| | 120 |
| | 121 |
| | 122 |
| | 123 |
| | 124 |
| | 125 |
| | 126 |
| | 127 |
| | 128 |
| | 129 |
| | 130 |
| | 131 |
| | 132 |
| | 133 |
| | 134 |
| | 135 |
| | 136 |
| | 137 |
| | 138 |
| | 139 |
| | 140 |
| | 141 |
| | 142 |
| | 143 |
| | 144 |
| | 145 |
| | 146 |
| | 147 |
| | 148 |
| | 149 |
| | 150 |

U.S. Patent and Trademark Office

Part of Paper No. 20060410

MTI0002080

*Search Notes*

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/174,984 | BRESS ET AL. |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## SEARCH NOTES
### (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| update seearch | 4/9/2006 | DD |
| | | |
| | | |
| | | |
| | | |
| | | |

Part of Paper No.  20060410

MTI0002081

01/04/2002  11:07   3019906437          FLOWER_VALLEY_PRESS                    PAGE  01

RECEIVED
CENTRAL FAX CENTER

AUG 0 4 2006

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **TO:** | | **FROM:** | |
| Name: | Examiner D. Doan | Name: | Steve Bress |
| | USPTO | Phone No.: | 202-487-8865 |
| Fax No.: | (571) 273-8300 | Fax # Verified by: | |
| Phone No.: | 571-272-4210 | # Pages (incl. this): 32 | |
| Subject: | Patent Amendment | Date: | 08/04/2006 |

**Message:**

Re: U.S. Application of : Steven Bress et al.
   Application No.: 10/174,984
   Filed: June 20, 2002
   Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

PAGE 1/32 * RCVD AT 8/4/2006 9:24:59 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-1/7 * DNIS:2738300 * CSID:3019906437 * DURATION (mm-ss):06-30

MTI0002082

01/04/2002  11:07    3019906437        FLOWER_VALLEY_PRESS                    PAGE  02

RECEIVED
CENTRAL FAX CENTER

AUG 0 4 2006

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application of: | ) | |
| | ) | |
| Steven Bress et al. | ) | |
| | ) | |
| Serial No.: 10/174,984 | ) | Group Art Unit: 2188 |
| | ) | |
| Filed:  June 20, 2002 | ) | Examiner:  D. Doan |
| | ) | |
| For:   SYSTEMS AND METHODS FOR | ) | |
|         REMOVING DATA STORED ON | ) | |
|         LONG-TERM MEMORY DEVICES | ) | |

U.S. Patent and Trademark Office
Customer Window, Mail Stop Amendment
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

## AMENDMENT

In response to the Office Action of May 04, 2006, please amend this

application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 11 of this paper.

1

MTI0002083

Serial Number: 10/174,984

**Amendments to the Claims**:

This listing of claims will replace all prior versions, and listings, of claims in the
application:

1.     (currently amended)  A stand-alone, dedicated function device for
removing data from a long-term memory component, comprising:

an interface for connecting the stand-alone, dedicated function device to
the long-term memory component;

a control circuit configured to control the long-term memory component
through the interface to irretrievably remove data from the long-term memory
component; and

a user controllable physical switch that, when actuated by a user, causes
the control circuit to commence irretrievably removing the data from the long-
term memory component,

wherein the removing data device is operating system independent.

2.     (original)  The device of claim 1, wherein the control circuit is a
circuit dedicated to the permanent removal of the data from the long-term
memory component; without regard to data content or data storage format of the
data on the long-term memory component.

2

MTI0002084

Serial Number: 10/174,984

3.      (original)  The device of claim 1, wherein the control circuit irretrievably removes the data from the long-term memory component by overwriting the data on tracks of the long-term memory component.

4.      (original)  The device of claim 1, further comprising:

a casing configured to contain the control circuit and the interface, the user controllable switch being mounted on the casing, the casing being of a size that is portable by the user.

6.      (original)  The device of claim 4, further comprising:

Light Emitting Diodes (LED) lights mounted on the casing and providing feedback relating to an operational status of the device to the user.

10.     (original)  The device of claim 1, further comprising:

a power supply configured to supply power to the control circuit.

11.     (original)  The device of claim 10, further comprising:

a drive power cord emanating from the casing and configured to supply power from the power supply to the long-term memory component.

12.     (original)  The device of claim 1, wherein the switch, when actuated

3

MTI0002085

Serial Number: 10/174,984

by the user, causes the control circuit to commence irretrievably removing all the data stored on the long-term memory component.

13. (original) The device of claim 1, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

14. (original) The device of claim 1, wherein the interface connects the device to a plurality of long-term memory components.

15. (currently amended) The device of claim 1, wherein the control circuit is further configured to ~~release hidden data~~ open a hidden storage area on the long-term memory component before irretrievably removing the data.

16. (currently amended) The device of claim 15, wherein the control circuit ~~releases the hidden data~~ opens a hidden storage area without user intervention.

17. (currently amended) The device of claim 15, wherein the control circuit notifies a user when ~~the hidden data~~ opening a hidden storage area requires a password for release.

4

MTI0002086

01/04/2002  11:07   3019906437                FLOWER_VALLEY_PRESS                    PAGE  06

Serial Number: 10/174,984

18.    (original)  The device of claim 1, wherein the control circuit partitions the long-term memory component after irretrievably removing the data.

19.    (currently amended)  The device of claim 18, wherein the control circuit formats the long-term memory component for a <u>pre-determined</u> specific file system.

20.    (currently amended)  The device of claim 19, wherein the control circuit copies a <u>pre-determined</u> operating system to the long-term memory component.

21.    (currently amended)  The device of claim 1, wherein the control circuit verifies <u>the functionality of</u> the long-term memory component after removing the data from the long-term memory component.

22.    (currently amended)  A method of irretrievably deleting data by a stand-alone, dedicated function cleaning device from a long-term memory component installed in a computer, the method comprising:

connecting a cable associated with the stand-alone, dedicated function cleaning device to the long-term memory component in the computer;

5

MTI0002087

01/04/2002  11:07  3019906437  FLOWER_VALLEY_PRESS  PAGE  07

Serial Number: 10/174,984

powering-up the computer;

activating the stand-alone, dedicated function cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component;

wherein the cleaning device is operating system independent.

23.  (original)  The method of claim 22, wherein the long-term memory component is a disk drive.

24.  (original)  The method of claim 22, wherein signaling completion of the data removal is performed via one or more light emitting diodes (LEDs).

25.  (original)  The method of claim 22, wherein irretrievably removing data from the long-term memory component includes irretrievably removing all of the data from the long-term memory component.

26.  (original)  The method of claim 22, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.

6

MTI0002088

Serial Number: 10/174,984

27.  (original)  The method of claim 22, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

28.  (original)  The method of claim 22, wherein irretrievably removing the data includes removing data associated with multiple operating systems on the long term memory component.

29.  (currently amended)  A method of irretrievably deleting data by a stand-alone, dedicated function cleaning device from a long-term memory component, the method comprising:

connecting a cable associated with the stand-alone, dedicated function cleaning device to the long-term memory component;

connecting a power cable attached to the stand-alone, dedicated function cleaning device to the long-term memory component;

activating the stand-alone, dedicated function cleaning device via a physical switch attached to the cleaning device;

irretrievably removing data from the long-term memory component; and

signaling completion of the data removal from the long-term memory component;

7

MTI0002089

01/04/2002  11:07  3019906437                    FLOWER_VALLEY_PRESS                    PAGE  09

Serial Number: 10/174,984

wherein the cleaning device is operating system independent.


30.    (original)  The method of claim 29, wherein the long-term memory component is a disk drive.


31.    (original)  The method of claim 29, wherein signaling completion of the data removal includes illuminating one or more light emitting diodes (LEDs).


32.    (original)  The method of claim 29, wherein irretrievably removing data from the long term memory component includes irretrievably removing all of the data from the long-term memory component.


33.    (original)  The method of claim 29, wherein the data from the long-term memory component is removed by overwriting the data on tracks of the long-term memory component.


34.    (original)  The method of claim 29, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is user settable.


35.    (original) The method of claim 29, wherein irretrievably removing

8

MTI0002090

Serial Number: 10/174,984

the data includes removing data associated with multiple operating systems on the long term memory component.

36.    (currently amended)  A stand alone, dedicated function device for removing data from a long-term memory component, comprising:

means for providing feedback relating to an operational status of the device to a user;

a user settable switch;

an interface for connecting to the long-term memory component; and

circuitry coupled to the means for providing feedback, the user settable switch, and the interface, the circuitry configured, when the switch is actuated by a user, to communicate with the long-term memory component through the interface and control the long-term memory component to irretrievably remove the data therefrom,

wherein the circuitry is enclosed in a portable casing, and the user settable switch and the interface are mounted on an external portion of the casing;

wherein the removing data device is operating system independent.

38.    (original) The device of claim 36, further comprising:

a power supply configured to supply power to the circuitry; and

9

MTI0002091

01/04/2002  11:07   3019906437                FLOWER_VALLEY_PRESS                    PAGE  11

Serial Number: 10/174,984

a drive power cord emanating from the casing, the drive power cord

receiving power from the power supply.


41.    (original) The device of claim 36, wherein the circuitry includes an

embedded microprocessor.


42.    (original) The device of claim 36, wherein the circuitry irretrievably

removes the data from the long-term memory component by controlling

overwriting of the data on tracks of the long-term memory component.


43.    (new) The device of claim 19, wherein the specific file system is

user selectable.

10

PAGE 11/32 ' RCVD AT 8/4/2006 9:24:59 AM [Eastern Daylight Time] ' SVR:USPTO-EFXRF-1/7 ' DNIS:2738300 ' CSID:3019906437 ' DURATION (mm-ss):06-30

MTI0002092

01/04/2002 11:07 3019986437 FLOWER_VALLEY_PRESS PAGE 12

Serial Number: 10/174,984

### Remarks

In the Office Action of May 4, 2006, the Examiner rejected claim 19 under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement; rejected claims 1-4, 6, 12-14, 18-38, and 41-42, under 35 U.S.C. § 103(a) in view of U.S. Patent No. 5,630,093 to Holzhammer et al. ("Holzhammer") in view of "The SCSI Bus and IDE Interface," Friedhelm Schmidt ("Schmidt") and further in view of Kung et al ("Kung") (US 2004/0078514); rejected claims 10-11 and 36 under 35 U.S.C. § 103(a) in view of U.S. Patent No. 5,630,093 to Holzhammer et al. ("Holzhammer") in view of "The SCSI Bus and IDE Interface," Friedhelm Schmidt ("Schmidt"), Kung et al ("Kung") (US 2004/0078514) and further in view of Berg et all ("Berg") (US 6629184); rejected claims 15-17 under 35 U.S.C. § 103(a) in view of U.S. Patent No. 5,630,093 to Holzhammer et al. ("Holzhammer") in view of "The SCSI Bus and IDE Interface," Friedhelm Schmidt ("Schmidt"), Kung et al ("Kung") (US 2004/0078514) and further in view of Assaf ("Assaf") (US 5966732).

By this Amendment, Applicants have amended claim 1, 15-17, 19-22, 29, 36 and added claim 43 to more appropriately define the invention.

11

MTI0002093

Serial Number: 10/174,984

*Rejection of Claim 19 under 35 U.S.C. 112, first paragraph*

The amendments to claim 19 and addition of claim 41 more appropriately

define the invention. On page 3 of the current office action Examiner says "thus

the claim [19] describes a device capable of detecting data of a particular file

system... and formatting it accordingly." That was not Applicant's intent of claim

19. Applicant's amendment to claim 19 should clarify that the current invention

does not detect a particular file system and reformat the drive to the file system it

detects. Rather, the current invention formats the drive to a particular file system

set at the factory regardless of what file system had been on the drive.

Applicant's specification paragraph 82: "Still further, the cleaning device removes

data from all partitions on the target device, regardless of the data's format..."

Formatting a drive to a specific pre-set file system is well known in the art.

Note: the current invention teaches a stand-alone, dedicated-function device that

performs operations on a drive regardless of the drive's current state.

*Rejection of Claim 1-4, 6, 12-14, 18-38 and 41-42 under 35 U.S.C. 103(a) in view
of Holzhammer, Schmidt and further in view of Kung*

For a proper rejection under 35 U.S.C. § 103(a), the claimed invention as

a whole must be considered. *Stratoflex, Inc v. Aeroquip Corp.*, 713 F.2d 1530,

218 USPQ 871 (Fed. Cir. 1983). Further, to establish a *prima facie* case of

12

MTI0002094

Serial Number: 10/174,984

obviousness under 35 U.S.C. § 103(a), all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA 1974); see also MPEP 2143.03. It is clearly not appropriate for the Examiner to pick and choose certain features of the invention as being inherently obviousness or not important for determining patentability.

