# EXHIBIT K

PUBLIC VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**Before the Honorable Charles E. Bullock**
**Chief Administrative Law Judge**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN COMPUTER FORENSIC DEVICES AND PRODUCTS CONTAINING THE SAME** | **Investigation No. 337-TA-799** |

**COMPLAINANT MYKEY TECHNOLOGY INC.'S OPPOSITION TO CRU ACQUISITION GROUP, LLC DBA CRU-DATAPORT LLC'S MOTION FOR SUMMARY DETERMINATION BASED ON NON-INFRINGEMENT OF U.S. PATENT NO. 7,228,379 (MOT. NO. 799-033)**

PUBLIC VERSION

**TABLE OF CONTENTS**

                                                                    Page

I.    INTRODUCTION .................................................................................................. 1

II.   LEGAL STANDARDS ......................................................................................... 2

      A.    Legal Standard For Summary Determination ......................................... 2

      B.    Legal Standard For A Determination Of Non-Infringement ................... 3

            1.    Claim Construction ...................................................................... 4

            2.    Non-Infringement Analysis .......................................................... 6

III.  THE ACCUSED PRODUCTS LITERALLY MEET THE "IRRETRIEVABLY REMOVING  DATA" LIMITATION ................................................................... 7

      A.    The Accused Products Infringe The '379 Patent .................................... 7

            1.    CRU Promotes The Accused CRU Products By Representing To Potential Customers That The Products "Irretrievably Remove Data." ............................................................................................... 8

            2.    CRU's Accused Products "Irretrievably Remove Data" From Modern Hard Drives ..................................................................... 9

            3.    CRU's Non-Infringement Position Relies On Faulty Claim Construction Based On Improper Importation Of Embodiments To The Claims As Limitations ....................................................... 13

            4.    Practicing The Prior Art Is Not A Defense ............................... 15

IV.   THE ACCUSED PRODUCTS MEET THE "IRRETRIEVABLY REMOVING DATA" LIMITATION UNDER THE DOCTRINE OF EQUIVALENTS .................... 16

V.    CONCLUSION .................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Acromed Corp. v. Sofamor Danek Grp., Inc.*,
253 F.3d 1371 (Fed. Cir. 2001)..................................................................................13

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990).....................................................................................6

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006)....................................................................................16

*Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*,
757 F.2d 255 (Fed. Cir. 1985).....................................................................................6

*Ecolab, Inc. v FMC Corp.*,
569 F.3d 1335 (Fed. Cir. 2009)....................................................................................6

*Electro Med. Sys. S.A. v. Cooper Life Sciences, Inc.*,
34 F.3d 1048 (Fed. Cir. 1994)...............................................................................13, 14

*EMI Group N. Am., Inc. v. Intel Corp.*,
157 F.3d 887 (Fed. Cir. 1998).....................................................................................3

*Ferring B.V. & Aventis Pharm., Inc. v. Barr Labs., Inc.*,
437 F.3d 1181 (Fed. Cir. 2006)....................................................................................3

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
103 F.3d 978 (Fed. Cir. 1997).....................................................................................2

*In the Matter of Certain Bulk Welding Wire Containers*
*& Components Thereof & Welding Wire*,
Inv. No. 337-TA-686, Order No. 14, 2009 WL 3982222 (U.S. I.T.C. Nov. 17, 2009)............3

*In the Matter of Certain Color Television Receivers &*
*Color Display Monitors & Components Thereof*,
Inv. No. 337-TA-534, Order No. 28, 2005 WL 3346207 (U.S. I.T.C. Oct. 11, 2005)............2

*In the Matter of Certain Lens-Fitted Film Packages*,
Inv. No. 337-TA-406, Order No. 7, 1998 WL 35230715 (U.S. I.T.C. July 10, 1998)............2

*In re Gabapentin Patent Litig.*,
503 F.3d 1254 (Fed. Cir. 2007)....................................................................................3

