# EXHIBIT O

1-30-03

Approved for use through 10/31/2002. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET

### This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

| Express Mail Label No. | EG201219393US |
|---|---|

### INVENTOR(S)

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| Steven | Bress | Germantown, MD 20874 |

☑ Additional inventors are being named on the ___1___ separately numbered sheets attached hereto

### TITLE OF THE INVENTION (500 characters max)

Systems and Methods for Restoring Critical Data to Computer Long-Term Memory Device Controllers

### CORRESPONDENCE ADDRESS

Direct all correspondence to:

☐ Customer Number

OR          Type Customer Number here          →          Place Customer Number Bar Code Label here

| ☑ Firm or Individual Name | Steven Bress |
|---|---|
| Address | 7851-C Beechcraft Avenue |
| Address | |
| City | Gaithersburg | State | MD | ZIP | 20879 |
| Country | USA | Telephone | 301-208-8373 | Fax | 301-990-6437 |

### ENCLOSED APPLICATION PARTS (check all that apply)

| ☑ Specification  Number of Pages | 16 | ☐ CD(s), Number | |
|---|---|---|---|
| ☑ Drawing(s)  Number of Sheets | 8 | ☐ Other (specify) | |
| ☐ Application Data Sheet. See 37 CFR 1.76 | | | |

### METHOD OF PAYMENT OF FILING FEES FOR THIS PROVISIONAL APPLICATION FOR PATENT

☐ Applicant claims small entity status. See 37 CFR 1.27.

☑ A check or money order is enclosed to cover the filing fees

☐ The Commissioner is hereby authorized to charge filing fees or credit any overpayment to Deposit Account Number: _____

☐ Payment by credit card. Form PTO-2038 is attached.

| FILING FEE AMOUNT ($) |
|---|
| $80.00 |

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

☑ No.

☐ Yes, the name of the U.S. Government agency and the Government contract number are: _____

Respectfully submitted,

SIGNATURE  *Steve Bress*            Date  01/29/2003

TYPED or PRINTED NAME  Steven Bress

TELEPHONE  301-208-8373

| REGISTRATION NO. (if appropriate) | |
|---|---|
| Docket Number: | |

## USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

This collection of information is required by 37 CFR 1.51. The information is used by the public to file (and by the PTO to process) a provisional application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 8 hours to complete, including gathering, preparing, and submitting the complete provisional application to the PTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Box Provisional Application, Assistant Commissioner for Patents, Washington, D.C. 20231.

6U443388.U1290¬3

# PROVISIONAL APPLICATION COVER SHEET
## Additional Page

PTO/SB/16 (02-01)
Approved for use through 10/31/2002. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Docket Number | |
|---|---|

| INVENTOR(S)/APPLICANT(S) | | |
|---|---|---|
| Given Name (first and middle [if any]) | Family or Surname | Residence (City and either State or Foreign Country) |
| Mark Joseph | Menz | Folsom, CA |
| Daniel | Bress | Germantown, MD |
| Michael James | Menz | Roseville, CA |

Number ___1___ of ___1___

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

60443388.012903

PTO/SB/17 (01-03)
Approved for use through 04/30/2003. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2003
*Effective 01/01/2003. Patent fees are subject to annual revision.*

[✓] Applicant claims small entity status. See 37 CFR 1.27

**TOTAL AMOUNT OF PAYMENT** ($) 80.00

**Complete if Known**

| | |
|---|---|
| Application Number | |
| Filing Date | 01/29/2003 |
| First Named Inventor | Steven Bress |
| Examiner Name | |
| Art Unit | |
| Attorney Docket No. | |

## METHOD OF PAYMENT (check all that apply)

[✓] Check   [ ] Credit card   [ ] Money Order   [ ] Other   [ ] None

[ ] Deposit Account:
Deposit Account Number _____
Deposit Account Name _____

The Commissioner is authorized to: (check all that apply)
[ ] Charge fee(s) indicated below   [ ] Credit any overpayments
[ ] Charge any additional fee(s) during the pendency of this application
[ ] Charge fee(s) indicated below, except for the filing fee
to the above-identified deposit account.