Applicant's claim one states "A stand-alone, dedicated function device for removing data from a long-term memory component..." This device as a <u>whole</u> must be considered.

Referring again to Applicant's claim one "A stand-alone, dedicated function device for removing data from a long-term memory component..." Applicants understand "stand-alone" to mean all the hardware, logic and circuitry necessary to perform a task. For example, heating coils can be placed near a piece of bread to produce toast. However heating coils are not a stand-alone device. For heating coils to function as a toaster, they must have a means to be supplied with electricity, have a means to be at the proper distance from the bread, have a means to be turned on for an appropriate amount of time. By adding hardware, logic and circuitry to heating coils, a stand-alone toasting device can be built.

Applicants understand "dedicated function" to mean a device that is configured at the factory for a specific purpose. For example, a Toaster Oven, such as the Cuisanart Convection Oven Toaster Broiler with Exact Heat™ uses a

13

MTI0002095

01/04/2002 11:07 3019906437 FLOWER_VALLEY_PRESS PAGE 15

Serial Number: 10/174,984

microcontroller to control some of its functions and take input from a user, but it does not have any provisions to allow the user to change its basic functionality.

Applicants understand "device" to mean a machine and/or appliance. Applicants understand that there are multiple meanings for the word "device". While Applicants feel that the phrase "stand-alone, dedicated function" sufficiently define and limit the word "device", Applicants are not adverse to substituting the word "appliance" for the word "device" if Examiner feels that "appliance" more accurately describes the current invention.

Please refer to Applicant's Figure 7, which is a diagram of an external view of an implementation of the stand-alone, dedicated function device. To operate Applicant's stand-alone, dedicated function device 300 a user plugs 701 into a standard wall outlet, connects a drive to cable 702. Upon activation of switch 703 the device/appliance initiates cleaning operations on the drive attached to cable 702. In the most basic iteration of the current invention that is all that can be done with the device/appliance. In this most basic iteration, once a user has plugged the stand-alone, dedicated function cleaning device/appliance into a wall socket and attached a drive to cable 702 a user has only two choices, one to leave the device/appliance as is, or to activate switch 703 to start a cleaning procedure. That is the total functionality of the device/appliance available to a user.

The fact that our device may or may not use a microcontroller does not

14

MTI0002096

Serial Number: 10/174,984

make it a "Portable Computer" in the sense that the Examiner describes on page 11 of the May 4, 2006 Office Action. Applicant's claims make no mention of a microcontroller, microprocessor, or any such related circuit. A portable computer is a device that can accept user programming to perform a function. A dedicated function, stand alone device/appliance while portable, does not allow a user to change its functionality. A digital watch has a microcontroller, ROM and RAM in it, but it is not possible for the user to reconfigure the device to perform any functions for which it was not designed. Similarly, the Braun 8595 electric shaver uses a microcontroller to control its LCD screen and track battery usage, charging, and cleaning. It does not have any method for the user to change its programming or basic functionality. The user may turn it on or off, and it then performs its stand-alone, dedicated function of vibrating the shaving head in order to cut whiskers, should the user touch the shaving head to a whisker.

Applicants' specification paragraph 80 "As described above, a cleaning device permanently removes data from a target long-term memory device. The cleaning device is portable, provides easy to understand user feedback, has a simple user interface and could thus be effectively used by non-technical people." It appears to Applicants that Examiner believes the current invention is similar to a "device driver". Applicants submit that the above discussion clearly shows that the current invention is a device/appliance that has more in common with a shaving razor than a portable computer.

15

MTI0002097

Serial Number: 10/174,984

Applicants' specification paragraph 81 "The cleaning device has a number of advantages. It is operating system independent... It is a stand alone device that can replace more complicated and more expensive devices or systems. Additionally, the cleaning device does not require that the operator have any particular knowledge of the target device..."

Key Observations

- Applicants' device/appliance as a whole must be considered,

- Applicants' stand-alone, dedicated-function cleaning device/appliance has limited functionality,

- Applicants' stand-alone, dedicated-function cleaning device/appliance is not able to be reconfigured by a user,

- Applicants' stand-alone, dedicated-function cleaning device/appliance has limited functionality,

- Applicants' stand-alone, dedicated-function cleaning device/appliance performs operations on a long-term memory storage device regardless of the current state of said device

- Applicants' stand-alone, dedicated-function cleaning device/appliance solves real world problems of securely recycling long-term memory storage devices using limited resources

- Applicants' agree that the idea of cleaning memory devices is not in and of

16

MTI0002098

Serial Number: 10/174,984

itself a novel idea, the originality comes into play when this cleaning

functionality is built as a stand-alone, dedicated function device/appliance

which is easier to use and less expensive to manufacture that current art.

Applicants' submit that the unique combination of hardware and logic

make this device/appliance a novel notion that makes the invention

allowable.


Holzhammer

    Holzhammer abstract states: "A non-volatile semiconductor memory that is

erased in blocks is described. The non-volatile semiconductor memory includes

an active block for storing first data and a reserve block for storing second data.

The second data is a copy of the first data. The copy is made during a clean-up

operation prior to erasure of the active block. The non-volatile semiconductor

memory also includes a mapping table for mapping a logical address of an

allocation unit to a physical address of a sector within the non-volatile

semiconductor memory."

    One knowledgeable in the art would understand that Holzhammer

describes a chip, not a functional device/appliance. A user holding a

Holzhammer chip in one hand and a hard drive in the other, would not be able to

clean said drive. A user hold Applicants' stand along, dedicated function cleaning

device/appliance in one hand and a hard drive in the other, would be able to

17

MTI0002099

01/04/2002  11:07   3019906437                     FLOWER_VALLEY_PRESS                    PAGE  19

Serial Number: 10/174,984

clean said drive. In point of fact, Applicants' cleaning device/appliance can just as
easily clean a Holzhammer device as it can clean a drive as the details of the
Drive interface are completely irrelevant to Applicants' current invention.

　　　　Holzhammer teaches a method for emulating a disk using Flash memory.
To use the hard drive analogy, Holzhammer teaches how to build a hard disk
given a rotating magnetic platter and a read/write head. Holzhammer is only
concerned with what goes on between the hard drive interface and the read/write
head. This is the circuit that was moved from an external drive controller in the
MFM days of hard drives to the embedded controller that makes up a modern
IDE/ATA/ATAPI storage device. As such, it is quite irrelevant what functions and
commands Holzhammer embeds in a controller built around Holzhammer based
silicon. If Holzhammer (Intel) were building a drive to compete with the likes of
Seagate/Maxtor, Samsung and the rest, they could very well build a formatting
feature into the drive. This would not affect the validity and novelty of Applicants'
cleaning device/appliance in the least.

　　　　There are many hundreds of millions of existing IDE drives, and at some
point every last one of them would benefit from a simple method of cleaning.
Adding a new feature such as the formatting suggested by Holzhammer does
nothing to allow the existing drives to be cleaned. That is why Applicants have
specified a stand-alone, dedicated function, operating system independent
cleaning device/appliance. This cleaning device/appliance can clean any storage

18

MTI0002100

01/04/2002 11:07 3019906437 FLOWER_VALLEY_PRESS PAGE 20

Serial Number: 10/174,984

device compatible with the cleaning device/appliance's interface regardless as to whether it has any of the "special" features taught by Holzhammer. In the rubble of the World Trade Center, there were many hundreds if not thousands of hard drives that had to be physically and magnetically cleaned. Applicants' invention would have made the task much simpler.

Holzhammer is a standalone unit only in terms that it doesn't have any additional support chips, but it is a chip, not a functional device/appliance without a multitude of additional components.

Accordingly, Applicants submit that Holzhammer does not disclose or suggest a stand-alone, dedicated function cleaning device/appliance.


Schmidt

Applicants' agree that to communicate to with a long term storage device one must use the proper protocol. Schmidt is outdated, the drive interface and command protocols are better detailed by the T13 committee T13.org. Schmidt teaches nothing regarding the hundreds of millions of drives that may require cleaning that do not have the "format track" command that Schmidt references, as it is an obsolete command. Applicants agree that Applicants make use of a subset of the limited number of commands available to perform functions to a long term storage device, some of which are disclosed in Schmidt. Additionally Applicants agree that Applicants' make use of the description of drive interface

19

MTI0002101

Serial Number: 10/174,984

disclosed in Schmidt. However, Applicants submit that Schmidt alone or in combination with Holzhammer does not disclose or suggest a stand-alone, dedicated function cleaning device/appliance.

Kung

Applicants' Patent Application was filed in Jun. 20, 2002. Applicants' related Provisional Patent Application was filed on Jun. 21, 2001. Kung was filed in Oct. 18, 2002.

One skilled in the art would understand that Kung teaches a specialized input device to a standard desktop computer. Along with a device driver that must be run on said computer, Kung allows a user to execute certain function on the computer by activating a button switch. The prior art for this is a macro for a standard keyboard. Kung is user programmable/configurable. Applicants' stand-alone, dedicated function cleaning device/appliance is not user programmable/configurable.

Applicants agree that Kung uses a switch, as do many other devices. However, Applicants submit that Kung alone or in combination with Holzhammer and Schmidt does not disclose or suggest a stand-alone, dedicated function cleaning device/appliance.

Device Driver vs. Device/Appliance

20

MTI0002102

Serial Number: 10/174,984

Examiner's Office Action page 6 states "Data in these sectors are read/write by low level physical device drivers that are provided for example with the BIOS program of processors." One skilled in the art would understand that like the Braun 8595 electric shaver or Cuisinart Convection Oven Toaster Broiler with Exact Heat™ Applicants' stand-alone, dedicated function cleaning device/appliance may include a microcontroller without the use of "device drivers" and a BIOS. A BIOS is not a requirement for microcontrollers, but it is a common, though not required feature of most desktop PCs. Typically a machine that is complicated and/or configurable enough to require a BIOS is no longer a low-cost dedicated device/appliance.

In summary a "device driver" and a "device/appliance" may have similar functionality. The key difference, is that a "device driver" requires another machine, such as a Personal Computer to run on, while a device/appliance performs the function independently of any other machine. Running a "device driver" on a Personal Computer is not the same as using a device/appliance. There are many differences, in particular a device/appliance typically is easier to use and less expensive to manufacture.

Referring to page 7-8 of Examiner's office action "Furthermore the high level driver software/programs that are capable of reading/writing/formatting a device accordingly to any known format of the file systems... have been written, widely available and readily to be used with any processor on the market."

21

MTI0002103

01/04/2002 11:07    3019906437    FLOWER_VALLEY_PRESS    PAGE  23

Serial Number: 10/174,984

Applicants' specification does not include any mention of "high level drivers".

"High level drivers are a software construct designed as an abstraction layer for

powerful desktop PCs. Applicants' stand-alone, dedicated function cleaning

device/appliance does not call out for such an inefficient use of resources as

drivers, operating systems, or anything else that might be found in a desktop PC.

A key observation is that a PC is designed to be configured by a user, and thus

has means to make this configuration easy using BIOS and drivers, an appliance

that is not made to be configured by a user does not need such things.


Applicants' cleaning device/appliance and reading data

      Referring to page 7 of Examiner's office action "writing/reloading an image

of data (for example an image of a saved OS code) that was saved before

reformatting the disk, and reading back to verify that data was written correctly."

Applicants have amended claims 19-22 to more accurately reflect the current

invention. Applicants submit that the claims as amended make clear that

Applicants' cleaning device/appliance does not read data on a long-term memory

device. Furthermore the cleaning device/appliance performs operations on a

long-term memory device regardless of the memory device's status or

configuration. Applicants' cleaning device/appliance may write an image of data

(for example an image of a pre-determined OS code), however the cleaning

device/appliance does not save any data from a disk. Claim 19 as amended

22

MTI0002104

01/04/2002  11:07   3019906437                      FLOWER_VALLEY_PRESS                      PAGE  24

Serial Number: 10/174,984

makes clear that the cleaning device/appliance may put some data back on the cleaned disk. This data must be known to the device at the time of manufacture as Applicants' specification does not describe any systems or methods to read and store data from the disk.

For at least these reasons, Applicants submit that Holzhammer, Schmidt and Kung, either alone or in combination, do not disclose or suggest each feature of claim 1. Accordingly the rejection of this claim should be withdrawn.

Applicants submit rejection of claims 2-3, 6, 12-14 and 18-21 are improper, at least by virtue of their dependency from claim 1 and for reasons given above.