PUBLIC VERSION

## TABLE OF AUTHORITIES
## (CONT.)

**Page(s)**

### FEDERAL CASES

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.,*
  175 F.3d 985 (Fed. Cir. 1999).............................................................................3, 5, 6

*Markman v. Westview Instruments, Inc.,*
  52 F.3d 967 (Fed. Cir. 1995)....................................................................................4

*McCarty v. Lehigh Val. R. Co.,*
  160 U.S. 110 (1895)...................................................................................................5

*Northern Telecom Ltd. v. Samsung Elecs. Co.,*
  215 F.3d 1281 (Fed. Cir. 2000).................................................................................6

*Omega Eng'g, Inc. v. Raytek Corp.,*
  334 F.3d 1314 (Fed. Cir. 2003)..............................................................................5, 6

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005)..............................................................................4, 5

*SanDisk Corp. v. Memorex Prods., Inc.,*
  415 F.3d 1278 (Fed. Cir. 2005).................................................................................6

*Sorensen v. Int'l Trade Comm'n,*
  427 F.3d 1375 (Fed. Cir. 2005).................................................................................6

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.,*
  175 F.3d 974 (Fed. Cir. 1999)...................................................................................3

*Tate Access Floors, Inv. v. Interface Architectural Resources, Inc.,*
  279 F.3d 1357 (Fed. Cir. 2002)...............................................................................15

*Vitronics Corp. v. Conceptronic, Inc.,*
  90 F.3d 1576 (Fed. Cir. 1996)...................................................................................4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
  520 U.S. 17 (1997)...............................................................................................3, 7

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.,*
  522 F.3d 1348 (Fed. Cir. 2008)...............................................................................15

PUBLIC VERSION

## TABLE OF AUTHORITIES
### (CONT.)

**Page(s)**

### REGULATIONS

19 C.F.R. § 210.18(b) ....................................................................................................................2

PUBLIC VERSION

Pursuant to Commission Rules 210.18(b) and Ground Rule 3.4, Complainant MyKey Technology Inc. ("Complainant" or "MyKey") respectfully submits this memorandum in support of its opposition to Respondent CRU Acquisition Group, LLC dba CRU-DataPort LLC's ("CRU") Motion for Summary Determination Based on Non-infringement of U.S. Patent No. 7,228,379 (the "'379 patent") (Mot. No. 799-033).

## I.    INTRODUCTION

The '379 patent is directed to a device that is capable of "irretrievably remov[ing] data" on a storage device, among other features.  CRU's motion for summary determination is based on an argument that its accused products do not irretrievably remove data, but CRU does not present any evidence that the CRU products do not irretrievably remove data, and it does not explain how summary determination is possible in the face of (a) the advertising for CRU's products proclaiming that they render data "unrecoverable" and otherwise asserting the irretrievability of the data removed by the CRU products and (b) the deposition testimony by CRU's Chief Executive Officer Randall Barber affirming the accuracy of CRU's advertising. CRU's advertising and Mr. Barber's testimony obviously present issues of fact precluding summary determination, and CRU's attempt to conjure a non-infringement defense based on characteristics of the prior art discussed in the '379 patent is not sufficient.

CRU's non-infringement arguments depend on the contention that its accused products ███████████████████████ which according to the '379 patent, might not have been sufficient to remove residual magnetism on the tracks of the hard drives that were prevalent at the time the application that matured into the '379 patent was filed.  CRU fails to point out, however, that hard drive technology has undergone substantial evolution since the filing of the '379 patent application.  Because of the advances in hard drive technology, residual magnetism

1

is no longer the issue it was, and ███████████████ would not leave residual magnetism on the tracks. Today, as CRU's products are used, ████████████████████████████ ████████████████████████, is all that is required to render deleted data unrecoverable by any known methods.