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 1001 | 750 | 2001 | 375 | Utility filing fee | |
| 1002 | 330 | 2002 | 165 | Design filing fee | |
| 1003 | 520 | 2003 | 260 | Plant filing fee | |
| 1004 | 750 | 2004 | 375 | Reissue filing fee | |
| 1005 | 160 | 2005 | 80 | Provisional filing fee | 80.00 |

**SUBTOTAL (1)** ($) 80.00

### 2. EXTRA CLAIM FEES FOR UTILITY AND REISSUE

| | Extra Claims | | Fee from below | | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | -20** = | X | | = | |
| Independent Claims | - 3** = | X | | = | |
| Multiple Dependent | | X | | = | |

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description |
|---|---|---|---|---|
| 1202 | 18 | 2202 | 9 | Claims in excess of 20 |
| 1201 | 84 | 2201 | 42 | Independent claims in excess of 3 |
| 1203 | 280 | 2203 | 140 | Multiple dependent claim, if not paid |
| 1204 | 84 | 2204 | 42 | ** Reissue independent claims over original patent |
| 1205 | 18 | 2205 | 9 | ** Reissue claims in excess of 20 and over original patent |

**SUBTOTAL (2)** ($) 0

**or number previously paid, if greater; For Reissues, see above

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 1051 | 130 | 2051 | 65 | Surcharge - late filing fee or oath | |
| 1052 | 50 | 2052 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 1053 | 130 | 1053 | 130 | Non-English specification | |
| 1812 | 2,520 | 1812 | 2,520 | For filing a request for ex parte reexamination | |
| 1804 | 920* | 1804 | 920* | Requesting publication of SIR prior to Examiner action | |
| 1805 | 1,840* | 1805 | 1,840* | Requesting publication of SIR after Examiner action | |
| 1251 | 110 | 2251 | 55 | Extension for reply within first month | |
| 1252 | 410 | 2252 | 205 | Extension for reply within second month | |
| 1253 | 930 | 2253 | 465 | Extension for reply within third month | |
| 1254 | 1,450 | 2254 | 725 | Extension for reply within fourth month | |
| 1255 | 1,970 | 2255 | 985 | Extension for reply within fifth month | |
| 1401 | 320 | 2401 | 160 | Notice of Appeal | |
| 1402 | 320 | 2402 | 160 | Filing a brief in support of an appeal | |
| 1403 | 280 | 2403 | 140 | Request for oral hearing | |
| 1451 | 1,510 | 1451 | 1,510 | Petition to institute a public use proceeding | |
| 1452 | 110 | 2452 | 55 | Petition to revive - unavoidable | |
| 1453 | 1,300 | 2453 | 650 | Petition to revive - unintentional | |
| 1501 | 1,300 | 2501 | 650 | Utility issue fee (or reissue) | |
| 1502 | 470 | 2502 | 235 | Design issue fee | |
| 1503 | 630 | 2503 | 315 | Plant issue fee | |
| 1460 | 130 | 1460 | 130 | Petitions to the Commissioner | |
| 1807 | 50 | 1807 | 50 | Processing fee under 37 CFR 1.17(q) | |
| 1806 | 180 | 1806 | 180 | Submission of Information Disclosure Stmt | |
| 8021 | 40 | 8021 | 40 | Recording each patent assignment per property (times number of properties) | |
| 1809 | 750 | 2809 | 375 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 1810 | 750 | 2810 | 375 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 1801 | 750 | 2801 | 375 | Request for Continued Examination (RCE) | |
| 1802 | 900 | 1802 | 900 | Request for expedited examination of a design application | |

Other fee (specify) _____
*Reduced by Basic Filing Fee Paid

**SUBTOTAL (3)** ($) 0

## SUBMITTED BY (Complete (if applicable)

| Name (Print/Type) | Steven Bress | Registration No. (Attorney/Agent) | | Telephone | 301-208-8373 |
|---|---|---|---|---|---|
| Signature | [signature] | | | Date | 01/29/2003 |

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

This collection of information is required by 37 CFR 1.17 and 1.27. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, Washington, DC 20231.**

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

# Systems and Methods for Restoring Critical Data to Computer Long-Term Memory Device Controllers

## Abstract

A restoring device provides a means to reset data in a computer long-term storage device's controller, such as hard drives. There is a need to, on occasion, change information on a device's controller. For example to access data on long-term storage devices such as hard drives that is hidden. Accessing this hidden data involves making a change to a device's controller. There is an addition requirement, on occasion, to reset the device's controller to its original state. Our current invention has systems and methods to restore a long-term storage device controller to a previous state.