Applicants submit the rejection of claim 22 should be withdrawn based on the same rationale as claim 1.

Applicants submit the rejection of claims 23-28 are improper, at least by virtue of their dependency from claim 22 and for reasons given above.

Applicants submit the rejection of claim 29 should be withdrawn based on the same rationale as claim 1.

Applicants submit the rejection of claims 30-35 are improper, at least by virtue of their dependency from claim 29 and for reasons given above.

Applicants submit the rejection of claim 36 should be withdrawn based on the same rationale as claim 1.

PAGE 24/32 * RCVD AT 8/4/2006 9:24:59 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-1/7 * DNIS:2738300 * CSID:3019906437 * DURATION (mm-ss):06-30

MTI0002105

01/04/2002 11:07 3019906437 FLOWER_VALLEY_PRESS PAGE 25

Serial Number: 10/174,984

Applicants submit the rejection of claims 38 and 41-42 are improper, at least by virtue of their dependency from claim 36 and for reasons given above.

*Rejection of Claims 10-11 and 38 under 35 U.S.C. 103(a) in view of Holzhammer, Schmidt, Kung and further in view of Berg*

Berg

Applicants are very familiar with Berg, note that Berg cited Applicants' Patent Application 2002/0040418 Bress et al. under references cited. Applicants agree that for an electrical device to work it must have power. In the case of Applicants' stand-alone, dedicated feature cleaning device/appliance both the cleaning device/appliance and the long-term storage device (if it is a hard drive) must have power.

From Berg's Abstract: "The interface circuit is particularly well-suited for preventing a host computer from writing to an IDE hard disk drive in a gaming machine." The only similarity in <u>function</u> between Berg and Applicants' stand-alone, dedicated feature cleaning device/appliance is that they both interface with hard drives. There are hundreds of unique devices that interface with hard drives known in the art that also require power for the device and the hard drive.

Applicants' cleaning device/appliance shares some functions with other devices known in the art, it has an interface to a long term storage device, the cleaning device/appliance requires power and the long term storage device may

24

MTI0002106

Serial Number: 10/174,984

require power. The originality comes into play when the cleaning functionality is
confined to a stand-alone, dedicated function cleaning device/appliance.

For at least these reasons, Applicants submit that Berg either alone or in
combination with Holzhammer, Schmidt and Kung, do not disclose or suggest
each of the features recited in claims 10-11 and 38 and the rejection of these
claims should therefore be withdrawn.

*Rejection of Claims 15-17 under 35 U.S.C. 103(a) in view of Holzhammer,
Schmidt, Kung and further in view of Assaf*

Applicants have amended claims 15-17 to clarify the current invention.
Applicants' cleaning device/appliance opens hidden areas for the sole purpose of
cleaning those areas. Hidden areas are opened regardless of their status. The
cleaning device/appliance does not read the data in these hidden areas.
Furthermore the cleaning device/appliance makes <u>no</u> effort to prevent overwriting
of data in hidden areas. Applicants cleaning device/appliance is directed mainly
toward individuals involved in recycling long-term storage devices. As such, there
is a benefit to cleaning the entire storage device, regardless of its contents, or
how it may be divided or formatted.

Assaf is directed toward protecting data in hidden areas. Applicants'
claims 15-17 as amended are directed solely towards opening hidden areas. The
fact that both Applicant and Assaf use similar or identical commands out of the

25

MTI0002107

Serial Number: 10/174,984

limited command set in an IDE drive is not relevant. The functionality that each teaches are unrelated.

For at least these reasons, Applicants submit that Assaf either alone or in combination with Holzhammer, Schmidt and Kung, do not disclose or suggest each of the features recited in claims 15-17, and the rejection of these claims should therefore be withdrawn.

Response to Examiner's Response to Arguments (office action page 11)

Examiner's arguments are that Applicants' invention uses a microprocessor and thus must be a portable computer. And that cleaning with a portable computer is well known in the art. Applicants' agree that cleaning with a portable computer is well known in the art.

Applicants' strongly object to considering Applicants' stand-alone, dedicated function cleaning device/appliance in the same class as portable computers. Applicants assert that the core of a personal computing device is the ability to change its functionality. That is, a personal computer can play music, can do word processing, can connect to the Internet and that this functionality is controlled by a User. In contrast the Braun 8595 electric shaver uses a microcontroller to control its LCD screen and track battery usage, charging and cleaning. However the Braun 8595 electric shaver does not have any method for a user to change its functionality or programming.

26

MTI0002108

Serial Number: 10/174,984

Like the Braun 8595 electric shaver Applicants' stand-alone, dedicated function cleaning device/appliance does not have any method for a user to change its functionality or programming.

Applicants' stand-alone, dedicated function cleaning device/appliance could be manufactured with a Microchip® PIC16C65B chip. http://www.microchip.com/stellent/idcplg?IdcService=SS_GET_PAGE&nodeId=1335&dDocName=en010151

The Microchip® PIC16C65B is a one time programmable chip. That is it is programmed at the factory during manufacture and there is no way to change its functionality once programmed. Furthermore, there is no provision for this chip to run code from RAM.

Applicants' stand-alone, dedicated function cleaning device/appliance can only execute the code in its ROM. Applicants' specification Figure 4 clearly shows ROM (480) as the configuration device. Applicant's specification paragraph 47 "Static RAM (SRAM) 440 is also connected to microprocessor 410, and is used for temporary program and data storage." Note that RAM 440 is not accessible to a user. RAM 440 cannot be booted from.

Applicants' amendments to the claim man clear that the cleaning device/appliance does not read and/or read and subsequently store data from a long term storage device. Rather, the cleaning device/appliance performs predetermined actions upon a long-term storage device regardless of the state of

27

MTI0002109

Serial Number: 10/174,984

the long term storage device. Just as a vacuum cleaner may suck up dime on the floor, our cleaning device/appliance will clean a storage device regardless of the value of the data on it. In summary, Applicants' cleaning device/appliance does not look to a long term storage device for data nor are there any provisions to reprogram any of the configuration devices.

28

MTI0002110

Serial Number: 10/174,984

In view of the foregoing remarks, Applicants submit that the claimed invention is neither anticipated nor rendered obvious in view of the references cited against this application. Applicants, therefore, request the Examiner's reconsideration and reexamination of the application, and the timely allowance of the pending claims.

Respectfully submitted,

All Applicants:

By: _____ Date: 8/4/06
Steven Bress

29

MTI0002111

Serial Number: 10/174,984

By: _____  Date: 8/4/06
Dan Bress

30

MTI0002112

01/04/2002  11:07    3019906437           FLOWER_VALLEY_PRESS              PAGE  32

Serial Number: 10/174,984

By: _____ Date: 8/4/06
Mike Menz

By: _____ Date: 8/4/06
Mark Joseph Menz

31

PAGE 32/32 * RCVD AT 8/4/2006 9:24:59 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-1/7 * DNIS:2738300 * CSID:3019906437 * DURATION (mm-ss):05-30

MTI0002113

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2001

**Application or Docket Number**

0032-0002

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 45 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 45 minus 20 = | 25 |
| INDEPENDENT CLAIMS | 5 minus 3 = | 2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | ☐ | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

| SMALL ENTITY TYPE ☐ | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| | RATE | FEE | | RATE | FEE |
| BASIC FEE | 370.00 | | OR | BASIC FEE | 740.00 |
| | X$ 9= | 225 | OR | X$18= | |
| | X42= | 84 | OR | X84= | |
| | +140= | | OR | +280= | |
| | TOTAL | 679 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | 45 | Minus | 45 | 0 |
| Independent | 5 | Minus | | 0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| SMALL ENTITY | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| | X$ 9= | | OR | X$18= | |
| | X42= | | OR | X84= | |
| | +140= | | OR | +280= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | |

| SMALL ENTITY | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| | X$ 9= | | OR | X$18= | |
| | X42= | | OR | X84= | |
| | +140= | | OR | +280= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| SMALL ENTITY | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| | X$ 9= | | OR | X$18= | |
| | X42= | | OR | X84= | |
| | +140= | | OR | +280= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

MTI0002114

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 5 | bress-steven$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2006/10/10 08:56 |
| S2 | 3380779 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:11 |
| S3 | 1053 | S2 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:26 |
| S4 | 25 | S3 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:12 |
| S5 | 92 | S2 and "small footprint" same (cas$4 \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:28 |
| S6 | 22 | S2 and "small footprint" same ((cas$4 \| box \| enclosure) and ("8.5" \| "10" \| "1.5" )) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:40 |
| S7 | 3380779 | S2 ((cas$4 \| box \| enclosure ) same ("8.5" and regtangular)) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:47 |
| S9 | 4883 | S2 and ((cas$4 \| box \| enclosure ) same ("8.5")) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:48 |
| S10 | 191 | S9 and portable | US-PGPUB; USPAT | OR | OFF | 2005/03/07 16:06 |
| S11 | 59 | S2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:24 |
| S12 | 484 | S2 and ((eras$4) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:27 |
| S14 | 12 | S12 and "password" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:28 |
| S15 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S16 | 484 | S15 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S17 | 1 | S16 and (("hidden" near10 sector) same (disc \| track$3 \|disk)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:27 |
| S18 | 35 | "L2" and (("flash memory") same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:45 |
| S19 | 5 | "L2" and (("disk") same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:55 |
| S20 | 3 | "L2" and (("equip$6" \| device) same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:01 |
| S22 | 2 | "L2" and ((eras$7) same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:02 |

MTI0002115

# EAST Search History

| S24 | 3381289 | @ad < "20010621" | US-PGPUB; | OR | OFF | 2005/03/08 09:26 |
|-----|---------|------------------|-----------|-----|------|------------------|
| S26 | 123 | S24 and (((Irretriv$8 \| permanent$) adj10 remov$5) same ((track \| data) and (disc \| disk))) | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:19 |
| S30 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:35 |
| S31 | 13299 | S30 and ((removable \| portable) adj6 (disk drive)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:42 |
| S32 | 178 | S30 and (((removable \| portable) adj6 (disk drive)) same ide) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:48 |
| S33 | 140 | S30 and (format$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:49 |
| S34 | 46 | S30 and (formatt$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:24 |
| S35 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S36 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:26 |
| S37 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S38 | 1 | S30 and (("low level" near7 format$10) same IDE) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:32 |
| S40 | 653978 | S30 and ("power supply" ssame switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:46 |
| S41 | 57654 | S30 and ("power supply" same switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:47 |
| S43 | 4438 | S30 and ("power supply" same (switch and ("on/off"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S44 | 703 | S43 and "disk" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:49 |
| S45 | 7811 | S30 and ("power supply" same (switch and mechani$7)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S46 | 3059 | S30 and ("power supply" same (switch and mechanical)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S47 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S48 | 1 | "5630093".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:22 |
| S49 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:23 |
| S50 | 1 | "6727894".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:57 |

MTI0002116

# EAST Search History

| S52 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 22:35 |
|-----|---------|------------------|-----------------|----|----|------------------|
| SS3 | 19 | S52 and ("anti static" near5 pad) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:11 |
| S54 | 1 | "5861813".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:14 |
| S55 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:33 |
| S56 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S57 | 1 | "5966732".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 08:57 |
| S58 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S59 | 907 | S58 and 711/112$.ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S60 | 26 | S58 and 711/112$.ccls. and password | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S61 | 5 | ("5630093" \| "6727894" \| "5861873" \| "6629184" \| "5953199").pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:08 |
| S62 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S63 | 59 | S62 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S64 | 0 | S63 and (345/174 \| 361/212 \|710/306 \| 711/115 \| 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S65 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S66 | 484 | S65 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S67 | 2 | S66 and (345/174 \| 361/212 \|710/306 \| 711/115 \| 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:11 |
| S68 | 3388081 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:21 |
| S73 | 387 | S68 and ((( irretriev$8 \| permanent$) with (clean$8 \| remov$5)) same ((track \| data \| block$2 ) and (disc \| disk) )) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:54 |
| S74 | 127 | S73 and edge | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |
| S75 | 27 | S73 and (edge same track) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |

MTI0002117

# EAST Search History

| S76 | 13130 | S68 and ( write same ((sector track) and disk)) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:55 |
|-----|-------|-------------------------------------------------|-----------------|----|----|------------------|
| S77 | 2083 | S76 and ((track | sector) same edge) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:57 |
| S79 | 95 | S77 and (disk with clean) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/06/15 16:26 |
| S80 | 50 | (US-20030099456-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$).did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$).did. | US-PGPUB; USPAT | OR | ON | 2005/10/07 10:13 |
| S81 | 6 | bress-st$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/10/07 10:15 |
| S82 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:44 |
| S84 | 393 | S82 and ((operating adj4 system) same ((copl$3 copy duplicat$5) or format$6 and (file adj4 system))) | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:45 |
| S85 | 113 | S84 and (partition same (operating adj3 system)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:07 |
| S86 | 2 | "5826012".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:09 |