## II.   LEGAL STANDARDS

### A.   Legal Standard For Summary Determination

A motion for summary determination may be granted only when the evidence of record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to summary determination as a matter of law." 19 C.F.R. § 210.18(b); *see also In the Matter of Certain Color Television Receivers & Color Display Monitors & Components Thereof*, Inv. No. 337-TA-534, Order No. 28, 2005 WL 3346207, at *1-2 (U.S. I.T.C. Oct. 11, 2005). A material fact is one that may affect the decision, and a genuine issue exists if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997). "In deciding any motion for summary determination, the administrative law judge must accept all evidence presented by the non-movant as true, must view all of the evidence in the light most favorable to the non-movant, and must draw all justifiable inferences in favor of the non-movant." *In the Matter of Certain Lens-Fitted Film Packages*, Inv. No. 337-TA-406, Order No. 7, 1998 WL 35230715, at *2 (U.S. I.T.C. July 10, 1998) (citations omitted). Moreover, "[a]ny doubt as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party." *Id*.

The trier of fact should "assure itself that there is no reasonable version of the facts, on the summary judgment record, whereby the nonmovant could prevail, recognizing that the

PUBLIC VERSION

purpose of summary judgment is not to deprive a litigant of a fair hearing, but to avoid an unnecessary trial." *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998). Summary determination is not appropriate "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility." *In the Matter of Certain Bulk Welding Wire Containers & Components Thereof & Welding Wire*, Inv. No. 337-TA-686, Order No. 14, 2009 WL 3982222, at *2 (U.S. I.T.C. Nov. 17, 2009) (citations omitted). Evidence supporting or opposing a summary determination motion must be in the form of "an affidavit or other admissible evidence." *Ferring B.V. & Aventis Pharm., Inc. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006).

### B.     Legal Standard For A Determination Of Non-Infringement

Determining whether an accused device infringes a claim is a two-step process. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). "The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device." *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 981 (Fed. Cir. 1999). Step two, comparison of the claim to the accused device, requires a determination that every claim limitation or its equivalent be found in the accused device. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). The determinations made in the second step involve "questions of fact, and on summary judgment, the issue is whether there is no genuine issue of material fact regarding infringement." *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007).

1.      **Claim Construction**

The Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.

Cir. 2005) reconfirmed that the claims, specification, and prosecution history are the principal

sources for construing the claims of a patent.  *See also Markman v. Westview Instruments, Inc.*,

52 F.3d 967, 979-80 (Fed. Cir. 1995) (*en banc*), aff'd 517 U.S. 370 (1996).  *Phillip*s recognized

the "'bedrock principle'…that 'the claims of a patent define the invention to which the patentee

is entitled the right to exclude.'"  415 F.3d 1312 (citations omitted).  The words of the claims are

generally given the meaning that the terms would have to a "person of ordinary skill in the art in

question at the time of the invention, i.e., as of the effective filing date of the patent application."

*Id*. at 1312-13.

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not

only in the context of the particular claim in which the disputed term appears, but in the context

of the entire patent, including the specification."  *Id*. at 1313.  Accordingly, the claims do not

stand alone; they are part of a "fully integrated written instrument," and "must be read in view of

the specification, of which they are part."  *Id*. at 1315 (citing *Markman*, 52 F.3d at 978-979).

The *Phillips* Court reiterated the holding in *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576,

1582 (Fed. Cir. 1996), that the specification "is always highly relevant to the claim construction

analysis."  *See also Phillips,* 415 F.3d at 1315 ("Usually, it is dispositive; it is the single best

guide to the meaning of a disputed term.").

While claim language is read in light of the specification, the particular examples or

embodiments discussed in the specification are not to be read into the claims as limitations.

*Markman*, 52 F.3d at 979.  "The construction that stays true to the claim language and most

naturally aligns with the patent's description of the invention will be, in the end, the correct

PUBLIC VERSION

construction." *Phillips*, 415 F.3d at 1316.  Further, "claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources." *Johnson Worldwide,* 175 F.3d at 989-90; *see also McCarty v. Lehigh Val. R. Co.*, 160 U.S. 110, 116 (1895) ("[I]f we once begin to include elements not mentioned in the claim in order to limit such claim . . ., we should never know where to stop."). In other words, there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.  *Johnson Worldwide*, 175 F.3d at 990.