## Field of Invention

The present invention relates to computer memory devices, and, more specifically, to mechanisms for restoring critical data to computer memory devices.

## Description of Related Art

Modern computer long-term memory storage devices, such as, but not limited to IDE drives, are able to "hide" data from their host computer's operating system. For example, an IDE drive might be 12 GB, with 10 GB not hidden and 2 GB hidden. The entire 12GB of the drive might have data on it, but an operating system, such as Windows®, would only be able to access the non-hidden 10 GB. Special programs that bypass the operating system and address the drive directly may read this "hidden" data.

One legitimate example of this "hiding" feature being used is a computer manufacturer, such as Hewlett Packard, putting configurations files on a drive but hiding them from users. In this fashion most users are prevented from modifying the configuration files, as they do not have the expertise and/or access to special programs, or the knowledge that there are hidden files on their computer. A manufacturer could copy an operating system installation data to a "hidden" area. Since the manufacturer knows that the operating system is in the "hidden" area, the manufacturer could write a series of

1

utilities to extract drivers and/or other files, which may be needed from time to time. The manufacturer in this case would have a reasonable expectation that these files would be available and unmodified if needed, whereas if the files were in a non-hidden area, the files may be modified and/or deleted through operator error.

Unfortunately, lawbreakers can use this "hidden" feature as well. Pedophiles may store illegal images in the "hidden" area. Terrorists may store their plans in the "hidden" area. Corporate spies may hide confidential data in the "hidden" area. There is an obvious need for Police and other law enforcement and security officers to be able to access "hidden" areas on computer long-term memory storage devices.

The commands that allow for hiding of data do not actually change the data stored on a drive, but change how a drive responds to certain commands. For instance, one of the commands reduces the effective size of the drive by making data stored above a certain location inaccessible to the host computer's operating system. In order to avoid confusing the operating system, the drive reports this smaller size as its true size. In order for the operating system to have access to data above this new reported size, a skilled operator would need to reset the drive's size back to its full size and then issue appropriate commands to have the operating system recognize the drive's larger size. These steps require changes to the data in the drive.

There are many situations in which it is desirable to allow data to be read from a non-volatile long-term memory storage device, such as a computer hard drive, but not allow data to be written to the device.  For example, law enforcement officials have occasion to confiscate long-term memory storage devices.  Once confiscated, the law enforcement officials need to be able to examine and copy the storage device without changing the storage state of the device.  Some operating systems, such as the Windows® operating systems from Microsoft Corporation, may modify the storage device when accessing files on the device, even if the user is only trying to read files from the device. In addition, during startup, operating systems such as Windows® will write up to hundreds of megabytes of data to a storage device as the operating system initializes. These situations are not acceptable when trying to preserve the state of a storage device in its as-confiscated state. Therefore, for the purposes of law enforcement officials and

security officers, issuing changes to a Host Computer's operating system to be able to read its hidden area is not possible.

As can be seen, there is a need for law enforcement and security agents to read hidden data on a long-term memory storage device while maintaining the integrity of the data on the storage device. Operating system independent devices that access the target drive directly can accomplish this. U.S. Patent Application 20020040418 is an example of such a device. For such a device to read the hidden drive area, it must first query the drive's controller as to the true size of the drive. It must then write a command to the drive that changes the size information that the drive will report. Note that a change has been made to data in the Drive Controller, but not the drive itself.

There are many situations where there is a need to reset the size reported by an Identify Device request. If this size information is not reset, the operating system of the host computer may not be able to access the drive properly. If a suspect's computer suddenly starts malfunctioning in this way, he may be tipped off and modify his behavior. Law enforcement officials may check a suspected and/or paroled pedophile's computer for illegal images. If illegal images are found, law enforcement officials may monitor the suspect's actions in an effort to identify his contacts. Therefore, it is important that the suspect does not know that his computer was searched. Security officers have similar concerns when investigating terrorists and spies.

One of the features of devices such as U.S. Patent Application 20020040418 is that they are easy to use. This class of stand-alone devices has minimal user interfaces. Devices such as 20020040418 could be designed with a user interface that could show a user critical drive information. A user could then write down this information. This class of device could have a user interface that would enable a user to then enter this information and in this way restore critical data. However, this would make this class of device, larger, more expensive, more difficult to use, and open to the possibility of alerting a suspect if the incorrect information is entered.