MTI0002118

# EAST Search History

| S87 | 2 | "5559960".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:10 |
|---|---|---|---|---|---|---|
| S88 | 64 | (US-20030018836-$ or US-20030099456-$ or US-20040184309-$ or US-20040186953-$ or US-20040186969-$ or US-20050182510-$ or US-20040015623-$ or US-20030023826-$ or US-20020166059-$ or US-20020162100-$ or US-20020103779-$ or US-20020095672-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$). did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$ or US-6920555-$ or US-6691213-$ or US-5826012-$).did. | US-PGPUB; USPAT | OR | ON | 2005/10/21 16:15 |
| S89 | 2 | "6691213".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 17:05 |
| S90 | 13 | ("5022077" | "5355489" | "5481754" | "5657445" | "5754821" | "5809230" | "5864698" | "6035420" | "6122733" | "6154835" | "6282647" | "6385721" | "6542979").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:23 |

MTI0002119

# EAST Search History

| S91 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/22 08:24 |
|-----|---------|------------------|-----------------|-----|-----|------------------|
| S94 | 0 | S91 and (ATA same DCO) | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:27 |
| S95 | 2 | "4290088".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:37 |
| S96 | 2 | "20040194062" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:40 |
| S97 | 2 | "20040078514" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:41 |
| S99 | 1790 | ((button with start$8) same (program and (memory device))) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:52 |

MTI0002120

# EAST Search History

| S10 4 | 72 | (US-20040186953-$ or US-20040184309-$ or US-20040186969-$ or US-20030023826-$ or US-20030018836-$ or US-20030099456-$ or US-20050182510-$ or US-20020166059-$ or US-20020162100-$ or US-20020103779-$ or US-20020095672-$ or US-20040194062-$ or US-20040078514-$ or US-20040015623-$ or US-20060212728-$ or US-20030142227-$ or US-20050289260-$).did. or (US-6738710-$ or US-6727894-$ or US-6641359-$ or US-6421235-$ or US-6839802-$ or US-6633740-$ or US-6019286-$ or US-6179208-$ or US-5175672-$ or US-6107804-$ or US-5805415-$ or US-5907413-$ or US-5799068-$ or US-5861873-$ or US-6377413-$ or US-6308264-$ or US-5434722-$ or US-5420998-$ or US-6134204-$ or US-6473861-$ or US-6185661-$ or US-5966732-$ or US-6631043-$ or US-5630093-$ or US-6718488-$ or US-6535996-$). did. or (US-6507881-$ or US-6523125-$ or US-6286087-$ or US-6687077-$ or US-6480463-$ or US-6771388-$ or US-6629184-$ or US-6684229-$ or US-6532535-$ or US-6424796-$ or US-6654758-$ or US-6374363-$ or US-6374366-$ or US-6738879-$ or US-6477764-$ or US-5953199-$ or US-6848047-$ or US-5304974-$ or US-5351156-$ or US-5210554-$ or US-5973870-$ or US-6178487-$ or US-5826012-$ or US-4290088-$ or US-6691213-$ or US-6920555-$ or US-6760696-$). did. or (US-6965928-$ or US-7046294-$).did. | US-PGPUB; USPAT | OR | ON | 2006/10/10 09:51 |
| S10 5 | 1151 | ((button with (start$8 initiali$8)) same (program and (memory device))) and @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:53 |
| S10 6 | 446 | S105 and (power$9 with (button switch)) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:55 |
| S10 7 | 2 | S105 and ((power$9 with (button switch)) same launc$9) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:58 |

MTI0002121

# EAST Search History

| S108 | 231 | S105 and ((power$9 with (button switch)) same start$9) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 10:15 |
|------|-----|---------------------------------------------------------|-----------------|----|----|-------------------|
| S109 | 3416531 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2006/10/10 10:15 |
| S110 | 661 | S109 and (thumb near10 drive) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 10:18 |
| S111 | 15 | S110 and (start$8 with program) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 10:16 |
| S112 | 90724 | S109 and ((portable removable) with (memory device)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 10:19 |
| S114 | 120 | S112 and ((key near10 drive) same memory) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 11:22 |
| S115 | 9 | ("20040004121" "20020099634" "20030041188" "2003163382") | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:25 |
| S116 | 4 | ("20040105656" "20030159012") | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:27 |
| S117 | 0 | 2004/0105656 | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:26 |
| S118 | 2 | "20040105656" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:26 |
| S119 | 2 | "20030159012" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:29 |
| S120 | 11 | ("6816982" "6453395" "6792486" "6577912" "6763442" "6766430").pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 15:36 |
| S121 | 2 | "5777811".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 15:36 |

MTI0002122

## EAST Search History

| S122 | 3416531 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2006/10/11 06:42 |
|------|---------|------------------|-----------------|-----|-----|------------------|
| S123 | 161 | S122 and (disk same (reserve near10 area)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/11 06:42 |

MTI0002123

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|
| | 10/174,984 | BRESS ET AL. | |
| | Examiner | Art Unit | Page 1 of 1 |
| | Duc T. Doan | 2188 | |

## U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,777,811 | 07-1998 | Bodo, Martin J. | 360/15 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          Notice of References Cited          Part of Paper No. 20061010

MTI0002124

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

7590        10/19/2006

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD  20879

| EXAMINER |
|---|
| DOAN, DUC T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2188 | |

DATE MAILED: 10/19/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

MTI0002125

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| *Office Action Summary* | 10/174,984 | BRESS ET AL. | |
|  | Examiner | Art Unit | . |
|  | Duc T. Doan | 2188 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>04 August 2006</u>.

2a)☒ This action is **FINAL**.     2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-4,10-36,38,41,42 and 46</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-4,6,10-14,18-36,38,41,42 and 46</u> is/are rejected.

7)☒ Claim(s) <u>15-17</u> is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some * c)☐ None of:

     1.☐ Certified copies of the priority documents have been received.

     2.☐ Certified copies of the priority documents have been received in Application No. _____.

     3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)  Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)  Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

MTI0002126

Application/Control Number: 10/174,984                                               Page 2
Art Unit: 2188

## DETAILED ACTION

Claims 1-45 have been presented for examination in this application (see the original set of claims filed on 6/20/02). In response to the last Office Action, claims 1,2,6,15-17,19-22,29,36 have been amended, claims 5,7-9,37,39,40,43-45 have been canceled, claim 46 was added. As the result, claims 1-4,6,10-36,38,41-42,46 are now pending in this application.

Claims 1-4,6,10-14,18-36,38,41-42,46 are rejected.

Claims 15-17 are objected to.

Applicant's arguments filed 8/4/06 have been fully considered but they are not persuasive. Therefore, the rejections from the previous office action are respectfully maintained, with changes as needed to address the amendments.

### *Claim Objections*

Claims 1-2,5-9,37,39-40,43-45,46 are objected to because of the following informalities:

As in claims 2,6, these claims have been amended in previous amendments. Thus status of these claims must indicate the corrected status (for example "previously amended").

As in claims 5,7-9,37,39-40,43-45, these claims have been canceled in previous amendments. They must be shown in the list of claims with appropriate status (for example "canceled").

As in the last amendment filed 8/4/06, at page 10, lines 11-12, Applicant adds a new claim. However, the number of this claim ("43") is not correct. It should indicate as a new claim 46.

MTI0002127

Application/Control Number: 10/174,984                                        Page 3
Art Unit: 2188

Appropriate correction is required.

*Specifications*

The disclosure is objected to because of the following informalities:

The abstract, at line 6 recites "..is operating system independent..". The abstract appears broadly reciting the device operating in an "operating system independent" manner. However as in specification's paragraph 76 which states "the device for example, ..must partitioning and formatting the drive under FAT32 drive format..". Thus the specification clearly teaches that the device operates depending on the operating system corresponding to FAT32 file system.

Examiner submits that the phrase in the abstract reciting, "the device is operating system independent" is not correct.

Appropriate correction is required.

*Claim Rejections - 35 USC # 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

MTI0002128

Application/Control Number: 10/174,984                                    Page 4
Art Unit: 2188

Claim 19 rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter, which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.

As in claim 19, the claim recites " the device ....formats the long-term memory component for a pre-determined specific file system". The claim requires the device possess knowledge of a specific file system of a particular pre-determined operating system. For example, if the file system is FAT, Window, Unix, the device must know the associating operating system (Window OS, Unix OS) in order to formatting the data with necessary/corresponding file system's meta data information/requirement such that the associating operating system can use the data in the file system. Thus according to claim 19, the device does not operates as "operating system independent" manner, as recited in a limitation of claim 1, that is the independent claim in which claim 19 depended from.

Claim 1 recites "..wherein the removing data device is operating system independent". Thus the claim broadly requires the device to operate in an "operating system independent" manner. However as discuss in above paragraph for claim 19, and in specification's paragraph 76 which states "the device for example, ..must partitioning and formatting the drive  under FAT32 drive format .". Thus the specification clearly teaches that the device operates depending on the operating system corresponding to FAT32 file system.

Examiner submits that the abstract and claims 1,19 reciting, "the device is operating system independent" is not correct.

MTI0002129

Application/Control Number: 10/174,984                                    Page 5
Art Unit: 2188

*U.S.C. 112, second paragraph*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming
the subject matter which the applicant regards as his invention.

Claim 43 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for

failing to particularly point out and distinctly claim the subject matter which applicant regards as

the invention.

The claim recites "..wherein the specific file system is user selectable..". Examiner

cannot find any disclosure in the specification regarding the definition of the "specification file

system". Examiner cannot find in the specification for disclosure of steps to link the specific file

system and the user selectable. For example, steps to inform to user of the specific file system's

characteristic such that user can select the file system is not found anywhere in the specification.

All dependent claim(s) are rejected as having the same deficiencies as the claims they

depend from.

*Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or

described as set forth in section 102 of this title, if the differences between the subject

MTI0002130

Application/Control Number: 10/174,984                                       Page 6
Art Unit: 2188

matter sought to be patented and the prior art are such that the subject matter as a whole

would have been obvious at the time the invention was made to a person having ordinary

skill in the art to which said subject matter pertains.  Patentability shall not be negatived

by the manner in which the invention was made.


Claims 1-4,6,12-14,18-36,41-42 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Holzhammer et al (US 5630093), in view of Schmidt (The SCSC Bus and IDE

Interface, Addison-Wesley, 1995) and further in view of Bodo et al (US 5777811).

As in claim 1, Holzhammer describes a stand-alone, dedicated function device  (Fig 4:

#92 hardware controller) for removing data (erasing) from a long-term memory component,

comprising: an interface for connecting the stand-alone device to the long-term memory

component (Holzhammer's Fig 4: #104 providing path from controller #92 to memory 96;

Holzhammer's column 8, lines 37-39),

a control circuit (Fig 4: #100 micro-controller) configured to control the long-term memory

component through the interface to remove data from the long-term memory component

(Controller 92 is specifically dedicated to defining and controlling the file structure for flash

memory array 96.  Controller 92 includes a microcontroller 100 for overseeing control;

Holzhammer's column 8, lines 18-20; It is to be appreciated that for the embodiments shown in

FIGS. 2-4, flash memories arrays 34, 64, and 96 could be used to replace either fixed disk drives

or floppy disk drives; Holzhammer's column 10, lines 63-65);

the claim further recites a user controllable physical switch that, when actuated by a user, causes

the control circuit to commence irretrievably removing the data from the long-term memory

MTI0002131

Application/Control Number: 10/174,984                                    Page 7
Art Unit: 2188

component. Holzhammer describes an intelligent controller capable of cleaning a memory

device when triggered by a user request using a special clean-up program Holzhammer's column

13, lines 22-31).

Holzhammer does not describe the claim's irretrievably aspect of removing the data from the

long-term memory component. However, Schmidt teaches a low level format track command

that erasing data by writing disk drive sectors with a data pattern (The ATA standard

recommends that drives should at least write the sector with a data pattern; Schmidt's page 68,

lines 4-5). It would have been obvious to one of ordinary skill in the art at the time of invention

to include low level format procedures as suggested by Schmidt in Holzhammer's system to

completely erase all data thereby further enhancing security of data in the system since all data

on the long term memory device are cleaned completely. (In this way formatting will always

erase all data, which is desirable for security reason; Schmidt's page 68, lines 5-6).