While the prosecution history constitutes intrinsic evidence, the Federal Circuit has recognized its more limited role in claim construction compared to the specification:

> [L]ike the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent. Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.

*Phillips,* 415 F.3d at 1317.

The Federal Circuit "indulge[s] a 'heavy presumption' that claim terms carry their full ordinary and customary meaning, unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (internal citations omitted).  The doctrine of prosecution disclaimer precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution; however, for the doctrine to attach, the patentee must have unequivocally disavowed a certain meaning to obtain his patent.  *Id*. at 1323-24.  The Federal Circuit has consistently rejected prosecution disclaimer arguments based upon

statements considered too vague or ambiguous to qualify as a disavowal.  *See, e.g., Ecolab, Inc. v FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009); *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005); *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000).

Rather, the Federal Circuit requires the allegedly disavowing statements to be "so clear as to show reasonable clarity and deliberateness" and "so unmistakable as to be an unambiguous evidence of disclaimer." *Omega*, 334 F.3d at 1325; *see also Sorensen*, 427 F.3d at 1378 ("[I]n order to disavow claim scope, a patent applicant must clearly and unambiguously express surrender of subject matter during prosecution."); *Ecolab*, 569 F.3d at 1342. ("Even if an isolated statement appears to disclaim subject matter, the prosecution history as a whole may demonstrate that the patentee committed no clear and unmistakable disclaimer.").  Importantly, "[t]here is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005).

### 2.    Non-Infringement Analysis

Once construed, claims are compared to the allegedly infringing device to determine whether the device contains all of the recited limitations, literally or by equivalents. *Johnson Worldwide*, 175 F.3d at 988.  If even a single limitation of a claim is not present in the accused device, it cannot infringe the claim. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).

"Literal infringement requires that the accused device embody every element of the claim." *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 n.1 (Fed. Cir. 1985).  If a claim limitation is not exactly present in the accused device, the device

-6-

nevertheless may infringe under the doctrine of equivalents.  *See, e.g., Warner-Jenkinson,* 520 U.S. at 21.  To determine equivalents for a particular claim element or limitation, the Supreme Court has provided the following guidance:

> An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.

*Id*. at 40.  The differences may be considered insubstantial only if the accused element performs substantially the same function as the claimed element, in substantially the same way, to achieve substantially the same result.  *Id.*

## III.   THE ACCUSED PRODUCTS LITERALLY MEET THE "IRRETRIEVABLY REMOVING  DATA" LIMITATION.

CRU's motion is based solely on an argument that the accused CRU products do not meet the "irretrievably removing data" limitation of claim 1 of the '379 patent.  CRU's argument is contradicted by statements made by CRU in the advertising and promotion of its products outside of this Investigation and the deposition testimony of Mr. Barber.  CRU's statements and Mr. Barber's testimony show that each CRU product accused of infringing the '379 patent indeed irretrievably removes the data on a storage device under either party's proposed claim construction.  Summary determination of non-infringement is not possible in the face of CRU's statements and Mr. Barber's testimony.

### A.   The Accused Products Infringe The '379 Patent.

As addressed during the claim construction proceedings, MyKey believes that the term "irretrievably remove data" should be afforded its plain and ordinary meaning, which is: "remove data permanently such that it may not be recovered by any known methods."  *See*

Declaration of James Lin in Support of Opposition to CRU Acquisition Group LLC's Motion for Summary Determination Based on Non-infringement of U.S. Patent No. 7,228,379 ("Lin Decl."), Ex. 1 (Updated Joint Proposed Claim Construction Chart, Jan. 27, 2012) at p. 11; ASMF ¶ 8.  As demonstrated below, CRU's accused products meet the limitation "irretrievably remove data" of the asserted claims of the '379 patent because the accused CRU products remove data such that it may not be recovered by any known methods.