A further consideration that must be taken into account is the possibility of power failure. Systems and methods must be in place to protect this critical data in the event of a power failure. Furthermore, there is an obvious benefit if a restoring device could indicate to an operator that the drive has been correctly restored.

3

6044338B.012903

The above discussion has focused on IDE drives and restoring information reported by an Identify Device command, but our invention is not limited to these. One skilled in the art will appreciate that other drive types, such as USB and FireWire, have similar concerns and that information other than the drive size may need to be restored.

Accordingly, there is a need in the art for an improved mechanism for restoring critical drive information in a memory device, such as a disk drive.

## Summary of the Invention

Systems and methods consistent with the present invention address these and other needs by providing for an operating system independent circuit and logic.

One aspect of the invention is directed to a restoring device including a plurality of elements. Specifically, the restoring device includes a processor coupled to an interface and non-volatile memory. The processor issues a command to a storage device, which is connected to the interface and stores all or part of the response in non-volatile memory. The processor then writes to the storage device to enable a host to read data from the entire storage device. Upon receiving a command, (usually automatic/user initiated optionally) the processor writes a command to the storage device to restore the storage device to its previous state.

A second aspect of the invention is directed to a device that includes an IDE interface, and a logic circuit. The IDE interface is configured to engage a cable that connects to the IDE storage device. The logic circuit issues the necessary command(s) to the IDE storage device to determine the IDE storage device's unique identification number and reported drive size (from the Identify Device data packet). The logic circuit stores the IDE storage device's unique identification number in non-volatile memory and; associates the reported drive size from the Identify Device data packet with the unique identification. The logic circuit issues a further command(s) to the IDE storage device to obtain data to allow the logic circuit to analyze the full size of the IDE storage device. The logic circuit issues a command to the IDE storage device to change the drive size in the Identify Device Packet to allow a host machine to read data from the entire IDE storage device. Upon command, the logic circuit will issue a command(s) to the IDE

4

6044388 012903

storage device to restore the drive size reported in the Identify Device data packet to its original state.

Yet another aspect of the invention is directed to a computer device. The computer device includes circuitry to act upon long-term storage devices, such as compute hard drives and a restoring device. The restoring device is configured to make changes to the storage device to enable a host computer to read all data stored on the storage device and to subsequently restore the storage device to its original state.

Yet another aspect of the invention is logic and circuitry, which queries a long-term storage device's controller and stores the response in non-volatile memory.

Yet another aspect of the invention is logic and circuitry, which queries a long-term storage device's controller and stores the response in non-volatile memory. The logic and circuitry then determine the proper settings to write to the device's controller to allow all hidden data on the device to be accessible and issue the proper commands.

Yet another aspect of the invention is logic and circuitry, which queries a long-term storage device's controller and stores the response in non-volatile memory. The logic and circuitry then determine the proper settings to write to the device's controller to allow all hidden data on the device to be accessible and issue the proper commands. Upon command the logic and circuitry restore the device's controller to its original state.

## Brief Description of the Drawings

The accompanying drawings, which are incorporated in and constitute a part of this specification, illustrate the invention and, together with the description, explain the invention. In the drawings,

Fig. 1 is a diagram illustrating a copying device, which would be improved by our current invention;

Fig. 2 is intentionally left blank;

Fig. 3 is a flow chart illustrating the logic in determining full drive size;

Fig. 4 is block diagram illustrating a copying device of Figs. 9 in more detail;

Fig. 5 is diagram graphically illustrating the functionality of portions of the copying device shown in Fig. 4;

Fig. 6 is a flow chart illustrating the logic in determining when to restore temporarily changed drive parameters.

Fig. 7 is a block diagram illustrating the copying device shown in Fig 9 in more detail, incorporating our current invention.

Fig. 8 is a flow chart illustrating the logic in auto restoring a drive

Fig. 9 is diagram illustrating a copying device, which would benefit from our current invention.

## Detailed Description

The following detailed description of the invention refers to the accompanying drawings. The same reference numbers in different drawings identify the same or similar elements. Also, the following detailed description does not limit the invention.

A retrieving device is described herein that writes certain commands to a storage device and returns the storage device to its original state. The retrieval device has an interface port through which it can communicate with a long-term memory storage device.