        As for the claim's aspect of a stand alone dedicated function device, Holzhammer shows

in Fig 4 that the controller #98 is designed as a separated "stand alone" unit with its own

processor #100; with its own memory #98 rom, and #102 ram; with a dedicated function to

write/erase/read a long term memory media, such as flash memory #96.

        As for the claim's aspect of a physical switch in a device that when being activated would

start a program for writing/erasing a long term memory component. Holzhammer and Schmidt

do not expressly describe this aspect. However, Bodo's Fig 1 discloses a stand-alone, disk copy

system comprises physical push button/switches (Bodo's Fig 1: #72a-c). When the switch is

pressed (Fig 1: #72b, column 5 lines 20-30), it launches a program to copy data automatically

from the source storage to the destination storage (Bodo's Fig 1: #44a, 44b). It would have been

MTI0002132

Application/Control Number: 10/174,984                                            Page 8

Art Unit: 2188

obvious to one of ordinary skill in the art at the time of invention to include the button/switch

that triggers a program as suggested by Bodo in Holzhamer's system in which the program

handle all the types, formats of data in the storages attaching to connectors Fig 1: #44a-c, and

thereby further automating the process, and reduce the amount of knowledge and action required

on the part of the user (Bodo's column 6 lines 1-15).

As for the claim's limitation of the removing data device is operating system

independent. Bodo clearly discloses the copying data to the destination disk attaching to

connecter Fig 1: #44a is done completely by the stand alone device and its associating program

stored in ROM (Bodo's column 4 lines 12-25), without the need of any external operating

system. Examiner further notes that both the copy operation and the cleaning operation are

substantial similar, both operation involve writing a data value to sectors of the destination disk

regardless of the operating system.

As in claim 2, the claim recites wherein the control circuit is a circuit dedicated to the

permanent removal of the data from the long-term memory component; without regard to data

content or data storage format of the data on the long-term memory component. The claim

rejected based on the same rationale as in claim 1. Holzhammer clearly describes the hard disk is

formatted at the lowest level as sectors of 512 bytes. Data in these sectors are read/write by low

level physical device drivers that are provided for example with the BIOS program of processors.

(Holzhammer's column 2 lines 25-30; low level formatting to sectors, lines 40-42).

Therefore using the low level device driver, a processor is capable of write/erase/read

data in hard disk's sectors regardless of the high level formatting data of a file system associating

MTI0002133

Application/Control Number: 10/174,984                                        Page 9
Art Unit: 2188

with a particular operating system. For example, at boot time, the BIOS program can accesses the hard disk before any operating system code is read into the processor (Holzhammer's column 1 lines 37-47).

As in claim 3, the claim rejected based on the same rationale as in claim 1. (See Holzhammer's column 2 lines 25-30).

As in claim 4, the claim recites a casing configured to contain the control circuit and the interface, the user controllable switch being mounted on the casing, the casing being of the size that is portable by the user. Bodo's Fig 1 clearly shows the button/switch (Fig 1: #72b) is mount on the casing of the device Fig 1: #10. Bodo further shows that the device is packaged into a portable size, that is the size of a stand alone CD duplicating device (Bodo's Fig 1) well known in the art.

As in claim 6, the claim recites Light emitting diodes (LED) lights mounted on the casing and providing feedback relating to an operational status of the device to the user. Hohzhammer's column 10 lines 45-54 disclose an LED to provide the status of the operation to the user. Hohzhammer does not expressly disclose the LED is mounted on the casing. However, it's obviously that, the LED is mounted on the casing so that it can shine through the casing and indicating the operational status to the user externally to the casing as shown in Bodo's Fig 1: #94 (LED).

As in claims 12,25,32 the claim rejected based on the same rationale as in claims 1,2.

As in claim 13, Holzhammer describes the device of claim 1, wherein a thoroughness level of irretrievably removing the data from the long-term memory component is configurable.

MTI0002134

Application/Control Number: 10/174,984                                  Page 10
Art Unit: 2188

Holzhammer's column 13, lines 28-31 discloses the clean up operation can be done many times

by providing a configurable event timer to start the operation.

As in claim 14, Holzhammer describes the device of claim 1, wherein the interface

connects the device to a plurality of long-term memory component (an array of flash memory

modules; Fig 4: #96).

As in claims 18-21, the claims recite the control circuit partitions the long term memory

component after irretrievably removing the data (claim 18); wherein the control circuit formats

the long term memory component for a pre-determined specific file system (claim 19); wherein

the control circuit copies a pre-determined operating system to the long-term memory component

(claim 20); wherein the control circuit verifies the functionality of the long term memory

component after removing the data from the long-term memory component (claim21). The

claims describes the steps of preparing the memory device (a disk), and writing/reloading an

image of data (for example an image of a saved OS code) that was saved before reformatting the

disk, and reading back to verify that data was written correctly. These steps are known to be

done by a copy program every time a disk is being reformatted and copied with data. (See

Holzhammer's column 2 lines 10-15). Furthermore the high level driver software/programs that

are capable of reading/ writing/formatting a device accordingly to any known formats of file

systems (FAT, NTFS, Unix) of OS (Window, Linux, Unix) have been written, widely available

and readily to be used with any processors on the market.

Claims 22,29,36 are rejected based on the same rationale as in claims 1.

MTI0002135

Application/Control Number: 10/174,984                                   Page 11

Art Unit: 2188

As in claims 23, 30 the rejection of claim 1 is incorporated herein. Holzhammer further

describes the disk drive and flash memory array are interchangeable, and using an IDE interface

(Holzhammer's column 10, lines 63-65; column 8,lines 53-65).

Claims 24 and 31 rejected based on the same rationale as in claim 6.

Claims 26,33,42 rejected based on the same rationale as in claim 3.

Claims 27,34 rejected based on the same rationale as in claim 13.

Claims 28,35 rejected based on the same rationale as in claim 2.

Claim 36 rejected based on the same rationale as in claims 1,4 and 5.

Claim 38 rejected based on the same rationale as in claim 10.

Claim 41 rejected based on the same rationale as in claim 1. Bodo further shows

processing element can be an embedded microprocessor Fig 1: #62  AM186EM.

Claims 10-11 and 38 rejected under 35 U.S.C. 103(a) as being unpatentable over

Holzhammer et al (US 5630093), Schmidt (The SCSC Bus and IDE Interface, Addison-Wesley,

1995), Bodo et al (US 5777811) as applied to claims 1,22,29 and 36 respectively and further in

view of Berg et al (US 6629184).

As in claims 10,11 the claims recite a power supply configured to supply power to the

control circuit; a drive power cord emanating from the casing and configured to supply power

from the power supply to the long-term memory component; Holzhammer describes a supply

configured to supply power to the control circuit [In one embodiment, controller 92 is coupled

to a small battery that provides back-up power to controller 92 if power to personal computer

system 70 is removed; Holzhammer's column 10, lines 54-57]. Holzhammer does not describe a

MTI0002136

Application/Control Number: 10/174,984                                    Page 12
Art Unit: 2188

power cord However, Berg describes a control circuit (Fig 10: #100 adapter board) communicating with host computer and data storage device with IDE interface (Berg's column 8, lines 4-8]. Berg further describes the adapter board has power cables and corresponding IDE cables connecting to hard disk drive [Fig 4, In addition, power connector 94 is a 4-pin male connector that mates with and receives power from 4-pin female connector 96 of power cable 98. Berg's column 6, lines 53-55]. Berg further describes a switch controlled by a user to enable function of the control circuit. (In one embodiment, the interface circuit includes an external device that permits a user to enable and disable the command-inhibit function of the control circuit; The external device can be a mechanical switch or a pair of jumper pins; Berg's column 3, lines 42-44, 52-53). It would have been obvious to one of ordinary skill in the art at the time of invention to include the power cable and the switch as suggested by Berg in Holzhammer's system to provide power to the hard disk drive and to enable the function of the control circuit at power up time. (Thus, IDE bus 24 provides the IDE interface for hard disk drive 20, and power cable 98 provides the electrical power to hard disk drive 20; Berg's column 6, lines 56-58; When the write-inhibit function is enabled (i.e., jumper 110 is installed at power-up), PAL 130 selectively controls data switch 132 to route the reserved command (01h), rather than the inhibited IDE commands (3xh, C5h, CAh, CBh), to connector 104; Berg's column10, lines 58-63).

      Claim 38 rejected based on the same rationale as in claims 10 and 11.


                              *Allowable Subject Matter*

Application/Control Number: 10/174,984                                    Page 13
Art Unit: 2188

Claims 15-17 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

### *Response to Arguments*

Applicant's arguments in response to last office action have been fully considered but they are not persuasive. Examiner respectfully traverses Applicant's arguments for the following reasons:

A) As to the remark on page 12 for rejection of claim 19 under 35 U.S.C 112, the claim amended as " wherein the control circuit formats the long-term memory component for a pre-determined specific file system". Thus it is understood that the claim requires the device possess a knowledge of a specific file system of a particular pre-determined operating system. For example, if the file system is FAT, Window, Unix, the device must know the associating operating system (Window OS, Unix OS) in order to formatting the data with necessary/corresponding file system's meta data information/requirement such that the associating operating system can use the data in the file system. Thus according to claim 19, the device does not operates as "operating system independent" manner, as recited in a limitation of claim 1, that is the independent claim in which claim 19 depended from.

Applicant further admits that **formatting a drive to a specific pre-set** file system is well known in the art (see remark page 12 lines 11). Examiner notes that the claim 19 is amended to recites the above well known in the art limitation ('pre-determine specific file system").

Applicant somehow alleges that the drive is formatted to a particular file system set at the factory. Applicant is requested to show the support, for the above allegation. Examiner is looking

MTI0002138

Application/Control Number: 10/174,984                                    Page 14
Art Unit: 2188

for the steps in the specification that support how the factory's file system information of a drive

is obtained by the device, and subsequently used by the device to format the drive. Examiner

cannot find any word relate to "factory" anywhere in the specification.

     B) Applicant's arguments on pages 12-23 for rejection under U.S.C 103(a) are traversed

as follows,

     Regarding the "stand-alone, dedicated function device" limitation, which applicant

argues some how to be different with an appliance. Examiner disagrees with the narrow

interpretation of the "stand alone device". Any stand alone electronic device (or appliance) is

required to be supplied electricity in order to run the electronic circuits inside the device. For

example, a well known stand alone compact disk duplicator/copier sold in the market  (i.e

external CD burner) comprises a power cable to supply electricity to run its associating

electronic circuits. Therefore providing the power to a stand alone device is well known in the

art.

     Regarding the "dedicated function device", it can be understood as the device must be

designed for a specific purpose. Holzhammer shows in Fig 4 that the controller #98 is designed

as a separated "stand alone" unit with its own processor #100; with its own memory #98 rom,

and #102 ram; with a dedicate/specific function to write/erase/read a long term memory media,

such as flash memory #96.

     Regarding the "configurability of the device", Applicant somehow narrowly interpret the

appliance/stand alone device is not reconfigurable. Examiner respectfully disagrees, there are

various appliances/stand alone devices in which the configuration can be re-configured, in fact

MTI0002139

Application/Control Number: 10/174,984                                                 Page 15

Art Unit: 2188

the trend is to make the appliances such as toaster, washing machine, internet router, cell phone

to be easily configurable remotely.

    Regarding the "portability", it is clear that the electronic stand alone devices are made to

be easily portable by the user. For example, the stand alone compact disk duplicator (i.e external

CD burner) is made to be easily portable by user (see Bodo's Fig 1).

    Regarding, the "ease of use" and automation steps, both Holzhammer and Bodo discloses

the device to carry out the operation in an automatic manner, with minimum intervening from the

user. Bodo clearly discloses the copying data to the destination disk attaching to connecter Fig 1:

#44a is done completely by the stand alone device and its associating program stored in ROM

(Bodo's column 4 lines 12-25), without the need of any external operating system. By pushing a

button (Bodo's Fig 1: 72b), the complete operation is executed by the device. Similarly,

Holzhammer's column 13 lines 25-40, the program executes all the steps to erase storage

device's blocks/sectors.

    Examiner further notes that both the copy operation and the cleaning operation are

substantial similar, both operation involve writing a data value to sectors of the destination disk

regardless of the file system.

    Regarding arguments on pages 17-24, Applicant argues "it is quite irrelevant what

functions and commands Holzhamer embeds in a controller build around Holzhammer based

silicon.." .it's not clear what is  the argument, and which limitation of which claim it applied for,

and how it would not affect the validity and novelty of the Applicant as claimed.