> **1.      CRU Promotes The Accused CRU Products By Representing To Potential Customers That The Products "Irretrievably Remove Data."**

CRU's motion relies on self-serving statements that are inconsistent with the promotion and advertising of the accused CRU products and the deposition testimony by Mr. Barber affirming the accuracy of the promotional statements.  CRU's prior statements and Mr. Barber's testimony cannot be so easily overcome.

An example of the promotional statements precluding a summary determination that the accused CRU products do not irretrievably remove data is one made by CRU's customer service representative, Perry White, regarding the accused Drive eRazer Pro MP prior to the filing of MyKey's complaint in this Investigation:



Lin Decl., Ex. 2 (Barber Dep., Feb.23, 2012, Exhibit 54) at CRU 002214 (emphasis added); ASMF ¶ 9.  The fact that CRU's accused products render overwritten data unrecoverable is also emphasized in CRU's news release issued to the general public before the filing of MyKey's complaint:

███████████████████████████████████████   *See* Declaration of Fred Cohen in Support of

Opposition to Acquisition Group LLC's Motion for Summary Determination Based on

Noninfringement of U.S. Patent No. 7,228,379 ("Cohen Decl."), Ex. I (Barber Dep., Feb.23,

2012, Exhibit 56) at CRU 008922 (emphasis added); ASMF ¶ 10.  Mr. Barber, CRU's CEO and

its corporate designee on technical topics, testified in a deposition taken shortly before CRU's

motion was filed that █████████████████████████████   *See* Lin Decl., Ex. 3

(Barber Dep., Feb.23, 2012) at 432:25 – 436:9; ASMF ¶ 11.  Mr. Barber's willingness to submit

a contradictory declaration in support of CRU's motion claiming that ███████████████

████████████████████████████████████████████████████████████████

is striking, but not sufficient to "remove" his deposition testimony from consideration.  Barber

Decl. ¶ 5[1]; ASMF ¶ 12.  Mr. Barber's declaration is inconsistent with his deposition testimony

and CRU's public claim that the Drive eRazer Ultra writes over █████████████████

█████████████████████████████   Cohen Decl., Ex. I (Barber Dep.,

Feb.23, 2012, Exhibit 56) at CRU 008922.  Without resort to any other evidence, the internal

contradictions in Mr. Barber's testimony preclude summary determination.

      **2.**      **CRU's Accused Products "Irretrievably Remove Data" From Modern Hard Drives.**

      Mr. Barber's contradictory declaration is striking for another reason.  He claims that the

products his company promotes as making deleted data unrecoverable do not irretrievably

remove data and do not █████████████████████████   Mr. Barber does not

explain why he says that his company's public statements about the unrecoverability of deleted

---

[1] Declaration of Randall Barber in support of Respondent CRU Acquisition Group LLC's Motion for Summary Determination Based on Non-infringement (Mot. No. 799-033) ("Barber Decl.").

PUBLIC VERSION

data are false, and his statement about the ███████████ is highly misleading.

It is common knowledge in the industry that for modern magnetic hard drives (e.g., magnetic hard drives manufactured after 2001), ██████████████████████████████ ████████████████████████████████████, is all that is required to render deleted data unrecoverable.  Cohn Decl. ¶¶ 22-26; ASMF ¶ 13.  Numerous testing and studies have been done in the field to determine how to remove data on a hard drive so that the data will be unrecoverable.  Cohn Decl. ¶¶ 22-26; ASMF ¶ 14.  The studies confirm that a single-pass overwriting is sufficient to render deleted data unrecoverable.  Cohn Decl. ¶¶ 22-26; ASMF ¶ 15. Performing a multi-pass overwriting, issuing a secure erase command to the hard drive, or executing other acts may give some users greater assurance that the deleted data cannot be recovered, but these actions are not necessary to make deleted data unrecoverable.  Cohn Decl. ¶¶ 22-26; ASMF ¶ 16.