The storage device may be any type of long-term non-volatile memory device. For example, the storage device may be a hard disk drive or compact flash memory. In one implementation, the storage device uses an Integrated Drive Electronics (IDE) interface. An IDE interface is a well-known electronic interface that is frequently used to connect a computer's motherboard and disk drive. In IDE drives, the disk drive controller is built into the physical case of the disk drive. The IDE interface provides a relatively high level interface between the motherboard and the disk drive.

Although concepts consistent with the present invention are primarily described herein in relation to an IDE magnetic hard disk drive, these concepts may be implemented with other types of IDE media, such as flash memory with an IDE interface. Flash memories are a special type of semiconductor random access memory that retains its data after power has been removed from the system. Other types of media useable with an IDE interface include magnetic tape and optical media, such as a compact disc (CD) and a digital versatile disc (DVD). In addition to the IDE interface, concepts consistent with the invention may be applied in a straightforward manner to other types

6

604-3386.012903

of high level storage interfaces, such as the well known Small Computer System Interface (SCSI) standard, or IEEE 1394 FireWire interface.

For the sake of clarity, the remaining description herein will be described with reference to an IDE magnetic hard drive, although, as mentioned above, the concepts of the invention are not limited to such drives. One skilled in the art would appreciate that other modern long-term storage device interfaces share similar functionality that could be incorporated into the concepts described herein.

## IDE Drive

As previously mentioned, communications with an IDE drive occurs through its IDE interface. The IDE interface is a well-defined interface that has addressable memory registers in which the host device (e.g., the computer motherboard) can write commands. The host may also read these registers to, for example, retrieve status information. The IDE interface may additionally include memory used to buffer data going to or coming from the storage media.

An IDE drive returns its size in an IDENTIFY_DEVICE data packet. Operating Systems, such as Windows®, store information on how to access a drive based on this number. Typically this is only done once when the system is powered up. The size in the IDENTIFY_DEVICE packet can be smaller than the full drive size; thereby leaving an area that is hidden from an operating system.

In order for specialized software to read hidden data, commands must be issued to the drive that will "unhide" the data. Once done, standard commands may be used to read the previously hidden data, such as the READ_SECTOR command. In order to have access to all of the hidden data, the drive must be instructed to report its actual size.

In order to determine the true size of an IDE drive and restore it to its original state, first an IDENTIFY_DEVICE Command is issued. This command returns an IDENTIFY_DEVICE data packet. To determine the true size of a drive, we are concerned with three pieces of data in this packet. These are: the reported size of the drive, is MAX_COMMAND available (True/False), and is DEVICE_CONFIGURE available (True/False).

**Case One**. MAX_COMMAND is false and DEVICE_CONFIGURE is false.

7

The reported size of the drive is the max drive size. There is no hidden area.

**Case Two**. MAX_COMMAND is true and DEVICE_CONFIGURE is false.

The READ_NATIVE_MAX_ADDRESS is issued. If the size reported by the READ_NATIVE_MAX_ADDRESS is larger than the size reported in the IDENTIFY_DEVICE data packet, there is a hidden area. A SET_MAX_ADDRESS command is issued to change the size reported by the IDENTIFY_DEVICE data packet. Later, a SET_MAX_ADDRESS command is issued to restore the drive to its original state.

**Case Three**. MAX_COMMAND is false and DEVICE_CONFIGURE is true.

The READ_NATIVE_MAX_ADDRESS is issued. If the size reported by the READ_NATIVE_MAX_ADDRESS is larger than the size reported in the IDENTIFY_DEVICE data packet, there is a hidden area. A DEVICE_CONFIGURE_SET command is issued to change the size reported by the IDENTIFY_DEVICE data packet. Later, a DEVICE_CONFIGURE_SET command is issued to restore the drive to its original state.

**Case Four**. MAX_COMMAND is true and DEVICE_CONFIGURE is true.

The READ_NATIVE_MAX_ADDRESS is issued. If the size reported by the READ_NATIVE_MAX_ADDRESS is larger than the size reported in the IDENTIFY_DEVICE data packet, there is a hidden area. A SET_MAX_ADDRESS command is issued to change the size reported by the IDENTIFY_DEVICE data packet. If this command generates an error message, then a DEVICE_CONFIGURATION_SET command is issued. Later, if a SET_MAX_ADDRESS command was successfully used to change the state of the drive, the SET_MAX_ADDRESS command is issued to return the drive to its original state. If a SET DEVICE_CONFIGURATION command was successfully used to change the state of the drive, then a DEVICE_CONFIGURATION_SET command is issued to return the drive to its original state.