    Holzhammer's  discloses a method in which data in a disk/flash storage devices are

cleared at the "low level" that is clearing at the disk/flash storage devices blocks/sectors level.

MTI0002140

Application/Control Number: 10/174,984                                    Page 16
Art Unit: 2188

Using such method, the clearing operation is not depending on any "high level" formatting (i.e

grouping of these disk/flash storage sectors into records in a particular file/file system).

In a similar manner, Schmidt teaches a "low level" format track command that erasing data by

writing disk drive sectors with a data pattern (The ATA standard recommends that drives should

at least write the sector with a data pattern; Schmidt's page 68, lines 4-5). Schmidt further

discloses by writing these data sectors, for example writing these data sectors with zeros by using

a command such as write track, the data is erased completely, irreversible, thus further enhancing

security of data in the system. (In this way formatting will always erase all data, which is

desirable for security reason; Schmidt's page 68, lines 5-6).

    Regarding applicant's arguments on "BIOS", and device driver.  Device driver can be

understood as a code module that when it is executed by a processing element (for example a

CPU central processing unit), it carries out the steps to transfer data with the storage devices.

Thus whether the device is appliances such as cell phone, or personal computer, they must have a

processing unit and associating "device driver code" to carry out the steps to transfer data with

the storage devices. Hohzhammer discloses such "device drive code" can be comprised with any

other programs such as operating system or even in BIOS code (Hohzhammer's column 7 lines

24-36). In a similar manner, Bodo discloses a data duplicating system having a processing

element (micro processor AM189Em, see Bodo's column 4 lines 27-29), and a program with

code (device driver code) to carry out the steps to transfer data with the storage devices (see

Bodo's column 5 lines 25-31).

    Examiner further notes that a stand-alone disk duplicator, a CD burner is substantial

similar to the device in the instant application.

MTI0002141

Application/Control Number: 10/174,984                                    Page 17
Art Unit: 2188

C) Regarding the Applicant's arguments on the Berg reference, Begre discloses an

interface device capable of transfer, writing data to hard disk devices. Examiner relies on Barge

that further discloses ⸳ ⸳ power cable to provide electricity to its associating electronic circuits

including the hard disk devices.

*Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in this

Office action. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP 706.07(a).

Applicant is reminded of the extension of time policy as set forth in 36 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the mailing

date of this final action.

When responding to the office action, Applicant is advised to provide the examiner with

the line numbers and page numbers in the application and/or references cited to assist examiner

to locate the appropriate paragraphs.

MTI0002142

Application/Control Number: 10/174,984                                      Page 18
Art Unit: 2188

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Duc T. Doan whose telephone number is 571-272-4171. The examiner can normally be reached on M-F 8:00 AM 05:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Hyung S. Sough can be reached on 571-272-6799. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

MANO PADMANABHAN
SUPERVISORY PATENT EXAMINER

MTI0002143

*Search Notes*

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/174,984 | BRESS ET AL. |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | DATE | EXMR |
|---|---|---|
| update search | 10/11/2006 | DD |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |

U.S. Patent and Trademark Office

Part of Paper No. 20061010

**MTI0002144**

## Index of Claims

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/174,984 | BRESS ET AL. |
| Examiner | Art Unit |
| Duc T. Doan | 2188 |

| | |
|---|---|
| √ Rejected | − (Through numeral) Cancelled |
| = Allowed | ÷ Restricted |
| N Non-Elected | A Appeal |
| I Interference | O Objected |

| Claim Final | Original | 10/11/06 |
|---|---|---|
| | 1 | v |
| | 2 | v |
| | 3 | v |
| | 4 | v |
| | 5 | . |
| | 6 | v |
| | 7 | . |
| | 8 | . |
| | 9 | . |
| | 10 | v |
| | 11 | v |
| | 12 | v |
| | 13 | v |
| | 14 | v |
| | 15 | o |
| | 16 | o |
| | 17 | o |
| | 18 | v |
| | 19 | v |
| | 20 | v |
| | 21 | v |
| | 22 | v |
| | 23 | v |
| | 24 | v |
| | 25 | v |
| | 26 | v |
| | 27 | v |
| | 28 | v |
| | 29 | v |
| | 30 | v |
| | 31 | v |
| | 32 | v |
| | 33 | v |
| | 34 | v |
| | 35 | v |
| | 36 | v |
| | 37 | . |
| | 38 | v |
| | 39 | . |
| | 40 | . |
| | 41 | v |
| | 42 | v |
| | 43 | . |
| | 44 | . |
| | 45 | . |
| | 46 | v |
| | 47 | |
| | 48 | |
| | 49 | |
| | 50 | |

| Claim Final | Original | Date |
|---|---|---|
| | 51 | |
| | 52 | |
| | 53 | |
| | 54 | |
| | 55 | |
| | 56 | |
| | 57 | |
| | 58 | |
| | 59 | |
| | 60 | |
| | 61 | |
| | 62 | |
| | 63 | |
| | 64 | |
| | 65 | |
| | 66 | |
| | 67 | |
| | 68 | |
| | 69 | |
| | 70 | |
| | 71 | |
| | 72 | |
| | 73 | |
| | 74 | |
| | 75 | |
| | 76 | |
| | 77 | |
| | 78 | |
| | 79 | |
| | 80 | |
| | 81 | |
| | 82 | |
| | 83 | |
| | 84 | |
| | 85 | |
| | 86 | |
| | 87 | |
| | 88 | |
| | 89 | |
| | 90 | |
| | 91 | |
| | 92 | |
| | 93 | |
| | 94 | |
| | 95 | |
| | 96 | |
| | 97 | |
| | 98 | |
| | 99 | |
| | 100 | |

| Claim Final | Original | Date |
|---|---|---|
| | 101 | |
| | 102 | |
| | 103 | |
| | 104 | |
| | 105 | |
| | 106 | |
| | 107 | |
| | 108 | |
| | 109 | |
| | 110 | |
| | 111 | |
| | 112 | |
| | 113 | |
| | 114 | |
| | 115 | |
| | 116 | |
| | 117 | |
| | 118 | |
| | 119 | |
| | 120 | |
| | 121 | |
| | 122 | |
| | 123 | |
| | 124 | |
| | 125 | |
| | 126 | |
| | 127 | |
| | 128 | |
| | 129 | |
| | 130 | |
| | 131 | |
| | 132 | |
| | 133 | |
| | 134 | |
| | 135 | |
| | 136 | |
| | 137 | |
| | 138 | |
| | 139 | |
| | 140 | |
| | 141 | |
| | 142 | |
| | 143 | |
| | 144 | |
| | 145 | |
| | 146 | |
| | 147 | |
| | 148 | |
| | 149 | |
| | 150 | |

MTI0002145

Page 1 of 2

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

CONFIRMATION NO. 8535

| SERIAL NUMBER 10/174,984 | FILING DATE 06/20/2002 RULE | CLASS 711 | GROUP ART UNIT 2188 | ATTORNEY DOCKET NO. 0032-0002 |
|---|---|---|---|---|

APPLICANTS

Steven Bress, Germantown, MD;

Dan Bress, Germantown, MD;
Mike Menz, Roseville, CA;Mark Joseph Menz, Folsom, CA;

** CONTINUING DATA ***********************
This appln claims benefit of 60/299,783 06/21/2001

** FOREIGN APPLICATIONS ******************
none

IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** SMALL ENTITY **
** 07/16/2002

| Foreign Priority claimed | ☐ yes ☒ no | STATE OR | SHEETS | TOTAL | INDEPENDENT |
|---|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met | ☐ yes ☐ no ☐ Met after Allowance | COUNTRY | DRAWING | CLAIMS | CLAIMS |
| Verified and Acknowledged | Examiner's Signature        Initials | MD | 10 | 45 | 5 |

ADDRESS
Steven Bress
7851-C Beechcraft Avenue
Gaithersburg , MD
20879

TITLE
Systems and methods for removing data stored on long-term memory devices

| FILING FEE RECEIVED 679 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other |
| | | ☐ Credit |

MTI0002146

Serial Number: 10/174,984

**Amendments to the Claims**:

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims**:

1. (cancelled)

2. (cancelled)

3. (cancelled)

4. (cancelled)

5. (cancelled)

6. (cancelled)

7. (cancelled)

8. (cancelled)

2

MTI0002147

Serial Number: 10/174,984

9.      (cancelled)

10.     (cancelled)

11.     (cancelled)

12.     (cancelled)

13.     (cancelled)

14.     (cancelled)

15.     (currently amended)  A stand-alone, dedicated function device for removing data from a long-term memory component, comprising:

an interface for connecting the stand-alone, dedicated function device to the long-term memory component;

a control circuit configured to control the long-term memory component through the interface to irretrievably remove data from the long-term memory component without regard to data content or data storage format of the data on the long-term memory component by overwriting the data of the long-term memory component;

3

MTI0002148

06/21/2002  01:39   3017607915                 FLOWER_VALLEY_PRESS                    PAGE  05

Serial Number: 10/174,984

a user controllable switch that, when actuated by a user, causes the control circuit to commence irretrievably removing all the data from the long-term memory component;

a casing configured to contain the control circuit and the interface, the casing being of a size that is portable by the user;

a power supply configured to supply power to the control circuit;

~~The device of claim 1,~~ wherein the control circuit is further configured to open a hidden storage area on the long-term memory component before irretrievably removing the data.

16.    (previously amended)  The device of claim 15, wherein the control circuit open a hidden storage area without user intervention.

17.    (previously amended)  The device of claim 15, wherein the control circuit notifies a user when the opening a hidden storage area requires a password for release.

18.    (cancelled)

19.    (cancelled)

4

MTI0002149

05/21/2002  01:39    3017607815                    FLOWER_VALLEY_PRESS                    PAGE  06

Serial Number: 10/174,984

20.    (cancelled)

21.    (cancelled)

22.    (cancelled)

23.    (cancelled)

24.    (cancelled)

25.    (cancelled)

26.    (cancelled)

27.    (cancelled)

28.    (cancelled)

29.    (cancelled)

30.    (cancelled)

5

MTI0002150

06/21/2002  01:39    3017607815                FLOWER_VALLEY_PRESS                    PAGE  87

Serial Number: 10/174,984

31.    (cancelled)

32.    (cancelled)

33.    (cancelled)

34.    (cancelled)

35.    (cancelled)

36.    (cancelled)

37.    (cancelled)

38.    (cancelled)

39.    (cancelled)

40.    (cancelled)

6

PAGE 7/13 * RCVD AT 1/18/2007 10:53:41 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/15 * DNIS:2738300 * CSID:3017607815 * DURATION (mm-ss):02-42

MTI0002151

06/21/2002  01:39   3017607815                FLOWER_VALLEY_PRESS                    PAGE  08

Serial Number: 10/174,984

41.    (cancelled)

42.    (cancelled)

43.    (cancelled)

44.    (cancelled)

45.    (cancelled)

46.    (cancelled)

7

MTI0002152

06/21/2002  01:39  3017607815                  FLOWER_VALLEY_PRESS                    PAGE  01

RECEIVED
CENTRAL FAX CENTER

JAN 1 8 2007

## FACSIMILE TRANSMITTAL

**TO:**                                        **FROM:**

**Name:**   Examiner D. Doan               **Name:**   Steve Bress

          USPTO                            **Phone No.:**   202-487-8865
                                           **Fax no:** 301-760-7815

**Fax No.:**   (571) 273-8300              **Fax # Verified by:** SB

**Phone No.:**   571-272-4210              **# Pages** (incl. this):13

**Subject:**   **Amendment After Final**   **Date:**   01/18/2007
**Transmittal**

**Message:**

Re: U.S. Application of : Steven Bress et al.
    Application No.: 10/174,984
    Filed: June 20, 2002
    Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

PAGE 1/13 * RCVD AT 1/18/2007 10:53:41 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/15 * DNIS:2738300 * CSID:3017807815 * DURATION (mm-ss):02-42

MTI0002153

06/21/2002  01:39   3017607815                    FLOWER_VALLEY_PRESS                    PAGE  02

RECEIVED
CENTRAL FAX CENTER

JAN 1 8 2007          PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application of: | ) | |
| | ) | Mail Stop AF |
| Steven Bress et al. | ) | |
| | ) | |
| Serial No.: 10/174,984 | ) | Group Art Unit: 2188 |
| | ) | |
| Filed: June 20, 2002 | ) | Examiner: D. Doan |
| | ) | |
| For:  SYSTEMS AND METHODS FOR | ) | |
| REMOVING DATA STORED ON | ) | |
| LONG-TERM MEMORY DEVICES | ) | |

U.S. Patent and Trademark Office
Customer Window, **Mail Stop AF**
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

## AMENDMENT

In response to the final Office Action of October 19, 2006, please amend

the present application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 8 of this paper.