Single-pass overwriting is sufficient because modern magnetic hard drives have significantly greater density (i.e., the width of the tracks is much smaller) than hard drives manufactured before 2002.  *Id.*  As a result, overwriting a track on a modern hard drive one time would not create retrievable residual magnetism on the edges of a track.  Cohn Decl. ¶¶ 22-26; ASMF ¶ 17.  To the extent any residual magnetism remains, there is no known method to recover any associated data because the scarce residual magnetism that could remain on the drive simply cannot be interpreted.  Cohn Decl. ¶¶ 22-26; ASMF ¶ 18.

Mr. Barber is not the only CRU employee to testify that the accused CRU products meet the "irretrievably removing data" limitation.  Mr. Mehler, the CRU engineer who designed and developed the accused products acknowledged the █████████████████████████████████ ████████████████████████████████████████



Lin Decl., Ex. 4 (Mehler Dep., Mar. 15, 2012) at 94:12-21; 95:16-19; ASMF ¶ 19.

Despite the testimony by its CEO and lead engineer, CRU attempts to secure summary

determination by presenting purported expert commentary on the statement in the '379 patent

that "[f]uzzy area 203 includes residual magnetism that could be interpreted by someone with the

correct equipment."  Lin Decl., Ex. 5 (the '379 patent) at 2:59-61; Gafford Decl. ¶ 7; ASMF ¶

20.  This is not a comment about any CRU product or any hard drive from which data have been

deleted by a CRU product within the last ten years.  It is a comment on the state of the art around

the time of the invention of the '379 patent.  The statement has nothing to do with modern hard

drives or with the capability of any accused CRU product.

The reference by CRU's expert, Thomas Gafford, to a portion of a sentence in the '379

patent is not admissible, useful, or sufficient to overcome CRU's promotion of its products or the

testimony of Mr. Barber and Mr. Mehler.  Mr. Gafford simply notes the observation in the '379

patent that obsolete devices presented an issue that was not resolved by the prior art.  This is not

relevant factual evidence addressing the accused CRU products or modern hard drives, and there

is no admissible expert opinion in Mr. Gafford's allusion to the '379 patent.

Mr. Gafford does not profess to have performed any tests on any CRU products, to have observed residual magnetism following the use of a CRU product, or to have even attempted to interpret any such magnetism. Nor does he identify any equipment capable of interpreting residual magnetism left by a CRU device. For all that is set forth in his declaration, Mr. Gafford also appears to be ignorant of the development of hard drives over the past 15 years. When the '379 patent application was filed (June 21, 2001), there was equipment that could interpret residual magnetism on the edges of the tracks in floppy disks and legacy hard drives (i.e., those manufactured before 2002), but there is no known equipment existing today that could interpret residual magnetism on the edges of the tracks in modern magnetic hard drives, and Mr. Gafford does not claim otherwise. Cohn Decl. ¶¶ 22-26; ASMF ¶ 21.

The failure of Mr. Gafford to speak to the time relevant to this Investigation is significant. Floppy disks and legacy hard drives typically had abundant residual magnetism remaining even after multiple overwriting. Cohen Decl. ¶¶ 14-21; ASMF ¶ 22. With the correct equipment, one could interpret the residual data due to its abundance. *Id.* That does not mean that modern hard drives erased by the accused CRU products today present comparable possibilities. MyKey expert Fred Cohen explains that they do not. Cohn Decl. ¶¶ 22-26; ASMF ¶¶ 13-18. As already mentioned, the high density of modern hard drives results in very little residual magnetism, if any, after only a single-pass overwriting. Cohn Decl. ¶¶ 22-26; ASMF ¶ 23. Mr. Gafford identifies no equipment that could interpret the insubstantial residual magnetism in modern hard drives, and Mr. Cohen states that there is no such equipment. Cohn Decl. ¶¶ 22-26; ASMF ¶ 24. Mr. Barber and Mr. Mehler acknowledge that there are no known methods by which the data erased by the accused CRU products can be retrieved. Mr. Gafford's comment addressing a reference in the '379 patent to legacy products does not overcome the

testimony of the CRU employees or provide any support for a conclusion that data erased by the CRU products can be retrieved.