One skilled in the art will appreciate that similar commands are used when working with "Big" drives.

8

### Device Incorporating Drive Restore Logic and Circuitry

Figure 9 illustrates a Copying Device. A source disk drive 920 is connected to the copying device 900. The copying device performs operations and makes a copy of 920 on a destination disk drive 940. A copying device is just one example of a device that would benefit from our current invention.

Figure 7 shows a block diagram of a drive copying device that incorporates drive restore logic and supporting circuitry. This device 900 can make an exact copy of a Source Drive, 920 Drive 1, on a Destination Drive, 940 Drive 2. In order to copy all of the data present on the Source drive 920, the processor 730 must interrogate the Source Drive 920 and determine if it has any hidden data.

If it is determined that the Source Drive 920 has hidden data, this data must be made available to processor 730 before a full copy can be made to the Destination Drive 940. As described earlier, information about the current configuration, along with unique drive identification information is stored in FLASH RAM 770 before making any changes to the drive. Once this information is stored in FLASH 770, the drive's settings may be changed to expose all of the hidden data.

With this change in drive settings, the processor 730 may initiate the process of copying the drive. Under ideal circumstances, the copy would complete, and the device 900 would set the Source Drive 920 back to its original configuration. In the event of a power failure, an electrical glitch, or some other accidental or intentional mishap with the device, it is possible that the copy process could be interrupted. In this case, the Source drive 920 would not have had the opportunity to be restored to its original settings.

Our invention provides a method for dealing with such a contingency. When device 900 is powered up, it interrogates drive 920 and obtains its unique drive identification number. If 920 was previously attached to device 900 it will be detected as having a recent entry in FLASH. At the end of the copy procedure, the device 900 can restore the drive 920 to its previous settings. Another option would be for device 900 to reset drive 920 to the smallest size settings. Another option would be, if there are multiple entries concerning the Source drive 920, a User may interact with the device using the RS-232 Serial port 790, and instruct the device 900 which entry to use.

9

## A Detailed Look at an Electronic Block Diagram
## of a Preferred Embodiment

In a standard configuration, our device is connected to two standard IDE hard drives. A drive containing Source data is connected through a standard cable to Interface Connector **1040**. Power for this drive is provided through an industry standard drive power connecter **1070**. A drive that will receive a copy of the source data, or Destination Drive, is connected through a standard IDE cable to Interface Connector **1060**. Power for this drive is provided through an industry standard drive power connecter **1080**.

To a drive, our device appears to be a host computer. The drives are electrically isolated from each other through the use of separate Interface Circuitry for each drive. **1030** for the Source, and **1050** for the Destination. In a standard PC, two IDE drives can share the same interface circuitry.

Figure **5** is an illustration of a block diagram of copying device that incorporates drive restore logic and supporting circuitry. Our device uses an Intel 80386 EX embedded processor **4010** for its main control and logic function. This version of Intel's 80386 processor is optimized for embedded applications. The highly integrated design of this processor means that very little additional circuitry is necessary to create a small, dedicated computer system. Some static RAM is provided in **5040**, which is used for temporary program and data storage. **5050** is an EPROM that holds the code necessary to initialize and run the processor. Timing is generated by a 50 MHz crystal oscillator, **5070**.

The 80386EX **4010** has I/O pins available that may be used to connect additional devices. Three of these pins are used to power LED status indicators **5020** in order to provide feedback to a user. Another of these I/O pins, used as an input, may be used to connect a key lock **5030** to the processor.

A Programmable Logic Device, or PLD, is used to integrate numerous logical devices into a single chip **5090**. Configuration data for the PLD is stored in a configuration ROM **5080**. Timing for the PLD is generated by a 50 MHz crystal oscillator, **5070.** When the PLD is reset, it automatically tries to load configuration information from its ROM. When configuration is complete, this single chip **5090** can be viewed as having all of the functionality shown in Figure **6**.

10

Figure **5** shows a breakdown of the functions implemented by the PLD **4090**. The address, data, and control lines from the processor **4010** are routed to the PLD. They are then buffered and latched in **4020** as necessary to reduce the electrical load on the processor and to stabilize the signal timing. Buffered read **4030** and write **4040** signals control the direction of the bus drivers shown in **4050**. These buffers help control the data flow and distribution of the address and data busses from the processor to other functions in the PLD.