1

MTI0002154

Serial Number: 10/174,984

### Remarks

In the final Office Action of October 19, 2006, the Examiner rejected claims 1-4, 6, 10-14, 18-36, 38, 41-42, 46 and objected to claims 15-17.

By this Amendment, Applicants propose amending claims 15-17, and canceling claims 1-4, 6, 10-14, 18-36, 38, 41-42, 46.

Accordingly, Applicants submit that currently pending claims 15-17 are now allowable. An indication of such is respectfully requested. Applicants respectfully request that this Amendment under 37 C.F.R. § 1.116 be entered by the Examiner, placing claims 15-17 in condition for allowance. Applicants submit that the proposed amendments of claims 15-17 do not raise new issues or necessitate the undertaking of any additional search of the art by the Examiner, as this Amendment should allow for immediate action by the Examiner.

8

MTI0002155

06/21/2002  01:39    3017607815                   FLOWER_VALLEY_PRESS                    PAGE  10

Serial Number: 10/174,984

## Claim Objections

Examiner objects to claims 1-2, 5-9, 37, 39-40, 43-45, 46 as being informal. Applicants have corrected this informality.

## Specifications

The Examiner objects to the phrase "the device is operating system independent" in the specification abstract. Applicants have submitted a Certification of Correction, which states:

> *The last line of the Abstract currently states "The application specific device is physically small, is operating system independent and has simple interface that is useable by non-computer professionals."*
> *This line should be corrected to read "The application specific device is physically small and has simple interface that is usable by non-computer professionals."*

## Allowable Subject Matter

Examiner states: "Claims 15-17 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. Applicants have amended claims 15-17 in independent form, including the limitations of the base claim and intervening claims.

9

MTI0002156

Serial Number: 10/174,984

In view of the foregoing amendments and remarks, Applicants respectfully request the Examiner's reconsideration of the application, and the timely allowance of the pending claims.

Respectfully submitted,

All Applicants:

By: _____ Date: 1/15/07
Steven Bress

10

MTI0002157

Serial Number: 10/174,984

By: _____ Date: 1/15/07
Dan Bress

11

MTI0002158

Serial Number: 10/174,984

By: _____ Date: 1/15/07
Mike Menz

By: _____ Date: 1/15/07
Mark Joseph Menz

12

MTI0002159

06/21/2002  02:12   3017607815          FLOWER_VALLEY_PRESS              PAGE  01

**RECEIVED**
**CENTRAL FAX CENTER**

JAN 1 8 2007

## FACSIMILE TRANSMITTAL

| | | |
|---|---|---|
| **TO:** | | **FROM:** |
| **Name:** | | **Name:**  Steve Bress |
| | USPTO | **Phone No.:**  202-487-8865 |
| | | **Fax no:** 301-760-7815 |
| **Fax No.:** | (571) 273-8300 | **Fax # Verified by:** SB |
| **Phone No.:** | 571-272-4210 | **# Pages** (incl. this): 7 |
| **Subject:** | **Certificate of Correction** | **Date:**  01/18/2007 |

**Message:**

Re:  U.S. Application of : Steven Bress et al.
     Application No.: 10/174,984
     Filed: June 20, 2002
     Title: Systems and Methods for Removing Data Stored on Long-Term Memory Devices

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

MTI0002160

**RECEIVED**
**CENTRAL FAX CENTER**

JAN 1 8 2007

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    )
                                         ) **Mail Stop Certificate of Correction**
Steven Bress et al.                      )
                                         )
Serial No.: 10/174,984                   )     Group Art Unit: 2188
                                         )
Filed:  June 20, 2002                    )     Examiner:  D. Doan
                                         )
For:   SYSTEMS AND METHODS FOR           )
       REMOVING DATA STORED ON           )
       LONG-TERM MEMORY DEVICES          )

U.S. Patent and Trademark Office
Customer Window, **Certificate of Correction**
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

The above patent contains significant error, as indicated on the attached Certificate of Correction form. These errors arose at the place in the application file indicated on the attached sheet.

Such error arose through the fault of the patentees. Payment information is attached for the $100 fee. Such error occurred in good faith and therefore patentees request issuance of the Certificate of Correction.

Very Respectfully,

Steve Bress                    _signature_  1/15/07

17917 Wheatridge Drive
Germantown, MD 20879
301-208-8373

01/22/2007 WASFAW1  00000109 10174984

01 FC:1811                    100.00 OP

MTI0002161

Serial Number: 10/174,984

By: _____  Date: 1/15/07
Dan Bress

MTI0002162

Serial Number: 10/174,984

By: _____ Date: 1/15/07
    Mike Menz

By: _____ Date: 1/15/07
    Mark Joseph Menz

MTI0002163

PTO/SB/44 (04-05)
Approved for use through 04/30/2007. OMB 0551-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.
(Also Form PTO-1050)

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO. : 10/174,984                          Page 1 of 1

APPLICATION NO. :

ISSUE DATE :

INVENTOR(S) : STEVE BRISS, DAVE BRISS, MIKE MAVZ, MARK MAVZ

It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

TEXT ATTACHED

MAILING ADDRESS OF SENDER (Please do not use customer number below):

STEVE BRISS
17917 WHEATRIDGE
GERMANTOWN MD 20874

This collection of information is required by 37 CFR 1.322, 1.323, and 1.324. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1.0 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Attention Certificate of Corrections Branch, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

MTI0002164

The last line of the Abstract current states "The application specific device is physically small, is operating system independent and has simple interface that is useable by non-computer professionals."

This line should be corrected to read "The application specific device is physically small and has simple interface that is useable by non-computer professionals."

MTI0002165

*10 1746 9846*

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2001

Application or Docket Number

00 32-0002

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 45 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 45 minus 20= | 25 |
| INDEPENDENT CLAIMS | 5 minus 3 = | 2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

\* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9 = | 225 | OR | X$18= | |
| X42 = | 84 | OR | X84= | |
| +140 = | | OR | +280= | |
| TOTAL | 679 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | 46 Minus | 45 | 0 |
| Independent | 3 Minus | 5 | 0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9 = | | OR | X$18= | |
| X42 = | | OR | X84= | |
| +140 = | | OR | +280= | |
| | TOTAL ADDIT. FEE | OR | | TOTAL ADDIT. FEE |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | 3 Minus | 46 | |
| Independent | 1 Minus | 5 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9 = | | OR | X$18= | |
| X42 = | | OR | X84= | |
| +140 = | | OR | +280= | |
| | TOTAL ADDIT. FEE | OR | | TOTAL ADDIT. FEE |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | Minus | | |
| Independent | Minus | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9 = | | OR | X$18= | |
| X42 = | | OR | X84= | |
| +140 = | | OR | +280= | |
| | TOTAL ADDIT. FEE | OR | | TOTAL ADDIT. FEE |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/01)    U.S. Government Printing Office: 2001 — 484-484/59268    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

BEST AVAILABLE COPY

MTI0002166

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 3420641 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2007/02/09 12:46 |
| L10 | 3 | L1 and ((open adj9 hidden adj9 area) with (disk storage)) | US-PGPUB; USPAT | OR | OFF | 2007/02/09 13:12 |
| L11 | 196 | l1 and ((eras$9 format$9) with disk) and (711/115 711/112 710/305 711/170 711/105).cor. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2007/02/09 13:11 |
| L13 | 0 | ((open adj9 hidden adj9 area) with ((disk storage) and (removing adj9 data))).clm. | US-PGPUB; USPAT | OR | OFF | 2007/02/09 13:13 |
| S1 | 5 | bress-steven$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2007/02/09 12:44 |
| S2 | 3380779 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:11 |
| S3 | 1053 | S2 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:26 |
| S4 | 25 | S3 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2007/01/13 05:43 |
| S5 | 92 | S2 and "small footprint" same (cas$4 \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:28 |
| S6 | 22 | S2 and "small footprint" same ((cas$4 \| box \| enclosure) and ("8.5" \| "10" \| "3.5" )) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:40 |
| S7 | 3380779 | S2 ((cas$4 \| box \| enclosure ) same ("8.5" and regtangular)) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:47 |
| S9 | 4883 | S2 and ((cas$4 \| box \| enclosure ) same ("8.5")) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 14:48 |
| S10 | 191 | S9 and portable | US-PGPUB; USPAT | OR | OFF | 2005/03/07 16:06 |
| S11 | 59 | S2 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:24 |
| S12 | 484 | S2 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:27 |
| S14 | 12 | S12 and "password" | US-PGPUB; USPAT | OR | OFF | 2005/03/07 18:28 |
| S15 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |
| S16 | 484 | S15 and ((eras$4 ) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 07:24 |

MTI0002167

# EAST Search History

| S17 | 1 | S16 and (("hidden" near10 sector) same (disc \| track$3 \|disk)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:27 |
|-----|---|---|---|---|---|---|
| S18 | 35 | "L2" and (("flash memory") same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:45 |
| S19 | 5 | "L2" and (("disk") same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 08:55 |
| S20 | 3 | "L2" and (("equip$6" \| device) same (IDE and eras$3)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:01 |
| S22 | 2 | "L2" and ((eras$7) same (IDE)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:02 |
| S24 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:26 |
| S26 | 123 | S24 and (((irretriv$8 \| permanent$) adj10 remov$5) same ((track \| data) and (disc \| disk))) | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:19 |
| S30 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:35 |
| S31 | 13299 | S30 and ((removable \| portable) adj6 (disk drive)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:42 |
| S32 | 178 | S30 and (((removable \| portable) adj6 (disk drive)) same ide) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:48 |
| S33 | 140 | S30 and (format$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 09:49 |
| S34 | 46 | S30 and (formatt$5 same (disk and ide)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:24 |
| S35 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S36 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 10:26 |
| S37 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:03 |
| S38 | 1 | S30 and (("low level" near7 format$10) same IDE) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:32 |
| S40 | 653978 | S30 and ("power supply" ssame switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:46 |
| S41 | 57654 | S30 and ("power supply" same switch) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:47 |
| S43 | 4438 | S30 and ("power supply" same (switch and ("on/off"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |
| S44 | 703 | S43 and "disk" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:49 |
| S45 | 7811 | S30 and ("power supply" same (switch and mechani$7)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 12:50 |

MTI0002168

# EAST Search History

| S46 | 3059 | S30 and ("power supply" same (switch and mechanical)) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
|---|---|---|---|---|---|---|
| S47 | 1 | "6654758".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 13:05 |
| S48 | 1 | "5630093".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:22 |
| S49 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:23 |
| S50 | 1 | "6727894".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 21:57 |
| S52 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/08 22:35 |
| S53 | 19 | S52 and ("anti static" near5 pad) | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:11 |
| S54 | 1 | "5861813".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:14 |
| S55 | 1 | "5861873".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/08 23:33 |
| S56 | 1 | "6629184".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S57 | 1 | "5966732".pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 08:57 |
| S58 | 3381289 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:08 |
| S59 | 907 | S58 and 711/112$.ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S60 | 26 | S58 and 711/112$.ccls. and password | US-PGPUB; USPAT | OR | OFF | 2005/03/09 13:09 |
| S61 | 5 | ("5630093" \| "6727894" \| "5861873" \| "6629184" \| "5953199").pn. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:08 |
| S62 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S63 | 59 | S62 and (overwrite same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:09 |
| S64 | 0 | S63 and (345/174 \| 361/212 \|710/306 \| 711/115 \| 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S65 | 3381865 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S66 | 484 | S65 and ((eras$4) same (track and ("stor$5 device" \| "disc drive" \| "disk drive"))) | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:10 |
| S67 | 2 | S66 and (345/174 \| 361/212 \|710/306 \| 711/115 \| 345/157).ccls. | US-PGPUB; USPAT | OR | OFF | 2005/03/18 13:11 |

MTI0002169

# EAST Search History

| S68 | 3388081 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/06/15 14:21 |
|---|---|---|---|---|---|---|
| S73 | 387 | S68 and ((( irretriev$8 | permanent$) with (clean$8 | remov$5)) same ((track | data | block$2 ) and (disc | disk) )) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:54 |
| S74 | 127 | S73 and edge | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |
| S75 | 27 | S73 and (edge same track) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:46 |
| S76 | 13130 | S68 and ( write same ((sector track) and disk)) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:55 |
| S77 | 2083 | S76 and ((track | sector) same edge) | US-PGPUB; USPAT | OR | ON | 2005/06/15 14:57 |
| S79 | 95 | S77 and (disk with clean) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/06/15 16:26 |
| S80 | 50 | (US-20030099456-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$). did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$). did. | US-PGPUB; USPAT | OR | ON | 2005/10/07 10:13 |
| S81 | 6 | bress-st$.in. and germantown | US-PGPUB; USPAT | OR | OFF | 2005/10/07 10:15 |
| S82 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:44 |