### 3.   CRU's Non-Infringement Position Relies On Faulty Claim Construction Based On Improper Importation Of Embodiments To The Claims As Limitations.

Perhaps recognizing that the evidence makes clear that the accused CRU products infringe the '379 patent, CRU attempts to change the meaning of the asserted claims by arguing that the term "irretrievably remove data" requires track jumping, or "more" than writing data patterns to overwrite deleted data. CRU is plainly wrong. MyKey's construction properly requires "remov[ing] data permanently such that it may not be recovered by any known methods." The proper construction does not require that the device perform data removal by track jumping, or by "more" than what is needed to get the job done.[2]

As with most, if not all, of CRU's claim construction positions, the argument that the asserted claims of the '379 patent require track jumping is based on one of the cardinal sins of claim construction. Track jumping is an embodiment of the invention described in the '379 patent specification (specifically, the embodiment described in Fig. 6), but the claim scope is not limited by the disclosed embodiments of the invention. *See Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1382-83 (Fed. Cir. 2001) (a patent is not limited to its preferred embodiment in the face of evidence of broader coverage by the claims); *Electro Med. Sys. S.A. v.*

---

[2] Even if CRU's proposed construction for "irretrievably removing data" is adopted by the Chief ALJ, the accused CRU products still infringe. As CRU admits, "[i]n Security Erase mode, the erasers invoke a command that has been building into the hard drives, whereby the drive itself performs overwriting . . . ." Mot. No. 799-033 at 4. By evoking a command of the hard drive, CRU's accused products remove data "by doing more than merely writing one or more data patterns to the data areas" because a hard drive command is evoked in addition to merely overwriting the hard drive. Thus, at least in the security erase mode, the accused products meets the "irretrievably remove data" limitation under Respondents' construction.

*Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("[P]articular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments.").  Importation of the track jumping embodiment is especially improper here because the '379 patent specification explicitly describes other embodiments falling within the scope of the claim:

> The alternating system of erase shown in FIG. 6 is *one of many potential cleaning pattern* that specifically applies to moving magnetic media.  In alternate implementations, cleaning device 300 may perform simple cleans for fast "good enough" cleaning, or more complex patterns may be used that are specific to other types of media.

Lin Decl., Ex. 5 (the '379 patent) at 8:49-54 (emphasis added); ASMF ¶ 25.

Without citing any legal or factual support, CRU also summarily dismisses its ███████ ███████ as not claimed by the '379 patent and somehow "dedicated to the public."  CRU is wrong again.  Not only is ███████████ claimed by the '379 patent, it is described in the '379 patent as an alternative embodiment:

> In an alternate cleaning scheme, some target disk drives have an internal command that will erase the drive.  Cleaning device 300 may use these internal erase commands when cleaning the device.

Lin Decl., Ex. 5 (the '379 patent) at 8:55-58; ASMF ¶ 26.   If MyKey understands CRU's argument correctly, CRU appears to suggest that the claim phrase "a control circuit configured to control the long-term memory component . . . to irretrievably remove data . . . by overwriting the data of the long-term memory component" requires the overwriting be performed by the claimed device itself. ███████████████████████████



███. CRU argues that there is no infringement.

The claim language does not require that the overwriting be performed by the device itself.  It simply requires that the control circuit of the device "control" the long-term memory component (e.g., a hard drive) to remove data "by overwriting." ████████

████████████████████████████████████████████

████   *See* Mot. No. 799-033, at 4. ████████████████

████████   *Id*.  CRU's attempt to avoid infringement with a result-oriented approach to claim construction should be rejected.