Buffering and signal conditioning for the Source Drive is provided by the Drive Buffers in **5100**, making this the Drive Interface. Through the Bus drivers **5050** the processor can directly read and write to the Drive Interface. Another way that the processor and the Drive may communicate is through the Dual Ported RAM Sector Buffer **5080**. This allows the drive to write one sector's worth of data to RAM at high speed, while the processor performs other tasks. By allowing the operations to overlap in this fashion, the processor is not restricted to running at the speed of the drive, and is free to handle other functions until it needs the data in the Sector Buffer.

Similarly, buffering and signal conditioning for the Destination Drive is provided by the Drive Buffers in **5110**, making this the Drive Interface. Through the Bus drivers **5050** the processor can directly read and write to the Drive Interface. Another way that the processor and the Drive may communicate is through the Dual Ported RAM Sector Buffer **5090**. This allows the drive to read one sector's worth of data from RAM at high speed, while the processor performs other tasks. By allowing the operations to overlap in this fashion, the processor is not restricted to running at the speed of the drive, and is free to handle other functions until it needs the data in the Sector Buffer.

The 80386EX processor **4010** has a UART built in that may be used for serial communications. For versions of our device that require such communication capabilities, the UART is connected to an RS-232 transceiver **4060**. This part not only buffers the signals, it also generates the necessary voltages required for RS-232 communications. A standard DB9 connector **4120** allows our device to be connected to a computer using a standard DB9 male to female serial cable.

In the preferred embodiment, the goal of making this device foolproof for use by an untrained person is accomplished in a number of ways. The first is that the device is

controlled by a single switch, such as Key Lock **4030**. This switch has only two choices, on and off. When switched on, the device starts operation and provides any required feedback to the user through one or more indicators, such as LEDs **4020**. Under normal circumstances, the only indicator that the user need be concerned with is the "Operation Complete" indicator. Additional indicators may be available for such error conditions as "Destination Drive Too Small" or "Copy in Progress."

For additional detailed status, a printer may be connected to the device through communication port **4120**. Information sent to the printer may include Drive identification information to uniquely identify the drive being copied. Should any errors occur, such as a bad sector on the Source disk, the sector number may be printed.

Should an unreadable sector be identified on the Source drive, something still must be written to the Destination drive. In the case of this type of error, our device writes a standard, predefined bit pattern to the corresponding area on the Destination drive.

The logic for making use of the FLASH RAM is shown in Fig. 3. The Drive is interrogated using the IDENTIFY_DEVICE command **300**. If the drive does not have the ability to hide data, there is no need to make any changes to the Drive parameters, and no need to restore them later. If, however, the Drive is capable of hiding data, the true size of the drive is determined by issuing the READ_NATIVE_MAX_ADDRESS command **320**.

The information collected about the Drive's settings and information about the method to be used to make any hidden data available is stored in FLASH RAM **330**. The copying device is now free to perform its operation. When the copy is complete, a check is made to determine if the device might need to change the Drive's settings back to their original configuration **340**. If the stored Drive size does not match the Drive's current size, another check **350** is performed to see if the copying device has been presented with this Drive before. This could indicate a possibility that a power failure had left the drive in an altered state. If this is determined to be the case, the Drive's parameters are restored from the value stored in FLASH RAM **360**.

6044588 012903

## Another Example of a Restoring Device

Another device that can make use of the our Drive Restore invention but uses it in a slightly different way is device called NoWrite, as described in Patent Application 20020040418. This device provides a write protection feature for computer long-term storage devices, such as hard drives.

A device for copying drives, as described earlier, is in full control of the copying process. It determines when and if to change any Drive parameters, and can determine when to change them back. NoWrite operates in a different manner. It plugs between the Host computer and the Drive, and only allows those commands to pass to the drive that are considered safe, in that they don't make any permanent changes to the data on the drive.

While it is important to protect the data on the drive, in many cases it is equally important to be able to find and examine any hidden data on the drive. In order for this to be done safely, NoWrite would need to store the original Drive parameters to FLASH RAM before allowing any changes to the Drive Parameters that might become permanent. Unlike a copying device that knows when to restore the original settings, a device like NoWrite has no way to determine when the changed settings are no longer necessary. This increases the likelihood that the drive could be left in a condition different than when it was first connected.