MTI0002170

# EAST Search History

| S84 | 393 | S82 and ((operating adj4 system) same ((copi$3 copy duplicat$5) and format$6 and (file adj4 system))) | US-PGPUB; USPAT | OR | OFF | 2005/10/21 12:45 |
| S85 | 113 | S84 and (partition same (operating adj3 system)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:07 |
| S86 | 2 | "5826012".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:09 |
| S87 | 2 | "5559960".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 16:10 |

MTI0002171

# EAST Search History

| S88 | 64 | (US-20030018836-$ or US-20030099456-$ or US-20040184309-$ or US-20040186953-$ or US-20040186969-$ or US-20050182510-$ or US-20040015623-$ or US-20030023826-$ or US-20020166059-$ or US-20020162100-$ or US-20020103779-$ or US-20020095672-$).did. or (US-4290088-$ or US-5175672-$ or US-5210554-$ or US-5304974-$ or US-5351156-$ or US-5420998-$ or US-5434722-$ or US-5630093-$ or US-5799068-$ or US-5805415-$ or US-5861873-$ or US-5907413-$ or US-5953199-$ or US-5966732-$ or US-5973870-$ or US-6019286-$ or US-6107804-$ or US-6134204-$ or US-6178487-$ or US-6179208-$ or US-6185661-$ or US-6286087-$ or US-6308264-$ or US-6374363-$ or US-6374366-$ or US-6377413-$).did. or (US-6421235-$ or US-6424796-$ or US-6473861-$ or US-6477764-$ or US-6480463-$ or US-6507881-$ or US-6523125-$ or US-6532535-$ or US-6535996-$ or US-6629184-$ or US-6631043-$ or US-6633740-$ or US-6641359-$ or US-6654758-$ or US-6684229-$ or US-6687077-$ or US-6718488-$ or US-6727894-$ or US-6738710-$ or US-6738879-$ or US-6771388-$ or US-6839802-$ or US-6848047-$ or US-6920555-$ or US-6691213-$ or US-5826012-$).did. | US-PGPUB; USPAT | OR | ON | 2005/10/21 16:15 |
| S89 | 2 | "6691213".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2005/10/21 17:05 |
| S90 | 13 | ("5022077" | "5355489" | "5481754" | "5657445" | "5754821" | "5809230" | "5864698" | "6035420" | "6122733" | "6154835" | "6282647" | "6385721" | "6542979").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:23 |
| S91 | 3395187 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2005/10/22 08:24 |

MTI0002172

# EAST Search History

| S94 | 0 | S91 and (ATA same DCO) | US-PGPUB; USPAT; USOCR | OR | ON | 2005/10/22 08:27 |
| S95 | 2 | "4290088".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:37 |
| S96 | 2 | "20040194062" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:40 |
| S97 | 2 | "20040078514" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/04/13 15:41 |
| S99 | 1790 | ((button with start$8) same (program and (memory device))) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:52 |

MTI0002173

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S10 4 | 72 | (US-20040186953-$ or US-20040184309-$ or US-20040186969-$ or US-20030023826-$ or US-20030018836-$ or US-20030099456-$ or US-20050182510-$ or US-20020166059-$ or US-20020162100-$ or US-20020103779-$ or US-20020095672-$ or US-20040194062-$ or US-20040078514-$ or US-20040015623-$ or US-20060212728-$ or US-20030142227-$ or US-20050289260-$).did. or (US-6738710-$ or US-6727894-$ or US-6641359-$ or US-6421235-$ or US-6839802-$ or US-6633740-$ or US-6019286-$ or US-6179208-$ or US-5175672-$ or US-6107804-$ or US-5805415-$ or US-5907413-$ or US-5799068-$ or US-5861873-$ or US-6377413-$ or US-6308264-$ or US-5434722-$ or US-5420998-$ or US-6134204-$ or US-6473861-$ or US-6185661-$ or US-5966732-$ or US-6631043-$ or US-5630093-$ or US-6718488-$ or US-6535996-$). did. or (US-6507881-$ or US-6523125-$ or US-6286087-$ or US-6687077-$ or US-6480463-$ or US-6771388-$ or US-6629184-$ or US-6684229-$ or US-6532535-$ or US-6424796-$ or US-6654758-$ or US-6374363-$ or US-6374366-$ or US-6738879-$ or US-6477764-$ or US-5953199-$ or US-6848047-$ or US-5304974-$ or US-5351156-$ or US-5210554-$ or US-5973870-$ or US-6178487-$ or US-5826012-$ or US-4290088-$ or US-6691213-$ or US-6920555-$ or US-6760696-$). did. or (US-6965928-$ or US-7046294-$).did. | US-PGPUB; USPAT | OR | ON | 2006/10/10 09:51 |
| S10 5 | 1151 | ((button with (start$8 initiali$8)) same (program and (memory device))) and @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:53 |
| S10 6 | 446 | S105 and (power$9 with (button switch)) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:55 |
| S10 7 | 2 | S105 and ((power$9 with (button switch)) same launc$9) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 09:58 |

MTI0002174

# EAST Search History

| S10 8 | 231 | S105 and ((power$9 with (button switch)) same start$9) | US-PGPUB; USPAT | OR | OFF | 2006/10/10 10:15 |
|---|---|---|---|---|---|---|
| S10 9 | 3416531 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2006/10/10 10:15 |
| S11 0 | 661 | S109 and (thumb near10 drive) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 10:18 |
| S11 1 | 15 | S110 and (start$8 with program) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 10:16 |
| S11 2 | 90724 | S109 and ((portable removable) with (memory device)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 10:19 |
| S11 4 | 120 | S112 and ((key near10 drive) same memory) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 11:22 |
| S11 5 | 9 | ("20040004121" "20020099634" "20030041188" "2003163382") | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:25 |
| S11 6 | 4 | ("20040105656" "20030159012") | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:27 |
| S11 7 | 0 | 2004/0105656 | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:26 |
| S11 8 | 2 | "20040105656" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:26 |
| S11 9 | 2 | "20030159012" | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 12:29 |
| S12 0 | 11 | ("6816982" "6453395" "6792486" "6577912" "6763442" "6766430"). pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 15:36 |
| S12 1 | 2 | "5777811".pn. | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/10 15:36 |

MTI0002175

# EAST Search History

| S122 | 3416531 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2006/10/11 06:42 |
|------|---------|------------------|-----------------|-----|-----|-----------------|
| S123 | 161 | S122 and (disk same (reserve near10 area)) | US-PGPUB; USPAT; DERWENT; IBM_TDB | OR | ON | 2006/10/11 06:42 |
| S124 | 3419814 | @ad < "20010621" | US-PGPUB; USPAT | OR | OFF | 2007/01/13 05:43 |
| S125 | 1114 | S124 and "small footprint" and (case \| box \| enclosure) | US-PGPUB; USPAT | OR | OFF | 2007/01/13 05:43 |
| S126 | 26 | S125 and "8.5" | US-PGPUB; USPAT | OR | OFF | 2007/01/13 05:44 |

MTI0002176

| ***Notice of Allowability*** | Application No. | Applicant(s) |
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit | |
| | Duc T. Doan | 2188 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *1/18/07*.

2. ☒ The allowed claim(s) is/are *15-17 (renumbered by Examiner)*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None   of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____.

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

Kevin L. Ellis
Primary Examiner

*[signature]*
2/13/07

MTI0002177

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | |
|---|---|
| 7590  02/26/2007 | **EXAMINER** |
| Steven Bress | DOAN, DUC T |
| 7851-C Beechcraft Avenue | **ART UNIT** \| **PAPER NUMBER** |
| Gaithersburg, MD 20879 | 2188 |
| | DATE MAILED: 02/26/2007 |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $0 | $1000 | 05/29/2007 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

MTI0002178

Complete and send this form, together with applicable fee(s), to: **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

7590     02/26/2007

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD 20879

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $0 | $1000 | 05/29/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| DOAN, DUC T | 2188 | 711-112000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)



Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.          ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

MTI0002179

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

7590     02/26/2007

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD 20879

| EXAMINER |
|---|
| DOAN, DUC T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2188 | |

DATE MAILED: 02/26/2007

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 442 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 442 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

MTI0002180

| Issue Classification | Application/Control No. 10/174,984 | Applicant(s)/Patent under Reexamination BRESS ET AL. |
|---|---|---|
| | Examiner Duc T. Doan | Art Unit 2188 |

## ISSUE CLASSIFICATION

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | | | | | NON-CLAIMED | | |
| 711 | 112 | G | 06 | F | 12 | /06 | | | / |

| CROSS REFERENCES | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | | | | |
| | | | | | | | / | | | / |
| 711 | 105 | | | G | 06 | F | 12 | /08 | | / |
| 711 | 115 | | | G | 06 | F | 12 | /06 | | / |
| 711 | 170 | | | G | 06 | F | 12 | /08 | | / |
| | | | | | | | / | | | / |
| | | | | | | | / | | | / |

| Duc T Doan 2/08/07 (Assistant Examiner) (Date) | Kevin L. Ellis Primary Examiner Kevin L. Ellis 2/12/07 (Primary Examiner) (Date) | Total Claims Allowed: 3 | |
|---|---|---|---|
| (Legal Instruments Examiner) 2/20/07 (Date) | | O.G. Print Claim(s) 15 | O.G. Print Fig 7 |

| ☐ Claims renumbered in the same order as presented by applicant | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|---|

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| | 2 | | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| | 3 | | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| | 4 | | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| | 5 | | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| | 6 | | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| | 7 | | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| 1 | 15 | | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| 2 | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| 3 | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |

MTI0002181

| *Search Notes* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/174,984 | BRESS ET AL. |
| | Examiner | Art Unit |
| | Duc T. Doan | 2188 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| East search | 2/9/2007 | DD |
| Inventor search | 2/9/2007 | DD |
| | | |
| | | |
| | | |
| | | |
| | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| 711/112 711/115 711/105 711/170 710/305-interference East | | 2/9/2007 | DD |

U.S. Patent and Trademark Office

Part of Paper No. 20070209

MTI0002182

FROM :ENTROPY ENGINEERING          FAX NO. :3017607015          Apr. 29 2007 12:47AM P3

## PART B - FEE(S) TRANSMITTAL

Complete and send this form together with applicable fee(s) to: **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

7590          02/16/2007

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD 20879

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/20/2002 | Steven Bress | 0032-0002 | 8535 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR REMOVING DATA STORED ON LONG-TERM MEMORY DEVICES

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $0 | $1000 | 05/29/2007 |

04/30/2007 TBESHAH2 00032020 10174984

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| DOAN, DUC T | 2188 | 711-112000 |

01 FC:2501          700.00 OP
03 FC:1504          300.00 OP

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,   1 _____
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.   2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE          (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent):   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☒ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date   4/28/2007

Typed or printed name   STEVEN BRESS          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PAGE 3/3 * RCVD AT 4/29/2007 1:31:45 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-3/13 * DNIS:2732885 * CSID:3017607015 * DURATION (mm-ss):03-00

MTI0002183



## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **TO:** | | **FROM:** | |
| **Name:** | Mail Stop ISSUE FEE | **Name:** Steve Bress | |
| | USPTO | **Phone No.:** 301-208-8373 | |
| **Fax No.:** | (571) 273-2885 | **Fax # Verified by:** | |
| **Phone No.:** | | **# Pages** (incl. this): 3 | |
| **Subject:** | **Issue Fee** | **Date:** 4/28/2007 | |

**Message:**

Re: U.S. Application of : Steven Bress et al.
Application No.: 10/174,984
Filed: June 20, 2002
Title: Systems and methods for Removing Data Stored on Long-Term Memory Devices

Attached are forms PTOL-85 and PTO-2038.

If there is a problem with this transmission, notify the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

MTI0002184

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/174,984 | 06/05/2007 | 7228379 | 0032-0002 | 8535 |

7590   05/16/2007

Steven Bress
7851-C Beechcraft Avenue
Gaithersburg, MD 20879

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 442 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Steven Bress, Germantown, MD;
Dan Bress, Germantown, MD;
Mike Menz, Roseville, CA;
Mark Joseph Menz, Folsom, CA;

IR103 (Rev. 11/05)

**MTI0002185**