### 4.      Practicing The Prior Art Is Not A Defense.

CRU repeatedly argues that its accused products do not infringe the '379 patent because they remove data using only the prior art method of ████████ But in *Tate Access Floors, Inv. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357 (Fed. Cir. 2002), the Federal Circuit squarely rejected the "practicing the prior art" defense advocated by CRU.  The Federal Circuit explained that accused infringers "are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing the prior art' defense to literal infringement under the less stringent preponderance of evidence standard."  *Id*. at 1367.  Instead "[a]nticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference.  '[I]t is the presence of the prior art and its relationship to the claim language that matters for invalidity.'"  *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (quoting *Tate*, 279 F.3d at 1367).  Selecting a single claimed feature and portraying it as "the prior art," while ignoring the balance of a claim does not allow an end run around a finding of infringement.

If CRU establishes that removing data by ████████████████ is a prior art method, it will not avoid a finding that the accused products infringe the '379 patent.   The scope of a claim scope is not defined by a single claim element, or by fewer than all of the elements.  It is defined by the combination of claim elements as set forth in the claim.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).  Thus, while a particular claim element may read on a prior art method, the claim as a whole may still be valid and infringed because the combination of claim elements is not anticipated or rendered obvious by prior art.  That is the situation here. CRU's misinterpretation of the law does not provide a basis on which it can avoid responsibility for its infringement of the '379 patent.[3]

## IV.    THE ACCUSED PRODUCTS MEET THE "IRRETRIEVABLY REMOVING DATA" LIMITATION UNDER THE DOCTRINE OF EQUIVALENTS.

CRU's argument that its accused products do not infringe the '379 patent under the doctrine of equivalent relies on the same results-oriented claim construction theory and misrepresentation of the factual record advocated by CRU with respect to literal non-infringement and should be rejected for the same reasons.

Indeed, a proper analysis shows that CRU's accused products satisfy the "irretrievably remove data" limitation under the doctrine of equivalents.  The accused products perform substantially the same function as the "irretrievably remove data" limitation, as construed by the Respondents – to render the deleted data unrecoverable.  Cohen Decl. ¶¶ 28-29; ASMF ¶ 27. They perform that function in substantially the same way.  *Id.* ██████████████████ ████████████████████████████ of the hard drive have insubstantial

_____

[3] CRU also concludes that ███████████████████████████████ ███████████████████ Mot. No. 799-033 at 9.  CRU does not provide any evidence supporting this conclusion, which is inadequate for the reasons explained in the text.

differences – they all delete data by overwriting.  Cohen Decl. ¶¶ 30-32; ASMF ¶ 28.  The result

is substantially the same as well – by performing a ███████████████████████████████████

███████, CRU's accused products render the deleted data unrecoverable, as admitted by CRU

in deposition testimony and public statements.  Cohen Decl. ¶¶ 33-34; ASMF ¶ 29.  In sum,

CRU's accused products infringe both literally and under the doctrine of equivalents.

## V.      CONCLUSION

CRU's accused products infringe the '379 patent.  CRU cannot escape a finding of

infringement by offering a declaration by Mr. Barber that contradicts his deposition testimony, or

by ignoring Mr. Mehler's testimony and CRU's promotion and advertising of the accused CRU

products as products that make deleted data unrecoverable.  For the foregoing reasons, MyKey

respectfully requests that the ALJ deny CRU's motion for summary determination of non-

infringement.

Dated: April 11, 2012                              Respectfully submitted,


                                                   _____
                                                   Robert E. Freitas
                                                   Kai Tseng
                                                   James Lin
                                                   Catherine Y. Lui
                                                   Qudus B. Olaniran
                                                   FREITAS TSENG & KAUFMAN LLP
                                                   100 Marine Parkway, Suite 200
                                                   Redwood Shores, CA 94065
                                                   Telephone:  (650) 593-6300
                                                   Facsimile:  (650) 593-6301

                                                   David Foster
                                                   James Altman
                                                   FOSTER, MURPHY, ALTMAN & NICKEL, PC

1899 L Street, NW, Suite 1150
Washington, DC 20036
Telephone:  (202) 223-6220
Facsimile:   (202) 822-4199

*Counsel for Complainant MyKey Technology Inc.*

DMS:103030.2