Fig. 6 illustrates the logic used in this device for typical usage to save and restore drive parameters, in order to allow a host computer to have access to all of the data on the drive. This device does not have any way to know in advance when a session will be complete or when it will be turned off. As such, there is no external condition that indicates when a drive should be restored to its initial condition. The logic in Fig. 6 shows one solution to this problem.

On power up 600, an IDENTIFY_DEVICE command is issued to the drive. The information returned by the IDENTIFY_DEVICE command is checked 610 to see if the drive supports either of the two ways to hide data. If the drive has the potential to have hidden data, a command is issued to find out the true size of the drive 620. At this point, the device has enough information to begin normal operations 630.

13

When a command is detected 635 that attempts to make a change to the reported drive size, information from the IDENTIFY_DEVICE record and the true drive size are stored in FLASH 640 for later use. The command is allowed to complete, potentially changing the reported size of the drive. The device then starts a timer 645 to keep track of time elapsed since a command last tried to make use of the data exposed by the changed drive size. If a command comes in that makes use of the newly exposed data, the timer is reset and the device continues monitoring the incoming commands.

After a preset amount of time passes without any commands trying to access the newly exposed data 660, the device will initiate the sequence to restore the drive to its previous state using the information stored in FLASH. If the currently reported size of the drive does not match the stored size of the drive 670, the values stored in FLASH are used to reset the drive to its earlier state.

Fig. 8 shows the logic for automatically restoring a drive to its previously known good state. The information returned by the IDENTIFY_DEVICE command is checked against information previously stored in FLASH 810. If the device detects that it has stored information about this drive before, it checks to see if the current state of the drive matches the previous state 820. If the new and old values do not match, the device uses the data stored in FLASH to restore the drive to its previous settings 830.

It should be noted that the device may store information about all of the drives that it has previously seen, as limited only by the amount of FLASH RAM installed. Each time the device powers up, it may make a new entry in the database stored in FLASH about the current drive. This leads to the case where it is possible for the same drive to have multiple records with multiple values, given that the drive can be removed from the device and have parameters changed elsewhere. In this situation, the Drive Restoration process may involve user input.

Using Serial port 425, the device may be connected to a PC. Using serial communications software, such as HyperTerminal as shipped with virtually every Windows PC, a user may interact with the device. In the case where there are multiple settings stored for a single drive, the device may prompt a User as to which is the preferred setting to restore. This has the obvious advantage in that in case there is some

14

confusion as to the 'correct' setting, a User has the opportunity to try any or all of the stored settings.

## Additional Features

### User Interface to Indicate Error Condition (Password protected)

There is a possibility that a long-term storage device, such as a drive, makes use of a password to prevent changes being made to its parameters. If a Drive makes use of this password feature, a device, such as a copying device, may not be able to access all of the drive's data. Using an indicator, such as an LED, our invention could visually indicate this condition to a user.

### User Interface to Indicate Storage Device Condition

One feature of our invention is its ability to indicate to a user the current state of the storage device. Using an indicator, such as an LED, our invention could visually show a user whether the storage device is in its original configuration or its modified condition.

### Autorestore after power loss

Another variations is that the FLASH could be removable, such as a compact FLASH card, so that a database of drives operated on by our current invention, could be moved from device to device. This would be useful in the event that a device that contained our current invention failed, the drive data could be easily and quickly moved to another working device.

### Stand-alone device that stores drive controller information

A stand-alone device that a target hard drive may be connected to. The device would store the hard drive's unique identifier and associated information. The device would be connected to other computer devices or systems through a standard communications cable and thus be able to be queried for this information.

15

**Stand-alone device that stores drive controller information**

A stand-alone device that a target hard drive may be connected to. The device would store the hard drive's unique identifier and associated information. It would determine if there was a hidden area on the drive, and if so write commands to the drive's controller to enable the hidden area to be read. Additionally, upon command this device would reset the drive's controller to a previous state.

# Figure 1





Figure 3



Figure 4

# Figure 5





Fig. 6



Figure 7

Figure 8



Issue IDENTIFY_DEVICE Command `800`

Was this drive recently connected to the device? `810`

No → Yes

Does the size reported by Identify Device match the stored Size? `820`

Yes → No

Restore earlier drive settings from stored information `830`

Done `840`



Figure 9